IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

RONALD CANTOR, et al.,                    :
                                          :
          Plaintiffs,                     :
                                          :     No. 97-CIV-586-KAJ
     v.                                    :
                                          :
RONALD O. PERELMAN, et al.,               :
                                          :
          Defendants.                     :

-------------------------------------------------------x

## COMPENDIUM OF UNREPORTED OPINIONS CITED IN DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFFS' JURY DEMAND

Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Defendants

DATED: October 21, 2005

## INDEX TO UNREPORTED CASES AND AUTHORITIES

CASES                                                                   TAB

Cantor Fitzgerald, L.P. v. Cantor,
    C.A. No. 16297, 2000 WL 307370 (Del. Ch. Mar. 13, 2000) ............................... 1

Cantor Fitzgerald, L.P. v. Cantor,
    C.A. No. 16297, 2001 WL 536911 (Del. Ch. May 11, 2001) ................................ 2

Cantor Fitzgerald, L.P. v. Cantor,
    C.A. No. 16297, 2003 WL 21488707 (Del. Ch. June 19, 2003) ........................... 3

Roy F. Weston Services, Inc. v. Halliburton NUS Envtl. Corp.,
    C.A. No. 91-1133, 1993 U.S. Dist. LEXIS 2841 (E.D. Pa. Mar. 5, 1993) ............ 4

Rush v. Scott Paper Co.,
    C.A. No. 93-5973, 1995 U.S. Dist. LEXIS 1249 (E.D. Pa. Feb. 1, 1995) ............. 5

Smith v. Shell Petroleum, Inc.,
    C.A. No. 8395, 1990 WL 186446 (Del. Ch. Nov. 26, 1990) ................................. 6

Rodman Ward, Jr. and Erin Kelly,
"Why Delaware Leads in the United States as a Corporate Domicile,"
9-FALL DEL. LAW. 15 (1991) .......................................................................................... 7

# EXHIBIT 2

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Chancery of Delaware.
CANTOR FITZGERALD, L.P., Plaintiff,
v.
Iris CANTOR, et al., Defendants.
Iris CANTOR and Cantor Fitzgerald Incorporated,
Third-Party Plaintiffs,
v.
CANTOR FITZGERALD GROUP
MANAGEMENT, INC., Third-Party Defendant.
**No. 16297.**

Submitted: April 17, 2001.
Decided: May 11, 2001.

Rodman Ward, Jr., Thomas J. Allingham II, and
Karen Valihura of Skadden, Arps, Slate, Meagher
& Flom, LLP Wilmington, Delaware. of Counsel:
Thomas J. Schwarz and Joseph M. Asher of
Skadden, Arps, Slate, Meagher & Flom LLP, New
York, New York. Attorneys for Plaintiff.

Stephen E. Jenkins and Richard I.G. Jones, Jr. of
Ashby & Geddes, Wilmington, Delaware. of
Counsel: Barry I. Slotnick and Michael Shapiro of
Slotnick, Shapiro & Crocker, LLP, New York, New
York; Saul B. Shapiro of Patterson, Belknap, Webb
& Tyler LLP, New York, New York; Jack C.
Auspitz and Howard E. Heiss of Morrison &
Foerster LLP, New York, New York. Attorneys for
Defendants.

MEMORANDUM OPINION

STEELE, Justice (by designation).

*1 Presently before this Court are the post-trial
motions of both the plaintiff and the defendants.

[FN1] On March 13, 2000, this Court rendered its
decision in this case in a lengthy opinion ("March
decision"). [FN2] That opinion contains a full
discussion of the facts and prior procedural history
of this action. For that reason, those matters will
only be discussed in this opinion as they are
necessary to the discussion and analysis of the
merits of the motions.

> FN1. For simplicity, where I refer to the
> "plaintiff," I mean Cantor Fitzgerald L.P.
> Where I refer to "defendants," I mean Iris
> Cantor, Cantor Fitzgerald, Inc., Market
> Data Corp., and Rodney Fisher.

> FN2. *See Cantor Fitzgerald, L.P. v.
> Cantor,* Del. Ch., C.A. No. 16297, Steele,
> V.C. (March 13, 2000) (Mem.Op.).

In the March decision, the Court decided a number
of issues. Pertinent to the present motions was the
Court's ruling that the defendants, as limited
partners in a limited partnership, owed the plaintiff
contractually-created duties of loyalty. Moreover,
the Court ultimately ruled that the defendants, in
operating a competing business venture, committed
an "egregious breach of the partnership agreement"
that violated their duty of loyalty to the partnership.
[FN3] To remedy this breach of the partnership
agreement and the duty of loyalty, the Court granted
the plaintiff certain declaratory relief and an award
of damages measured by the amount of money spent
by the plaintiff to seek judicial redress for harm
caused by the breach. [FN4] The present motions
relate to the Court's award of monetary damages
predicated upon attorneys' fees and expenses
incurred in the course of litigation related to redress
of that harm.

> FN3. *Id.* at 3.

> FN4. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                  Page 2

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

On March 24, 2000, the defendants, challenging the Court's monetary award of damages, filed a motion pursuant to Court of Chancery Rules 59(a) and (e) and Rule 60(b) seeking either a new trial, an amended judgment, or relief from a judgment or order. On April 6, 2000, the plaintiff filed its application for redress of harm that set its outlay for attorneys' fees and expenses at $11,105,380. All motions were fully briefed and oral argument was heard on June 14, 2000. [FN5] The defendants' motions will be addressed first and then the plaintiff's. For the reasons discussed below, the defendants' motions are denied and the plaintiff's application is granted in accordance with the March decision.

> FN5. Other disputes between the parties and circumstances beyond their control have unfortunately delayed resolution of this issue for some time.

I. *Defendants' Motions under Rule 59.*

The defendants have moved for relief from the Court's award of a monetary judgment under various provisions of Court of Chancery Rules 59 and 60. In general, Rule 59 provides a mechanism for a new trial and Rule 60 provides relief from a judgment or order. Rule 59(a) provides that:

A new trial may be granted to all or any of the parties, and on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity. The Court may open the judgment, if one has been entered, take additional testimony, amend or make new factual findings and legal conclusions, and direct the entry of a new judgment.

Rule 59(e), however, provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Finally, Rule 60(b) provides relief from a judgment or order because of "mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc." [FN6]

> FN6. Court of Chancery Rule 60(b).

*2 Consideration of these motions is complicated

by the fact that the Court naively assumed that the parties could confer and agree on a declaratory judgment order and has, therefore, not issued a final order in this case. Thus, the requirements for Rule 60(b) are not satisfied and the defendants are not entitled to relief under that rule. [FN7] For the same reasons, the requirements for a motion under rule 59(e) are, likewise, unmet. [FN8] Because "the manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors prior to appeal," [FN9] the Court agrees that the defendants' motions are properly considered under Rule 59. However, as the defendants seek reconsideration of the Trial Court's findings of fact and/or conclusions of law, it is more properly considered a motion for reargument under Rule 59(f). [FN10] For these reasons, the Court will evaluate the defendants' motions under the standards applicable for Rules 59(a) and (f). [FN11]

> FN7. The "Court may relieve a party ...from a final judgment [or] order ...." Court of Chancery Rule 60(b).

> FN8. Rule 59(e) is a motion to "alter or amend a *judgment.*" The Court of Chancery Rules define a judgment as "any order from which an appeal lies." Court of Chancery Rule 54(a). *See also* Court of Chancery Rule 58 ("The order of the Court shall constitute the judgment of the Court.").

> FN9. *Eisenmann Corp. v. General Motors Corp.,* Del.Super., C.A. No. 99C-07-260, Quillen, J. (Feb. 24, 2000) Let. Op. and Order at 1.

> FN10. *See id.*

> FN11. The Court recognizes that the defendants motions may have been filed more than five days after "the filing of the Court's opinion or the receipt of the Court's decision." Court of Chancery Rule 59(f). The defendants, in their motion, requested that, should the Court find that Rule 59(f) is more appropriate, the time for the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 3

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

motion be enlarged pursuant to Court of Chancery Rule 6(b). *See* Defendants' Motion Pursuant to Rules 59(a) and (e) and 60(b) at n.1 (Mar. 24, 2000). I find that the defendants have met the requirements of Rule 6(b) because their conduct is even more benign than "excusable neglect." There was a legitimate argument that other provisions of Rule 59 applied and the defendants chose to proceed under those provisions. Moreover, enlarging the time for a motion for reargument by several days does not prejudice the plaintiff. For these reasons, the defendants' request to enlarge the time for a motion under Rule 59(f) is granted.

As noted above, the Court may grant a new trial under Rule 59(a) for "any of the reasons for which hearings have heretofore been granted in suits of equity." [FN12] In ruling on such a motion, the Court is charged with exercising the "judicial discretion of the Court so that injustice may be prevented ...." [FN13] The standard for a motion for reargument under Rule 59(f) is slightly different. The Court will generally deny a motion for reargument "unless the Court has overlooked a decision or principal of law that would have controlling effect or the Court has misapprehended the law or facts so that the outcome of the decision would be affected." [FN14]

> FN12. Court of Chancery Rule 59(a).
>
> FN13. *Daniel D. Rappa, Inc. v. Hanson,* Del.Supr., 209 A.2d 163, 166 (1965).
>
> FN14. *Continental Ins. Co. v. Rutledge & Co., Inc.,* Del. Ch., C.A. No. 15539, Chandler, C. (Feb. 15, 2000) Let. Op. at 2 (citing *Miles, Inc. v. Cookson America, Inc.,* Del. Ch., 677 A.2d 505 (1995)).

### ANALYSIS

The defendants argue that the Court improperly awarded the plaintiff its attorneys' fees as the prevailing party. Specifically, they argue that the parties never presented argument on the issue of

fees and that the issue was never properly raised before the Court for consideration. More importantly, however, they direct the Court's attention to a provision in the partnership agreement that they allege proscribes an award of attorneys' fees in this case. Thus, they argue, the Court misapprehended both the facts and the resulting rule of law and that they should be granted either a new trial or an opportunity to reargue the issue of attorneys' fees.

The plaintiff, however, argues that the Court's March decision did not order "fee-shifting" in the traditional sense, but, rather, it found that the plaintiff had been damaged by the defendants' behavior, and the most appropriate measure of these damages was the amount the plaintiff had spent in prosecuting the action. In the alternative, the plaintiff argues that, in this case, the partnership agreement provision would not prevent the Court from shifting the responsibility for attorneys' fees and expenses to the culpable party under an exception to the American Rule.

As one can see, the parties have widely differing views on the Court's intent in crafting its remedy in the March decision. To the extent I failed to articulate my reasoning clearly in the language of that opinion, these motions allow me to re-articulate that reasoning. The plaintiff's reading of the March decision is correct. As discussed more fully below, the Court intended to use the plaintiff's fees and expenses as a measure of damages in this case. Even had that not been the Court's intent now that defendants raise the issue, traditional fee shifting would still be appropriate.

A. The Court's award of damages measured by attorneys' fees.

*3 In the March decision, the Court found that the plaintiff was harmed by the defendants' conduct in several identifiable, but inherently unmeasurable, ways. [FN15] Any attempt to express those damages by a sum certain would have required the Court to engage in near speculation. Despite problems in quantifying the harm to the plaintiff, this "Court, fortunately, has broad discretion to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

tailor remedies to suit the situation as it exists." [FN16] Moreover, where there has been a breach of the duty of loyalty, as here, "potentially harsher rules come into play" and "the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly .... The strict imposition of penalties under Delaware law are designed to discourage disloyalty." [FN17]

> FN15. *See* March Decision at 80-82.

> FN16. *Andresen v. Bucalo,* Del. Ch., C.A. No. 6372, Hartnett, V.C. (March 14, 1984) Mem. Op. at 10. *See also Bomarko, Inc. v. International Telecharge, Inc.,* Del. Ch., C.A. No. 13052, Lamb, V.C. (Nov. 4, 1999, revised on Nov. 16, 1999) Mem. Op. at 44-45 ("In determining damages, the Court's powers are complete to fashion any form of equitable and monetary relief as may be appropriate." (quoting *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 714 (1983) (internal quotations omitted)); *Universal Studios, Inc. v. Viacom, Inc.,* Del. Ch., 705 A.2d 579, 583 (1997) ("[W]hen the parties' agreements have been breached but neither the innocent party nor the venture suffers immediate quantifiable harm, the equitable powers of this Court afford me broad discretion in fashioning appropriate relief.").

> FN17. *International Telecharge, Inc. v. Bomarko, Inc.,* Del. Supr ., 766 A.2d 437, 441 (2000) (quoting from *Thorpe v. CERBCO, Inc.,* Del.Supr., 676 A.2d 436, 445 (1996)).

With this mantra as a guide, the Court set out to determine an adequate remedy that would make this plaintiff whole but would, at the same time, escape the peril of over-harshly punishing the defendants. In short, the opinion, however inartfully stated, attempted to directly match the cost of the wrongdoing with the clearest proof of the monetary costs to remedy that wrongdoing. It was quite clear from the evidence that the plaintiff was expending

significant resources, both internally and externally, to address, contain, and counteract the defendants' egregious breach of their duty of loyalty. Those internal costs, or expenditures, are not readily capable of quantification. The external costs, the fees for counsel and experts, however, are.

While awarding damages to the plaintiff equal to the fees and expenses spent in prosecuting this action will not make the plaintiff completely whole and will leave some harm unanswered, this Court, exercising the discretion given it, determined that damages, as measured by attorneys' fees and expenses spent to address the defendants' conduct, is an appropriate remedy for this egregious breach of the duty of loyalty. This award can be determined with specificity, is directly related to certain "injuries" to the plaintiff, and can not be characterized as punitive because it does not attempt to quantify and remedy the more subjective, if not speculative, internal costs. Thus, while the total harm to the plaintiff may actually lie at some unknown amount greater than the expenditure for attorneys' fees and expenses, the speculative nature of any additional monetary harm led me to conclude that including any such amount in any fashioned monetary remedy could fairly be deemed tantamount to awarding punitive damages.

The Court found that the defendants had breached their duty of loyalty and was faced with the task of crafting a remedy to address that wrong. On these facts, I found that the most appropriate award of damages would be an award measured by the plaintiff's expenditures for attorneys' fees and expenses in prosecuting this action. [FN18] The Court reaffirms the remedy crafted in the March decision.

> FN18. The Court notes that this result is limited to these special facts and should not be read as stating a broad new principal, heretofore unknown, that expenditures for attorneys' fees and expenses will always be considered a component of more general damages. Extraordinary facts will sometimes call for extraordinary remedies. *See Modern Dust*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                           Page 5

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

> *Bag Co., Inc. v. Commercial Trust Co.,* Del. Ch., 91 A.2d 469 (1952) ("[W]here the circumstances of a case are such as to require the application of equitable principles, the fact that no precedent can be found in which relief may be granted under a similar state of facts is no reason for refusing relief.").

B.  Traditional  "fee  shifting"  would  also  be appropriate.

**\*4** The preceding discussion fully addresses the Court's original reasoning for crafting the award as it did in this case. The defendants', however, viewed this as a decision by the Court to grant the plaintiff an award of attorneys' fees and expenses under traditional fee shifting exceptions to the American Rule. [FN19] After reviewing the defendants' written and oral arguments on this issue, I have reconsidered any basis for an actual fee shifting and am now convinced that it would have been entirely appropriate to grant an award of attorneys' fees and expenses in the traditional sense in this case had I chosen to do so. The defendants do not argue that an award of attorneys' fees and expenses is not warranted in this case. Rather, they center their argument on the principal that the partnership agreement contains a pre-negotiated provision stating that both parties will bear their own attorneys' fees and expenses. Thus, there are two parts to this analysis. First, would an award of attorneys' fees and expenses generally be available under traditional common law rules? Second, may the Court award attorneys' fees and expenses despite a contractual provision purporting to address the issue? If the answer to both questions is "yes," then an award of fees and expenses under a fee shifting theory would be appropriate in this case.

> FN19. As noted above, the Court's intent was focused on crafting a damages remedy and not on fee shifting. The Court, however, in reading the March decision again, and after some time removed from the drafting process, acknowledges that language in the opinion could certainly lead the defendants to their interpretation.

For this reason, their argument should not be dismissed "out-of-hand" and will be addressed fully so that no doubt will lie concerning the Court's rationale for, and its ability to craft, a remedy in this case.

Under what is commonly known as the "American Rule," absent express statutory provisions to the contrary, each party involved in litigation will bear only their individual attorneys' fees no matter what the outcome of the litigation. [FN20] Over time, however, the Courts have acknowledged exceptions to this general rule. One exception relevant to this case is the "bad faith" exception to the American Rule. [FN21]

> FN20. *See Johnston v. Arbitrium (Cayman Islands) Handels AG,* Del.Supr., 720 A.2d 542, 545 (1998).

> FN21. *Id.*

No single definition for "bad faith" in this context exists and each determination will turn on the special facts of the particular case. [FN22] Under this exception, fees may be awarded against a defendant where "the action giving rise to the suit involve[s] bad faith, fraud, 'conduct that was totally unjustified, or the like' and attorney's fees are considered an appropriate part of damages." [FN23] I made at least one point absolutely clear in the March decision--the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty. [FN24] Moreover, the defendants knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement. [FN25] Under these facts, I find that these faithless defendants have acted in "bad faith" and that an award of attorneys' fees and expenses would be appropriate under the bad faith exception to the American Rule.

> FN22. *See id.* at 546. *See also,* although in a totally different context, the Supreme Court's elaborate discussion of "bad faith" in *E.I. DuPont de Nemours and Co. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

Page 6

*Pressman,* Del. Supr ., 679 A.2d 436 (1996).

FN23. *Barrows v. Bowen,* Del. Ch., C.A. No. 1454, Allen, C. (Sept. 7, 1994) Mem. Op. at 3 (quoting *Weinberger v. U.O.P., Inc.,* Del. Ch., 517 A.2d 653, 656 (1986)).

FN24. *See* March decision at 88-89.

FN25. *See H & H Brand Farms, Inc. v. Simpler,* Del. Ch., C.A. No. 1658, Chandler, C. (Sept. 1, 1994) (Court found "bad faith" where the defendants adopted and continued a course of conduct that they knew would be challenged.).

I must now consider whether the partnership agreement would trump the common law determination above and prevent an award of fees and expenses. For the reasons stated below, I find that it does not and the Court may award attorneys' fees and expenses despite any provision in the partnership agreement suggesting the contrary.

**\*5** The defendants point to Section 20.01 of the Partnership Agreement as evidence that the parties pre-negotiated for an agreement that the parties would bear their own attorneys' fees and expenses in a case such as this. [FN26] Section 20.01 is a lengthy paragraph dealing with several matters. A significant portion of the paragraph deals with arbitration and arbitration procedure. Inserted dead in the middle of the arbitration procedure discussion is the following sentence: "Each party shall bear its own expenses for counsel and other out-of-pocket costs in connection with any judicial resolution of a dispute, difference or controversy." Taken by itself, and out of context, this sentence could evince an intent by the parties to bear their own attorneys' fees and expenses in this "judicial resolution of a dispute." Placed in context, in the center of an arbitration discussion, the intent of the parties is less clear. One should not lose sight of the fact that the bad faith breach of the duty of loyalty in this case generated a petition for extraordinary relief in the form of an injunction and involved a complex web of parties, many of whom were not parties to the

Partnership Agreement. It seems disingenuous indeed, to stretch the parties' intent to pay their own fees and expenses in a dispute over the terms of the Partnership Agreement, which might be resolved by arbitration, to a multi-party controversy involving parties not subject to the terms of the Partnership Agreement. Ironically, despite the fervor with which the defendants assert the Partnership Agreement's language to be a bar against a fee award, I can not overlook the fact that they themselves sought an award of attorneys' fees in their pleadings. I find it impossible to conclude that the parties reference to "judicial resolution" in this context contemplated the course of events that have transpired in this litigation. Fortunately, for the purposes of this discussion, I do not need to unravel this enigma for even had the parties clearly intended that they bear their own fees and expenses under these extraordinary circumstances, the facts of this case warrant a remedy beyond that contemplated by the parties.

FN26. *See* Def. Motion at Ex.A. While the Partnership Agreement was an exhibit at trial, neither party directed the Court's attention to this provision. This provision is, nonetheless, a "fact" already in evidence.

As noted above, the Court has broad discretion to craft a remedy for a breach of the duty of loyalty. I believe that when the facts demonstrate behavior as egregious as that here, the Court's normal deference to pre-negotiated partnership agreement provisions [FN27] will yield to a conscientious effort to craft an appropriate remedy. Going beyond the remedies provided for by contract is not unknown in this jurisdiction when the Court is addressing particularly culpable conduct. [FN28] This case warrants a similar deviation from the parties' alleged agreement. For that reason, I find that the Court would be justified in awarding attorneys' fees and expenses under the bad faith exception to the American Rule notwithstanding any contractual provisions arguably to the contrary.

FN27. *See generally Continental Ins. Co. v. Rutledge & Co., Inc.,* Del. Ch., 750 A.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

**(Cite as: 2001 WL 536911 (Del.Ch.))**

1219 (2000); *U.S. West, Inc. v. Time Warner, Inc.,* Del. Ch., C.A. No. 14555, Allen, C. (June 6, 1996) Mem. Op.

FN28. *See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Price,* Del. Ch., C.A. No. 11097, Allen, C. (Sept. 13, 1989) Mem. Op.

CONCLUSION

**\*6** The defendants' motions for a new trial and reargument under Rule 59 are denied. The defendants have not shown that the Court misapprehended the law or the facts in a manner that would change the outcome. The defendants can not claim that the concept of measuring damages by attorneys' fees and expenses incurred in remedying their breach is a surprise in this case. Both parties, in the complaint and the counter-claims (despite the language of the Partnership Agreement), asserted that they sought attorneys' fees and expenses as a portion of their remedy. For these reasons, I reaffirm my decision to use the plaintiff's attorneys' fees and expenses as a measure of damages. I see a distinction between this and traditional fee shifting. To the extent, however, there is an argument that this is a "distinction without a difference," I find that an award of attorneys' fees and expenses under the bad faith exception to the American Rule would be warranted in this case. The award, as announced in the Court's March opinion is reaffirmed and stands as my final decision on the matter.

II. *Plaintiff's Application for Redress of Harm.*

In the March decision, the Court directed the plaintiff to submit an order for declaratory relief consistent with the opinion and an application for fees and expenses. [FN29] That final order has yet to be resolved and has become further complicated as a result of the dispute in Civil Action No. 18101. Upon receipt of this opinion, I ask the parties to arrange a conference to discuss:

FN29. March decision at 92.

1. Resolution of the actual monetary award in this action based upon Plaintiff's application for fees

and expenses and defendants' opposition to that amount including the need for further factual hearings, if any; and,

2. The efficacy of a declaratory judgment order encompassing both this action and Civil Action No. 18101; and,

3. The extent to which any party seeks action by me under Court of Chancery Rule 54(b).

The defendants' Motions under Rule 59 are DENIED.

IT IS SO ORDERD.

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.).

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

**(Cite as: 2003 WL 21488707 (Del.Ch.))**

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Chancery of Delaware.
CFLP
v.
CANTOR,
**No. Civ.A. 16297.**

Submitted June 11, 2003.
Decided June 19, 2003.

Counsel:

STEELE, J.

*1 On June 3, 2003, we had a conference to discuss
the one remaining issue in this case--the terms of a
final order fixing the amount and method of
determining interest, if any, on the award of
damages made in my earlier Orders of March 13,
2000, May 11, 2001, and July 8, 2002.

In this letter opinion, I intend to address your
outstanding arguments. The procedural history and
salient background facts are fully discussed in
several opinions of this court, and need not be
repeated in detail here. [FN1] All that really needs
to be added is that the parties filed letter-briefs
addressing several issues with respect to the amount
of interest on the award of damages, when interest
should accrue, and the methodology for computing
it.

> FN1. March 13, 2000 Opinion; May 11,
> 2001 Opinion; July 8, 2002 Opinion.

Both parties thankfully agree that this court has the
discretion to award compound prejudgment interest

on the damages. [FN2] Defendants request,
however, that I exercise my discretion by denying
prejudgment interest but that if I do elect to award
prejudgment interest, the interest should not be
compounded and the rate should be calculated at a
reduced rate. The parties also dispute from when
the prejudgment interest should accrue. CFLP
argues that the interest should be awarded on the
entire amount from the date of the breach or
calculated at the Legal Rate defined in 6 *Del. C.* §
2301 as CFLP's attorneys' fees came due.
Defendants, on the other hand, request that any
award of prejudgment interest be fixed from the
date of the March 30, 2000 Opinion or
incrementally from the dates on which CFLP
actually paid each bill forming the basis for the
damages.

> FN2. *See, e.g.,* Defendants' June 9, 2003
> Letter at 2; Plaintiff's June 11, 2003 Letter.

*CFLP is entitled to compound prejudgment
interest*
A case involving a breach of the duty of loyalty
permits broad, discretionary, and equitable
remedies. [FN3] "Where there is a 'a breach of the
duty of loyalty ... potentially harsher rules [come]
into play' and 'the scope of recovery ... is not to be
determined narrowly [because t]he strict imposition
of penalties under Delaware law are designed to
discourage disloyalty." ' [FN4] In addition, the
Court of Chancery has discretion to award
compound interest. [FN5]

> FN3. *Gotham Partners, L.P. v. Hallwood
> Realty Partners, L.P.,* 817 A.2d 160, 175
> (Del.2002).
>
> FN4. *Id.* at 176 (quoting *Cantor
> Fitzgerald, L.P. v. Cantor,* 2001 Del. Ch.
> LEXIS 70, *11).
>
> FN5. *Id.* at 173 (citing *Smith v. Nu-West*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                  Page 2

Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

**(Cite as: 2003 WL 21488707 (Del.Ch.))**

*Indus.,* 2001 WL 50206 (Del. Ch.) (granting an award of prejudgment interest at ten percent compounded monthly), *aff'd,* 781 A.2d 695 (Del.2001)).

Here, after balancing the equities, I conclude that CFLP is entitled to compound prejudgment interest. The many opinions addressing the merits all recite the egregious nature of the Defendants' breaches. [FN6] Defendants' breaches of their duty of loyalty forced CFLP to engage in expensive, expedited litigation to thwart the threat posed and to defend its very existence as a viable closely held limited partnership:

> FN6. *See, e.g.,* March 13, 2000 Opinion; May 11, 2001 Opinion; July 8, 2002 Opinion.

• "It is clear ... that the Limited Partner Defendants have engaged in an egregious breach of the Partnership Agreement, that MDC aided and abetted the breach and tortiously interfered with the Partnership Agreement, and that the conduct of the Limited Partner Defendants was 'reasonably expected to harm' CFLP and violated their duty of loyalty in Section 3.03(b) of the 1996 Partnership Agreement ." [FN7]

> FN7. March 13, 2000 Opinion at 83-84.

*2 • "Defendants placed their own economic interests ahead of those of CFLP. They forced CFLP into a position where it had no choice but to defend its business position by attack litigation in its most expensive form: a request for expedited injunctive relief. This is clear evidence of bad faith." [FN8]

> FN8. *Id.* at 91.

• "I made at least one point absolutely clear in the March decision--the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty." [FN9]

> FN9. May 11, 2001 Opinion at 12.

• "Moreover, the defendants knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement." [FN10]

> FN10. *Id.*

While I would like to believe that the selected passages from earlier opinions and the extensive record made by the parties fully justify the manner in which I choose to exercise my discretion, I also, after so much time has passed, believe that it is necessary to focus on two important considerations.

First, at the time action needed to be taken, CFLP was a closely knit organization of limited partners almost all of whom actively engaged in the core mission of the enterprise. While CFLP dominated world trading in the brokerage of U.S. Treasuries, that position was by no means assured by anything other than hard work, technology superiority, aggressive hold on market share and a sense of teamwork enhanced by active participation in the core business by an overwhelming percentage of the limited partners.

Second, the action taken to meet the threat posed by a combination of its limited partners, the vehicle dominated by those defalcating limited partners and the Chicago Board of Trade was necessary to preserve and protect CFLP's very existence and the professional and economic viability of the overwhelming percentage of loyal, active limited partners. It could be said, not unfairly, that the actions taken to enjoin the Defendants from their competitive pursuit conferred a benefit on the entire enterprise as an entity as well as a benefit to each loyal limited partner.

Certainly no "common fund" was created but the efforts to obtain injunctive relief resulted in a specific and substantial benefit. I recognize that this case could hardly be said to be the paradigm "corporate benefit" case. However, I must address the fairness of placing the burden of redressing the damage caused by the breach on either the limited partners who breached their duty of loyalty and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

**(Cite as: 2003 WL 21488707 (Del.Ch.))**

their cohorts or on the limited partnership entity which acted to survive and its loyal limited partners. The injunctive relief obtained corrected a breach of the duty of loyalty, preserved the limited partnership as a viable economic entity, and protected the jobs and investments of the loyal limited partners. Under these circumstances, equity must act to make the wronged party whole.

In light of the forgoing factual and legal conclusions, any balancing of the equities weigh heavily in favor of CFLP--not Defendants. After considering the nature of the wrong to be remedied, the Plaintiff's unique organizational structure, the peculiar facts of this case including the financial sophistication of CFLP, and the return on money that CFLP could have made during the time period at issue if it had use of these funds, I find the legal rate to be the appropriate rate and that interest should, in fairness, be compounded.

*The prejudgment interest shall run from the date of each payment by CFLP to their attorneys*

**\*3** CFLP requests that I award interest on the entire damages from the date of the breach or in the alternative that the prejudgment interest should be compounded monthly, as CFLP's attorney's fees came due (which was thirty days from the date of the invoice). Defendants assert that prejudgment interest (if awarded at all) should run incrementally from the date CFLP paid each of its legal fees.

It appears that Delaware courts have awarded prejudgment interest due from the date of the alleged wrong in tort actions. [FN11] However, I do not view this case as a tort action. CFLP undoubtedly needed to shift resources in aggressively seeking a preliminary injunction to defend its very existence as a result of Defendants' breach of their duty of loyalty. The business opportunities lost in preventing direct competition from its own partners is speculative at best and arguably not quantifiable. It has long been my view that the more equitable alternative is to award CFLP interest on money actually spent to achieve its remedy as it was expended. As I wrote earlier, "these fees and expenses that I construed to be and

continue to maintain are actual damages, were incurred directly as a result of the need to stymie, thwart or crush a fundamental and decisive threat to the very existence of CFLP." [FN12] The approach of awarding interest as each bill was paid has the merit of fairly reflecting when the damages were suffered and results in damages that are readily and demonstrably calculable. As both parties acknowledged, cases *ex contractu* award prejudgment interest as obligations come due. [FN13] Here, however, the fair triggering dates are those when CFLP lost the use of its funds by paying the costs to remedy the wrong perpetrated upon it by the Defendants. They are the incidents of measurable damages. To hold otherwise in the absence of a contractual obligation from the Defendants to CFLP would be unfair to the Defendants. I believe this methodology best balances the equities between the parties.

> FN11. *Stephenson v. Capano Dev. Co, Inc.,* C.A. No. 81C-JA-83, 1985 WL 636429 (Del.Super.); *Rollins Environmental Services, Inc. v. WSMW Indus., Inc.,* 426 A.2d 1363, 1368-69 (Del.Super.1980).

> FN12. July 8, 2002 Opinion.

> FN13. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 826 (Del.1992); *Hercules Inc. v. Aetna Cas. and Sur. Co.,* 1998 WL 962089 (Del.Super.). The parties and I note that the cases usually applying this theory are contract cases.

CFLP shall prepare a final order, consistent with this letter opinion, approved by the Defendants "as to form" setting forth the dates certain from which prejudgment and post judgment interest is to be calculated, the legal rate to be applied as of each date, the consequences of compounding and the amount of final judgment on damages.

IT IS SO ORDERED.

Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 4

Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

**(Cite as: 2003 WL 21488707 (Del.Ch.))**


END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

1993 U.S. Dist. LEXIS 2841, *

ROY F. WESTON SERVICES, INC. v. HALLIBURTON NUS ENVIRONMENTAL CORPORATION v. ROY F. WESTON, INC., and INDIANA LUMBERMEN'S MUTUAL INSURANCE CO.

CIVIL ACTION NO. 91-1133

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1993 U.S. Dist. LEXIS 2841

March 3, 1993, Decided
March 5, 1993, Filed, Entered

**DISPOSITION: [*1]** IT IS HEREBY ORDERED that the Defendant's Motion is GRANTED.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Plaintiff pumper filed a breach of contract action against defendant corporation. The corporation filed a motion in limine to prohibit the pumper from asserting that a "cardinal change" to the contract had occurred.

**OVERVIEW:** The corporation hired the pumper to dismantle and disable a tank farm located at one of its properties. The obligation included the removal of the contents of the tanks. When the pumper experienced difficulty with the pumpability of the contents, in that some of it was solid, relations between the parties broke down and the corporation terminated the pumper's rights under the contract. The pumper then filed an action against the corporation for breach of contract, alleging that the corporation was required to cause an equitable adjustment to the contract when it learned that the site conditions materially differed from those indicated in the contract. The corporation filed a counterclaim for breach of contract. In its pre-trial memorandum, the pumper alleged that its duty to perform was discharged by the doctrine of "cardinal change." The court granted the corporation's motion in limine to prevent the pumper from asserting the "cardinal change" doctrine, finding that the pumper never raised the theory before in his pleadings or during discovery and that the corporation should not have been required to spend additional time and money preparing to defend against such a theory.

**OUTCOME:** The court granted the corporation's motion in limine and directed the pumper not to assert that a "cardinal change" to the contract had occurred.

**CORE TERMS:** discovery, cardinal, site, asserting, equitable, new theory, memorandum, tank, modification, materially, solid, drastic, amend, counterclaim, nonpumpable, breached, quantities, depositions, redressed, pretrial, notified, contract price, contractor, pre-trial, removal, prepare, dispose

### LexisNexis(R) Headnotes

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
*HN1* ⊕ If a party fails to give notice of a theory of liability or a defense in its pleadings, the party may be precluded from asserting the theory at trial under certain circumstances. A district court may deny a Fed. R. Civ. P 15(a) motion to amend a complaint to assert a new theory of liability where delay combines with other extrinsic factors to result in actual prejudice to the party opposing the amendment.

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

Get a Document - by Citation - 1993 U.S. Dist. LEXIS 2841

Case 1:97-cv-00586-SLR   Document 494-3   Filed 10/21/2005   Page 18 of 22   Page 2 of 6

*HN2* Under Fed. R. Civ. P. 15(a), a pleading may be amended to assert a new theory of liability only by leave of court. Leave to amend shall be freely given as justice so requires. Fed. R. Civ. P. 15(a).

Contracts Law > Breach > Causes of Action

*HN3* The "cardinal change" doctrine is a legal principle developed in the context of disputes involving government contracts. An allegation of the doctrine is a suggestion that the contract has been breached. A cardinal change occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach. A cardinal change is a drastic modification in the work which goes beyond the scope of the contract. The doctrine is couched in terms which apply generally to modifications which are so fundamental that they cannot be redressed within the contract by an equitable adjustment to the contract price, under the traditional changes clause.

**COUNSEL:** For WESTON SERVICES, INC., PLAINTIFF: BARRY M. KLAYMAN, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, 15TH & CHESTNUT STS., PACKARD BLDG., 12TH FL., PHILA, PA 19102, USA. STEVEN A. ARBITTIER, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, S.E. COR. 15TH & CHESTNUT STS., 12TH FL., PACKARD BLDG., PHILA, PA 19102-2678, USA.

For NUS CORPORATION, DEFENDANT, COUNTER-CLAIMANT: SUZAN E. DE BUSK, EDWARD S. G. DENNIS, JR., MORGAN, LEWIS & BOCKIUS, 2000 ONE LOGAN SQUARE, PHILA, PA 19103-6993, USA.

For U.S. ENVIRONMENTAL PROTECTION AGENCY, RESPONDENT: JOHN N. JOSEPH, 615 CHESTNUT ST., STE. 1300, PHILA, PA 19106, USA. For UNITED STATES OF AMERICA, RESPONDENT: JOHN N. JOSEPH, 3310 UNITED STATES COURTHOUSE, 601 MARKET STREET, PHILA, PA 19106, USA.

For INDIANA LUMBERMEN'S MUTUAL INSURANCE CO., COUNTER-DEFENDANT: BARRY M. KLAYMAN, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, 15TH & CHESTNUT STS., PACKARD BLDG., 12TH FL., PHILA, PA 19102, USA. STEVEN A. ARBITTIER, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, S.E. COR. 15TH & CHESTNUT STS., 12TH FL., PACKARD BLDG., PHILA, PA 19102-2678, USA. JANE LANDES FOSTER, STRADLEY RONON STEVENS & YOUNG, 2600 ONE COMMERCE SQUARE, **[*2]** PHILADELPHIA, PA 19103-7098, USA. DEBRA C. SWARTZ, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PACKARD BUILDING, 12TH FLOOR, PHILA, PA 19102, USA.

**JUDGES:** HUTTON

**OPINIONBY:** BY THE COURT; HERBERT J. HUTTON

**OPINION:**

**MEMORANDUM AND ORDER**

HUTTON, J. March 3, 1993

Presently before the Court is defendant Halliburton Nus Environmental Corporation's Motion in Limine to Preclude Plaintiff from Asserting that a "Cardinal Change" to the Contract Occurred. For the following reasons, the defendant's Motion is **GRANTED**.

**FACTUAL BACKGROUND**

Get a Document by Citation - 1993 U.S. Dist. LEXIS 2841

Case 1:97-cv-00586-SLR    Document 454-3    Filed 10/21/2005    Page 19 of 22

Page 3 of 6

This case involves a contract dispute between the parties arising out of the dismantling of the Douglassville Disposal Site located in Berks County, Pennsylvania. Pursuant to the contract, Roy F. Weston Services, Inc. ("Weston") was to dismantle and dispose of a tank farm located at the site. This obligation included the removal of the contents of the tanks. See Weston v. Halliburton NUS, Civil Action No. 91-1133, Slip Op. at 4,5 (E.D.Pa January 29, 1993).

During the operation, Weston experienced difficulty with the pumpability of the contents. Weston encountered solid material which could not be removed via pumping. Relations between the two parties broke down and the **[*3]** defendant Halliburton Nus Environmental Corporation (NUS) eventually terminated Weston's rights under the contract. Weston subsequently filed suit challenging NUS's actions.

Weston alleged that NUS breached the contract. The complaint in pertinent part provided:

> 37. Pursuant to the contract, NUS is required to investigate site conditions promptly after receiving notice of conditions which differ materially from those indicated in the contract and, if the conditions do materially so differ and cause an increase or decrease in the contractor's cost or the time required for performing any part of the work under the contract, make an equitable adjustment to the contract.

> 38. The Site conditions materially differ from those indicated in the contract such that an equitable adjustment to the contract must be made.

> 39. [Weston] is entitled to a modification of the contract to reflect actual site conditions and to allow it to properly handle and dispose of the nonpumpable tank solids in the quantities at which they are present at the site. The modification should include an equitable adjustment to the contract price and completion date.

> 40. The failure and refusal **[*4]** of NUS to address the defective specifications and/or differing site conditions caused by the presence of substantial quantities of nonpumpable solid materials in the sumps and aboveground tanks by authorizing and approving a change order specifying the manner in which the work may proceed and making an equitable adjustment to the contract constitutes a willful and material breach of the contract.

> 41. The aforesaid breach and continuing interference by NUS has rendered performance of the contract by [Weston] impossible.

In response to the complaint, NUS alleged a counterclaim against Weston. NUS asserted that Weston's delay, failure to diligently prosecute the work and failure to complete the work constituted material breaches of the contract. (Amended Counterclaim at P 15). Weston's reply provided, inter alia, that the counterclaim is barred by NUS's prior substantial breaches of the Contract. (Answer to Counterclaim at P 23).

After the close of discovery, in accordance with the Court's Scheduling Order, Weston submitted its pre-trial memorandum. The memorandum, in pertinent part, provided that

Get a Document - by Citation - 1993 U.S. Dist. LEXIS 2841

Case 1:97-cv-00550-SLR  Document 454-3  Filed 10/21/2005  Page 20 of 22  Page 4 of 6

"Weston's Duty to perform was discharged by the doctrine of Cardinal Change." **[\*5]**
Weston asserted that the presence of substantial quantities of nonpumpable sludges and
solids constituted a cardinal change to the contract which excused Weston from further
performance under the contract.

NUS has filed the present motion to preclude the plaintiff from asserting its "cardinal change"
theory. NUS asserts that this theory was raised by Weston for the first time in Weston's pre-
trial memorandum filed after the close of discovery. NUS contends that the allegation of a
cardinal change was not pled in the complaint or in Weston's answer to NUS's counter-claim,
or in answers to interrogatories. Due to this lack of notice, NUS argues that Weston should
be precluded from arguing the theory at trial because allowing the defense would be
prejudicial. NUS asserts that additional discovery would have been necessary to prepare a
defense to the new theory, however, NUS argues at this stage the additional discovery would
be futile. Further, NUS contends the they should not have to engage in additional costly
discovery at this stage because of Weston's failure to assert the theory prior to the close of
discovery.

Weston responds that NUS is not surprised by Weston's assertion of the **[\*6]** doctrine.
Further, Weston contends that NUS has not demonstrated any prejudice. Weston asserts that
NUS has already taken discovery related to the cardinal change doctrine.

## DISCUSSION

*HN1* 
If a party fails to give notice of a theory of liability or a defense in its pleadings, the party
may be precluded from asserting the theory at trial under certain circumstances. See
Johnson v. Trueblood, 629 F.2d 287, 294 (3d Cir. 1980), cert. denied, 450 U.S. 999 (1981);
Commonwealth v. Local 542, International Union of Operating Engineers, 569 F. Supp. 582,
(E.D. Pa. 1983); Allen-Myland, Inc. v. Intern. Business Machines, 693 F. Supp. 262, 287
(E.D. Pa. 1988). In Johnson v. Trueblood, the Third Circuit held that a district court may deny
a Fed.R.Civ.P 15(a) motion to amend a complaint to assert a new theory of liability where
delay combines with other extrinsic factors to result in actual prejudice to the party opposing
the amendment. 629 F.2d at 294. The district court's refusal to permit an amendment in
Johnson effectively prevented **[\*7]** the plaintiff from asserting a new theory at trial. See
also United States v. Shaner, et al., Civil Action No. 85-1372, 1992 WL 154575 (E.D. Pa.,
June 15, 1992).

*HN2* Under Federal Rule of Civil Procedure 15(a), Weston's pleading may be amended to
assert a new theory of liability only by leave of Court. Leave to amend shall be freely given
as justice so requires. Fed.R.Civ.P. 15(a). In this case Weston has not formally moved the
Court for leave to amend. If such an amendment is necessary because Weston's claim is
new, the Court will consider Weston's pretrial memorandum as an attempt to amend its
pleading. Accordingly, if NUS has not been sufficiently notified of Weston's cardinal change
theory until the pretrial memorandum, (i.e. the theory is new) and NUS can demonstrate that
the delay resulted in prejudice, Weston will be precluded from arguing this theory at trial.

The initial step in this inquiry requires an understanding of the "new" theory which is being
alleged by Weston. *HN3* The "cardinal change" doctrine is a legal principle developed in the
context of disputes involving government contracts. Atlantic Dry Dock Corp. v. U.S., 773 F.
Supp. 335, 339 (M.D.Fla. 1991). **[\*8]** An allegation of the doctrine is a suggestion that the
contract has been breached. Burnside-Ott Aviation Training Center, Inc. v. U.S., 24 Cl. Ct.
553, 562 (1991).

A cardinal change occurs when the government effects an alteration in the work

Get a Document by Citation - 1993 U.S. Dist. LEXIS 2841

Case 1:97-cv-00586-SLR    Document 434-3    Filed 10/21/2005    Page 21 of 22

Page 5 of 6

so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach.

Atlantic Dry Dock Corp., 773 F. Supp. at 339, (quoting allied Materials & Equip. Co. v. United States, 215 Ct. Cl. 406, 569 F.2d 562, 563-64 (Cl.Ct. 1978). A cardinal change has been referred to as a "drastic modification" in the work which goes beyond the scope of the contract. Burnside-Ott Aviation Training Center, Inc. v. U.S., 24 Cl. Ct. at 563. In Allied Materials & Equip. Co. v. United States, the Court of Claims stated:

> The doctrine is couched in terms which apply generally to modifications which are so fundamental that they cannot be redressed **[*9]** within the contract by an equitable adjustment to the contract price, under . . . the traditional changes clause.

569 F.2d at 564.

Weston's pleadings do not allege a contract breach on the basis of the cardinal change theory. While Weston has alleged that NUS has materially breached the contract, each and every allegation specifies that the contract must be "equitably adjusted." This allegation is fundamentally at odds with the cardinal change theory which envisions a change so drastic that it cannot be redressed by an equitable adjustment to the contract.

Additionally, Weston's discovery responses did not inform NUS that the doctrine would be asserted. During discovery, NUS asked Weston to identify each reason for Weston's failure to perform the removal of the contents of the tanks at the Douglassville site. Weston's responses were similar to its pleadings. Weston articulated that it was willing but not authorized to proceed with the tank clean up process. NUS was not notified that Weston would be asserting a cardinal change theory.

Finally, Weston is not entitled to amend its pleadings under Rule 15 at this time to assert the additional theory. This **[*10]** Court finds that Weston's late assertion of the theory has worked a prejudice against NUS. NUS has been denied the opportunity to take discovery on the issue. While undoubtedly some of the information and questions probed into by NUS during discovery on the present pleadings may overlap and provide information relevant to a cardinal change theory, additional discovery would be required to properly prepare a defense.

Discovery in this case began in April of 1991. The Court set a deadline for discovery to be on December 20, 1991. Subsequently, the Court permitted additional discovery by granting a joint motion to amend the Scheduling Order. Discovery closed on May 31, 1992. During discovery, the depositions of approximately forty witnesses were taken by the parties. Had the issue been properly presented prior to the close of discovery, NUS could have utilized the time spent during those depositions by establishing a defense to the cardinal change theory. At this time, NUS should not be required to expend additional time and money on further preparing a defense to the new theory. See Oy Tilgmann , AB v. Sport Publishing International, 110 F.R.D. 68, 71 (E.D. Pa. 1986). **[*11]**

An appropriate Order follows.

**ORDER**- March 5, 1993, Filed

AND NOW, this 3rd day of March, 1993, upon consideration of Defendant Halliburton Nus Environmental Corporation's Motion in Limine to Preclude Plaintiff from Asserting that a "Cardinal Change" to the Contract Occurred, IT IS HEREBY ORDERED that the Defendant's Motion is **GRANTED**.

BY THE COURT:

HERBERT J. HUTTON, J.

Service: **Get by LEXSEE®**
Citation: **1993 us dist lexis 2841**
View: Full
Date/Time: Wednesday, October 19, 2005 - 12:13 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.