# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

November 4, 2005

**VIA HAND DELIVERY AND E-FILE**

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

      Re:  *Ronald Cantor, et al. v. Ronald O. Perelman, et al.*
           Civil Action No. 97-586 (KAJ)

Dear Judge Jordan:

      This firm represents the Trustees of the MAFCO Litigation Trust, plaintiffs in this action. In accordance with the Scheduling Order dated October 18, 2005, plaintiffs have requested a discovery conference concerning defendants' claims of attorney-client privilege with respect to thirty-seven documents that defendants have refused to produce. Your Honor has scheduled the conference for Tuesday, November 8, 2005 at 11 a.m.

      Defendants have withheld ninety-five documents on claims of privilege. For purposes of this application, plaintiffs assume *arguendo* that all of these documents are in fact privileged. As to the thirty-seven at issue, however, it appears from defendants' own privilege log that the privilege in question belongs in whole or in part to Marvel Entertainment Group, Inc. ("Marvel"). Many of the thirty-seven documents concern legal advice provided to Marvel, including drafts of Marvel public filings, board minutes and press releases.[1] Defendants, who controlled Marvel prior to Marvel's bankruptcy filing in December 1996, contend that they share the applicable privilege with Marvel, and that plaintiffs have not succeeded to Marvel's rights in respect of such privilege. In fact, as shown below, the Trustees stand in Marvel's shoes and "succeed to all rights and privileges" of Marvel with respect to the claims asserted in this action against defendants. Even if defendants could legitimately argue that ownership of the privilege did not pass directly to the Trustees pursuant to the MAFCO Litigation Trust Agreement, the company that succeeded to all of Marvel's rights generally has expressly consented to the Trustees' access to such privileged documents.

---

[1] *See* Defendants' Privilege Log (attached as Exhibit A) Nos. 1, 5-6, 10-11, 13-15, 17, 21-22, 29-37, 42-45, 47-48, 53, 62, 64, 66, 68, 70, 85, 88-90, and 92.

The Honorable Kent A. Jordan
November 4, 2005
Page 2

### Because the Trustees Are Marvel's Successors in Interest, They Have the Same Right to the Documents as Marvel

The MAFCO Litigation Trust Agreement, approved by this Court, provides that the Trust "shall succeed to all rights and privileges heretofore enjoyed and preserved by the Marvel Debtors in connection with the MAFCO Litigation Claims." (*See* Ex. B (Trust Agreement) at 1.) In addition, Marvel contributed to the Trust all of its interest in the claims asserted in this lawsuit and "an interest, to be jointly shared by the MAFCO Litigation Trust with Newco, in the Marvel Debtors' right to the benefits of the attorney-client privilege, work-product immunity or other protection from disclosure with respect to the Shared Privilege Matters."[2] (Ex. B at 1).

To the extent there is any privileged information in the challenged documents, the privilege belongs to Marvel and to the Trustees as Marvel's successors in interest. While defendants contend that they (or their affiliates) "share" the privilege, that would not prevent Marvel (or the Trustees, as successors to Marvel) from using the privileged information contained in those documents against defendants. *See FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (attorney-client privilege inapplicable to joint clients of a law firm because "when a lawyer represents multiple clients having a common interest, communications between the lawyer and any one (or more) of the clients are privileged as to outsiders but not *inter sese*.").

Defendants argue that Marvel could not assign its interest in information subject to a "shared" privilege without defendants' consent. That makes little sense. When parties jointly seek legal advice, they understand that their respective successors in interest are also successors to any jointly privileged information. Thus, for example, when a company is sold, the purchaser has a right to access any of the company's privileged information, *see CFTC v. Weintraub*, 471 U.S. 343, 349 (1985), even if such information is subject to a joint privilege with another party, *see Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F. Supp. 841, 844 (N.D. Ill. 1988) (where communications are made on behalf of two companies, "both are entitled to disclosure of that information"). This logic is particularly compelling in the bankruptcy context where a debtor's privilege is assigned to a litigation trust. Denying the debtor's successors access to the debtor's privileged information would impede the efficient and effective prosecution of claims (such as those asserted here) brought in the name of the debtor. Accordingly, courts regularly enforce such assignments.

---

[2] "Shared Privilege Matters" is defined in the Trust Agreement to mean "Documents, information and Communications, the disclosure of which is protected under the attorney-client privilege, work product immunity or other protection from disclosure of the Marvel Debtors (or any of them) immediately prior to the consummation of the Plan, relating to the allegations in the District Court Complaint insofar as they relate to a claim or claims raised against the MAFCO Defendants in the District Court Complaint or any amendment thereof arising out of the same historical facts." (Ex. B § 1.01 at 6.) Under certain circumstances, Marvel can refuse the Trustees access to Shared Privilege Matters (*see id.* § 2.04(a)), but Marvel has not done so here; to the contrary, it has explicitly consented to the disclosure to the Trustees of all the withheld documents (*see* Letters from Emily Stubbs and David Fleischer dated Oct. 19, 2005 (Ex. C)).

The Honorable Kent A. Jordan
November 4, 2005
Page 3

*See In re Hechinger Inv. Co. of Del.*, 285 B.R. 601, 611-12 (D. Del. 2002) (liquidating trust, not former officers and directors of bankrupt corporation, controls attorney-client privilege). In sum, the Trustees, like any other successors in interest, are entitled to Marvel's privileged documents and defendants should be required to produce the withheld documents immediately.[3]

**Plaintiffs Have Not Waived Their Objections**

Defendants also have argued (and recently advised plaintiffs that they will not withdraw this argument) that plaintiffs' objection to defendants' privilege assertion was untimely as it was made three weeks after the initial discovery cut-off of March 29, 2002. In fact, it was defendants' production of their Privilege Log that was untimely. Plaintiffs received defendants' log on March 11, 2002, nearly two years after defendants first produced documents on August 9, 2000, and just three weeks before the close of discovery on March 29, 2002. Even then, defendants only produced the log after plaintiffs made repeated written requests in January 2001 and January 2002 and two applications to the Court. Plaintiffs served their objections to the log on April 29, 2002. When defendants did not respond, plaintiffs promptly sought the Court's intervention two weeks later on May 16, 2002. In all events, defendants' waiver argument should be moot, because discovery was subsequently re-opened at defendants' request and the cut-off was extended to August 30, 2002. *See* July 30, 2002 Order (D.I. 348) (Ex. D).

Respectfully,

/s/ Phillip Trainer, Jr.

Phillip Trainer, Jr.

PT/dmf
Attachments

cc:   Anthony W. Clark, Esq. (by electronic filing)
      Paul Lockwood, Esq. (by electronic filing)
      Edward A. Friedman (by electronic filing)

---

[3] In addition, Marvel could have waived any "shared" privilege and given the Trustees access to the withheld documents – without defendants' consent. *See Medcom.*, 689 F. Supp. at 842-44 (where two companies are entitled to assert the attorney-client privilege, "either may waive it"); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49-50 (S.D.N.Y. 1989) (same).