SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000
FAX: (302) 651-3001
http://www.skadden.com

DIRECT DIAL
302-651-3070
DIRECT FAX
302-651-3001
EMAIL ADDRESS
TALLINGH@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

November 7, 2005

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
United States Courthouse
844 North King Street
Wilmington, Delaware 19801

Re: Cantor v. Perelman, C.A. No. 97-586-KAJ

Dear Judge Jordan:

Defendants submit this letter in advance of the discovery conference scheduled for Tuesday, November 8, 2005 at 11:00 a.m.

**The Privileged Documents In Dispute.** This discovery dispute concerns plaintiffs' demand for copies of 37 privileged documents on defendants' privilege log. (Pl. Let. at n.1) Plaintiffs do not contest the fact that these documents are subject at least to a joint privilege among the corporate defendants and Marvel Entertainment Group, Inc. ("Marvel"), which was a subsidiary of the corporate defendants when these documents were created.[1]

**Plaintiffs Are Not Marvel's Legal Successors In Interest.** Plaintiffs argue that the joint privilege attaching to the disputed documents belongs to them as purported successors in interest of Marvel by analogizing themselves to (and citing only cases involving) a bankruptcy trustee or new management of a corporation following a merger (both of which are authorized to manage the business and affairs of the corporation, including its attorney-client privilege). (Pl. Let. at 2, citing CFTC v. Weintraub, 471 U.S. 343, 349 (1985), and Medcom Holding Co. v. Baxter Travenol Labs, Inc., 689 F. Supp. 841, 844 (N.D. Ill. 1998)). These analogies do not fit the facts at hand (and plaintiffs' cases are thus irrelevant) because the trustees of the Mafco Litigation Trust (the "Trust") are neither a bankruptcy trustee nor new management of Marvel, but are merely recipients of a

---

[1] If necessary, defendants will establish that Marvel has no interest in eight of the 37 documents: privilege log entries 5, 6, 10, 13-15, 21 and 22. Defendants stand ready to provide additional affidavits and legal briefs at the Court's request.

The Honorable Kent A. Jordan
November 7, 2005
Page 2

single asset -- a chose in action -- transferred from Marvel to the Trust. See <u>In re Resorts International, Inc.</u>, 372 F.2d 154, 169 (3d Cir. 2004)(litigation trust is not a continuation of bankruptcy estate but merely holds assets that once belonged to the estate). A transfer of a corporation's assets does not transfer the attorney-client privilege. <u>SMI Industries Canada, Ltd. v. Caelter Industries</u>, 586 F. Supp. 808, 816 (N.D.N.Y. 1984).

**Marvel Did Not (And Legally Could Not) Contractually Assign Or Waive A Joint Privilege.** Although plaintiffs and the Trust have a separate and distinct existence from Marvel (which continues to exist), plaintiffs also assert that they are successors to Marvel's attorney-client privilege under the terms of the Mafco Litigation Trust Agreement (the "Trust Agreement"). In fact, the Trust Agreement gives plaintiffs nothing regarding Marvel's privileges except the right to request access to Marvel's privileged materials; no contractual transfer of the privilege took place. Indeed, Newco expressly retained the right to refuse such requests in its "sole discretion." (Trust Agr. § 2.04(a)). The fact that Newco recently purported to grant plaintiffs access to the disputed documents is irrelevant.[2] While Marvel was free to turn over its own privileged materials, neither it nor Newco has the legal power to deliver up documents subject to a joint attorney-client privilege. See <u>Interfaith Housing Delaware, Inc. v. Town of Georgetown</u>, 841 F.Supp. 1393, 1402 (D. Del. 1994)("when one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third party, that one individual's waiver does not effect a waiver as to the others' attorney-client privilege"); <u>Tenneco Automotive Inc. v. El Paso Corp.</u> 2001 WL 1456487 at * 2 (Del. Ch. Nov. 7, 2001)(former subsidiary cannot unilaterally give its insurance company access to common interest privilege documents in possession of former parent).[3]

---

[2] We note that "Marvel Entertainment, Inc.," which purportedly granted plaintiffs' request for the documents, appears to be "Newco" and has not been shown to be a successor to the pre-bankruptcy Marvel Entertainment Group, Inc., the entity that shared a privilege with defendants. (<u>See</u> Pl. Let. Exs. C, D) We believe that they are separate entities.

[3] Plaintiffs' reliance on two federal law cases, <u>Medcom</u>, 689 F.Supp. at 842-44, and <u>Polycast Tech. Corp. v. Uniroyal, Inc.</u>, 125 F.R.D. 47, 49-50 (S.D.N.Y. 1989), for the proposition that Marvel could unilaterally waive a joint privilege is misplaced for two reasons. First, Delaware law governs because this case concerns state law issues. <u>Samuelson v. Susen</u>, 576 F.2d 546 (3d Cir. 1978)(applying law of forum state, including conflicts of law, for privileges relating to state law issues); <u>Lee v. Engle</u>, 1995 WL 761222 at *7 (Del. Ch. 1995)(Delaware privileges apply to Delaware corporations). In any event, more recent federal case law follows the Delaware rule. See <u>In re Asia Global Crossing, Ltd.</u>, 322 B.R. 247, 264 (S.D.N.Y. 2005) ("Once established, the privilege cannot be waived without the consent of all of the parties that share it.")

The Honorable Kent A. Jordan
November 7, 2005
Page 3

**Plaintiffs' Request Is Barred By The Trust Agreement.** Moreover, the plaintiff trustees are expressly prohibited by Section 2.04(b) of the Trust Agreement (the contract that created them) from seeking direct access to Marvel's privileged documents that are in the sole possession of third parties:

> If the custodian of any Shared Privilege Matter requested by the Mafco Litigation Trustees under this Section 2.04 denies Newco access to that matter, the Mafco Litigation Trustees may undertake, by application to a court of competent jurisdiction or otherwise, <u>for Newco to be granted access</u> to that matter . . . <u>The Mafco Litigation Trustees shall have no authority to undertake to gain direct access to Shared Privilege Matters</u> to which Newco has been denied access.[4]

Here, Newco does not have the disputed documents; defendants possess the documents and will not voluntarily give them to Newco (and, of course, are under no obligation to do so). Therefore, plaintiffs' only option was to seek to compel defendants to produce the documents <u>to Newco</u>, which they have not done. This not only defeats plaintiffs' present motion, but underscores the fact that plaintiffs are not the legal successor-in-interest to Marvel's privilege. At most, plaintiffs, Newco and Marvel contractually agreed that Newco would have the right to deny to plaintiffs access to privileged materials in Marvel's possession.

Accordingly, defendants' assertions of the attorney client privilege should be sustained and plaintiffs' motion to compel denied.

Respectfully,

/s/ Thomas J. Allingham II

Thomas J. Allingham II (I.D. No. 2051)

cc:   Clerk of the Court
      Lawrence C. Ashby, Esq. (by electronic filing)

---

[4] Instead of citing Section 2.04(b), the provision of the Trust Agreement directly on point, plaintiffs' letter cites the general language in the recitals of the Trust Agreement. (Pl. Let at 2)

434347.01-Wilmington S1A