IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD CANTOR, IVAN SNYDER and
JAMES A. SCARPONE, as TRUSTEES OF
THE MAFCO LITIGATION TRUST,

     Plaintiffs,

   v.

RONALD O. PERELMAN,
MAFCO HOLDINGS INC.,
MacANDREWS & FORBES HOLDINGS INC.,
ANDREWS GROUP INCORPORATED,
WILLIAM C. BEVINS and
DONALD G. DRAPKIN,

     Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 97-586-KAJ

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

           ASHBY & GEDDES
           Lawrence C. Ashby (I.D. 468)
           Philip Trainer, Jr. (I.D. 2788)
           Tiffany Geyer Lydon (I.D. 3950)
           222 Delaware Avenue, 17th Floor
           P.O. Box 1150
           Wilmington, Delaware 19899
           (302) 654-1888

*Of Counsel:*

Edward A. Friedman
Andrew W. Goldwater          *Attorneys for Plaintiffs*
Daniel B. Rapport
Emily A. Stubbs
Jonathan Gottfried
FRIEDMAN KAPLAN SEILER
 & ADELMAN LLP
1633 Broadway
New York, New York 10019-6708
(212) 833-1100

Dated: November 22, 2005

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

SUMMARY OF ARGUMENT .........................................................................................2

STATEMENT OF FACTS ................................................................................................5

ARGUMENT....................................................................................................................7

        BECAUSE THE TRUSTEES ARE MARVEL'S SUCCESSORS
        IN INTEREST, DEFENDANTS CANNOT WITHHOLD FROM
        PRODUCTION DOCUMENTS IN WHICH MARVEL
        HAS A PRIVILEGE .................................................................................7

        A.    The Terms of the Plan and the Trust Agreement
                Establish that the Trustees Succeeded to Marvel's
                Interest in the Privileged Documents ...........................................7

                1.    Marvel Assigned to the Trust Its Interest
                        in the Attorney-Client and Other Privileges ....................................7

                2.    Marvel Did Not Merely Assign a "Chose in Action" ....................10

                3.    The Provisions in the Trust Agreement
                        Relating to Plaintiffs' Shared Privilege with Newco
                        Do Not Excuse Defendants from Producing Documents .............12

        B.    Defendants Cannot Assert a Privilege against
                Marvel's Successors with respect to Documents
                Subject to a Common-Interest Privilege ...................................13

        C.    Marvel's Assignment of Its Privileges
                to the Trust Did Not Constitute a Waiver ..................................15

        D.    *In Camera* Review Is Warranted for the Eight Documents
                in which Defendants Now Contend Marvel Had No Privilege.................17

CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*CFTC v. Weintraub*,
    471 U.S. 343 (1985) ................................................................................14

*In re American Metrocomm Corp.*,
    274 B.R. 641 (Bankr. D. Del. 2002) .....................................................10

*In re Hechinger Investment Co. of Delaware*,
    285 B.R. 601 (D. Del. 2002) ....................................................... 9, 14-15

*In re Resorts International, Inc.*,
    372 F.3d 154 (3d Cir. 2004) .............................................................10, 11

*Interfaith Housing Delaware, Inc. v. Town of Georgetown*,
    841 F. Supp. 1393 (D. Del. 1994) .........................................................16

*SMI Industries Canada Ltd. v. Caelter Industries, Inc.*,
    586 F. Supp. 808 (N.D.N.Y. 1984) ...................................................10, 11

*Tenneco Auto. Inc. v. El Paso Corp.*,
    C.A. No. 18810-NC, 2001 WL 1456487 (Del. Ch. Nov. 7, 2001) ............ 14, 16-17

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989) .........................................................18

## RULES

Del. Unif. R. Evid. 502(d)(6) ......................................................................14

Fed. R. Evid. 104(a) ....................................................................................18

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

By order dated October 18, 2005, this Court established a schedule for further proceedings in this action, including resolution of the parties' outstanding dispute regarding defendants' refusal to produce certain documents on the basis of the attorney-client and other privileges. (D.I. 430.) In accordance with that order, on October 21, 2005, plaintiffs contacted the Court's chambers to request a discovery conference, which the Court scheduled for November 8, 2005. (D.I. 436.) On November 4, 2005, plaintiffs submitted a letter concerning the discovery dispute (D.I. 437), and on November 7, 2005, defendants submitted their response (D.I. 438). In the November 8, 2005 telephone conference, the Court directed the parties to submit formal briefs addressing the issues in dispute, and set a briefing schedule. In accordance with the Court's direction, plaintiffs respectfully submit this brief in support of their motion to compel production of thirty-seven documents withheld by defendants from production upon a claim of privilege.

## SUMMARY OF ARGUMENT

This motion concerns defendants' contention that defendants can withhold from production, in response to plaintiffs' Rule 34 requests, documents as to which both defendants and Marvel Entertainment Group, Inc. ("Marvel") could assert the attorney-client or work-product privilege.  The thirty-seven documents in question were created at a time when defendants controlled Marvel, and representatives of defendants would sometimes participate with representatives of Marvel in communications concerning legal advice provided to Marvel.[1]  As explained below, plaintiffs – who are successors in interest to Marvel – are entitled to production of the thirty-seven documents because those documents (which include drafts of Marvel's public filings, board minutes and press releases) are documents in which Marvel itself has a privilege (even assuming defendants also have a privilege), not documents that could properly be withheld from Marvel on a claim of privilege.

The starting point for the parties' dispute is the proper interpretation of Marvel's Fourth Amended Plan of Reorganization (the "Plan") and the MAFCO Litigation Trust Agreement (the "Trust Agreement").  Pursuant to the Plan and the Trust Agreement, Marvel assigned to plaintiffs, as the Trustees of The MAFCO Litigation Trust (the "Trust"), Marvel's claims against defendants that are asserted in this action and

_____

[1] The documents at issue are sometimes referred to by the parties as documents in which defendants and Marvel share a privilege or have a joint privilege.  Such references to a shared or joint privilege should not be confused with provisions in the MAFCO Litigation Trust Agreement concerning "Shared Privilege Matters."  The provisions in the Trust Agreement relate to the shared privilege as between the Trustees and Newco (the company that acquired Marvel pursuant to the Plan of Reorganization), not to any shared privilege between defendants and Marvel.

Marvel's interest (to be shared with Newco, *i.e.*, the reorganized Marvel) in the attorney-client privilege, work-product immunity and all other privileges applicable to the claims herein. Contrary to defendants' argument that Marvel assigned to plaintiffs only a "chose in action," the plain terms of the Plan and the Trust Agreement establish that Marvel also assigned to plaintiffs its interest in all applicable privileges. Defendants rely in part on section 2.04 of the Trust Agreement to justify their position, but that section does not provide any rights to defendants to avoid production of documents. That section protects the rights of Newco and permits Newco to limit disclosure of privileged documents that could adversely affect its business. Here, because Newco has consented to production of all documents in defendants' possession to plaintiffs, section 2.04 of the Trust Agreement confirms plaintiffs' entitlement to the documents at issue. In sum, by virtue of the Plan and the Trust Agreement, plaintiffs now stand in Marvel's shoes with the same rights Marvel would have as against defendants to obtain production of documents in which Marvel and defendants both have a privilege.

Defendants also argue that under the Delaware Rules of Evidence, the documents are subject to a common-interest privilege shared by defendants and Marvel, and thus defendants do not have an obligation to produce the documents to plaintiffs. However, the Delaware Rules of Evidence provide that one party to a common-interest privilege may not assert the privilege to block disclosure or use of privileged communications in an action between the parties. Thus, the existence of a common-interest privilege does not provide defendants with any basis to refuse to produce the thirty-seven documents to plaintiffs, who are successors to Marvel's interest in all

applicable privileges, and who are using the documents in this action against the defendants.

Defendants also contend (as plaintiffs understand their position) that even if plaintiffs' interpretation of the Plan and Trust Agreement is correct, the Court should refuse to recognize plaintiffs as Marvel's successors for purposes of the privileges. According to defendants, Marvel could not have properly assigned its interest in the shared or joint privilege to plaintiffs without defendants' consent, analogizing an assignment to the Trust to a waiver of the privilege by disclosure to a third party. However, the order confirming the Plan makes clear that the assignment of Marvel's privilege to plaintiffs did not constitute a waiver. Moreover, any objection by defendants to the terms of the Plan and Trust Agreement are now too late. Those documents were approved by this Court in 1998. In all events, for purposes of Marvel's privileges, neither Newco nor the Trust would be considered a third party, such that the assignment would be considered a waiver. The Trust, as a successor to of Marvel's bankruptcy estate, exists only to pursue Marvel's claims against defendants on behalf of the beneficiaries, who are former creditors and shareholders of Marvel. Thus, plaintiffs submit that they are successors to Marvel and stand in Marvel's shoes with respect to all applicable privileges.[2]

---

[2] Defendants' refusal to produce the thirty-seven documents was initially the subject of motion practice in 2002, prior to this Court's grant of defendants' summary judgment motion. At that time, plaintiffs understood defendants to be conceding that all thirty-seven documents were subject to a shared privilege between defendants and Marvel. Now, for the first time, in their November 7, 2005 letter to the Court, defendants contend that eight of the documents are not subject to any Marvel privilege. Plaintiffs therefore

4

## STATEMENT OF FACTS

Plaintiffs in this action are the Trustees of the MAFCO Litigation Trust, which was established pursuant to section 7.1(b) of the Plan of Reorganization in the Marvel bankruptcy cases (Ex. 1[3]), to pursue Marvel's claims against defendants. The Plan was approved by the Court on July 31, 1998. (Ex. 2.) In accordance with the Plan, the Trust Agreement (Ex. 3) became effective on October 1, 1998, creating the MAFCO Litigation Trust. The beneficiaries of the MAFCO Litigation Trust are former Marvel shareholders and unsecured creditors.

As debtor-in-possession, Marvel commenced this action on October 30, 1997 in this Court. (D.I. 1.) After Marvel transferred and assigned to the Trust its claims together with its interest in the attorney-client privilege and work-product immunity, plaintiffs were substituted for Marvel (D.I. 109, 120), and filed an Amended Complaint (D.I. 107) and a Second Amended Complaint (D.I. 149).

Defendants served their privilege log on March 8, 2002, nearly two years after they first produced documents on August 9, 2000, and just three weeks before the initial close of discovery on March 29, 2002. (*See* Ex. 4.) Even then, defendants only produced the log after plaintiffs made repeated written requests in January 2001 and January 2002 and two applications to the Court. Defendants listed ninety-five items on their privilege log and supplemental privilege log. On April 29, 2002, plaintiffs objected

---

request an order requiring defendants to submit the eight documents to the Court for review *in camera.*

[3] References to "Ex. __" are to the exhibits to the Declaration of Emily A. Stubbs.

to forty-eight of the items listed on defendants' privilege log. When defendants did not respond, plaintiffs sought the Court's intervention two weeks later on May 16, 2002. Discovery was subsequently re-opened at defendants' request and the discovery cut-off was extended to August 30, 2002. *See* July 30, 2002 Order (D.I. 348) (Ex. 5).

Plaintiffs now seek to compel production of thirty-seven of the ninety-five documents withheld by defendants on a claim of privilege. For purposes of this motion, plaintiffs assume *arguendo* that the documents are in fact privileged. The issue is whether defendants can withhold from production documents in which Marvel, as well as defendants, has a privilege. Each of the challenged documents is described in defendants' log as written by or provided to Marvel employees or other persons affiliated with or representing Marvel, or reflect communications with Marvel employees. *See* Privilege Log (Ex. 4) Nos. 1, 5-6, 10-11, 13-15, 17, 21-22, 29-37, 42-45, 47-48, 53, 62, 64, 66, 68, 70, 85, 88-90, and 92. In their letter of November 7, 2005, defendants contended for the first time that as to eight of the thirty-seven documents Marvel did not share a privilege with defendants.

As described on defendants' privilege log, the subject matter of the documents includes (1) legal advice provided to Marvel (Nos. 29, 42, 68); (2) drafts of Marvel's public filings (Nos. 32, 33, 35, 43, 44, 45, 47); (3) drafts of documents concerning Marvel's board meetings and minutes (Nos. 70 and 88); and (4) drafts of Marvel's press releases (Nos. 30, 31, 34, 36, 37, 64, 66). (*See also* Letter from Paul Lockwood dated May 23, 2002 (Ex. 6) at 2, 4, 5, 7-9.)

For the reasons set forth below, the Trustees respectfully submit that they are entitled to production of the challenged documents.

6

## ARGUMENT

**BECAUSE THE TRUSTEES ARE MARVEL'S SUCCESSORS
IN INTEREST, DEFENDANTS CANNOT WITHHOLD FROM PRODUCTION
DOCUMENTS IN WHICH MARVEL HAS A PRIVILEGE**

**A.     The Terms of the Plan and the Trust Agreement Establish that the
Trustees Succeeded to Marvel's Interest in the Privileged Documents**

Both Marvel's Plan of Reorganization, which was approved by this Court, and the Trust Agreement, which was an exhibit to the Plan and signed by the Marvel debtors, the Chapter 11 Trustee, the reorganized Marvel ("Newco") and the Trustees, make clear that the Trustees together with Newco are the successors to Marvel's interest in the attorney-client privilege, work-product immunity and any other privilege or immunity from production with respect to documents related to the claims assigned to the Trust.

**1.     Marvel Assigned to the Trust Its Interest
in the Attorney-Client and Other Privileges**

That the Trustees are the successors to Marvel is evidenced by the plain language of Marvel's Plan of Reorganization and the Trust Agreement. The Plan provides that the Marvel debtors will assign to the Trust both their interest in the claims asserted in this litigation, and their interest in the attorney-client privilege, work-product immunity, and other privileges and immunities, to the extent provided in the Trust Agreement:

> On the Consummation Date, (i) each of the Debtors and the MAFCO Litigation Trustees shall execute and deliver the MAFCO Litigation Trust Agreement pursuant to which the Debtors shall grant, assign, transfer, convey and deliver to the MAFCO Litigation Trust, without representation, warranty or recourse, for the benefit of the MAFCO Beneficiaries (A) all of the Debtors' right, title and interest in and to any and all MAFCO Causes of Action, and (B) an

7

> interest in the Debtors' right to the benefits of the attorney
> client privilege, work-product immunity and other similar
> privileges to the extent and only to the extent provided in
> the MAFCO Litigation Trust Agreement . . . .

(Ex. 1 § 7.1(b).)

In accordance with the terms of the Plan, Marvel, the Chapter 11 Trustee, Newco and the Trustees executed the Trust Agreement.  As explained in the second "whereas" clause of the Trust Agreement, Marvel contributed two things to the Trust: (1) all of its interest in the claims asserted in this lawsuit and (2) "an interest, to be jointly shared by the MAFCO Litigation Trust with Newco, in the Marvel Debtors' right to the benefits of the attorney-client privilege, work-product immunity or other protection from disclosure with respect to the Shared Privilege Matters."[4]  (*See* Trust Agreement (Ex. 3) at 1.)  The third "whereas" clause makes clear the Trust "shall succeed to all rights and privileges heretofore enjoyed and preserved by the Marvel Debtors in connection with the MAFCO Litigation Claims."  (*Id.*)

The "Declaration of Trust" portion of the Trust Agreement confirms that Marvel in fact contributed to the Trust its interest in the claims in this lawsuit and its interest in the attorney-client and other privileges.  The Trust Agreement provides that:

> [T]he Marvel Debtors and John J. Gibbons (solely in his
> capacity as chapter 11 trustee for the Marvel Debtors), on

---

[4] "Shared Privilege Matters" is defined in the Trust Agreement to mean "Documents, information and Communications, the disclosure of which is protected under the attorney-client privilege, work product immunity or other protection from disclosure of the Marvel Debtors (or any of them) immediately prior to the consummation of the Plan, relating to the allegations in the District Court Complaint insofar as they relate to a claim or claims raised against the MAFCO Defendants in the District Court Complaint or any amendment thereof arising out of the same historical facts."  (Ex. 3 at 6.)

> behalf of the Marvel Debtors, have executed this MAFCO
> Litigation Trust Agreement and absolutely and irrevocably
> grant, assign, transfer, convey and deliver to, and otherwise
> acknowledge that, **the MAFCO Litigation Trustees, and
> their successors and assigns, succeed to** . . . (A) all right,
> title and interest of the Marvel Debtors in and to any and all
> MAFCO Litigation Claims and the proceeds therefrom and
> (B) **the jointly shared interest in the Shared Privileges**.

(*Id.* at 2) (emphasis added).

Further, the Trustees accepted the assignment of claims and succession to

Marvel's privilege. Section 2.01 provides that "[t]he MAFCO Litigation Trustees accept

the MAFCO Litigation Trust created by this MAFCO Litigation Trust Agreement and the

transfer and assignment of the MAFCO Litigation Claims **and the succession to the**

**Shared Privileges**." (*Id.* § 2.01) (emphasis added). Thus, the Plan and the Trust

Agreement demonstrate that Marvel transferred to the Trustees not just the claims

asserted in this action, but also its right (to be shared with the reorganized Marvel) to the

attorney-client privilege, work-product immunity, and other protections from disclosure,

for documents related to the claims asserted in this action.

Courts regularly enforce assignments of a privilege made in the course of

a bankruptcy proceeding to a litigation or liquidation trust. For example, in *In re*

*Hechinger Investment Co. of Delaware*, 285 B.R. 601 (D. Del. 2002), the debtor's assets,

including its litigation claims, were assigned to a liquidating trust pursuant to the plan of

liquidation and a liquidating trust agreement. *Id.* at 604-05. When the liquidating trustee

brought a motion to compel production of privileged documents, the court held that the

liquidating trust, not the former officers and directors of the bankrupt corporation,

controlled the corporation's attorney-client privilege. *Id.* at 611-13.

Similarly, in *In re American Metrocomm Corp.*, 274 B.R. 641 (Bankr. D. Del. 2002), the debtor, AMC, entered into an agreement with CAC, a subsidiary of one of its creditors, in which it assigned to CAC its interests in certain litigation claims including the attorney-client privilege relating to the assigned claims. *Id.* at 647-48. The court noted that under the assignment, CAC "shares AMC's privileges equally with AMC" and that the defendants – AMC's former lawyers – "cannot invoke the attorney-client privilege against either" AMC or CAC. *Id.* at 654 n.10.

Likewise, here, Marvel assigned its privileges to the Trustees pursuant to the Plan and Trust Agreement. To the extent there is any Marvel-privileged information in the challenged documents, the privilege that formerly belonged to Marvel now belongs to plaintiffs as Marvel's successors in interest.

### 2. Marvel Did Not Merely Assign a "Chose in Action"

Defendants argued in their letter to the Court dated November 7, 2005 that plaintiffs are not Marvel's successors in interest, because, as contrasted to a bankruptcy trustee or new management of Marvel, plaintiffs are the "recipients of a single asset – a chose in action – transferred from Marvel to the Trust." (Allingham Letter dated Nov. 7, 2005 (D.I. 438) (Ex. 7) at 1-2.) Defendants cited two cases in support of this argument, *In re Resorts International, Inc.*, 372 F.3d 154, 169 (3d Cir. 2004), and *SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F. Supp. 808, 815 (N.D.N.Y. 1984). Neither case supports defendants' position here.

Defendants cite *Resorts International* for the proposition that a litigation trust is not necessarily a continuation of the bankruptcy estate. However, that case does not address the issue that is relevant here – whether a litigation trust succeeds to the

debtor's privilege.  The issue considered in that case was whether the bankruptcy court had jurisdiction over an adversary proceeding for professional malpractice brought by a litigation trust seven years after confirmation of the plan of reorganization.  372 F.3d at 156-60.  *SMI Industries* is equally inapposite.  There, SMI moved to disqualify the defendant's law firm, arguing that there was a conflict because SMI had succeeded to the patent and trademark rights of the defendant's parent corporation.  The court rejected the argument, holding that the acquisition of certain assets does not render a corporation a "former client" for purposes of disqualification under New York's disciplinary rules.  586 F. Supp. at 816.

In all events, defendants' argument that the Trustees are "recipients of a single asset – a chose in action" is flatly wrong.  The straightforward language of the Plan and the Trust Agreement makes clear that Marvel contributed two things to the Trust: (1) its interest in any causes of action against the defendants; and (2) an interest in Marvel's right to the benefits of the attorney-client privilege, work-product immunity, and any other protection from disclosure.  (Plan (Ex. 1) § 7.1(b), Trust Agreement (Ex. 3) at 1-2.)  The Trustees accepted the assignment of the claim and succession to the privilege.  (Trust Agreement (Ex. 3) § 2.01.)  The Trustees thus are recipients of and successors to both the MAFCO Litigation Claims and Marvel's privilege.[5]  Accordingly, the Trustees are entitled to Marvel's privileged documents.

---

[5] Defendants' argument that the "no contractual transfer of the privilege took place" (*see* Allingham Letter (Ex. 7) at 2) also should be rejected for the same reason.

3.    **The Provisions in the Trust Agreement
Relating to Plaintiffs' Shared Privilege with Newco
Do Not Excuse Defendants from Producing Documents**

Defendants attempt to invoke section 2.04 of the Trust Agreement to avoid

production of documents, arguing that under section 2.04(a), "the Trust Agreement gives

plaintiffs nothing regarding Marvel's privileges except the right to request access to

Marvel's privileged materials," and that the Trustees' request for production is "expressly

prohibited" by section 2.04(b) of the Trust Agreement.  (Allingham Letter (Ex. 7) at 2, 3.)

Defendants misread section 2.04 as a provision that somehow gives *defendants* – who are

not signatories to the Trust Agreement – rights.  That interpretation does not make sense.

Section 2.04, by its terms, exists to protect Newco – that is, the

reorganized Marvel – which shares Marvel's privilege with the Trustees.  As a practical

matter, Newco, which took possession of Marvel's files upon reorganization, had custody

or control of most of Marvel's privileged documents – with the exception of those in the

possession of defendants.  Accordingly, section 2.04(a) of the Trust Agreement provides

that the Trustees "shall request" from Newco the privileged documents they seek.  Newco

may refuse to disclose Marvel's privileged documents to the Trustees in a very limited

circumstance, where it determines that the substance of the documents "could have an

adverse economic effect" on Newco or its subsidiaries. (Trust Agreement § 2.04(a).)

Section 2.04(a) exists to protect Newco, not defendants, where Newco believes the

documents in which Newco and the Trustees share the privilege could harm Newco's

business if disclosed to the Trustees.

Section 2.04(b) furthers that protection to Newco.  That section permits

the Trustees to seek an order compelling delivery of Shared Privilege Matter to Newco,

12

where the custodian of any Shared Privilege Matter denies Newco access to that material.

While section 2.04(b) provides that the Trustees do not have authority to undertake to

gain "direct access" to the Shared Privilege Matters, that provision plainly is intended to

ensure that Newco is given the opportunity to exercise its right under section 2.04(a) to

refuse disclosure to the Trustees where Newco determines its business could be adversely

affected.  Like section 2.04(a), section 2.04(b) exists to protect the interests of Newco,

not defendants.

        In all events, neither sub-section is applicable here, because Newco – the

reorganized Marvel – has consented to the production of the requested documents

directly to the Trustees.  As evidenced by the letter of David Fleischer, who is counsel to

Newco, *i.e.*, Marvel Entertainment, Inc. (formerly Marvel Enterprises, Inc.),[6] Newco has

consented to the disclosure of "all documents in the possession of defendants" and to the

use of those documents by the Trustees for purposes of this litigation without restriction.

(*See* Ex. 8.)  Accordingly, under the plain terms of the Trust Agreement, the Trustees are

entitled to Marvel's privileged documents.[7]

**B.     Defendants Cannot Assert a Privilege against Marvel's Successors
with respect to Documents Subject to a Common-Interest Privilege**

        Defendants contend that they (or their affiliates) and Marvel have a "joint"

or common-interest privilege with respect to certain challenged documents.  (Allingham

---

   [6] "Newco" is defined in the Trust Agreement to be Marvel Enterprises, Inc.  (Ex. 3 at 1.)  Marvel Enterprises, Inc. later changed its name to Marvel Entertainment, Inc.  (*See* Ex. 8.)

   [7] In the alternative, the Trustees request that the Court direct defendants to produce the challenged documents to Newco, that is, to Marvel Entertainment, Inc.

Letter (Ex. 7) at 2.)  But that would not prevent Marvel (or the Trustees, as successors to Marvel) from using the privileged information contained in those documents against defendants.  The Delaware Uniform Rules of Evidence specifically provide that there is no privilege as to a communication relevant to a matter of common interest between or among two or more clients, "when offered in an action between or among any of the clients."  Del. Unif. R. Evid. 502(d)(6).[8]  *See Tenneco Auto. Inc. v. El Paso Corp.*, C.A. No. 18810-NC, 2001 WL 1456487, at *3 (Del. Ch. Nov. 7, 2001) ("New Tenneco may not assert the privilege against El Paso, as the party with whom it had a common interest.") (attached hereto as Ex. A).  Defendants cannot assert the privilege against the Trustees, Marvel's successors, with respect to any documents in which Marvel and defendants have a common interest.

When parties seek legal advice, their respective successors in interest are also successors to any privileged information.  Thus, for example, when a company is sold, the purchaser has a right to access any of the company's privileged information, and where a bankruptcy trustee is appointed, the trustee controls the debtor's privilege.  *See CFTC v. Weintraub*, 471 U.S. 343, 349, 358 (1985).

This is true even if such information is subject to a joint privilege with another party.  *See Hechinger*, 285 B.R. at 611-12.  As noted above, in *Hechinger,* the liquidation trustee, like the Trustees, had been assigned pursuant to a trust agreement the

---

[8] Defendants have contended – and plaintiffs agree – that because plaintiffs' claims arise under state law, the applicable law as to privilege would be Delaware law rather than federal law.  Plaintiffs do not believe, however, that the outcome of this motion would be different under federal law.

debtor's claims, as well as other assets. *Id.* at 604-05. The defendants, former officers and directors of the debtor, argued that they were not obligated to produce documents sought by the liquidation trustee because a "joint representation exception" or privilege applied. *Id.* at 612. Although the court held that no joint representation in fact existed, it also rejected the argument because, once the defendants became parties to an adversary proceeding brought on behalf of the debtor, "the expectation of any type of confidence that may have existed between them and plaintiff ended." *Id.* at 612-13 (applying New York state law equivalent to Del. Unif. R. Evid. 502(d)(6)). Thus, even if a joint privilege existed between the defendants and the debtor, the privilege could not be invoked by the defendants against the liquidating trustee, as successor to the debtor.

Likewise, defendants cannot invoke the common-interest privilege against the Trustees, who are successors to a party to the common interest, Marvel. Defendants should be required to produce the withheld documents immediately.

## C.     Marvel's Assignment of Its Privileges to the Trust Did Not Constitute a Waiver

Analogizing the assignment to plaintiffs of Marvel's privilege to a waiver to a third party, defendants argue that Marvel did not have the "legal power to deliver up documents subject to a joint attorney-client privilege," absent defendants' consent. (Allingham Letter (Ex. 7) at 2.) But defendants' objection to the assignment in the Plan of Reorganization and Trust Agreement comes too late. The Court approved the Plan and Trust Agreement, which was an exhibit to the Plan, on July 31, 1998, and the Trust Agreement became effective on October 1, 1998. The time for any objections was before the Court approved the Plan and the Trust Agreement went into effect.

15

In all events, no waiver of Marvel's privilege occurred.  In the order confirming the Plan, the Court specifically provided that the assignment of the privilege and the Trustees' succession to Marvel's privilege did not constitute a waiver of the privilege:

> [N]either the succession by the MAFCO Litigation Trustee to an interest in certain evidentiary privileges and immunities pursuant to section 7.1(b) of the Fourth Amended Plan nor the operation of section 2.04 of the MAFCO Litigation Trust Agreement shall constitute a waiver of any such privilege or immunity.

(Ex. 2 ¶ 24 at 12-13.)  Accordingly, defendants' argument should be rejected under the plain terms of the Plan and confirmation order.

Even if defendants' objection to the terms of the Plan and the Trust Agreement were timely, defendants cite no case law in which a successor is denied access to documents in which its predecessor has a common interest.  Instead, defendants rely on two cases, *Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393 (D. Del. 1994), and *Tenneco Automotive*, neither of which has any relevance here.

*Interfaith* does not say that a party to a joint privilege may not assign or waive its interest in the privilege without the consent of the other party.  To the contrary, in *Interfaith*, one party to a common interest waived the privilege.  841 F. Supp. at 1398-99.  The court held only that the waiver of a common-interest privilege by one party "does not effect a waiver as to the others' attorney-client privilege."  *Id.* at 1402. Although the assignment here was not a waiver, even under *Interfaith*, Marvel had the power to waive its privilege without defendants' consent.

In *Tenneco*, the court held that neither Tenneco nor El Paso, which were both parties to a common-interest privilege, could assert the privilege against the other. 2001 WL 1456487, at *3. The same logic applies here. The court also held that El Paso could not without Tenneco's consent waive the shared privilege by disclosing privileged documents to a third party, the London Insurers, who had never shared the common interest and had their own interests, distinct from those of Tenneco and El Paso. *Id.* at *2. *Tenneco* does not suggest that the Trustees may be prevented from obtaining disclosure of any documents subject to a common-interest privilege between Marvel and defendants. Unlike the third party London Insurers in *Tenneco*, the Trust's sole purpose is to inherit and pursue the claims of the previous holder of the privilege, Marvel. The MAFCO Litigation Trust was created for the express purpose of pursuing Marvel's claims against defendants, and will cease to exist when the claims against defendants are resolved and the litigation proceeds are distributed to the Trust's beneficiaries.

In sum, the Trust is not a third party like the London Insurers; it is a representative of, and successor to, Marvel. Just as defendants could not object to production of documents subject to a shared privilege to Marvel as a debtor in bankruptcy, or to a company that acquired Marvel, so too defendants should not be able to avoid producing such documents to the Trustees, the explicit successors in interest to Marvel's privilege pursuant to the plain terms of the Plan of Reorganization and the Trust Agreement.

**D.     *In Camera* Review Is Warranted for the Eight Documents in which Defendants Now Contend Marvel Had No Privilege**

In their November 7, 2005 letter to the Court, defendants claimed for the first time – and more than three and a half years after plaintiffs sought court intervention

17

concerning the thirty-seven challenged documents – that Marvel "had no interest in eight of the 37 documents." (*See* Allingham Letter (Ex. 7) at 1 n.1 (identifying Privilege Log Nos. 5, 6, 10, 13-15, 21 & 22)). As a preliminary matter, defendants' argument is untimely. Defendants have never before contended that Marvel had no interest in eight of the challenged documents. In fact, in their June 12, 2002 letter opposing plaintiffs' motion for production of the same thirty-seven documents, defendants said that the documents were subject to a "shared privilege." (*See* Exs. 9 & 10 (D.I. Nos. 319, 322)). Now, defendants have reversed their position.

Plaintiffs therefore request that the Court conduct an *in camera* review of at least the eight documents identified by defendants, to determine whether Marvel shares any privilege in the documents. Courts routinely conduct such reviews in order to avoid misapplication of the attorney-client privilege. *See* Fed. R. Evid. 104(a) ("Preliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court . . . ."); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1449-50 (D. Del. 1989) (*in camera* review is appropriate to avoid misapplication of the attorney-client privilege where documents appear to be business-oriented, not legal in nature). Such review is appropriate here, where defendants previously stated that the challenged documents were subject to a shared privilege with Marvel, and now suddenly claim that eight of them are not.

## CONCLUSION

On a fundamental level, defendants' argument in support of their refusal to produce the thirty-seven documents is inconsistent with the terms and intent of the Plan and the Trust Agreement. Pursuant to the terms of the Plan and Trust Agreement, Marvel

18

assigned to the Trust the claims that are being pursued in this action and the attorney-client privilege and other privileges in documents relating to such claims. All such privileges assigned by Marvel to the Trust are shared with Newco, and no one else. Defendants were not parties to the assignment, although they had a right to object to their terms before the Plan was confirmed. So, the intent could not be more clear – any privilege Marvel had in documents relating to this action now belongs to the Trustees and Newco – and Newco has confirmed that it consents to the discovery sought by plaintiffs. In effect, defendants are saying that Marvel and Newco and their counsel did not succeed in drafting the provisions of the Plan and Trust Agreement to accomplish their obvious intent in making sure the Trust had the privileges germane to this action and/or that Marvel could not lawfully transfer its rights in privileges to the Trust. As shown above, both arguments should be rejected.

Accordingly, plaintiffs' motion to compel should be granted and defendants should be directed to produce the challenged documents.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
Lawrence C. Ashby (I.D. 468)
Philip Trainer, Jr. (I.D. 2788)
Tiffany Geyer Lydon (I.D. 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
lashby@ashby-geddes.com
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

19

*Of Counsel:*

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
Edward A. Friedman
Andrew W. Goldwater
Daniel B. Rapport
Emily A. Stubbs
Jonathan Gottfried
1633 Broadway
 New York, New York 10019-6708
(212) 833-1100

Dated:  November 22, 2005

163907.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2005, the attached

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO**

**COMPEL THE PRODUCTION OF DOCUMENTS** was served upon the following

counsel of record at the address indicated below in the manner indicated:

Anthony W. Clark, Esq.                    ***VIA HAND DELIVERY***
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19899

Robert E. Zimet, Esq.                     ***VIA FEDERAL EXPRESS***
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon