# Exhibit A

Westlaw.

Not Reported in A.2d                                                                                                                Page 1
Not Reported in A.2d, 2001 WL 1456487 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

H
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
TENNECO AUTOMOTIVE INC., et al.
v.
EL PASO CORPORATION, et al.
**No. CIV.A. 18810-NC.**

Submitted: Oct. 22, 2001.
Nov. 7, 2001.

Allen M. Terrell, Jr., Esquire, Richards, Layton & Finger, Wilmington.
Robert K. Payson, Esquire, Potter, Anderson & Corroon, Wilmington.
William M. Lafferty, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington.
Francis J. Murphy, Jr., Esquire, Murphy, Spadaro & Landon, Wilmington.

NOBLE, Vice Chancellor.
*1 Dear Counsel:

This letter constitutes my decision on the El Paso Defendants' Motion to Compel Testimony and Production of Documents, filed on October 4, 2001 (the "Motion"). The Motion challenges the assertion of attorney-client privilege by Plaintiff Tenneco Automotive Inc. and Plaintiff Pactiv Corporation (a) to certain deposition testimony of David Zerhusen and (b) to certain documents sent by or to David Zerhusen who has provided legal services to Old Tenneco, New Tenneco, and El Paso during the last several years. Defendants, Certain Underwriters at Lloyd's, London and London Market Insurance Companies, (the "London Insurers") have also joined in the Motion.

A brief, but incomplete, corporate history is necessary to an understanding of the context in which the Motion arises. Prior to 1996, Tenneco Inc. ("Old Tenneco") was a diversified industrial company. Old Tenneco spun off the businesses now known as Plaintiff Tenneco Automotive Inc. and Plaintiff Pactiv Corporation (collectively "New Tenneco") and Plaintiff Newport News Shipbuilding Inc. ("Shipbuilding"). The residue of Old Tenneco merged with a subsidiary of Defendant El Paso Corporation (which, together with its affiliates, is referred to as "El Paso"). The London Insurers provided certain historical insurance coverage to Old Tenneco, and at issue in this litigation are the rights of Plaintiffs to coverage by the London Insurers in the face of a settlement agreement between El Paso and the London Insurers which purports to release the London Insurers from further responsibility under the Old Tenneco policies.

Rights to insurance coverage as among El Paso, New Tenneco, and Shipbuilding are governed by an insurance agreement (the "Insurance Agreement"). Plaintiffs allege that El Paso breached the Insurance Agreement by failing to notify them (i) when it became aware of claims that might exhaust any or all limits of liability under the London Insurers' policies and (ii) whenever it took any action with respect to administration of Old Tenneco's claims under the London policies. FN1 El Paso, in response, contends that the actual knowledge (what did it know and when did it find out) of New Tenneco is at issue in this litigation because, so El Paso argues, New Tenneco should not be allowed to complain about the absence of notice from El Paso when it already had the knowledge which would have been acquired if the notice had, in fact, been given.

FN1. *See* Compl. ¶ 65.

The parties have focused on four documents which present representative attorney-client privilege issues:
1. A memorandum, entitled "Tenneco Discontinuation Operations-Proposal for Pursing Environmental Insurance Coverage Settlement" and dated August 23, 1996, sent to Mr. Zerhusen by Mr. Mathias (the "Mathias Memorandum"), a lawyer then advising New Tenneco. This memorandum was forwarded to counsel for El Paso.
2. A January 2, 1997 memorandum from Mr. Zerhusen entitled "Insurance Recovery, Discontinued Operations." This document is identified as Document 39 in Mr. Zerhusen's privilege log and also was forwarded to El Paso.
*2 3. A January 15, 1997 memorandum described as "Activities Report for Dave Zerhusen." This is identified as Document 40.
4. A January 19, 1999 "request for legal advice" from Mr. Zerhusen to Mr. Mathias. This is identified as Document 41.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

All of these documents are presumptively subject to the attorney-client privilege. The Mathias Memorandum and Document 39 have been submitted to the Court for *in camera* inspection.

In order to appreciate the contexts from which the various assertions of attorney-client privilege have arisen, it is necessary to review Mr. Zerhusen's multiple employment relationships, which can be classified into four distinct periods:

1. Prior to June 1996, Mr. Zerhusen was an employee of Old Tenneco's legal department. There is no pending privilege issue from this period.
2. From June 1996 to February 1997, Mr. Zerhusen was employed by Old Tenneco and New Tenneco but worked with and for the benefit of El Paso on transition issues arising out of the corporate reorganization. The attorney-client privilege has been asserted in an effort to protect the Mathias Memorandum and Document 39 from this period. Copies of these documents are in the possession of El Paso because they were provided by Mr. Zerhusen as part of a common transition effort.
3. Mr. Zerhusen worked exclusively as in-house counsel for New Tenneco from May 1997 to June 2000. New Tenneco asserts the privilege to two representative documents (Documents 40 and 41) and certain deposition examination from this period.
4. Since December 2000, Mr. Zerhusen has worked in-house for El Paso. No claim of privilege arises out of this period.

Two aspects of the attorney-client privilege, the common interest privilege and the "at issue" exception, must be considered.

*Common Interest.*

I must first determine if the Mathias Memorandum and Document 39, generated while Mr. Zerhusen was involved with corporate transition issues and which are in the possession of El Paso, are subject to any attorney-client privilege that could be asserted by New Tenneco. The initial question is whether Mr. Zerhusen's transmittal of these documents to El Paso on behalf of New Tenneco waived the privilege. I am satisfied that they were transmitted to El Paso while there was a community of interest between New Tenneco and El Paso and that Mr. Zerhusen reasonably believed that he owed a duty of confidentiality to both parties arising out of not only a confidentiality agreement between them, but also the attorney-client privilege. Thus, New Tenneco did not waive the attorney-client privilege when these documents were forwarded to El Paso. Furthermore, by virtue of DRE 502(b)(3), "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client ... by him or or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest." FN2 Accordingly, because El Paso received the documents as privileged communications addressing a common interest shared by El Paso and New Tenneco, El Paso cannot waive the attorney-client privilege on its own. FN3

> FN2. *See, e.g., Jedwab v. MGM Grand Hotels, Inc.,* Del. Ch., C.A. No. 8077, mem. op. at 4, Allen, C. (Mar. 20, 1986) ("clients have interests that are so parallel and non-adverse that, at least with respect to the transaction involved, they may be regarded as acting as joint venturers.").
>
> FN3. *See, e.g., Interfaith Housing Del., Inc. v. Town of Georgetown,* 841 F.Supp. 1393, 1400-02 (D.Del.1994).

**\*3** Under DRE 503(d)(5), New Tenneco may not assert the privilege against El Paso, as the party with whom it had the common interest. However, while there may not be a privilege as between El Paso and New Tenneco that can be validly asserted, the privilege still attaches as to discovery sought by the London Insurers. Thus, as long as there are claims against the London Insurers and the London Insurers join in the Motion, DRE 503(d)(5) does not preclude assertion of the attorney-client privilege.

*"At Issue."*

El Paso seeks to avoid New Tenneco's assertion of the attorney-client privilege under the "at issue" exception. The "at issue" exception provides that a party may be deemed to have waived the privilege if "(1) the party injects the communications themselves into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications." FN4 All parties here agree that the "communications themselves" are not part of this litigation. They do differ, however, on whether the privileged

communications are necessary to a truthful resolution of any issue "injected" by New Tenneco into these proceedings. The Complaint alleges, *inter alia,* that El Paso failed to provide appropriate notice regarding settlements with the London Insurers as required by the Insurance Agreement. The confidential communications do not help with the question of whether El Paso gave to New Tenneco the notice that may have been specifically and affirmatively required by the Insurance Agreement. Instead, they may form the factual basis for an argument by El Paso to the effect that New Tenneco had become aware of El Paso's actions at a time when it could have (or should have) acted to protect whatever interests may have been implicated by the notice provisions of the Insurance Agreement. Characterized somewhat simplistically, El Paso's argument is that notice cannot be required (or there is no remedy for a failure to provide such notice) when the party entitled to notice already has timely knowledge of the necessary facts. Whether El Paso's argument will prevail is an issue that I should not, and will not, consider at this stage. It is, however, an argument for which El Paso should be allowed the opportunity to develop the factual basis. Moreover, New Tenneco should have foreseen (and perhaps it did) that El Paso would seek to assert its knowledge as a defense. Thus, when New Tenneco filed this action, it knew, or should have known, that its argument with respect to notice would be met with El Paso's contention that New Tenneco already knew those facts which should have been transmitted to New Tenneco pursuant to the notice provision of the Insurance Agreement. Accordingly, because questions regarding New Tenneco's knowledge were foreseeable when New Tenneco filed its Complaint, I conclude that New Tenneco "injected" the issue of its knowledge into this litigation. FN5

> FN4. *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.,* Del. Super, 623 A.2d 1118, 1125 (1992).
>
> FN5. I acknowledge that the relief sought by Plaintiffs with respect to notice claims is prospective only. Tr. of Oral Arg. at 17-18.

*\*4* That New Tenneco's notice claim is the cause for the questions about New Tenneco's knowledge does not end the inquiry. El Paso and the London Insurers will gain access to the privileged communications only if El Paso and the London Insurers would otherwise be "placed at a disadvantage due to the inability to review the concealed information." FN6

This "at issue" exception is premised upon the "rationale of fairness." FN7 Thus, the confidential source may be tapped for the benefit of El Paso and the London Insurers only when the needed information cannot be reliably obtained from another source. On the present record, the question of whether Defendants have adequate alternative sources for the needed information is a difficult one. Defendants concede that "[d]iscovery undertaken so far has revealed that plaintiffs were on notice of Old Tenneco's and El Paso's plans to bring an insurance coverage action relating to Old Tenneco's discontinued operations; obtained actual knowledge of the Kern County Litigation and the Settlement long before it was consummated; and knew any such Settlement would require policy buy-backs." FN8

> FN6. *Fitzgerald v. Cantor,* Del. Ch., C.A. No. 16297, mem. op. at 5, Steele, V.C. (Jan. 28, 1999).
>
> FN7. *Tacket v. State Farm Fire & Cas. Ins. Co.,* Del.Supr., 653 A.2d 254, 259 (1995) (" 'It would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter.' ") (quoting *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp 136, 156 (D.Del.1997)).
>
> FN8. Motion ¶ 1.

Thus, while it appears that the Defendants have had access to sufficient information to generalize what knowledge New Tenneco may have had, I conclude that they have an ongoing need for the specific details for which there is no acceptable substitute for intrusion into otherwise confidential communications.

Because the "at issue" exception exists to protect a party from the unfair application of the attorney-client privilege, the limitations on the exercise of the privilege must be no greater than that which is essential to achieve the exception's purposes. In this instance, one issue, framed generally, is what did Plaintiffs know about the actions that El Paso was going to take with respect to the coverage provided by the London Insurers, and when did they acquire that knowledge. For example, that a lawyer working for the Plaintiffs had privileged communications to the effect that, from among other options, El Paso was considering pursuing litigation with the London Insurers with buy-backs does not reach the level of need sufficient to justify limitation on the attorney-

Not Reported in A.2d                                                                                                                    Page 4
Not Reported in A.2d, 2001 WL 1456487 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

client privilege. However, evidence that lawyers working for the Plaintiffs had privileged communications reflecting knowledge that El Paso was about to engage in such efforts does fall within the scope of the information to which El Paso is entitled.

*Discovery in Dispute.*

Four documents have been identified as representative of those raising attorney-client privilege issues. FN9 Those portions of the documents which reflect positions taken by, or statements made on behalf of, the London Insurers with respect to El Paso's coverage claims, are to be disclosed. Those portions of the documents relating to steps taken by El Paso or which indicate that El Paso had determined in substance how it would proceed or how it would likely proceed are likewise to be disclosed. Those portions that merely list options or potential strategies are not closely related to El Paso's need for access and, thus, remain subject to the privilege. Finally, those portions that do not address El Paso's London Insurers' coverage issues that form the basis of this litigation are not subject to disclosure either. FN10

>   FN9. *See supra* p. 4.
>
>   FN10. The work product doctrine was initially asserted as an additional reason to protect the confidentiality of the four documents. That claim has been withdrawn as to the Mathias Memorandum and Document 39. The claim has also been withdrawn as to Documents 40 and 41, subject to certain redactions. I read El Paso's Reply in Support of its Motion to Compel Testimony and Production of Documents (at n. 2) as reflecting El Paso's agreement with this approach. Thus, I do not understand that any specific assertion of the work product doctrine remains for judicial review. Moreover, I view the proposed redactions as generally consistent with my understanding of what information is not subject to disclosure under the "at issue" exception.

**\*5** An example of deposition examination that resulted in the assertion of the attorney-client privilege occurred when Mr. Zerhusen was asked whether Mr. Donovan, who was representing New Tenneco through his law firm, knew, prior to a certain event, that El Paso had initiated insurance coverage litigation against the London Insurers. FN11 In the absence of the "at issue" exception, this communication would clearly be protected by the attorney-client privilege. However, because it directly shows what New Tenneco, through its counsel, knew at a particular time, the question must be answered.

>   FN11. *See* Plaintiffs' Response to El Paso's Motion to Compel Testimony and Production of Documents at Ex. C.

In general, Plaintiffs may not invoke the attorney-client privilege to preclude El Paso from learning about their knowledge of Old Tenneco's and El Paso's plans to pursue insurance coverage actions against the London Insurers under the policies at issue in this action or to settle any such litigation. On the other hand, El Paso has not demonstrated sufficient need to support a denial of the privilege to the extent that it seeks discovery regarding the "steps considered or taken by plaintiffs in light of such knowledge ." FN12

>   FN12. El Paso's Reply in Support of its Motion to Compel Testimony and Production of Documents at 5. I note that the "at issue" exception applied here does not result in loss of the privilege's protection for otherwise privileged communications regarding Plaintiffs' plans, strategies, or conduct as to their rights under the Insurance Agreement or otherwise. No need has been shown to support such intrusion, if, indeed, that is part of the relief sought by El Paso.

I recognize that redaction of documents will be necessary, but that burden is the unfortunate product of an effort to balance competing, but important, interests.

Accordingly, for the reasons set forth above, the Motion is granted in part and denied in part. I ask that counsel confer and submit a form of order to reflect this ruling. I also anticipate that the order will address the resumption of Mr. Zerhusen's deposition and possibly other administrative or scheduling matters.

Del.Ch.,2001.
Tenneco Automotive Inc. v. El Paso Corp.
Not Reported in A.2d, 2001 WL 1456487 (Del.Ch.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                         Page 5
Not Reported in A.2d, 2001 WL 1456487 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.