# EXHIBIT 1
# (Part 2)

Interests), Subclass 6B (Subsidiary Equity Interests) of Class 6 (Equity Interests) and Class 7 (Existing Warrants) and, as applicable, each subclass thereof, are impaired hereunder.

    5.2 <u>Nonconsensual Confirmation</u>.

    The Proponents hereby move to have the Bankruptcy Court confirm this Plan of Reorganization under section 1129(b) of the Bankruptcy Code.

    5.3 <u>Severability of Plan of Reorganization</u>.

    This Plan of Reorganization is, severally, a plan of reorganization for each of the Debtors. In the event that this Plan of Reorganization is not confirmed for all Debtors, then this Plan of Reorganization may not be confirmed for any Debtor without the consent of each of the Proponents, <u>provided</u>, <u>however</u>, that this Plan of Reorganization may be confirmed if it can be confirmed for all Debtors other than Immaterial Debtors.

    SECTION 6.    <u>MEANS OF IMPLEMENTATION</u>

    6.1 <u>Closing of Transaction</u>.

    On the Consummation Date, the closing of the Transaction shall occur in accordance with the Merger Agreement and, in the event of a Qualifying Transaction, any other applicable document on the terms and subject to the conditions contained in such Merger Agreement and/or other applicable document, free and clear of all Liens, claims, encumbrances and interests. In connection therewith, all outstanding letters of credit or other similar obligations as set forth on Schedule 6.1 hereto issued for the account of any of the Debtors or the Debtors in Possession under the Existing Credit Agreements or the DIP Credit Agreement, as applicable, shall be (a) canceled and terminated with Chase receiving releases reasonably acceptable to Chase from the beneficiaries thereof, or (b) Newco shall issue a back to back letter of credit in form and substance reasonably acceptable to Chase. In the event that any of the letters of credit set forth on Schedule 6.1 hereto are drawn prior to the Consummation Date, Newco shall reimburse Chase for all amounts (including interest at the non-default rate provided for in the Existing Credit Agreements, fees and other charges) incurred solely in respect of any such letters of credit.

    6.2 <u>Derivative Securities Litigation Claims</u>.

    Any derivative securities litigation claims are property of the estate of Entertainment under section 541 of the Bankruptcy Code and shall become the property of Newco.

6.3  <u>Board of Directors of the Reorganized Debtors</u>.

The Board of Directors of Newco immediately following the Consummation Date shall consist of six (6) individuals designated by Toy Biz and the New Investors and five (5) individuals designated by the Secured Lenders.  The members of the Board of Directors of Newco, assuming its formation, are or shall be stated in a filing to made with the Bankruptcy Court prior to the Consummation Date.  Thereafter, and subject to the Shareholder Agreement, the Board of Directors of Newco shall be elected in accordance with the Charter and Bylaws.

6.4  <u>Officers of the Reorganized Debtors</u>.

The initial officers of Newco shall be determined by the Proponents.  The selection of officers of the Reorganized Debtors after the Consummation Date shall be as provided in the Charter and Bylaws.

6.5  <u>Distribution to New Investors</u>.

In the event that no Qualifying Transaction closes, the New Investors shall receive nine million (9,000,000) shares of Convertible Preferred Stock on the Consummation Date in exchange for ninety million dollars ($90,000,000) in Cash.

6.6  <u>Toy Biz Distribution</u>.

(a)  <u>No Qualifying Transaction</u>.

In the event that no Qualifying Transaction closes, holders of Toy Biz common stock (other than the Debtors) shall continue to hold the twenty million, three hundred and fifty-two thousand, one hundred twenty-seven (20,352,127) shares of Toy Biz common stock held by them on the Consummation Date and Characters shall continue to hold the seven million three hundred ninety four thousand (7,394,000) shares of Toy Biz common stock held by it.

(b)  <u>Qualifying Transaction</u>.

In the event that a Qualifying Transaction closes, holders of Toy Biz common stock (other than the Debtors) shall receive on the Consummation Date an amount of Cash equal to the Toy Biz Cash Distribution less the Breakup Fee and certain professional fees which net amount shall be payable in immediately available funds in accordance with instructions to be provided to the Debtors by Toy Biz on or before the Consummation Date.

6.7 <u>Fees to New Investors</u>.

(a) <u>Professional Fees</u>.  On the Consummation Date, DPI as a New Investor committing to purchase Convertible Preferred Stock under the Convertible Preferred Stock Purchase Agreement shall be reimbursed by Newco in an amount not to exceed two hundred thousand dollars ($200,000) for all of the professional fees, costs and expenses incurred solely in connection with the preparation and negotiation of the Convertible Preferred Stock Purchase Agreement and related agreements and documentation, it being understood that DPI shall not be reimbursed for any other professional fees, costs or expenses relating to these Reorganization Cases paid to its personal counsel including, without limitation, any litigation relating to the Reorganization Cases, this Plan of Reorganization, the Convertible Preferred Stock Purchase Agreement or Toy Biz.

(b) <u>Breakup Fee</u>.  In the event that a Qualifying Transaction closes, the Breakup Fee shall be payable in Cash in immediately available funds to DPI or its assignees.

6.8 <u>Dissolution of Committees</u>.

On the Consummation Date, all statutory committees (other than the Creditors Committee to the extent provided in Section 6.16 hereof) appointed by the U.S. Trustee in the Reorganization Cases shall automatically dissolve and such committees shall cease to exercise any functions and be divested of all rights, powers and duties.

6.9 <u>Intentionally deleted</u>.

6.10 <u>Newco Financing</u>.

In the event that no Qualifying Transaction closes, Toy Biz shall arrange for Newco to obtain the Term Loan Facility, the Working Capital Facility and investors to purchase ninety million dollars ($90,000,000) of Convertible Preferred Stock for ninety million dollars ($90,000,000) in Cash.

6.11 <u>Vote of Characters' Toy Biz Stock</u>.

As of the Consummation Date, Characters shall be deemed to have voted all of its Toy Biz common stock in favor of the Merger Agreement, any Qualifying Transaction and the transactions contemplated hereby.

36

6.12  <u>Forgiveness of Panini Obligations</u>.

On the Consummation Date, each of the Debtors shall forgive all monetary obligations of Panini to such Debtor due and payable as of December 31, 1997.

6.13  <u>Panini Indemnity</u>.

On the Consummation Date, Newco shall execute and deliver the Panini Indemnity.

6.14  <u>Outstanding Toy Biz Stock Interests</u>.  Any outstanding Toy Biz preferred stock or stock options shall be eliminated prior to the Consummation Date or will only dilute the Newco Common Stock to be distributed pursuant to Section 6.6 hereof.

6.15  <u>Distribution of Subsidiary Equity Interests</u>.

In connection with and in consideration for the distributions to be made under section 4.2(b)(i) hereof by Entertainment on account of the Allowed Fixed Senior Secured Claims, each holder of a Fixed Senior Secured Claim shall transfer to Entertainment, and Entertainment shall acquire by subrogation, all Fixed Senior Secured Claims against any Debtor other than Entertainment.  The distributions of shares of new common stock of Debtors other than Entertainment provided for under section 4.2(b)(i)(A)(5) hereof shall be made directly to Newco.

6.16  <u>Continuation of Creditors Committee</u>.

From and after the Consummation Date, the Creditors Committee may continue to exist solely for the purposes of monitoring the Claims objection process and performing the functions set forth in Section 7.9 hereof and in the Avoidance Litigation Trust Agreement, it being understood that the reasonable professional fees and expenses of the Creditors Committee and the expenses of its members shall be paid by the Avoidance Litigation Trust in an amount not to exceed one hundred thousand dollars ($100,000) and that neither Newco nor any of its subsidiaries or affiliates shall have any liability therefor.

6.17  <u>Right to Object to Fees</u>.

Nothing contained herein shall be construed as in any way limiting the right of any party in interest to object to any of the fees and expenses of any professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

6.18   <u>Certain Securities Law Matters</u>.

In the event that the Confirmation Order does not determine that the issuance of the beneficial interests in the Litigation Trusts, Newco Common Stock, the Warrants (including the redistribution of the Warrants by LaSalle to the holders of the Holdings Notes or the sale thereof by LaSalle), the Newco Common Stock issuable on exercise of the Plan Warrants, Stockholder Series A Warrants and the Stockholder Series C Warrants, the Convertible Preferred Stock issuable on exercise of the Stockholder Series B Warrants and the Newco Common Stock issuable on exercise of that Convertible Preferred Stock are exempt from the registration requirements of the Securities Act pursuant to the exemption afforded by Section 1145 of the Bankruptcy Code, Newco will either obtain a no action letter from the Securities and Exchange Commission to the effect that the staff of the Securities and Exchange Commission will not recommend any enforcement action if those issuances are made without registration under the Securities Act pursuant to the exemption afforded by Section 1145 of the Bankruptcy Code or it will register the necessary issuances under the Securities Act reasonably promptly after the Consummation Date.  Newco shall use its reasonable efforts to cause Newco Common Stock, the New Panini Securities (if applicable), the Convertible Preferred Stock, Plan Warrants, Stockholder Series A Warrants and Stockholder Series C Warrants to be listed on the New York Stock Exchange or the American Stock Exchange at the time of, or as promptly as reasonably practicable after, the Consummation Date. Newco shall remain subject to the reporting requirements of Section 13(a) of the Securities Exchange Act of 1934, as amended, and shall file all reports required to be filed thereunder with the Securities and Exchange Commission until Rule 144(k) under the Securities Act becomes applicable to resales of the Plan Warrants, Stockholder Series A Warrants, Stockholder Series C Warrants, shares of Common Stock and Convertible Preferred Stock issued on exercise of Warrants and shares of Common Stock issuable on exercise of those shares of Convertible Preferred Stock, other than resales for the account of persons who are at the time of such resale, or have been within the three months preceding such resale, affiliates of Newco.  Newco shall use its reasonable efforts to have the Securities and Exchange Commission declare effective, as promptly as reasonably practicable after the Consummation Date, one or more registration statements under the Securities Act registering (x) the resale by the New Investors of the shares of Convertible Preferred Stock acquired by the New Investors, including, without limitation, shares acquired by holders of Fixed Senior Secured Claims pursuant to Section 4.2(b)(i)(A)(6) hereof and (y) the resale by affiliates (as that term is defined in Rule 405 under the Securities Act) of Newco of (i) shares of Newco Common Stock, (ii) shares of Convertible Preferred Stock, (iii) Stockholder Series A Warrants,

(iv) Stockholder Series B Warrants, (v) Stockholder Series C Warrants,(vi) Newco Common Stock issuable on exercise of the Plan Warrants, Stockholder Series A Warrants and Stockholder Series C Warrants, (vii) Convertible Preferred Stock issuable on exercise of the Stockholder Series B Warrants, (viii) Newco Common Stock, and (ix) Newco Common Stock issuable on conversion of Convertible Preferred Stock, to the extent that the shares and warrants referred to in (i) through (v), the warrants referred to (vi) and (vii) and the Convertible Preferred Stock referred to in (viii) have been issued to those affiliates under the Plan.

6.19 <u>Settlement Amount</u>.  Immediately prior to the Consummation Date, Toy Biz shall pay the Settlement Amount to Berlack, Israels & Liberman LLP for the benefit of High River and Westgate.

6.20 <u>Excess Administration Claims Amount Loan</u>.  On the Consummation Date, the New Investors set forth on Exhibit 12 to this Plan of Reorganization in the proportions there identified shall lend Cash to Newco in an amount equal to the Excess Administration Claims Amount and Newco shall execute and deliver the Excess Administration Claims Note to the New Investors.

6.21 <u>Perlmutter Capital Contribution</u>.  Isaac Perlmutter or one of his Affiliates other than Toy Biz or one of its subsidiaries shall contribute an amount of Cash as equity to Newco equal to the Perlmutter Capital Contribution.

SECTION 7.    <u>LITIGATION TRUST</u>

7.1 <u>Assignment of Rights</u>.

(a) <u>Avoidance Litigation Trust</u>.  On the Consummation Date, (i) each of the Debtors and the Avoidance Litigation Trustee shall execute and deliver the Avoidance Litigation Trust Agreement pursuant to which the Debtors shall grant, assign, transfer, convey and deliver to the Avoidance Litigation Trust, without representation, warranty or recourse, for the benefit of the Avoidance Beneficiaries all of the Debtors' right, title and interest in and to any and all Litigation Claims arising pursuant to sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code including the right to prosecute the motion pursuant to Fed. R. Civ. P. 60(b) filed by the Creditors Committee in December, 1997, <u>provided</u>, <u>however</u>, that such Litigation Claims shall not include any Litigation Claim that seeks the recovery of any right, title or interest of any of the Debtors or their subsidiaries in or to any right, title or interest in intellectual property, including without limitation, any right, title or interest in or to Spiderman, X-man or Ironman

39

and (ii) pursuant to the Avoidance Litigation Trust Agreement, the Avoidance Litigation Trustee shall accept the rights and properties assigned and transferred to it and the trust imposed upon it, agree to retain and enforce such Litigation Claims for the benefit of the Avoidance Beneficiaries, further agree to be appointed for such purpose under section 1123(b)(3)(B) of the Bankruptcy Code and hold the Net Avoidance Litigation Proceeds in trust for the Avoidance Beneficiaries.

(b)    MAFCO Litigation Trust.  On the Consummation Date, (i) each of the Debtors and the MAFCO Litigation Trustees shall execute and deliver the MAFCO Litigation Trust Agreement pursuant to which the Debtors shall grant, assign, transfer, convey and deliver to the MAFCO Litigation Trust, without representation, warranty or recourse, for the benefit of the MAFCO Beneficiaries (A) all of the Debtors' right, title and interest in and to any and all MAFCO Causes of Action, and (B) an interest in the Debtors' right to the benefits of the attorney client privilege, work-product immunity and other similar privileges to the extent and only to the extent provided in the MAFCO Litigation Trust Agreement, and (ii) pursuant to the MAFCO Litigation Trust Agreement, the MAFCO Litigation Trustees shall accept the rights and properties assigned and transferred to, or otherwise enjoyed by, them and the trust imposed upon them, agree to retain and enforce such Litigation Claims for the benefit of the MAFCO Beneficiaries, further agree to be appointed for such purpose under section 1123(b)(3)(B) of the Bankruptcy Code and hold the Net MAFCO Litigation Proceeds in trust for the MAFCO Beneficiaries.

7.2    Control of Litigation.

Except as set forth in this Section 7.2, the Litigation Trustees shall have the full power and discretion to select and to hire professionals, and to initiate, to prosecute, to supervise, to direct, to compromise and to settle all Litigation Claims.  Notwithstanding the foregoing, Newco may, in its sole and absolute discretion, direct the Avoidance Litigation Trustee to dismiss with prejudice, to compromise or to settle any Cause of Action against any person or entity which is a provider of goods or services to Newco or party to any licensing arrangement with Newco, or, in each case, any of its direct or indirect subsidiaries, at any time from and after the Consummation Date which Newco reasonably believes could have an adverse effect on its business.

7.3    Liability of Trustee.

No Litigation Trustee shall have any liability for any of its acts or omissions in connection with the selection and hiring of professionals, or the initiation, prosecution,

supervision, direction, compromising or settling of any Litigation Claims, except in the case of its gross negligence or its own intentional and willful misconduct, and in no event shall be liable for any action taken in reliance upon the advice of professionals selected with due care in respect of the subject matter in question. Notwithstanding the foregoing, a Litigation Trustee may, without liability therefor, retain the services of any professional services firm with which the Litigation Trustee is affiliated.

    7.4   Distribution of Net Avoidance Litigation Proceeds and Net MAFCO Litigation Proceeds. Net Avoidance Litigation Proceeds and Net MAFCO Litigation Proceeds shall be distributed as follows:

    (a)   four and nine tenths percent (4.9%) of the Net Avoidance Litigation Proceeds shall be distributed to the holders of Allowed Fixed Senior Secured Claims pursuant to Section 4.2(b)(i)(7) hereof.

    (b)   the first four million five hundred thousand dollars ($4,500,000) of Net MAFCO Litigation Proceeds, thirty percent (30%) of any remaining Net MAFCO Litigation Proceeds and thirty percent (30%) of Net Avoidance Litigation Proceeds shall be distributed to the holders of Allowed Unsecured Claims pursuant to Section 4.4 hereof.

    (c)   seventy percent (70%) of Net MAFCO Litigation Proceeds after payment of the first four million five hundred thousand dollars ($4,500,000) of Net MAFCO Litigation Proceeds to holders of Allowed Unsecured Claims in classes 4A through 4I shall be distributed to the holders of Allowed Class Securities Litigation Claims and Allowed Equity Interests in Entertainment pursuant to Sections 4.5 and 4.6(a) hereof.

    (d)   sixty five and one tenth percent (65.1%) of Net Avoidance Litigation Proceeds shall be distributed to Newco.

    7.5   Professional Fees and Expenses.

    (a) Avoidance Litigation Trust. On the Consummation Date, Newco shall execute and deliver to the Avoidance Litigation Trustee the Avoidance Litigation Trust Loan Agreement pursuant to which it shall agree for a period of five (5) years from and after the Consummation Date to make loans to the Avoidance Litigation Trust for the payment of all professional fees and expenses of the Avoidance Litigation Trustee in an amount not to exceed one million one hundred thousand dollars ($1,100,000) in the aggregate, it being understood that one hundred thousand dollars of such amount shall be for the exclusive purpose of paying fees and expenses of the Creditors Committee which may

41

become due and payable pursuant to Section 6.16 hereof.  On the Consummation Date, the Avoidance Litigation Trustee shall execute and deliver to Newco the Avoidance Professional Fee Reimbursement Note pursuant to which the Avoidance Litigation Trust shall be obligated to reimburse Newco for any and all sums advanced pursuant to the Avoidance Litigation Trust Loan Agreement together with simple interest at the rate of ten percent (10%) per annum which obligation shall be secured by a valid, binding, enforceable, perfected, first priority security interest in and lien against all assets of the Avoidance Litigation Trust.  On the Consummation Date and thereafter whenever reasonably requested to do so by Newco, the Avoidance Litigation Trustee shall execute and deliver UCC-1 financing statements and any other documents or interests requested by Newco to evidence a perfected first priority security interest in and lien against all assets of the Avoidance Litigation Trust to secure repayment of the Avoidance Professional Fee Reimbursement Note.  After payment in full of the Avoidance Professional Fee Reimbursement Note, the Avoidance Litigation Trustee shall have the right, but not the obligation, to reserve all or a portion of any recoveries realized by the Avoidance Litigation Trustee to pay for future professional fees and expenses.

     (b) MAFCO Litigation Trust.  On the Consummation Date, Newco shall execute and deliver to the MAFCO Litigation Trustees the MAFCO Litigation Trust Loan Agreement pursuant to which it shall agree for a period of five (5) years from and after the Consummation Date to make loans to the MAFCO Litigation Trust for the payment of all professional fees and expenses of the MAFCO Litigation Trustees in an amount not to exceed one million dollars ($1,000,000) in the aggregate.  On the Consummation Date, the MAFCO Litigation Trustee shall execute and deliver to Newco the MAFCO Professional Fee Reimbursement Note pursuant to which the MAFCO Litigation Trust shall be obligated to reimburse Newco for any and all sums advanced pursuant to the MAFCO Litigation Trust Loan Agreement together with simple interest at the rate of ten percent (10%) per annum which obligation shall be secured by a valid, binding, enforceable, perfected, first priority security interest in and lien against all assets of the MAFCO Litigation Trust.  On the Consummation Date and thereafter whenever reasonably requested to do so by Newco, the MAFCO Litigation Trustees shall execute and deliver UCC-1 financing statements and any other documents or interests requested by Newco to evidence a perfected first priority security interest in and lien against all assets of the MAFCO Litigation Trust to secure repayment of the MAFCO Professional Fee Reimbursement Note.  After payment in full of the MAFCO Professional Fee Reimbursement Note, the MAFCO Litigation Trustees shall have the right, but not the obligation, to reserve all or a portion of any recoveries realized by the MAFCO Litigation Trustees to pay for future professional fees and expenses.

7.6  <u>Commencement of Avoidance Actions</u>.  Unless otherwise authorized by the Bankruptcy Court, the Avoidance Litigation Trustee may not commence actions under sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code later than four (4) months after the Consummation Date.

7.7  <u>Reduction of Judgment and Indemnifications</u>.  It is the intention of the Proponents, the Creditors Committee, the Equity Committee, LaSalle, High River, Westgate and the Trustee that no Exculpated Person shall have any liability to any person or entity, including without limitation, Contribution Bar Parties, including, without limitation, any liability with respect to claims in the nature of contribution or indemnification, however denominated or described, in connection with, arising out of or in any way related to Litigation Claims or Covered Claims and that any such claims-over shall be satisfied as provided herein.

(a)  No Exculpated Person shall have any liability to any Contribution Bar Party for contribution or indemnification with respect to any asserted or threatened Litigation Claim or Covered Claim, and the Litigation Trust or the Covered Person, as applicable, (i) shall reduce and credit against any judgment it may obtain against any Contribution Bar Party in any action in connection with, arising out of, or which is in any way related to any Litigation Claim or Covered Claim, the amount of any claim which any such Contribution Bar Party is found to have established against any Exculpated Person on whatsoever theory in any action involving Litigation Claims or Covered Claims; and (ii) shall be obligated to use good faith efforts to obtain, and in the context of a settlement shall be deemed to have obtained, from any such Contribution Bar Party for the benefit of any implicated Exculpated Persons a satisfaction in full of such Contribution Bar Party's claim against any such Exculpated Person.

(b) Each Exculpated Person shall provide and cooperate in discovery in any action involving the Litigation Trust or Covered Person and one or more of the Contribution Bar Parties, but shall retain all rights to object to discovery requests under applicable law, as if the Exculpated Person were named as a party to the action. In addition, neither Litigation Trust nor any Covered Person shall oppose the standing or right of any Contribution Bar Party to make any submission or argument to the court or the jury in any action involving the Litigation Trust or Covered Person and one or more of the Contribution Bar Parties that seeks to account (in whole or in part) for the asserted responsibility of the Exculpated Persons just as if they were parties to the action, including but not limited to the Contribution Bar Parties' right to assert that any Exculpated Person is fully or partially responsible for any claims asserted

43

or relief sought in any such action; provided, however, that
nothing herein shall preclude the Litigation Trust or Covered
Person from contesting on the merits the asserted responsibility
of the Exculpated Person(s).

(c)  For good and valuable consideration including the
benefits to be received hereunder by holders of Claims against
the Debtors, the investment by the New Investors and the
contribution of all issued and outstanding common stock of Toy
Biz to Newco, the applicable Litigation Trust primarily and Newco
secondarily shall by operation of this Plan of Reorganization
indemnify and hold harmless each Exculpated Person from and
against any and all liability (including fees and expenses of
counsel and other professionals (other than any costs of internal
personnel), amounts paid in judgment, penalty or otherwise) with
respect to claims-over on whatsoever theory (whether by way of
third- or subsequent party complaint, cross-claim, separate
action or otherwise) by any person or entity to recover in whole
or in part any liability, direct or indirect, whether by way of
judgment, penalty or otherwise of any person or entity in
connection with, arising out of, or which is in any way related
to any Litigation Claim asserted by such applicable Litigation
Trust or any Covered Claim, it being understood that the
Avoidance Litigation Trust's indemnity shall be subordinate to
its obligation to pay up to one million one hundred thousand
dollars ($1,100,000) of professional fees and expenses of the
professionals for the Avoidance Litigation Trust and the
Creditors Committee or to repay any loans made by third parties
to the Avoidance Litigation Trust and the MAFCO Litigation
Trust's indemnity shall be subordinate to its obligation to pay
up to one million dollars ($1,000,000) of professional fees and
expenses of the professionals for the MAFCO Litigation Trust or
to repay any loans made by third parties to the MAFCO Litigation
Trust; provided, however, that such indemnity shall not apply to
any Independent Cause of Action.  For the avoidance of doubt,
this Section 7.7(c) is not intended to impose upon either
Litigation Trust any indemnification obligation with respect to
Covered Claims that are not Litigation Claims.  Without
limitation on any of the foregoing, if separate counsel is
required as to any such claim-over, the applicable Litigation
Trust shall pay for the reasonable fees and expenses of competent
counsel selected by the Exculpated Person, subject to the
approval of the applicable Litigation Trustee(s) which will not
be unreasonably withheld or delayed.  No settlement of any such
claim-over shall require any financial contribution on the part
of any Exculpated Person.

(d)  Subject to all other provisions in this Section
7.7, the Confirmation Order shall be deemed to constitute a
permanent injunction against all persons and entities, including,
but not limited to, defendants or potential defendants in

controversies in connection with, arising out of, or which are in
any way related to any Litigation Claim or Covered Claim, either
directly, representatively, or in any other capacity from
instituting or prosecuting or continuing to prosecute, any
action, claim or claim-over against any Exculpated Person on
whatsoever theory (whether by way of third or subsequent-party
complaint, cross-claim, separate action or otherwise, and whether
under federal or state law) to recover in whole or in part any
liability, direct or indirect, of such person or entity to any
other person or entity in connection with, arising out of, or
which is in any way related to any Litigation Claim or Covered
Claim.

        (e)   For the avoidance of doubt, nothing contained in
this Plan of Reorganization, either Litigation Trust Agreement,
in the Confirmation Order, or any other order or agreement
executed in connection with the Plan shall preclude any person or
entity from prosecuting or continuing to prosecute any
Independent Cause of Action against any Exculpated Person and
there shall be no rights of indemnification arising hereunder in
connection with Independent Causes of Action.

        (f)   The provisions of this Section 7.7 shall be
binding on and inure to the benefit of all successors and assigns
of the Debtors, the Litigation Trust, Covered Persons, Exculpated
Persons and Contribution Bar Parties.

        7.8   <u>Timing of Distributions</u>.  Notwithstanding anything
contained herein or in the Litigation Trust Agreement to the
contrary, no distributions may be made to any of the
Beneficiaries in their capacity as Beneficiaries of either
Litigation Trust unless and until (a) the applicable Litigation
Trust has paid all sums due and owing pursuant to the applicable
Professional Fee Reimbursement Note, (b) the applicable
Litigation Trust has provided Newco with an instrument in form
and substance reasonably satisfactory to Newco releasing Newco
from any further liability pursuant to the applicable Litigation
Trust Loan Agreement; and (c) after consultation with Newco the
applicable Litigation Trust has established a reasonable reserve
for all indemnity claims theretofore asserted pursuant to Section
7.7(c) hereof and sixty (60) days have elapsed since the
applicable Litigation Trust notifies Newco in writing of the
amount of the reserve and that it waives the right to prosecute
any Litigation Claims that it has not already begun to prosecute
as of the date of such notice.

        7.9   <u>Objections to Claims</u>.

        The Creditors Committee shall have the right to apply
to the Court to direct the Avoidance Litigation Trustee to object
to any Claim not Allowed by this Plan of Reorganization if the

Creditors Committee believes that Newco has not exercised
reasonable business judgement in failing to prosecute or in
settling any specified Claims objections.  In the event that the
Creditors Committee is successful in connection with such
application, Newco shall pay the reasonable fees and expenses of
the Avoidance Litigation Trust in connection with the prosecution
of such objection.

7.10  Jurisdiction.

The Bankruptcy Court shall have jurisdiction over the
Litigation Trustees, the Litigation Trusts, the Litigation
Claims, the Avoidance Litigation Trust Assets and the MAFCO
Litigation Trust Assets, including, without limitation,
jurisdiction to determine all controversies and disputes arising
under or in connection with the Litigation Trust Agreements and
the Litigation Trust Loan Agreements.  Notwithstanding the
foregoing, nothing contained herein shall be construed as
limiting the right of the MAFCO Litigation Trust to assert any
Litigation Claim to which it has title in any court of competent
jurisdiction. The Litigation Trustees shall have the power and
authority to bring any action in the Bankruptcy Court to
prosecute the Litigation Claims.  The Bankruptcy Court shall have
the authority to construe and interpret the Litigation Trust
Agreements and the Litigation Trust Loan Agreements and to
establish, amend and revoke rules and regulations for the
administration of the Litigation Trusts, including, but not
limited to, correcting any defect or supplying any omission, or
reconciling any inconsistency in the Litigation Trust Agreements,
in the manner and to the extent it shall deem necessary or
advisable to make the Litigation Trust fully effective; and all
decisions and determinations by the Bankruptcy Court in the
exercise of this power shall be final and binding upon the
Litigation Trustees, Newco and the Beneficiaries.

SECTION 8.     PROVISIONS GOVERNING DISTRIBUTIONS

8.1  Date of Distributions.

Any distributions and deliveries to be made hereunder
shall be made on the Consummation Date or as soon as practicable
thereafter and deemed made on the Consummation Date.  In the
event that any payment or act under this Plan of Reorganization
is required to be made or performed on a date that is not a
Business Day, then the making of such payment or the performance
of such act may be completed on the next succeeding Business Day,
but shall be deemed to have been completed as of the required
date.

46

8.2   <u>Entities to Exercise Function of Disbursing Agent</u>.

All distributions under this Plan of Reorganization shall, at the election of the Proponents, be made by Newco as Disbursing Agent or such other entity designated by the Proponents prior to the conclusion of the Confirmation Hearing as a Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Newco.

8.3   <u>Surrender and Cancellation of Instruments</u>.

Each holder of a promissory note, Existing Warrant or other instrument evidencing a Claim or Equity Interest (other than a holder of a promissory note issued under any of the Existing Credit Agreements) shall surrender such promissory note, Existing Warrant or instrument to the Disbursing Agent, and the Disbursing Agent shall distribute or shall cause to be distributed to the holder thereof the appropriate distribution, if any, hereunder. No distribution hereunder shall be made to or on behalf of any holder of such a Claim unless and until such promissory note or instrument is received or the unavailability of such note or instrument is reasonably established to the satisfaction of the Disbursing Agent. In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim or Equity Interest that fails to (a) surrender or cause to be surrendered such promissory note or instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent and (b) in the event that the Disbursing Agent requests, furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to the Disbursing Agent, within one (1) year from and after the Consummation Date shall be deemed to have forfeited to Newco all rights, claims and interests and shall not participate in any distribution hereunder.

8.4(a)   <u>Delivery of Distributions</u>.

Subject to Bankruptcy Rule 9010 and except as set forth in Section 8.4(b) below, all distributions to any holder of an Allowed Claim or an Allowed Equity Interest shall be made at the address of such holder as scheduled on the Schedules filed with the Bankruptcy Court unless the Debtors or Reorganized Debtors, as applicable, have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that relates an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to

47

any holder is returned as undeliverable, the Disbursing Agent
shall use reasonable efforts to determine the current address of
such holder, but no distribution to such holder shall be made
unless and until the Disbursing Agent has determined the then
current address of such holder, at which time such distribution
shall be made to such holder without interest; provided that such
distributions shall be deemed unclaimed property under
section 347(b) of the Bankruptcy Code at the expiration of ninety
(90) days after the fourth anniversary of the Consummation Date.
After such date, all unclaimed property or interests in property
shall be distributed on a pro rata basis to other holders of
Claims or Equity Interests in the same class or subclass and the
Claim or Equity Interest in respect of which such property or
interest in property was not delivered shall be discharged and
forever barred. As promptly as practical after the first, second,
third and fourth anniversaries of the Consummation Date, the
Disbursing Agent shall file with the Bankruptcy Court a list of
holders to whom distributions have not been able to be made as of
those anniversary dates because the current address of each such
holder has not been determined. The distributions to be made on
the Consummation Date to each holder of an Allowed Senior Secured
Claim shall be made to the Administrative Agent for distribution
to holders of Allowed Senior Secured Claims in accordance with
the provisions of the Existing Credit Agreements.

     (b)   LaSalle Distributions.

     Provided that LaSalle certifies to the Disbursing Agent
that it has foreclosed upon the Pledged Shares or the Bankruptcy
Court has entered a Final Order declaring that neither Newco nor
the Disbursing Agent shall have any liability to the record
holder of the Pledged Shares for having made distributions in
respect of the Pledged Shares directly to LaSalle, all
distributions in respect of the Pledged Shares shall be
distributed directly to LaSalle in consideration of the lien of
LaSalle under the Indentures and the lien of LaSalle on the
Pledged Shares and the LaSalle Claim, and LaSalle shall tender
the Pledged Shares under the terms of the Fourth Amended Plan to
the Debtors in exchange therefor.  The distributions to be
received by LaSalle in full satisfaction and discharge of the
LaSalle Claim shall be distributed directly to LaSalle.

     8.5   Manner of Payment Under Plan of Reorganization.

     At the option of the Disbursing Agent, any Cash payment
to be made hereunder may be made by a check or wire transfer or
as otherwise required or provided in applicable agreements.

48

8.6    <u>Reserves and Distributions</u>.

        The Disbursing Agent shall reserve in a trust account
for the benefit of holders of Allowed Unsecured Claims cash,
securities or other property in an amount determined by the
Bankruptcy Court on account of (a) Disputed Claims in Class 4
(Unsecured Claims) and Class 5 (Class Securities Litigation
Claims) and, as applicable, each subclass thereof and (b)
Resulting Claims.  Upon the resolution from time to time of
Disputed Claims in Class 4 (Unsecured Claims) and Class 5 (Class
Securities Litigation Claims) and, as applicable, each subclass
thereof, the Disbursing Agent may make distributions on account
of such claims in such manner deemed appropriate in the judgment
of the Disbursing Agent.

8.7    <u>Resulting Claims</u>.

        In the event that any person or entity becomes entitled
to an Allowed Unsecured Claim in subclasses 4A through 4I and to
receive distributions on account of such Allowed Unsecured Claim
as a result of the compromise, adjustment, arbitration,
settlement or enforcement or other resolution of an action
commenced, asserted or which could have been commenced or
asserted by the Avoidance Litigation Trustee and such Allowed
Unsecured claim is a Resulting Claim, such person's or entity's
only rights with respect to the Cash portions of the
distributions it would otherwise have been entitled to as a
holder of such Allowed Unsecured Claim is to take a set off equal
to the aggregate amount of all such Cash payments against any
liability such person has or may have to the Avoidance Litigation
Trust.  Such setoff shall be deemed a distribution under the Plan
on account of such Allowed Claim.

8.8    <u>Distributions After Consummation Date</u>.

        Distributions made after the Consummation Date to
holders of Disputed Claims that are not Allowed Claims as of the
Consummation Date but which later become Allowed Claims shall be
deemed to have been made on the Consummation Date.

8.9    <u>Rights And Powers Of Disbursing Agent</u>.

        (a)    <u>Powers of the Disbursing Agent</u>.  The
Disbursing Agent shall be empowered to (a) effect all actions and
execute all agreements, instruments and other documents necessary
to perform its duties under this Plan of Reorganization, (b) make
all distributions contemplated hereby, (c) employ professionals
to represent it with respect to its responsibilities, and
(d) exercise such other powers as may be vested in the Disbursing
Agent by order of the Bankruptcy Court, pursuant to this Plan of

Reorganization, or as deemed by the Disbursing Agent to be
necessary and proper to implement the provisions hereof.

        (b)   <u>Expenses Incurred on or after the
Consummation Date</u>.  Except as otherwise ordered by the Bankruptcy
Court, the amount of any reasonable fees and expenses incurred by
the Disbursing Agent on or after the Consummation Date
(including, without limitation, taxes) and any reasonable
compensation and expense reimbursement claims (including, without
limitation, reasonable fees and expenses of counsel) made by the
Disbursing Agent, shall be paid in Cash by Newco.

        (c)   <u>Exculpation</u>.  Each Disbursing Agent, from and
after the Consummation Date, is hereby exculpated by all
entities, including, without limitation, holders of Claims and
Equity Interests and other parties in interest from any and all
claims, Causes of Action and other assertions of liability
(including, without limitation, breach of fiduciary duty) arising
out of the discharge by such Disbursing Agent of the powers and
duties conferred upon it hereby or any order of the Bankruptcy
Court entered pursuant to or in furtherance hereof, or applicable
law, except solely for actions or omissions arising out of the
gross negligence or willful misconduct of such Disbursing Agent.
No holder of a Claim or an Equity Interest or other party in
interest shall have or pursue any claim or cause of action
against the Disbursing Agent for making payments in accordance
herewith or for implementing the terms hereof.

     8.10   <u>Distributions of Certain Warrants</u>.

        If on the first (1st) anniversary of the Consummation
Date, any Stockholder Series B Warrants have not been issued,
Newco will issue such Warrants to the Warrant Liquidation Agent
which shall sell such Warrants into the market as promptly as
reasonably practical to permit an orderly sale.  Newco will use
its reasonable efforts either (i) to obtain a no-action letter
from the staff of the Securities and Exchange Commission to the
effect that the staff of the Securities and Exchange Commission
will not recommend any enforcement action if the distribution of
Warrants to the Warrant Liquidation Agent or the resale of
Warrants by the Warrant Liquidation Agent is made without
registration under the Securities Act, or (ii) if it does not
obtain such a no-action letter, file and cause to become
effective a registration statement under the Securities Act
registering that issuance or resale or both, as the case may be,
in either case on before the first (1st) anniversary of the
Consummation Date.  One-half of the fees and expenses of the
Warrant Liquidation Agent shall be paid from the net proceeds of
the sale of those Warrants if those net proceeds are sufficient
to pay the fees and expenses of the Warrant Liquidation Agent.
The balance of the fees and expenses of the Warrant Liquidation

Agent shall be paid by Newco.  Any remaining net proceeds of the
sale of such Warrants shall be delivered to the Disbursing Agent
to be held in a trust account in lieu of the Warrants sold
pursuant to this Section 8.10 for the benefit of holders of Class
5 Claims and Class 6A Equity Interests whose Claims or Equity
Interests become Allowed following the first (1st) anniversary of
the Consummation Date and for all holders of Allowed Class 5
Claims and Allowed Class 6A Equity Interests following the
allowance or disallowance of all Class 5 Claims and Class 6A
Interests.

SECTION 9.  .  PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER
THE PLAN OF REORGANIZATION

9.1  Objections to Claims.

Subject to Section 7.9 hereof, Newco shall be the sole
party to object to Claims.  Any objections to Claims shall be
filed by the latest of (a) ninety (90) days after the
Consummation Date, (b) thirty (30) days after a proof of claim is
filed and served upon Newco, and (c) such later date as may be
fixed by the Bankruptcy Court.

9.2  No Distributions Pending Allowance.

Notwithstanding any other provision hereof, if any
portion of a Claim is a Disputed Claim, no payment or
distribution provided hereunder shall be made on account of the
disputed portion of such Claim unless and until such Disputed
Claim becomes an Allowed Claim.

9.3  Cash Reserve.

On the Consummation Date, Newco shall deposit the sum
of eight million dollars ($8,000,000) in an interest bearing
trust account for the benefit of holders of Allowed Unsecured
Claims under the Plan.

9.4  Distributions After Allowance.

Payments and distributions to each holder of a Disputed
Claim or Equity Interest or any other Claim or Equity Interest
that is not an Allowed Claim or Equity Interest, to the extent
that such Claim or Equity Interest ultimately becomes an Allowed
Claim or Equity Interest, shall be made in accordance with the
provisions hereof governing the class or subclass of Claims or
Equity Interests in which such Claim or Equity Interest is
classified.  As soon as practicable after the date that the order
or judgment of the Bankruptcy Court allowing any Disputed Claim
or Equity Interest or any other Claim or Equity Interest that is
not an Allowed Claim or Equity Interest becomes a Final Order,

the Disbursing Agent shall distribute to the holders of such
Claim or Equity Interest any payment or property that would have
been distributed to such holder if the Claim or Equity Interest
had been allowed on the Consummation Date, together with any
interest earned thereon.

      9.5  <u>Fractional Securities</u>.

      Neither fractional shares of Convertible Preferred
Stock, nor fractional shares of Newco Common Stock, nor
Fractional Warrants shall be distributed pursuant to this Plan of
Reorganization.  Instead, as of the record date for distributions
to any class of Claims or Interests, holders of Allowed Claims or
Allowed Interests otherwise entitled to receive a fractional
share of Convertible Preferred Stock or Newco Common Stock or a
Fractional Warrant shall receive a whole share of Convertible
Preferred Stock or Newco Common Stock or a whole Warrant if the
holder was to receive a fractional share of Convertible Preferred
Stock or Newco Common Stock of 0.5 or more or a Fractional
Warrant to acquire 0.5 shares or more of Convertible Preferred
Stock or Newco Common Stock and no share of Convertible Preferred
Stock or Newco Common Stock or no Warrant if the holder was to
receive a fractional share of Convertible Preferred Stock or
Newco Common Stock of less than 0.5 or a Fractional Warrant to
acquire shares of Convertible Preferred Stock or Newco Common
Stock of less than 0.5.

    SECTION 10.    PROVISION GOVERNING EXECUTORY CONTRACTS AND
                        UNEXPIRED LEASES UNDER THE PLAN

      10.1  <u>General Treatment</u>.

      Except as set forth in Section 10.4 below, this Plan of
Reorganization constitutes a motion by the Debtors governed by
this Plan of Reorganization to assume, as of the Consummation
Date, all executory contracts and unexpired leases to which any
of the Debtors are parties, except for an executory contract or
unexpired lease that (a) has been assumed or rejected pursuant to
Final Order of the Bankruptcy Court, or (b) is specifically
rejected on Schedule 10.1 hereto filed by the Proponents on or
before the commencement of the Confirmation Hearing or such later
date as may be fixed by the Bankruptcy Court, or (c) is otherwise
assumed hereunder.  Any executory contract or unexpired lease
assumed hereunder may be freely assigned by any Debtor to any
other Debtor or Reorganized Debtor or Newco and any such
assignment shall constitute a novation of the obligations of the
assigning Debtor under any such executory contract or unexpired
lease.  Any such assignment shall be effected by filing a notice
thereof with the Bankruptcy Court on or before the commencement
of the Confirmation Hearing.  For purposes hereof, each executory
contract and unexpired lease listed on Schedule 10.1 hereto that

52

relates to the use of occupancy of real property shall include
(a) modifications, amendments, supplements, restatements, or
other agreements made directly or indirectly by any agreement,
instrument, or other document that in any manner affects such
executory contract or unexpired lease, without regard to whether
such agreement, instrument or other document is listed on
Schedule 10.1 hereto and (b) executory contracts or unexpired
leases appurtenant to the premises listed on Schedule 10.1
hereto, including all easements, licenses, permits, rights,
privileges, immunities, options, rights of first refusal, powers,
uses, usufructs, reciprocal easement agreements, vault, tunnel or
bridge agreements or franchises, and any other interests in real
estate or rights in rem relating to such premises to the extent
any of the foregoing are executory contracts or unexpired leases,
unless any of the foregoing agreements are assumed.

10.2   Amendments to Schedule; Effect of Amendments.

        The Debtors shall assume each of the executory
contracts and unexpired leases not listed in Schedule 10.1
hereto; provided, that the Proponents may on or before the last
Business Day before the Confirmation Date amend Schedule 10.1
hereto to delete or add any executory contract or unexpired lease
thereto, in which event such executory contract or unexpired
lease shall be deemed to be, respectively, assumed and, if
applicable, assigned as provided therein, or rejected. The
Proponents shall provide notice of any amendments to
Schedule 10.1 hereto to the parties to the executory contracts or
unexpired leases affected thereby.  The fact that any contract or
lease is scheduled on Schedule 10.1 hereto shall not constitute
or be construed to constitute an admission by any Proponent or
any Debtor that any Debtor has any liability thereunder.

10.3   Bar to Rejection Damage Claims.

        In the event that the rejection of an executory
contract or unexpired lease by any of the Debtors results in
damages to the other party or parties to such contract or lease,
a Claim for such damages, if not heretofore evidenced by a filed
proof of claim, shall be forever barred and shall not be
enforceable against the Debtors, or their properties or interests
in property as agents, successors, or assigns, unless a proof of
claim is filed with the Bankruptcy Court and served upon counsel
for each of the Proponents on or before thirty (30) days after
the earlier to occur of (a) the giving of notice to such party
under Section 10.1 or 10.2 hereof and (b) the entry of an order
by the Bankruptcy Court authorizing rejection of a particular
executory contract or lease.

10.4   <u>Certain Panini Agreements</u>.

(a)   <u>Panini Sticker Agreement</u>.  Notwithstanding anything else contained herein to the contrary, the Panini Sticker Agreement shall be assumed and all amounts owing by any of the Panini Entities to any of the Debtors on or prior to December 31, 1997 shall be forgiven. In addition, Newco shall permit the Panini Entities to assign the Panini Sticker Agreement to any other entity in connection with any subsequent sale of Panini except to a Designated Competitor.

(b)   <u>Panini Comic Distribution Agreement</u>. Notwithstanding anything else contained herein to the contrary, the Panini Comic Distribution Agreement shall be assumed and modified as follows:  (i) the term shall be through December 31, 1998, (ii) the royalty rate through December 31, 1998 shall be six percent (6%), (iii) the minimum guaranteed royalty (A) shall be eliminated for the period from January 1, 1997 through December 31, 1997 and (B) shall be two million dollars ($2,000,000) for the period from January 1, 1998 through December 31 1998, (iv) the license shall entitle the Panini Entities to the use of a minimum of fifty (50) titles at all times during 1998, and (v) any and all amounts owing thereunder to the Debtors on or prior to December 31, 1997 shall be forgiven.  In addition, Newco shall permit the Panini Entities to assign the Panini Comic Distribution Agreement, as modified, to any other entity in connection with a sale of the Panini Entities except to a Designated Competitor.  From and after the Consummation Date, any and all royalties owed to the National Basketball Association in respect of sticker sales and card sales made by Panini pursuant to the NBA License Agreement shall be the sole responsibility of Panini.

(c)   <u>Other Panini Agreements</u>.  All other agreements, if any, by and between Panini and any of the Debtors shall be rejected, terminated and of no further force or effect as of the Consummation Date and neither Panini nor any of the Debtors shall have any liability or Claim as a result of such rejection or termination.

SECTION 11.    CONDITIONS PRECEDENT TO CONFIRMATION DATE
               <u>AND CONSUMMATION DATE</u>

11.1   <u>Conditions Precedent to Confirmation of Plan of Reorganization</u>.

The confirmation of this Plan of Reorganization is subject to satisfaction of the following conditions precedent:

(a)   <u>Confirmation Order</u>.  The Confirmation Order to be entered by the Clerk of the Bankruptcy Court shall be in a

form that (i) does not materially and adversely affect the
benefits to be received hereunder by any of (A) the Debtors'
estates, (B) Toy Biz, (C) the holders of Senior Secured
Claims, (D) the holders of DIP Claims, (E) the holders of
Unsecured Claims, (F) the holders of Class 5 Claims and
Class 6A Equity Interests, (G) High River and Westgate, and
(H) LaSalle; (ii) determines that the Plan satisfies each of
the applicable requirements of section 1129 of the
Bankruptcy Code; (iii) approves the delivery of the
Transmittal Materials to all persons receiving Warrants
under the Plan; (iv) approves the releases contained in the
Stipulation and Agreement; (v) includes the contribution
bar, indemnification and judgment reduction provisions set
forth in section 7.7 hereof, (vi) determines that the
distributions of securities to be made pursuant to this Plan
of Reorganization (other than pursuant to Section
4.2(b)(i)(A)(6)) are exempt from the Securities Act and
state blue sky laws pursuant to section 1145 of the
Bankruptcy Code, (vii) determines that the succession to an
interest in certain privileges and immunities of the Debtors
by the MAFCO Litigation Trust pursuant to Section 7.1(b)
hereof does not constitute a waiver of any such privilege or
immunity and (viii) is otherwise in form and substance
reasonably acceptable to the Proponents, the Creditors
Committee, the Equity Committee, High River, Westgate and
the Trustee.

    11.2  <u>Conditions Precedent to Consummation Date of Plan
of Reorganization</u>.

    The occurrence of the Consummation Date of this Plan of
Reorganization is subject to satisfaction of the following
conditions precedent:

    (a)  <u>SEC Proxy Statement</u>.  The Securities and Exchange
Commission shall have stated that it has no further comments
on the proxy statement filed by Toy Biz with respect to the
meeting of the stockholders of Toy Biz called for the
purpose of approving the transactions contemplated by this
Plan of Reorganization, such proxy statement shall have been
delivered to all holders of Toy Biz common stock in
accordance with the rules of the Securities and Exchange
Commission, twenty (20) business days (computed in
accordance with Schedule 14A of the Securities and Exchange
Commission) shall have elapsed since such delivery and Toy
Biz shareholders shall have voted to approve the
transactions contemplated hereby;

    (b)  <u>HSR</u>. All applicable waiting periods (and any
extensions thereof) under the Hart-Scott-Rodino Antitrust

Improvements Act of 1976 shall have expired or been terminated;

(c) <u>Restructured Panini Loan Documents</u>.  The Restructured Panini Loan Documents shall be in full force and effect;

(d) <u>Secured Lender Consummation Date</u>.  The Consummation Date shall occur not later than October 15, 1998;

(e) <u>Toy Biz Consummation Date</u>.  The Consummation Date shall occur not later than November 20, 1998;

(f) <u>Standstill Agreements</u>.  The Standstill Agreements shall have been executed and delivered by all of the parties thereto;

(g) <u>NBA Agreement</u>.  The Court shall have entered an order (a) approving an NBA Settlement Agreement and the NBA Settlement Agreement shall be in full force and effect, (b) pursuant to which the Bankruptcy Court determines that such NBA Settlement Agreement is fair and equitable and in the best interests of the Debtors' estates, and (c) providing that any reserves required under this Plan of Reorganization on account of the unsecured component of the NBA's Claim shall be based on a Claim in an amount not greater than twenty million dollars ($20,000,000);

(h) <u>Receipt of Certain Funds</u>. Newco shall have received (a) the Perlmutter Capital Contribution, and (b) the proceeds of the loan described in Section 6.20 hereof;

(i) <u>Receipt of Settlement Amount</u>. Berlack, Israels and Liberman LLP shall have received the Settlement Amount from Toy Biz for the benefit of High River and Westgate;

(j) <u>Certain Payments for Contingent Senior Secured Claims</u>.  Chase as agent for the holders of Contingent Senior Secured Claims shall have received (a) the thirteen million dollar ($13,000,000) payment provided for in the definition of Newco Guaranty to be paid to the holders of claims pursuant to the Existing Panini Senior Credit Agreements in accordance with the terms of the Panini Subordination Agreement, and (b) the letters of credit provided for by Section 6.1 hereof; and

(k) <u>Shareholders Agreement</u>.  The Shareholder Agreement shall have been executed and delivered by Isaac Perlmutter, Isaac Perlmutter, T.A., Avi Arad, the New Investors and the Secured Lenders.

56

11.3  <u>Waiver of Conditions Precedent</u>.

Each of the conditions precedent in Sections 11.1 and 11.2 hereof may only effectively be waived, in whole or in part, if waived, by the Proponents acting jointly except that the consent of Toy Biz is not required to waive the condition precedent contained in Section 11.2(d) hereof.  Any such waiver of a condition precedent in Section 11.1 or 11.2 hereof may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action other than filing a notice of waiver with the Bankruptcy Court and otherwise proceeding to consummate this Plan of Reorganization. Notwithstanding the foregoing, the conditions precedent contained in Sections 11.1(a)(i)(E) and 11.2(g) may only be waived with the consent of the Creditors Committee, the condition precedent contained in section 11.1(a)(i)(F) may only be waived with the consent of the Trustee, the Equity Committee, High River and Westgate, the conditions precedent contained in sections 11.1(a)(i)(G), (iii), and (iv) may only be waived with the consent of High River, Westgate, the Creditors Committee and the Equity Committee the condition precedent contained in section 11.2(h) may only be waived with the consent of High River and Westgate, the condition precedent contained in section 11.1(a)(viii) may only be waived with the consent of the Trustee, the Creditors Committee and the Equity Committee and the condition precedent contained in section 11.1(a)(i)(H) may only be waived with the consent of LaSalle.

SECTION 12.     <u>EFFECT OF CONFIRMATION</u>

12.1  <u>General Authority</u>.

Until the completion of all transactions contemplated to occur on the Consummation Date, the Bankruptcy Court shall retain custody and jurisdiction of each of the Debtors, its properties and interests in property and its operations.  On the Consummation Date, each of the Debtors, its properties and interests in property and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, except as provided in Section 14.1 hereof.

12.2  <u>Discharge of Debtors</u>.

(a)  <u>General Discharge</u>.  The treatment of all Claims against or Equity Interests in each of the Debtors hereunder shall be in exchange for and in complete satisfaction, discharge and release of all Claims against and any Equity Interests in such Debtor of any nature whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against its estate or properties or interests in property.

57

Except as otherwise provided herein, upon the Consummation Date, all Claims against and Equity Interests in each of the Debtors will be satisfied, discharged and released in full exchange for the consideration provided hereunder. All entities shall be enjoined and precluded from asserting against any Debtor or Newco or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date.

(b) <u>Exculpations</u>. From and after the Consummation Date, no Exculpated Person shall have or incur any liability to any other Exculpated Person or any entity accepting any distribution under this Plan of Reorganization (i) for any act taken or omission made in connection with or in any manner related to negotiating, formulating, implementing, confirming or consummating (x) this Plan of Reorganization (or prior iterations) or the transactions contemplated hereby, or (y) any agreement, instrument or other documents created in connection with this Plan of Reorganization, (ii) for the actions or other participation of such Exculpated Person in respect of any of the Reorganization Cases (including the negotiation of any other plan of reorganization, settlement or arrangement), (iii) for any matters that relate, directly or indirectly, by implication or otherwise, to the Existing Credit Documents, the DIP Claims, or the Senior Secured Claims, (iv) for any matters that relate, directly or indirectly, to or were asserted in or could have been asserted in the District Court Complaint, or (v) for any matters that relate, directly or indirectly, to or were asserted in or could have been asserted in the LaSalle Action; <u>provided, however</u>, that such exculpation shall not affect the rights and obligations of parties to agreements entered into in connection with the Plan of Reorganization or under the Plan of Reorganization. All Exculpated Persons as well as all entities receiving any distribution under this Plan of Reorganization shall be enjoined and precluded from asserting against the Exculpated Persons or their respective properties or interests in property any other Claims based upon liability exculpated pursuant to the preceding sentence.

(c) <u>Treatment of Indemnification Claims</u>. Notwithstanding Del. Code Ann. (General Corporation) §145 (1997) or any other state or local statute or rule, all existing indemnification and other similar obligations as of the Confirmation Date of any Debtor are released or discharged except as provided in this Section 12.2(c), and the Confirmation Order shall be deemed an injunction enforcing such releases and discharge; provided, that: (i) existing indemnity obligations shall survive to the extent of insurance coverage, but shall in no event entitle such directors or officers to assert any Claim (including, without limitation, with respect to any deductible)

58

against Newco, Toy Biz, Marvel or any of their Affiliates, and
(ii) any such directors or officers shall be entitled to make
Claims only against the insurance and the proceeds thereof.  This
Section 12.2(c) shall not limit any right of directors or
officers or former directors and officers from asserting Claims
against any Debtor based upon timely filed proofs of claim or
requests for payment of Administration Expense Claims nor shall
it limit the right of Newco to object to any such Claim or
request for payment of Administration Expense Claims.
Notwithstanding any provision of the Plan to the contrary,
nothing contained herein, including, but not limited to, Section
12.2(a) hereof, shall be construed or interpreted in any manner
to eliminate, reduce or otherwise limit in any fashion the
availability of insurance coverage for the benefit of officers
and directors, whether for indemnification, liability or other
purposes.  Newco shall render reasonable assistance to the
officers and directors in ensuring their access to such insurance
coverage, it being understood that such assistance shall not in
any way operate as a waiver of Newco's right to object to the
Allowance of any Administration Expense Claim or proof of claim.
To the extent such Claims are Allowed Claims, such Claims shall
be treated under this Plan of Reorganization with Claims in any
class or subclass, as applicable, having the same legal rights
and priority as such Claims; provided, that the Confirmation
Order shall establish a bar date for Administration Expense
Claims.

        12.3  <u>Term of Injunctions or Stays</u>.

        Unless otherwise provided, all injunctions or stays
provided for in the Reorganization Cases under sections 105 or
362 of the Bankruptcy Code, or otherwise, and in existence on the
Confirmation Date, shall remain in full force and effect through
and including the Consummation Date.

        SECTION 13.  <u>WAIVER OF CLAIMS</u>

        13.1  <u>Avoidance Actions</u>.

        Effective as of the Consummation Date, Newco shall have
the right to prosecute and release any actions under sections
510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy
Code that are not Litigation Claims  conveyed, granted, assigned,
transferred or delivered to the Avoidance Litigation Trust in
accordance with Section 7.1(a) of this Plan of Reorganization and
the applicable Litigation Trust shall have the right to prosecute
and release any actions under sections 510, 544, 545, 547, 548,
549, 550, 551 and 553 of the Bankruptcy Code that are Litigation
Claims conveyed, granted, assigned, transferred or delivered to
the Avoidance Litigation Trust in accordance with Section 7.1(a)
of this Plan of Reorganization; <u>provided</u>, <u>however</u>, that

notwithstanding the foregoing, the applicable Litigation Trust, the Debtors and Newco will be deemed to have waived the right to assert or pursue any claims, rights, and causes of action to recover preferences or fraudulent conveyances, or to pursue similar avoidance actions against any current customers or suppliers of the Panini Entities (solely in such capacities) or otherwise relating, directly or indirectly, to any of the Panini Entities.

SECTION 14.    RETENTION OF JURISDICTION

14.1  Retention of Jurisdiction.

The Bankruptcy Court may retain jurisdiction of and, if the Bankruptcy Court exercises its retained jurisdiction, shall have exclusive jurisdiction of all matters arising out of, and related to, the Reorganization Cases and this Plan of Reorganization pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)  To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)  To determine any and all adversary proceedings, applications and contested matters including, without limitation, proceedings relating to Litigation Claims, matters relating to the extent, scope and effect of the succession to certain privileges and immunities by the MAFCO Litigation Trust pursuant to Section 7.1(b) and the MAFCO Litigation Trust Agreement, matters concerning the Litigation Trust and actions pursuant to Section 7.9 hereof;

(c)  To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided herein;

(d)  To hear and determine any timely objections to Administration Expense Claims or to proofs of claim and equity interests filed, both before and after the Confirmation Date, including, without limitation, any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Equity Interest, in whole or in part;

(e)  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

60

(f)   To issue such orders in aide of execution of this Plan of Reorganization, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)   To consider any amendments to or modifications of this Plan of Reorganization, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)   To hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Consummation Date;

(i)   To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan of Reorganization, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(j)   To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k)   To hear any other matter not inconsistent with the Bankruptcy Code;

(l)   To hear and determine all disputes involving the existence, scope and nature of the discharges granted under Section 12.2 hereof;

(m)   To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of this Plan of Reorganization;

(n)   To hear and determine all disputes regarding the reasonableness of fees requested pursuant to the Litigation Trust Professional Fee Guaranty or any other dispute concerning the administration of the Litigation Trust; and

(o)   To enter a final decree closing the Reorganization Cases.

14.2   <u>Amendment of Plan of Reorganization</u>.

Amendments of this Plan of Reorganization may be proposed in writing only jointly by the Proponents at any time before confirmation, provided that this Plan of Reorganization, as amended, satisfies the conditions of sections 1122 and 1123 of

the Bankruptcy Code, and the Proponents shall have complied with
section 1125 of the Bankruptcy Code.  This Plan of Reorganization
may be amended only by the Proponents acting jointly at any time
after confirmation and before substantial consummation, provided
that this Plan of Reorganization, as amended, satisfies the
requirements of sections 1122 and 1123 of the Bankruptcy Code and
the Bankruptcy Court, after notice and a hearing, confirms this
Plan of Reorganization as amended under section 1129 of the
Bankruptcy Code and the circumstances warrant such amendments.  A
holder of a Claim or Equity Interest that has accepted this Plan
of Reorganization shall be deemed to have accepted this Plan of
Reorganization as amended if the proposed amendment does not
materially and adversely change the treatment of the Claim or
Equity Interest of such holder.  Notwithstanding the foregoing,
this Plan of Reorganization may not be amended in a manner which
(a) adversely changes the distributions to holders of Unsecured
Claims or otherwise materially and adversely affects the rights
of holders of Unsecured Claims without the consent of the
Creditors Committee, (b) adversely changes the distributions to
the holder of the LaSalle Claim or otherwise materially and
adversely affects the rights of holders of the LaSalle Claim
without the consent of LaSalle, (c) adversely changes the
distributions to holders of Equity Interests in Class 6A or
otherwise materially and adversely affects the rights of holders
of Equity Interests in Class 6A without the consent of the Equity
Committee, High River, Westgate, LaSalle, and the Trustee, or (d)
adversely impacts the rights of High River and Westgate with
respect to the Settlement Payment without the consent of High
River and Westgate.  Notwithstanding the foregoing, this Plan of
Reorganization may not be amended in a manner which increases the
distributions to any class of Claims or Equity Interests without
the consent of the Creditors Committee, the Equity Committee,
LaSalle, High River, Westgate and the Trustee.

       SECTION 15.    MISCELLANEOUS PROVISIONS

          15.1   Payment of Statutory Fees.

          All fees payable under section 1930, chapter 123, title
28, United States Code, as determined by the Bankruptcy Court at
the Confirmation Hearing, shall be paid on the Consummation Date.
Any such fees accrued after the Consummation Date will constitute
an Allowed Administration Expenses Claim and be treated in
accordance with Section 2.2 hereof.

          15.2   Retiree Benefits.

          On and after the Consummation Date, pursuant to section
1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors or
Newco, as applicable, shall continue to pay all retiree benefits
(within the meaning of section 1114 of the Bankruptcy Code), at

                              62

the level established in accordance with subsection (e)(1)(B) or
(g) of section 1114 of the Bankruptcy Code, at any time prior to
the Confirmation Date, for the duration of the period each Debtor
has obligated itself to provide such benefits and shall assume
such obligations.

    15.3  <u>Compliance with Tax Requirements</u>.

    In connection with the consummation of this Plan of
Reorganization, the Debtors shall comply with all withholding and
reporting requirements imposed by any taxing authority, and all
distributions hereunder shall be subject to such withholding and
reporting requirements.

    15.4  <u>Recognition of Guaranty Rights</u>.

    The classification of and manner of satisfying all
Claims hereunder take into account (a) the existence of
guaranties by certain Debtors of obligations of other Debtors and
(b) the fact that the Debtors may be joint obligors with each
other or other entities with respect to an obligation.  All
Claims against the Debtors based upon any such guaranties or
joint obligations shall be discharged in the manner provided in
this Plan of Reorganization; provided, that no creditor shall be
entitled to receive more than a single satisfaction of its
Allowed Claims.

    15.5  <u>Severability of Plan Provisions</u>.

    In the event that, prior to the Confirmation Date, any
term or provision of this Plan of Reorganization is held by the
Bankruptcy Court to be invalid, void or unenforceable, the
Bankruptcy Court shall, with the consent of the Proponents and
the Trustee (which consent shall not be unreasonably withheld or
delayed), have the power to alter and interpret such term or
provision to make it valid or enforceable to the maximum extent
practicable, consistent with the original purpose of the term or
provision held to be invalid, void or unenforceable, and such
term or provision shall then be applicable as altered or
interpreted.  Notwithstanding any such holding, alteration or
interpretation, the remainder of the terms and provisions hereof
shall remain in full force and effect and shall in no way be
affected, impaired or invalidated by such holding, alteration or
interpretation.  The Confirmation Order shall constitute a
judicial determination and shall provide that each term and
provision hereof, as it may have been altered or interpreted in
accordance with the foregoing, is valid and enforceable in
accordance with its terms.

15.6   <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan of Reorganization shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without regard to the principles of the conflicts of law.

15.7   <u>Further Assurances</u>.  All parties in interest shall execute and deliver such documents, instruments, certificates, assignments, and other writings, and do such other acts as may be necessary or desirable to carry out the intents and purposes of this Plan of Reorganization, including, without limitation, effecting the Merger Agreement.

15.8   <u>Time of the Essence</u>.

Time shall be of the essence relative to any and all dates contained in this Plan of Reorganization on the Confirmation Date.

15.9   <u>Counterparts</u>.

This Plan of Reorganization may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

15.10   <u>Notices</u>.

All notices, requests, and demands, to be effective, shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

        MARVEL ENTERTAINMENT GROUP, INC.
        387 Park Avenue South
        12th Floor
        New York, New York 10016
        Attn:  Mr. Joseph Calamari
        Telephone:   (212) 696-0808
        Telecopier:  (212) 576-9260

If to Toy Biz:

    TOY BIZ, INC.
    685 Third Avenue
    New York, New York 10017
    Attn:  Mr. Joseph M. Ahearn
    Telephone:   (212) 588-5103
    Telecopier:  (212) 588-5330

          -and-

    BATTLE FOWLER LLP
    75 East 55th Street
    New York, New York 10022
    Attn:  Lawrence Mittman, Esq.
        Douglas L. Furth, Esq.
        Madlyn Gleich Primoff, Esq.
    Telephone:   (212) 856-7000
    Telecopier:  (212) 856-7807

          -and-

    PEPPER HAMILTON LLP
    1201 Market Street, Suite 1600
    P.O. Box 1709
    Wilmington, Delaware 19899
    Attn:  David B. Stratton, Esq.
    Telephone:   (302) 777-6500
    Telecopier:  (302) 777-8865

If to The Secured Lenders:

    THE CHASE MANHATTAN BANK
    380 Madison Avenue, 9th Floor
    New York, New York 10017
    Attn:  Ms. Susan E. Atkins
    Telephone:   (212) 622-4834
    Telecopier:  (212) 622-4880

          -and-

    WACHTELL, LIPTON, ROSEN & KATZ
    51 West 52nd Street
    New York, New York 10019
    Attn:  Chaim J. Fortgang, Esq.
    Telephone:   (212) 403-1000
    Telecopier:  (212) 403-2000

          -and-

65

ZALKIN, RODIN & GOODMAN LLP
750 Third Avenue
New York, New York 10017-2771
Attn:  Richard S. Toder, Esq.
Telephone:  (212) 455-0600
Telecopier:  (212) 682-6331

If to The Chapter 11 Trustee:

John J. Gibbons, Esq.
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione
One Riverront Plaza
Newark, New Jersey 07102
Telephone:  (973) 596-4521
Telecopier:  (973) 639-6250

-and-

Frank J. Vecchione, Esq.
Gibbons, Del Deo, Dolan, Griffinger
  & Vecchione
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  (973) 596-4521
Telecopier:  (973) 639-6250

If to Creditors Committee:

Tonny K. Ho, Esq.
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Telecopier:  (212) 728-8111

If to Equity Committee:

Gary Schildhorn, Esq.
Adelman Lavine Gold and Levin
Two Penn Center Plaza, Suite 1900
Philadelphia, PA 19102-1799
Telephone:  (215) 569-5082
Telecopier: (215) 557-7922

66

If to LaSalle:

        James Spiotto, Esq.
        Chapman & Cutler
        111 West Monroe
        Chicago, IL 60603
        Telephone:  (312) 845-3763
        Telecopier: (312) 701-6604

If to High River and Westgate:

        Edward Weisfelner, Esq.
        Berlack, Israels & Liberman LLP
        120 West 45th Street
        New York, New York 10036
        Telephone:  (212) 704-0100
        Telecopier: (212) 704-0196

67

Dated:        Wilmington, Delaware
              July 31, 1998

                    Respectfully submitted,

                    TOY BIZ, INC.

                    By:
                        Name:    Joseph M. Ahearn
                        Title:   President

              BATTLE FOWLER LLP
              Attorneys for Toy Biz, Inc.
              75 East 55th Street
              New York, New York 10022
              (212) 856-7000

                         -and-

              PEPPER HAMILTON LLP
              1201 Market Street
              Wilmington, Delaware 19899
              (302) 777-6500

              By:

WACHTELL, LIPTON, ROSEN, KATZ
Attorneys for The Secured
 Lenders
51 West 52nd Street
New York, New York  10019
(212) 403-1000

                    -and-


RICHARDS, LAYTON & FINGER, P.A.
Attorneys for The Secured
 Lenders
One Rodney Square
Wilmington, Delaware  19899
(302) 658-6541

By: _____

69

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - -

In re

MARVEL ENTERTAINMENT GROUP,
INC., THE ASHER CANDY COMPANY,        Case No. 97-638-RRM
FLEER CORP., FRANK H. FLEER
CORP., HEROES WORLD
DISTRIBUTION, INC., MALIBU
COMICS ENTERTAINMENT, INC.,
MARVEL CHARACTERS, INC.,
MARVEL DIRECT MARKETING INC.,
and SKYBOX INTERNATIONAL,
INC.,

                    Debtors.
- - - - - - - - - - - - - - -

AFFIDAVIT OF SERVICE


STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

        Jeffrey M. Traurig, being duly sworn, deposes and says:

        1.    I am over the age of 18 years and am not a party
to this action.

        2.    I am an associate attorney at the firm of Battle
Fowler LLP, attorneys for Toy Biz, Inc.

        3.    On the 31st day of July, 1998, I caused true
copies of the *Fourth Amended Joint Plan of Reorganization
Proposed by the Secured Lenders and Toy Biz, Inc.* to be served
upon all parties in New York and New Jersey by hand, and upon all

738353.3 7/31/98 4:09p

other parties by overnight delivery for Monday delivery, at the
addresses set forth on the annexed service list.

_Jeffrey M. Traurig_
Jeffrey M. Traurig

Sworn to before me this
31st day of July, 1998

_Beth Ann Marcuso_
Notary Public

BETH ANN MARCUSO
Notary Public, State of New York
No. 60-4566678
Qualified in Westchester County
Cert. Filed in New York County
Commission Expires 1-31-98

## MARVEL ENTERTAINMENT
## SPECIAL SERVICE LIST

| | |
|---|---|
| James L. Patton, Jr., Esq.<br>Laura Davis Jones, Esq.<br>Young, Conaway, Stargatt & Taylor<br>Rodney Square North<br>11th & Market Streets<br>P.O. Box 391<br>Wilmington, DE 19801<br>Phone: (302) 571-6600<br>Fax: (302) 571-1253 | John D. Balaguer, Esq.<br>White & Williams, LLP<br>824 Market Street, #902<br>Wilmington, DE 19801<br>Phone: (302) 467-4501<br>Fax: (302) 654-0245 |
| Theresa K.D. Currier, Esq.<br>Adam G. Landis, Esq.<br>Duane, Morris & Heckscher LLP<br>1201 Market Street, Ste. 1500<br>Wilmington, DE 19801<br>Phone: (302) 571-5550<br>Fax: (302) 571-5560 | Kenneth J. Marino, Esq.<br>Blank Rome Comisky & McCauley, LLP<br>1220 Market Street<br>8th Floor<br>Wilmington, DE 19801<br>Phone: (302) 425-6476<br>Fax: (302) 425-6464 |
| Neal J. Levitsky, Esq.<br>Agostini, Levitsky & Isaacs<br>824 Market Street, Ste. 810<br>P.O. Box 2323<br>Wilmington, DE 19899<br>Phone: (302) 654-7444<br>Fax: (302) 656-8920 | William A. Hazeltine, Esq.<br>Potter, Anderson & Corroon<br>350 Delaware Trust Building<br>P.O. Box 951<br>Wilmington, DE 19899<br>Phone: (302) 984-6000<br>Fax: (302) 658-1192 |
| Lawrence C. Ashby, Esq.<br>Ashby & Geddes<br>One Rodney Square<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Phone: (302) 654-1888<br>Fax: (302) 654-2067 | Norman L. Pernick, Esq.<br>Saul, Ewing, Remick & Saul<br>222 Delaware Avenue, #1200<br>Wilmington, DE 19801<br>Phone: (302) 421-6824<br>Fax: (302) 421-5865 |
| Daniel Losco, Esq.<br>Losco & Marconi<br>1116 West Street<br>Wilmington, DE 19801<br>Phone: (302) 656-7776<br>Fax: (302) 656-7774 | Thomas L. Ambro, Esq.<br>Richards Layton & Finger<br>One Rodney Square<br>Wilmington, DE 19801<br>Phone: (302) 651-7612<br>Fax: (302) 658-6548 |

730233.2 7/30/98 4:24p                    -i-

| | |
|---|---|
| Jeffrey C. Wisler, Esq.<br>Williams, Hershman & Wisler, P.A.<br>One Commerce Center, Suite 600<br>Wilmington, DE 19899<br>Phone: (302) 575-0873<br>Fax:   (302) 575-1642 | Stephen W. Spence, Esq.<br>Steven K. Kortanek, Esq.<br>Phillips, Goldman & Spence, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806<br>Phone: (302) 655-4200<br>Fax: (302) 655-4210 |
| Joanne Wills, Esq.<br>Klehr, Harrison, Harvey, Branzburg & Ellers<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801<br>Phone: (302) 426-0977<br>Fax: (302) 426-9193 | Collins J. Seitz, Jr.<br>Connolly Bove Lodge & Hutz<br>1220 Market Street<br>P.O. Box 2207<br>Wilmington, DE 19899<br>Phone: (302) 888-6278<br>Fax: (302) 656-9072 |
| Michael B. Joseph, Esq.<br>Ferry, Joseph & Fink, P.A.<br>824 North Market Street #904<br>Wilmington, DE 19801<br>Phone: (302) 575-1555<br>Fax: (302) 575-1714 | Richard S. Toder, Esq.<br>Zalkin, Rodin & Goodman LLP<br>750 Third Avenue<br>New York, NY 10017<br>Phone: (212) 455-0600<br>Fax: (212) 682-6331 |
| Anthony W. Clark, Esq.<br>Skadden, Arps, Slate, Meagher & Flom<br>One Rodney Square<br>Wilmington, DE 19801<br>Phone: (302) 651-3000<br>Fax: (302) 651-3001 | Jeffrey W. Levitan, Esq.<br>Proskauer, Rose, Goetz & Mendelsohn, LLP<br>1585 Broadway<br>New York, NY 10036<br>Phone: (212) 969-3239<br>Fax: (212) 969-2900 |
| Carl N. Kunz, III, Esq.<br>Murphy Spadaro & Landon<br>824 Market Street<br>P.O. Box 8989<br>Wilmington, DE 19899<br>Phone: (302) 654-4600<br>Fax: (302) 654-4775 | James E. Spiotto, Esq.<br>Chapman & Cutler<br>111 West Monroe Street<br>Chicago, IL 60603<br>Phone: (312) 845-3000<br>Fax: (312) 701-2361 |
| Michael P. Morton, Esq.<br>Michael P. Morton, P.A.<br>1500 North French Street<br>Wilmington, DE 19801<br>Phone: (302) 426-1313<br>Fax: (302) 651-7976 | Edward S. Weisfelner, Esq.<br>Berlack, Israels & Liberman LLP<br>120 West 45th Street<br>New York, NY 10036<br>Phone: (212) 704-0100<br>Fax: (212) 704-0196 |

| | |
|---|---|
| John L. Reed, Esq.<br>Blank Rome Comisky & McCauley LLP<br>1220 Market Street, 8th Floor<br>Wilmington, DE 19801<br>Phone: (302) 425-6405<br>Fax: (302) 425-6464 | Gary M. Schildhorn, Esq.<br>Adelman Lavine Gold & Levin<br>Two Penn Center Plaza, Suite 1900<br>Philadelphia, PA 19102-1799<br>Phone: (215) 568-7515<br>Fax: (215) 557-7922 |
| Thomas E. Lauria, Esq.<br>White & Case<br>First Union Financial Center<br>200 South Biscayne Blvd., Suite 4900<br>Miami, Florida 33131-2352<br>Phone: (305) 371-2700<br>Fax: (305) 358-5744 | John D. McLaughlin, Jr., Esq.<br>U.S. Trustee<br>601 Walnut Street<br>Curtis Center, Suite 950 West<br>Philadelphia, PA 19106<br>Phone: (215) 597-4411<br>Fax: (215) 597-5795 |
| Douglas Liebhafsky, Esq.<br>Chaim J. Fortgang, Esq.<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, NY 10019<br>Phone: (212) 403-1000<br>Fax: (212) 403-2000 | Tonny K. Ho, Esq.<br>Willkie Farr & Gallagher<br>787 Seventh Avenue<br>New York, NY 10019-6099<br>Phone: (212) 728-8000<br>Fax: (212) 728-8111 |
| Susan Power Johnston, Esq.<br>Robinson, Silverman, Pearce,<br>  Aronsohn & Berman LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Phone: (212) 541-2000<br>Fax: (212) 541-1399 | Steven M. Schultz, Esq.<br>Kleinberg Kaplan Wolff & Cohen<br>551 Fifth Avenue, 18th Floor<br>New York, NY 10176<br>Phone: (212) 986-6000<br>Fax: (212) 986-8866 |
| Edward Friedman, Esq.<br>Friedman Kaplan & Seiler<br>875 Third Avenue<br>New York, NY 10022<br>Phone: (212) 833-1100<br>Fax: (212) 355-6401 | Harvey Miller, Esq.<br>Weil, Gotshal & Manges, LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Phone: (212) 310-8000<br>Fax: (212) 310-8007 |
| Sandford L. Frey, Esq.<br>Robinson Diamant & Brill<br>1888 Century Park East, Suite 1500<br>Los Angeles, CA 90067<br>Phone: (310) 277-7400<br>Fax: (310) 277-7584 | Gary E. Klausner, Esq.<br>Troop Meisinger Steuber & Pasich, LLP<br>10940 Wilshire Blvd., 8th Floor<br>Los Angeles, CA 90024-3902<br>Phone: (310) 824-7000<br>Fax: (310) 443-7599 |

| | |
|---|---|
| John J. Gibbons. Esq.<br>Frank J. Vecchione, Esq.<br>Gibbons. Del Deo, Dolan,<br>   Griffinger & Vecchione<br>One Riverfront Plaza<br>Newark. NJ 07102<br>Phone: (973) 596-4500<br>Fax: (973) 596-0545 | Peter J. Kahn. Esq.<br>Johnathan P. Graham. Esq.<br>Williams & Connolly<br>725 Twelfth Street. NW<br>Washington, DC 20005<br>Phone: (202) 434-5000<br>Fax: (202) 434-5029 |
| Robert D. Drain. Esq.<br>Paul, Weiss. Rifkind. Garrison & Wharton<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Phone: (212) 373-3000<br>Fax: (212) 757-3990 | David S. Rosner, Esq.<br>Joseph Muldovan, Esq.<br>David M. Friedman. Esq.<br>Kasowitz, Benson, Torres, & Friedman LLP<br>1301 Avenue of the Americas<br>New York, NY 10153<br>Phone: (212) 506-1700<br>Fax: (212) 506-1800 |
| David Fleischer, Esq.<br>Lawrence Mittman, Esq.<br>Battle Fowler LLP<br>75 East 55th Street<br>New York, NY 10022<br>Phone: (212) 856-7000<br>Fax: (212) 856-7816 | Ellen W. Slights, Esq.<br>U.S. Attorney's Office<br>1201 Market Street, Suite 1100<br>P.O. Box 2046<br>Wilmington. DE 19899-2046<br>Phone: (302) 573-6277<br>Fax: (302) 573-6220 |
| Vincent J.X. Hedrick, II, Esq.<br>Jacobs & Crumplar, P.A.<br>2 East 7th Street (P.O. Box 1271)<br>Wilmington, DE 19899<br>Phone: (302) 656-5445<br>Fax: : (302) 656-5875 | Stephen M. Miller. Esq.<br>Smith Katzenstein & Furlow LLP<br>800 Delaware Avenue (P.O. Box 410)<br>Wilmington. DE 19899<br>Phone: (302) 652-8400<br>Fax: (302) 652-8405 |
| Richard Levy, Esq.<br>Pryor, Cashman, Sherman and Flynn<br>410 Park Avenue<br>New York, NY 10022 | Leonard Benowich, Esq.<br>Roosevelt & Arfa, LLP<br>Suite 106<br>1025 Westchester Avenue<br>White Plains, NY 10604 |
| Jeffrey C. Wisler, Esquire<br>Williams, Hershman & Wisler, P.A.<br>600 One Commerce Center<br>Wilmington. DE 19899<br>Phone: (302) 575-0873<br>Fax: (302) 575-1642 | Karen C. Bifferato, Esq.<br>Connolly Bove Lodge & Hutz<br>1220 Market Street<br>P.O. Box 2207<br>Wilmington. DE 19899<br>Phone: (302) 888-6221<br>Fax: (302) 656-9072 |

| Katherine R. Witherspoon, Esq. | Michael D. DeBaecke, Esq. |
|---|---|
| Klett Lieber Rooney & Schorling | Cooch & Taylor |
| 1201 Orange Street | 824 North Market Street |
| Suite 1001 | Suite 1000 |
| Wilmington, DE 19801 | P.O. Box 1680 |
| Phone: (302) 651-9773 | Wilmington, DE 19899 |
| Fax: (302) 651-9774 | Phone: (302) 984-3823 |
| | Fax: (302) 652-5379 |
| | |