# EXHIBIT 4

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P O BOX 636

WILMINGTON. DELAWARE 19899-0636

TEL (302) 651-3000

FAX (302) 651-3001

http://www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON D C

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

DIRECT DIAL
302-651-3080
DIRECT FAX
888-329-3081
EMAIL ADDRESS
TCLARK@SKADDEN COM

March 8, 2002

**BY FEDERAL EXPRESS**

Edward A. Friedman, Esquire
Friedman, Kaplan, Seiler & Adelman LLP
875 Third Avenue
New York, NY 10022

Re:    Cantor, et al. v. Perelman. et al.,
       D. Del., No. 97-CIV-586 (RRM)

Dear Ed:

        Enclosed is defendants' privilege log and additional production of
documents Bates numbered DEF 17132-17179.

        Very truly yours

        Anthony W. Clark

cc:    Phillip Trainer, Jr., Esq. (by fax. w/out encl.)

Cantor, et al. v. Perelman, et al.
Defendants' Privilege Log

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 1 | 03/24/93 | Donald Drapkin, Esq.; Barry Schwartz, Esq.; William Bevins; Glenn Dickes, Esq.; Joram Salig, Esq.; James Wilson; Jeffrey Kaplan | Richard Easton, Esq.; Harlan Cohen, Esq. | | Draft language for inclusion in offer document for proposed transaction | Attorney-Client |
| 2 | 03/31/93 | | Skadden, Arps, Slate, Meagher & Flom | | Markup of partial draft of public filing | Attorney-Client |
| 3 | 04/93 | | Gerry Kessel | | Notes reflecting advice of counsel | Attorney-Client |
| 4 | 04/05/93 | | Skadden, Arps, Slate, Meagher & Flom | | Draft Offering Memorandum re: transaction | Attorney-Client |
| 5 | 04/06/93 | Files | Joseph Halliday, Esq.; James Douglas, Esq. | A. Myers, Esq. | Memorandum re: communication concerning certain regulations | Attorney-Client |
| 6 | 04/09/93 | Bob Wray, Esq.; Mark Mandel, Esq. | Steven Isko, Esq. | | Draft closing checklist re: transaction | Attorney-Client |
| 7 | 04/12/93 | | Paul, Weiss, Rifkind, Wharton & Garrison | | Handwritten notes of counsel | Attorney-Client |
| 8 | 04/14/93 | | Skadden, Arps, Slate, Meagher & Flom | | Draft public filing | Attorney-Client |
| 9 | 04/16/93 | | Cravath, Swaine & Moore | | Draft Memorandum for Purchasers with notes reflecting advice of counsel | Attorney-Client |
| 10 | 04/21/93 | Glenn P. Dickes, Esq.; Gerry Kessel; Stacy Kanter, Esq. | Eric D. Young, Esq. | | Communication between attorney and client re: note offering | Attorney-Client |

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|-----|------|--------------|-----------|-----|-------------|-----------|
| 11 | 06/11/93 | R. Perelman, D. Dapkin, Esq.; I. Engelman, H. Gittis, Esq.; W. Bevins; B. Schwartz, Esq.; G. Dickes, Esq.; J. Salig, Esq.; L. Winoker; G. Woodland; J. Nowick; J. Kohne; S. Schwartz; J. Wilson; R. Losey, Esq.; J. Kaplan; J. Schunck, Esq.; E. Young; G. Cohen; A. Feenumus; M. Fitzpatrick; M. Shannon; M. Rosendorf | Harlan Cohen, Esq | A. Myers, Esq.; A. Rockas, Esq | Memorandum re communication with the SEC | Attorney-Client |
| 12 | 06/14/93 | Irwin Engelman | Glenn Dickes, Esq | N. Gunsling, Esq.; G. Kessel; L. Winoker; G. Woodland | Memorandum re Marvel Entertainment Group stock | Attorney-Client |
| 13 | 06/15/93 | Irwin Engelman | Glenn Dickes, Esq | D. Dapkin, Esq.; N. Gunsling, Esq.; H. Gittis, Esq.; G. Kessel; L. Winoker; G. Woodland | Memorandum re Marvel Entertainment Group stock | Attorney-Client |
| 14 | 07/07/93 | Irwin Engelman | Glenn Dickes, Esq | D. Dapkin, Esq.; N. Gunsling, Esq.; H. Gittis, Esq.; G. Kessel; L. Winoker; G. Woodland | Memorandum and attachments re: Marvel Entertainment Group shares | Attorney-Client |

2

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 15 | 07/07/93 | Irwin Engelman | Glenn Dickes, Esq. | D. Drapkin, Esq.; N. Ginsling, Esq.; H. Gittis, Esq.; G. Kessel, L. Winoker, G. Woodland | Memorandum re: Marvel Entertainment Group stock | Attorney-Client |
| 16 | 08/08/93 | | Skadden, Arps, Slate, Meagher & Flom | | Markup of partial draft of public filing | Attorney-Client |
| 17 | 08/18/93 | Glenn Dickes, Esq.; Steve Isko, Esq., Robert Losey, Esq.; Alan C. Myers, Esq., James T. Wilson, Laurence Winoker | Joram Salig, Esq. | | Memorandum and draft letter re: public filing | Attorney-Client |
| 18 | 09/15/93 | | Skadden, Arps, Slate, Meagher & Flom | | Draft public filing | Attorney-Client |
| 19 | 10/93 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Partial draft of response to SEC comments and draft rulers to public filing | Attorney-Client |
| 20 | 10/04/93 | | Skadden, Arps, Slate, Meagher & Flom | | Partial draft of public filing | Attorney-Client |
| 21 | 10/04/93 | Glenn Dickes, Esq. | Gerry Kessel | T. Schimek, Esq.; S. Isko, Esq. | Chart and note re: Marvel Entertainment Group Stock | Attorney-Client |
| 22 | 10/22/93 | Laurence Winoker | Steven Isko, Esq. | | Draft public filing and exhibit thereto | Attorney-Client |
| 23 | 01/28/94 | | Skadden, Arps, Slate, Meagher & Flom | | Draft offering memorandum | Attorney-Client |

3

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 24 | 02/94 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Partial closing memorandum re: transaction | Attorney-Client |
| 25 | 02/08/94 | Jeff Novick | Joram Salig, Esq | | Draft resolutions for proposed transaction | Attorney-Client |
| 26 | 02/13/94 | | Skadden, Arps, Slate, Meagher & Flom, Merrill Lynch & Co.; Merrill Lynch, Pierce, Fenner & Smith | | Draft certificate of fair value | Attorney-Client |
| 27 | 06/08/94 | Glenn Dickes, Esq | Gerry Kessel | | Note re Marvel Entertainment Group stock | Attorney-Client |
| 28 | 09/09/94 | Harry F. Schwartz, Esq | Glenn P. Dickes, Esq | | Memorandum re: transactions | Attorney-Client |
| 29 | 04/12/95 | Bobby Jenkins, Paul Shapiro, Esq | Gregory Woodland | | Presentation notes offering | Attorney-Client |
| 30 | 08/95 | Harry F. Schwartz, Esq | Harry F. Schwartz, Esq | | Draft press release with handwritten notes | Attorney-Client |
| 31 | 08/04/95 | Harry F. Schwartz, Esq | Terry Stewart | | Draft press release | Attorney-Client |
| 32 | 08/07/95 | Harry F. Schwartz, Esq | | | Partial draft of public filing | Attorney-Client |
| 33 | 08/08/95 | Harry F. Schwartz, Esq | | | Partial draft of public filing | Attorney-Client |
| 34 | 08/09/95 | Ronald Perelman, Bill Bevins | James T. Conroy | | Drafts of press release | Attorney-Client |
| 35 | 08/10/95 | Harry F. Schwartz, Esq | Bobby Jenkins | | Partial draft of public filing | Attorney-Client |
| 36 | 08/10/95 | Bill Bevins, Harry F. Schwartz, Esq | James T. Conroy | | Draft press release | Attorney-Client |
| 37 | 08/11/95 | Bill Bevins, Harry F. Schwartz, Esq, Irwin Engelman, Terry Stewart, Paul Shapiro, Esq and Bobby Jenkins | James T. Conroy | | Draft press release | Attorney-Client |

4

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|-----|------|--------------|-----------|-----|-------------|-----------|
| 38 | 12/95 or early 1996 | | Barry F. Schwartz, Esq | | Notes re: proposed transaction | Attorney-Client |
| 39 | 12/95 or early 1996 | | Barry F. Schwartz, Esq | | Notes re: transaction | Attorney-Client |
| 40 | 1996 | Barry Schwartz, Esq | | | Flow chart | Attorney-Client |
| 41 | 1996 | | Barry F. Schwartz, Esq | | Notes re: transaction | Attorney-Client |
| 42 | 02/06/96 | | Steve Isko, Esq | | Timeline for proposed acquisition | Attorney-Client |
| 43 | 03/15/96 | Glenn Dickes, Esq | Bobby Jenkins | G. Woodland | Fax of memorandum re: proposed Marvel Entertainment Group public filing | Attorney-Client |
| 44 | 03/15/96 | Glenn Dickes, Esq | Bobby Jenkins | G. Woodland | Fax of memorandum re: draft Marvel Entertainment Group public filing | Attorney-Client |
| 45 | 03/15/96 | Glenn Dickes, Esq | Bobby Jenkins | G. Woodland | Fax of memorandum re: draft Marvel Entertainment Group public filing | Attorney-Client |
| 46 | 03/22/96 | Files | Glenn F. Dickes, Esq | | Notes re: indentures | Attorney-Client |
| 47 | 05/31/96 | Barry F. Schwartz, Esq | Paul Shapiro, Esq | | Partial draft of public filing | Attorney-Client |
| 48 | 06/13/96 | B. Schwartz, Esq., G. Dickes, Esq., J. Salig, Esq., P. Shapiro, Esq., S. Isko, Esq | A. Myers, Esq and S. Kanter, Esq | | Draft Memorandum regarding proposed Marvel joint venture | Attorney-Client |
| 49 | 06/30/96 | B. Schwartz, Esq (document from his files) | | | Draft portion of Toy Biz prospectus reflecting comments from J. Salig, Esq | Attorney-Client |

5

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 50 | 07/12/96 | Glenn Dickes, Esq. | Gregory Woodland | | Summary re: Marvel Entertainment Group debt transmitted for the purpose of giving legal advice | Attorney-Client |
| 51 | 09/24/96 | Laurence Winoker | Glenn Dickes, Esq | | Draft outline re: proposed restructuring | Attorney-Client |
| 52 | 09/24/96 | Laurence Winoker | Glenn Dickes, Esq | | Draft outline re: proposed restructuring | Attorney-Client |
| 53 | 09/25/96 | Irwin Engelman; Bill Bevins; Barry Schwartz, Esq | Gregory Woodland | | Draft document re: proposed restructuring | Attorney-Client |
| 54 | 10/96 | Laurence Winoker | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft press release | Attorney-Client |
| 55 | 10/96 | Laurence Winoker | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft press release | Attorney-Client |
| 56 | 10, 11 or 12/96 | | Barry F. Schwartz, Esq | | Notes re: proposed transaction | Attorney-Client |
| 57 | 10, 11 or 12/96 | | Barry F. Schwartz, Esq | | Notes re: proposed transaction | Attorney-Client |
| 58 | 10/01/96 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft memorandum re: proposed restructuring | Attorney-Client |
| 59 | 10/01/96 | Glenn Dickes, Esq | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft memorandum re: proposed transaction | Attorney-Client |
| 60 | 10/01/96 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft memorandum re: proposed restructuring | Attorney-Client |

6

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|-----|------|-------------|-----------|-----|-------------|-----------|
| 61 | 10/02/96 | Harry F. Schwartz, Esq | Gregory J. Woodland | | Note and attachments re: investor relations | Attorney-Client |
| 62 | 10/03/96 | Terry Bridges, Esq | Julie Grossman, Esq | Steven Isko, Esq | Memorandum re: Marvel Entertainment Group contracts | Attorney-Client |
| 63 | 10/06/96 | Files | Laurence Winkler | | Notes from conference call with Glenn Dickes, Esq, and Paul Shapiro, Esq. re: proposed reorganization | Attorney-Client; Work-Product |
| 64 | 10/07/96 | Bill Bevins; Steve Isko, Esq.; Bobby Jenkins; August Liguori, Scott Marden; Jim Conroy; Glenn Dickes, Esq.; Barry Schwartz, Esq.; Mike Diamond, Esq.; Terry Bridges, Esq.; Julie Grossman, Esq., Stacy Kantor, Esq., Alan Myers, Esq. | Gary Fishman, David Pasquale | | Fax of draft press release and memorandum re: draft press release | Attorney-Client |
| 65 | 10/07/96 | L. Winkler (document from his files) | Paul, Weiss, Rifkind, Wharton & Garrison (document reflects their comments) | | Draft letters regarding waiver and amendment to the Third Amended and Restated Credit Agreement | Attorney-Client |
| 66 | 10/07/96 | L. Winkler (document from his files) | Investor Relations | | Draft press release regarding Marvel 1996 Third Quarter Preliminary Results | Attorney-Client |
| 67 | 10/08/96 | | Glenn Dickes, Esq | | Notes re: proposed restructuring | Attorney-Client |
| 68 | 10/11/96 | Paul Abecassis | Gregory Woodland | | Fax of summary transaction list created by Daniel Galpern, Esq | Attorney-Client |
| 69 | 10/15/96 | Laurence Winkler | Daniel Galpern, Esq | | Transaction timeline | Attorney-Client |

7

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 70 | 10/22/96 | Ronald O. Perelman | Steven R. Isko, Esq | William C. Bevins; Barry F. Schwartz, Esq | Correspondence re: meeting of board of directors of Marvel Entertainment Group | Attorney-Client |
| 71 | 10/24/96 | Irwin Engelman | Glenn Duckes, Esq | | Memorandum re: proposed restructuring | Attorney-Client |
| 72 | 11/96 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft promissory note | Attorney-Client |
| 73 | 11/96 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft promissory note | Attorney-Client |
| 74 | 11/96 | | Norman Ginstling, Esq | | Notes and charts re: proposed restructuring | Attorney-Client; Work Product |
| 75 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 76 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 77 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 78 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |

8

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|---|---|---|---|---|---|---|
| 79 | 11/12/96 | | Norman Ginstling, Esq | | Notes and charts re: proposed restructuring | Attorney-Client; Work Product |
| 80 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 81 | 11/12/96 | | Norman Ginstling, Esq | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 82 | 11/1995? | Glenn Dickes, Esq | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft analysis of indenture | Attorney-Client; Work Product |
| 83 | 12/96 | Ernie Toth, Norman Ginstling, Esq | Ernst & Young | | Draft affidavit | Attorney-Client; Work Product |
| 84 | 12/96 | Norman Ginstling, Esq | Ernie Toth | | Notes re: proposed restructuring | Attorney-Client; Work Product |
| 85 | 12/96 | | Barry F. Schwartz, Esq | | Notes from meeting with Frank Cintes, Esq.; Bobby Jenkins and Paul Shapiro, Esq regarding proposed transaction | Attorney-Client; Work Product |
| 86 | 12/96 | Norman Ginstling, Esq | Ernie Toth | | Analysis re: proposed restructuring | Attorney-Client; Work Product |

9

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|-----|------|--------------|-----------|-----|-------------|-----------|
| 87 | 12/96 | Norman Ginstling, Esq | Ernie Toth | | Analysis re: proposed restructuring | Attorney-Client; Work Product |
| 88 | 12/04/96 | Ronald O. Perelman | Steven R. Isko, Esq. | William C. Bevins; Scott M. Sassa; Barry F. Schwartz, Esq | Correspondence re: meeting of board of directors of Marvel Entertainment Group | Attorney-Client; Work Product |
| 89 | 12/11/96 | Barry F. Schwartz, Esq. | Tom Balleri, Esq. | | E-mail re: proposed transaction | Attorney-Client; Work Product |
| 90 | 12/12/96 | Laurence Winkler | Weil, Gotshal & Manges LLP | | Memorandum re: proposed reorganization | Attorney-Client; Work Product |
| 91 | 12/12/96 | | Ernie Toth | | Notes from meeting with counsel reflecting attorney client communications re: proposed reorganization | Attorney-Client; Work Product |
| 92 | 12/12/96 | Laurence Winkler | Weil, Gotshal & Manges LLP | | Memorandum re: proposed reorganization | Attorney-Client; Work Product |
| 93 | 12/20/96 | Laurence Winkler | Simpson Thacher & Bartlett | | Draft agreement | Attorney-Client |

10

Cantor, et al. v. Perelman, et al.
**Defendants' Supplemental Privilege Log**

| No. | Date | Recipient(s) | Author(s) | CC: | Description | Privilege |
|-----|------|--------------|-----------|-----|-------------|-----------|
| 1 | 07/19/94 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft Offering Memorandum reflecting attorney comments | Attorney-Client |
| 2 | 03/10/95 | | Skadden, Arps, Slate, Meagher & Flom LLP | | Draft Form S-3 reflecting attorney comments | Attorney-Client |

Cantor, et al. v. Perelman, et al.
**Persons Listed on Defendants' Privilege Log**

| Name | Affiliation | Representation |
|------|-------------|----------------|
| Paul Abecassis | Bear Stearns & Co. | Marvel Entertainment Group, Inc. |
| Tom Balliett, Esq. | Kramer, Levin, Naftall & Frankel | Special Committee of Marvel Entertainment Group, Inc. |
| William Bevins | MacAndrews & Forbes Holdings Inc.; Andrews Group Incorporated; Marvel III Holdings, Inc.; Marvel (Parent) Holdings, Inc.; Marvel Holdings Inc.; Marvel Entertainment Group, Inc. | |
| Terry Bridges, Esq. | Andrews Group Incorporated | |
| Gerald Cohen | Ernst & Young LLP | Marvel Holdings Inc. |
| Harlen Cohen, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |
| James T. Conroy | MacAndrews & Forbes Holdings Inc. | |
| Mike Diamond, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | MacAndrews & Forbes Holdings Inc. |
| Glenn Dickes, Esq. | MacAndrews & Forbes Holdings Inc. | |
| James Douglas, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |

| Name | Affiliation | Representation |
|------|-------------|----------------|
| Donald Drapkin, Esq. | MacAndrews & Forbes Holdings Inc.; Andrews Group Incorporated; Marvel III Holdings, Inc.; Marvel (Parent) Holdings, Inc.; Marvel Holdings Inc.; Marvel Entertainment Group, Inc. | |
| Richard Easton, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |
| Anastasia Economos | Ernst & Young LLP | Marvel Holdings Inc. |
| Irwin Engelman | MacAndrews & Forbes Holdings Inc. | |
| Gary Fishman | Marvel Entertainment Group, Inc. | |
| Mike Fitzpatrick | Ernst & Young LLP | Marvel Holdings Inc. |
| Daniel Galpern, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | MacAndrews & Forbes Holdings Inc. |
| Norman Ginstling, Esq. | MacAndrews & Forbes Holdings Inc. | |
| Frank Gittes, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | MacAndrews & Forbes Holdings Inc. |
| Howard Gittis, Esq. | MacAndrews & Forbes Holdings Inc. | |
| Julie Grossman, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | MacAndrews & Forbes Holdings Inc. |
| Joseph Halliday, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |

2

| Name | Affiliation | Representation |
|------|-------------|----------------|
| Steven Isko, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP; Marvel Entertainment Group, Inc. | Marvel Holdings Inc., Marvel (Parent) Holdings, Inc., Marvel Entertainment Group, Inc. |
| Bobby Jenkins | Marvel Entertainment Group, Inc.; Andrews Group Incorporated | |
| Stacy Kanter, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc.; Marvel (Parent) Holdings, Inc.; Marvel Entertainment Group, Inc. |
| Jeffrey Kaplan | Marvel Entertainment Group, Inc. | |
| Gerry Kessel | MacAndrews & Forbes Holdings Inc. | |
| Tom Kohut | MacAndrews & Forbes Holdings Inc. | |
| August Liguori | Marvel Entertainment Group, Inc. | |
| Robert Losey, Esq. | Marvel Entertainment Group, Inc. | |
| Mark Mandel, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |
| Scott Marden | Marvel Entertainment Group, Inc. | |
| Merrill Lynch & Co.; Merrill Lynch Pierce Fenner & Smith Incorporated | | Initial Purchaser of Senior Secured Notes issued by Marvel III Holdings Inc. |

3

| Name | Affiliation | Representation |
|------|-------------|----------------|
| Alan Myers, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc.; Marvel Entertainment Group, Inc.; MacAndrews & Forbes Holdings Inc. |
| Jeff Novick | MacAndrews & Forbes Holdings Inc. | |
| David Pasquale | Marvel Entertainment Group, Inc. | |
| Ronald O. Perelman | MacAndrews & Forbes Holdings Inc.; Mafco Holdings, Inc.; Andrews Group Incorporated; Marvel III Holdings, Inc.; Marvel (Parent) Holdings, Inc.; Marvel Holdings Inc.; Marvel Entertainment Group, Inc. | |
| A. Rockas, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |
| M. Rosendorf | Ernst & Young LLP | Marvel Holdings Inc. |
| Joram Salig, Esq. | MacAndrews & Forbes Holdings Inc. | |
| Scott M. Sassa | Marvel Entertainment Group, Inc. | |
| Terry Schimek, Esq. | Paul, Weiss, Wharton, Rifkind & Garrison | Marvel Holdings Inc.; Marvel (Parent) Holdings Inc. and Marvel Entertainment Group, Inc. |
| Barry Schwartz, Esq. | MacAndrews & Forbes Holdings Inc. | |

4

| Name | Affiliation | Representation |
|---|---|---|
| Sam Schwartz | MacAndrews & Forbes Holdings Inc. | |
| Marty Shannon | Ernst & Young LLP | Marvel Holdings Inc. |
| Paul Shapiro, Esq. | Marvel Entertainment Group, Inc. | |
| Skadden, Arps, Slate, Meagher & Flom LLP | | Counsel to Initial Purchasers for Senior Secured Notes issued by Marvel III Holdings, Inc. |
| Terry Stewart | Marvel Entertainment Group, Inc. | |
| Ernie Toth | MacAndrews & Forbes Holdings Inc. | |
| Weil, Gotshall & Manges | | Marvel Entertainment Group, Inc. |
| James Wilson | Marvel Entertainment Group, Inc. | |
| Laurence Winoker | MacAndrews & Forbes Holdings Inc. | |
| Gregory Woodland | MacAndrews & Forbes Holdings Inc. | |
| Bob Wray, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Marvel Holdings Inc. |
| Eric D. Young, Esq. | Paul, Weiss, Wharton, Rifkind & Garrison | Marvel Holdings Inc. |

# EXHIBIT 5

08 01 02  16:52 FAX 3026542067                                        ⓘ002

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RECEIVED BY
AUG 1  2002
â § ·

| | | |
|---|---|---|
| MARVEL ENTERTAINMENT GROUP, ASHER CANDY COMPANY, FLEER CORP., FRANK H. FLEER CORP., HEROES WORLD DISTRIBUTION, INC., MALIBU COMICS ENTERTAINMENT, INC., MARVEL CHARACTERS, INC., MARVEL DIRECT MARKETING, INC., SKYBOX INTERNATIONAL, INC., RONALD CANTOR, as Trustees of the MAFCO Litigation Trust, and as Successor in interest to Marvel Entertainment Group, Inc., IVAN SNYDER, as Trustee of MAFCO Litigation Trustee, and as successor in interest to Marvel Entertainment Group, Inc., JAMES A. SCARPONE, as Trustee of the MAFCO Litigation Trust, and as successor in interest to Marvel Entertainment Group, Inc., | : : : : : : : : : : : : : : : : : | |
| Plaintiffs, | : | |
| v. | : | C. A. No. 97-586-### (MPT) |
| RONALD O. PERELMAN, MAFCO HOLDINGS, INC., MACANDREWS & FORBES HOLDINGS, INC., ANDREWS GROUP, INC., WILLIAM C. BEVINS, and DONALD G. DRAPKIN, | : : : : : | |
| Defendants. | : | |

## ORDER

At Wilmington, Delaware, this 30th day of July, 2002.

IT IS ORDERED that the Amended Scheduling Order dated February 6, 2002, and the Order dated June 14, 2002 are hereby amended as follows:

1.    **Discovery Cut-Off:** All discovery in this case shall be completed on or before **Friday, August 30, 2002.**

2.    **Pretrial Conference:** On **Thursday, October 31, 2002,** the Court will hold a Rule 16(d) final pretrial conference in Chambers with counsel beginning at **9:30 a.m.** On or before **Monday, September 23, 2002,** plaintiffs' counsel shall forward to defendants' counsel a draft of the pretrial order with the information plaintiff proposes to include in the draft. On or before **Monday, September 30, 2002,** defendant's counsel shall, in turn, provide plaintiff's counsel with comments on the plaintiff's draft and the information defendant proposes to include in the proposed order.

Unless otherwise ordered by the Court, the parties should assume that filing the Pretrial Order satisfies the Pretrial Disclosure Requirement in Fed.R.Civ.P.26(a)(3). Where a case is to be tried to a jury, pursuant to Local Rules 47.1 and 51.1, the parties shall confer and make every reasonable effort to resolve objections, so that a joint filing of the proposed voir dire, instructions to the jury, and special verdict forms or special interrogatories may occur. Any objections or counter proposed voir dire, jury instructions, special verdicts or interrogatories shall be included with these submissions.

The parties shall file the joint proposed final pretrial order, voir dire, instructions to the jury, verdict forms or special interrogatories, consistent with the requirements of this Order and the Final Pretrial and Trial Management Order, on or before **Tuesday, October 15, 2002,** with a courtesy copy to the Magistrate Judge.

UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 6

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### ONE RODNEY SQUARE
### PO BOX 636
### WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000
FAX: (302) 651-3001
http://www.skadden.com

DIRECT DIAL
(302) 651-3169
DIRECT FAX
(888) 329-3968
EMAIL ADDRESS
PLOCKWOO@skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

May 23, 2002

*Via Facsimile*

Emily A. Stubbs
Friedman Kaplan Seiler & Adelman LLP
875 Third Avenue
New York NY 10022-6225

Re:    Ronald Cantor, et al. v. Ronald O. Perelman, et al.
Civil Action No. 97-586-RRM (SLR)

Dear Emily:

I am writing in response to your April 29, 2002 letter regarding defendants' privilege log. Your objections to defendants' assertion of privilege, which were first raised more than a month after the close of discovery, came too late. Defendants produced the privilege log on March 8, and discovery closed on March 29. Your April 29 letter provides no excuse for not raising objections to defendants' assertion of privilege during the discovery period. As a result, plaintiffs' objections have been waived. See, e.g., Ali v. A&G Co., Inc., 542 F.2d 595, 596 (2d Cir. 1976); Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co., Civ. A. No. 88-9752, 1992 U.S. Dist. LEXIS 18162 (E.D. Pa. Nov. 25, 1992); Newton v. Raymark Indus., Inc., Civ. A. No. 84-0692, 1986 WL 1210, *1 (E.D. Pa. Jan. 23, 1986).

Even if your objections had been timely, which they were not, they do not support the production of the documents you seek. Without waiving any objections to the untimeliness of your objections, the documents you challenge as improperly withheld on privilege grounds are addressed seriatim below.

Emily A. Stubbs
May 23, 2002
Page 2


1.      <u>No. 29</u>

        This document consists of a presentation to MacAndrews & Forbes
Holdings Inc. ("MacAndrews & Forbes") regarding potential financing alternatives
the company was considering.  For purposes of clarity, the presentation itself has
already been made available to you (DEF 15503-16), the privilege runs to a notation
on the fax cover sheet, made by Mr. Woodland's assistant on his behalf, for the
purpose of seeking Mr. Shapiro's legal advice regarding the potential offering and to
ensure that Marvel Entertainment Group Inc.'s ("Marvel") immediate parent compa-
nies, Marvel Holdings Inc. ("Holdings"), Marvel (Parent) Holdings Inc. ("Parent")
and Marvel III Holdings Inc. ("Marvel III") (collectively, the "Marvel Holding
Companies") complied with their legal obligations under the indentures and that
Marvel complied with its legal obligations under its bank agreement.  As such, the
communication in issue here was prepared primarily for legal, not business, pur-
poses, and therefore falls within the protection of the attorney-client privilege.  <u>See</u>,
<u>e.g.</u>, <u>Hercules, Inc. v. Exxon Corp.</u>, 434 F. Supp. 136, 147 (D. Del. 1977).

        Mr. Shapiro served as corporate counsel for Marvel and defendant
Andrews Group Inc.  Thus, he served as legal advisor for both Marvel and the
defendants in this action.  Moreover, even if he was viewed as acting solely in his
capacity as a Marvel attorney, communications between an employee of a parent
corporation and an attorney of its subsidiary for the purposes of obtaining legal
advice are protected by the attorney-client privilege.  <u>See United States v. American</u>
<u>Telephone & Telegraph Co.</u>, 86 F.R.D. 603, 616 (D.D.C. 1979) ("The cases clearly
hold that a corporate 'client' includes not only the corporation by whom the attorney
is employed or retained, but also parent, subsidiary, and affiliate corporations").  As
a result, this communication is properly subject to the attorney-client privilege.

2.      <u>Nos. 38, 39, 41</u>

        These documents consist of notes authored by Barry Schwartz, Esq.,
counsel to MacAndrews & Forbes, regarding legal issues concerning transactions
being considered by MacAndrews & Forbes.

Emily A. Stubbs
May 23, 2002
Page 3


Your assertion that these documents are not privileged because they are not "communications between Mr. Schwartz and any client of Mr. Schwartz" is simply wrong. Indeed, the District of Delaware has recognized that notes prepared by an attorney, while not falling within the traditional definition of privilege, "should be protected from disclosure to prevent the disclosure of confidential communications from the client and to insure the confidentiality of the advice counsel gave the client." Phillips Electronics North America Corp. v. Universal Electronics Inc., 892 F. Supp. 108 (D. Del. 1995).

Additionally, and contrary to your assertion, these documents were prepared primarily for the legal purposes described above. As such, they fall within the protection of the attorney-client privilege. See No. 1, supra.

3.    No. 40

This document contains a flow chart and discussion regarding issues pertaining to the Amended and Restated Tax Sharing Agreement between Mafco Holdings, Inc. ("Mafco"), Marvel III and Marvel. The document was prepared primarily for legal purposes, to assist Mr. Schwartz in providing legal advice to Mafco, the parent corporation of MacAndrews & Forbes, and as such is subject to the attorney-client privilege. See No. 1, supra; American Standard, Inc. v. Pfizer Inc., Civ. A. No. 83-834, 1986 U.S. Dist. LEXIS 27389, *6-11 (D. Del. Mar. 31, 1986); see generally Upjohn Co. v. United States, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.")

05/23/2002   14:04   SKADDEN, ARPS → 16224040912123556401                NO.730   P05

Emily A. Stubbs
May 23, 2002
Page 4


4.    No. 4[2][1]

This document was drafted by Steve Isko, Esq., in his capacity as an
attorney at Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), for the purpose
of providing legal advice to Marvel and MacAndrews & Forbes regarding a proposed
transaction. As discussed in No. 2, above, such documents, created by an attorney
for purposes of rendering legal advice to a client, are protected by the attorney-client
privilege.

Plaintiffs further contend that they are entitled to review these
privileged materials on the grounds that the privilege belongs to Marvel, not to
defendants. As discussed above, see No. 1., this document, and a few other docu-
ments listed on the privilege log, are documents for which the defendants shared a
privilege with their subsidiary, Marvel. Your letter provides no authority supporting
a claim that the Mafco Litigation Trustees have a right to access those joint privi-
leged materials. The Mafco Litigation Trust is not tantamount to Marvel's bank-
ruptcy trustee, with all of the power, rights and privileges that a bankruptcy trustee
would have. The Mafco Litigation Trustees have only the authority granted by the
Mafco Litigation Trust Agreement, which provides the trustees with limited rights to
review Marvel's privileged materials, but has no provision allowing the trustees to
access joint privilege materials. Indeed, the Mafco Litigation Trust Agreement could
not have given the trustees such access without the consent of the defendants and
their attorneys because a party is not entitled to unilaterally grant to third parties the
right to inspect jointly privileged materials. See In re Madison Management Group,
212 B.R. 894, 896 (N.D. Ill. 1997) (rejecting bankruptcy trustee's attempt to turn
over joint attorney client privilege to third parties); In re Yarn Processing Patent
Validity Litigation, 530 F.2d 83, 90 (5th Cir. 1976)(attorney client privilege is not
assignable "without the consent of all parties").

---

[1]    Although your letter identifies entry No. 41 on the defendants' privilege log,
your description appears to concern entry No. 42. Please let me know if this
understanding is incorrect.

Emily A. Stubbs
May 23, 2002
Page 5

In addition to the joint privilege, the defendants are not required to
produce these documents to plaintiffs for two reasons. First, defendants would have
no means of guarding against waiver of their privilege as a result of plaintiffs'
disclosure to third parties, i.e., many of the individuals listed on plaintiffs' trial
witness list. Second, we have seen no evidence that plaintiffs have complied with
the procedure set forth in Section 2.4 of the Mafco Litigation Trust Agreement,
which is a prerequisite to plaintiffs' ability to review Marvel's privileged materials.

To the extent that you are not invoking Section 2.4 of the Mafco
Litigation Trust Agreement, but are instead relying on Marvel's waiver of its attorney
client privilege regarding materials relevant to this action, we note that a party cannot
unilaterally waive a jointly held privileged. In re Madison, 212 B.R. at 896.
Furthermore, even if the privilege belonged solely to Marvel, and it does not, we
could not turn over documents based on Marvel's waiver because Marvel has been
purposefully vague about the scope of its waiver. (See Transcript of March 8, 2002
Conference at 34-39) At the very least, defendants would require clear direction
from Marvel as to the scope of its waiver (and supplemental production by Marvel
and plaintiffs of any documents withheld to date on privilege grounds that come
within the scope of Marvel's subject matter waiver) before producing any documents.

5.      Nos. 43, 44 and 45 and 2, 8, 16, 18, 20, 32, 33, 35 and 47

These documents are all portions of draft public filings. It is well
settled that drafts of such regulatory filings are privileged. See, e.g., Jedwab v.
MGM Grand Hotels, Inc., C.A. No. 8077, 1986 WL 3426, *3 (Del. Ch. Mar. 20,
1986). With respect to documents 32, 33, 35, 43, 44, 45 and 47, which are drafts of
Marvel public filings, see No. 4, supra.

6.      No. 50

This document, as reflected in the privilege log, was sent from Greg
Woodland to Glenn Dickes, counsel for MacAndrews & Forbes. It was provided to
Mr. Dickes for the purpose of enabling him to provide legal advice regarding the
Marvel Holding Companies' compliance with their obligations under the indentures
to his client, MacAndrews & Forbes and its subsidiaries, Holdings, Parent and

Emily A. Stubbs
May 23, 2002
Page 6

Marvel III.  As such, it is subject to the attorney-client privilege.  See Nos. 1 and 3, supra.

       7.     Nos. 51, 52, and 53

         These documents consist of analyses of primarily legal issues prepared for the purpose of enabling lawyers for MacAndrews & Forbes to provide legal advice to their clients, MacAndrews & Forbes and its subsidiary, Andrews Group Incorporated ("Andrews").  As such, they are subject to the attorney-client privilege for the reasons set forth in No. 1, supra.

       8.     Nos. 56 and 57

         These documents are handwritten notes which discuss legal issues concerning transactions being considered by MacAndrews & Forbes.  As such, they are primarily legal in nature and are therefore subject to the attorney-client privilege.  See No. 1, supra.

       9.     Nos. 58 and 60

         These documents were prepared by Skadden attorneys for the purpose of providing legal advice to their client, MacAndrews & Forbes, not Marvel, with respect to legal issues surrounding financing alternatives being considered by it and its subsidiary, Andrews.  As such, these documents are protected from disclosure by the attorney-client privilege.

       10.     No. 61[2]

         Document No. 61 contains a notation by Mr. Woodland attaching a series of draft reports relating to alternatives being considered by MacAndrews & Forbes, which was transmitted to Mr. Schwartz in connection with his preparation of legal advice to his clients, MacAndrews & Forbes and Andrews.  As such, the

---

[2]     Plaintiffs' objections to No. 66 are discussed in No. 19, infra.

Emily A. Stubbs
May 23, 2002
Page 7

document is subject to the attorney-client privilege for the reasons set forth in Nos. 1
and 3, <u>supra</u>.

      11.   <u>No. 63</u>

      This document is an error on defendants' privilege log. It pertains to
matters involving the Toy Biz initial public offering which are irrelevant in this case.
Discovery on this issue has not been sought by plaintiffs. Defendants will therefore
remove this document from their privilege log.

      12.   <u>No. 67</u>

      This document was prepared by Mr. Dickes in connection with legal
advice provided to his clients, MacAndrews & Forbes and its parent, Mafco, in
connection with tax issues relating to the proposed restructuring of Marvel. For the
reasons set forth in Nos. 1 and 2, <u>supra</u>, this document is subject to the attorney-
client privilege.

      13.   <u>No. 68</u>

      This document is a timetable for a potential transaction being consid-
ered by Bear Stearns, Marvel's financial advisor with respect to any restructuring of
Marvel's outstanding indebtedness, MacAndrews & Forbes and Marvel as a means of
effecting such a restructuring. The document was transmitted to Paul Abecassis on
October 11, 1996, while these parties were in the process of analyzing various
alternatives for a Marvel restructuring. As a result, legal communications between
Marvel and MacAndrews & Forbes were subject to the attorney-client privilege. <u>See</u>
No. 1, <u>supra</u>. Disclosing a document to Bear Stearns did not, therefore, waive the
privilege. <u>See</u> <u>Jedwab</u>, 1986 WL 3426 at *2 (disclosure of confidential information
to investment banker not waiver of attorney-client privilege where client seeking
legal advice and advice of banker and disclosure regarded as confidential); <u>see</u> <u>also</u>
<u>In re Bieter Co.</u>, 16 F.3d 929, 936-37 (8th Cir. 1994) (communications with inde-
pendent consultant did not waive privilege).

Emily A. Stubbs
May 23, 2002
Page 8

To the extent you are claiming that plaintiffs are entitled to view the document as representatives of Marvel, see No. 4, supra.

14.    Nos. 70 and 88

These documents are correspondence regarding Marvel board meetings and draft minutes from Marvel board meetings prepared by Steven Isko. Such draft documents are protected from disclosure by the attorney-client privilege. See, e.g., Jedwab, 1986 WL 3426 at *3; see also Phillips Electronics North America Corp., 892 F. Supp. at 110. With respect to your assertion regarding Marvel's privilege, see No. 4, supra.

15.    Nos. 74 through 81 and Nos. 84, 86 and 87

These documents were all prepared by or for Norman Ginstling, an attorney employed by MacAndrews & Forbes, for the purpose of analyzing legal issues regarding the tax implications to MacAndrews & Forbes and its parent corporation, Mafco, of restructuring alternatives for Marvel. As such, they are subject to the attorney-client privilege as explained in Nos. 1 and 2, supra.

Moreover, although not mentioned in your objections to the privilege log, these documents were also prepared in anticipation of litigation (Marvel's bankruptcy proceeding and litigation anticipated with the Indenture Trustee and/or bondholders). As such, they are subject to work product protection and are not discoverable by plaintiffs on this additional ground.

No. 83

This document is a draft affidavit which was provided to Norman Ginstling, an attorney employed by MacAndrews & Forbes, and Ernie Toth, a then employee of MacAndrews & Forbes, for the purpose of assisting Mr. Ginstling in his analysis of the legal implications to MacAndrews & Forbes and its parent corporation, Mafco, of tax issues relating to a reorganization of Marvel. As described in No. 13, supra, documents prepared by professionals, such as accountants, for this purpose are protected by the attorney-client privilege.

Emily A. Stubbs
May 23, 2002
Page 9


      Moreover, the document was prepared in anticipation of litigation (the
bankruptcy proceedings) and as such is subject to work product protection. The fact
that this draft was not prepared by Mr. Ginstling does not render the work product
protection inapplicable. See United Coal Co. v. Powell Construction Co., 839 F.2d
958, 966 (3d Cir. 1988).

     16.    No. 85

      This document consists of Mr. Schwartz's notes from a conference
call where legal issues relating to a potential restructuring of Marvel and related tax
issues were being discussed. With respect to your assertion that plaintiffs are entitled
to view such document as representatives of Marvel, see No. 4, supra.

     17.    Nos. 90 and 92

      These documents contain summaries of Marvel's initial Proposed
Joint Plan of Reorganization prepared by Weil, Gotschal & Manges. With respect to
your assertion that plaintiffs are entitled to view such documents as representatives
of Marvel, see No. 4, supra.

     18.    Nos. 30, 31, 34, 36, 37, 64 and 66

      These documents are all draft press releases circulated among
employees and counsel for review and comment before publication. As such, they
are privileged. See No. 14, supra. To the extent plaintiffs' claim entitlement to the
documents as representatives of Marvel, see No. 4, supra.


               Very truly yours,

               Paul J. Lockwood

EXHIBIT 7

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636
———
TEL: (302) 651-3000

FAX: (302) 651-3001

http://www.skadden.com

DIRECT DIAL
302-651-3070
DIRECT FAX
302-651-3001
EMAIL ADDRESS
TALLINGH@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

November 7, 2005

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
United States Courthouse
844 North King Street
Wilmington, Delaware 19801

Re:    Cantor v. Perelman, C.A. No. 97-586-KAJ

Dear Judge Jordan:

Defendants submit this letter in advance of the discovery conference scheduled for Tuesday, November 8, 2005 at 11:00 a.m.

**The Privileged Documents In Dispute.** This discovery dispute concerns plaintiffs' demand for copies of 37 privileged documents on defendants' privilege log. (Pl. Let. at n.1) Plaintiffs do not contest the fact that these documents are subject at least to a joint privilege among the corporate defendants and Marvel Entertainment Group, Inc. ("Marvel"), which was a subsidiary of the corporate defendants when these documents were created.[1]

**Plaintiffs Are Not Marvel's Legal Successors In Interest.** Plaintiffs argue that the joint privilege attaching to the disputed documents belongs to them as purported successors in interest of Marvel by analogizing themselves to (and citing only cases involving) a bankruptcy trustee or new management of a corporation following a merger (both of which are authorized to manage the business and affairs of the corporation, including its attorney-client privilege). (Pl. Let. at 2, citing CFTC v. Weintraub, 471 U.S. 343, 349 (1985), and Medcom Holding Co. v. Baxter Travenol Labs, Inc., 689 F. Supp. 841, 844 (N.D. Ill. 1998)). These analogies do not fit the facts at hand (and plaintiffs' cases are thus irrelevant) because the trustees of the Mafco Litigation Trust (the "Trust") are neither a bankruptcy trustee nor new management of Marvel, but are merely recipients of a

---

[1]  If necessary, defendants will establish that Marvel has no interest in eight of the 37 documents: privilege log entries 5, 6, 10, 13-15, 21 and 22. Defendants stand ready to provide additional affidavits and legal briefs at the Court's request.

The Honorable Kent A. Jordan
November 7, 2005
Page 2

single asset -- a chose in action -- transferred from Marvel to the Trust. See In re Resorts International, Inc., 372 F.2d 154, 169 (3d Cir. 2004)(litigation trust is not a continuation of bankruptcy estate but merely holds assets that once belonged to the estate). A transfer of a corporation's assets does not transfer the attorney-client privilege. SMI Industries Canada, Ltd. v. Caelter Industries, 586 F. Supp. 808, 816 (N.D.N.Y. 1984).

      **Marvel Did Not (And Legally Could Not) Contractually Assign Or Waive A Joint Privilege.** Although plaintiffs and the Trust have a separate and distinct existence from Marvel (which continues to exist), plaintiffs also assert that they are successors to Marvel's attorney-client privilege under the terms of the Mafco Litigation Trust Agreement (the "Trust Agreement"). In fact, the Trust Agreement gives plaintiffs nothing regarding Marvel's privileges except the right to request access to Marvel's privileged materials; no contractual transfer of the privilege took place. Indeed, Newco expressly retained the right to refuse such requests in its "sole discretion." (Trust Agr. § 2.04(a)). The fact that Newco recently purported to grant plaintiffs access to the disputed documents is irrelevant.[2] While Marvel was free to turn over its own privileged materials, neither it nor Newco has the legal power to deliver up documents subject to a joint attorney-client privilege. See Interfaith Housing Delaware, Inc. v. Town of Georgetown, 841 F.Supp. 1393, 1402 (D. Del. 1994)("when one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third party, that one individual's waiver does not effect a waiver as to the others' attorney-client privilege"); Tenneco Automotive Inc. v. El Paso Corp. 2001 WL 1456487 at * 2 (Del. Ch. Nov. 7, 2001)(former subsidiary cannot unilaterally give its insurance company access to common interest privilege documents in possession of former parent).[3]

---

[2]  We note that "Marvel Entertainment, Inc.," which purportedly granted plaintiffs' request for the documents, appears to be "Newco" and has not been shown to be a successor to the pre-bankruptcy Marvel Entertainment Group, Inc., the entity that shared a privilege with defendants. (See Pl. Let. Exs. C, D) We believe that they are separate entities.

[3]  Plaintiffs' reliance on two federal law cases, Medcom, 689 F.Supp. at 842-44, and Polycast Tech. Corp. v. Uniroyal, Inc., 125 F.R.D. 47, 49-50 (S.D.N.Y. 1989), for the proposition that Marvel could unilaterally waive a joint privilege is misplaced for two reasons. First, Delaware law governs because this case concerns state law issues. Samuelson v. Susen, 576 F.2d 546 (3d Cir. 1978)(applying law of forum state, including conflicts of law, for privileges relating to state law issues); Lee v. Engle, 1995 WL 761222 at *7 (Del. Ch. 1995)(Delaware privileges apply to Delaware corporations). In any event, more recent federal case law follows the Delaware rule. See In re Asia Global Crossing, Ltd., 322 B.R. 247, 264 (S.D.N.Y. 2005) ("Once established, the privilege cannot be waived without the consent of all of the parties that share it.")

The Honorable Kent A. Jordan
November 7, 2005
Page 3

     **Plaintiffs' Request Is Barred By The Trust Agreement.**  Moreover, the plaintiff trustees are expressly prohibited by Section 2.04(b) of the Trust Agreement (the contract that created them) from seeking direct access to Marvel's privileged documents that are in the sole possession of third parties:

> If the custodian of any Shared Privilege Matter requested by the Mafco Litigation Trustees under this Section 2.04 denies Newco access to that matter, the Mafco Litigation Trustees may undertake, by application to a court of competent jurisdiction or otherwise, <u>for Newco to be granted access</u> to that matter . . . <u>The Mafco Litigation Trustees shall have no authority to undertake to gain direct access to Shared Privilege Matters</u> to which Newco has been denied access.[4]

     Here, Newco does not have the disputed documents; defendants possess the documents and will not voluntarily give them to Newco (and, of course, are under no obligation to do so).  Therefore, plaintiffs' only option was to seek to compel defendants to produce the documents <u>to Newco</u>, which they have not done.  This not only defeats plaintiffs' present motion, but underscores the fact that plaintiffs are not the legal successor-in-interest to Marvel's privilege.  At most, plaintiffs, Newco and Marvel contractually agreed that Newco would have the right to deny to plaintiffs access to privileged materials in Marvel's possession.

     Accordingly, defendants' assertions of the attorney client privilege should be sustained and plaintiffs' motion to compel denied.

                          Respectfully,

                          /s/ Thomas J. Allingham II

                          Thomas J. Allingham II (I.D. No. 2051)

cc:    Clerk of the Court
       Lawrence C. Ashby, Esq. (by electronic filing)

---

[4]  Instead of citing Section 2.04(b), the provision of the Trust Agreement directly on point, plaintiffs' letter cites the general language in the recitals of the Trust Agreement.  (Pl. Let at 2)

# EXHIBIT 8

## FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
HAL NEIER
PHILIPPE ADLER
MATTHEW S. HAIKEN
PAUL J. FISHMAN
RICHARD M. HOFFMAN
SCOTT M. BERMAN
LANCE J. GOTKO
ELLEN A. HARNICK
ROBERT S. LOIGMAN
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN

1633 BROADWAY

NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100

FACSIMILE (212) 833-1250

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1193

WRITER'S DIRECT FAX
(212) 373-7993

E-MAIL
ESTUBBS@FKLAW.COM

NORMAN ALPERT
MARC N. EPSTEIN
JOHN R. CAHILL
COUNSEL
——————
SNEHA DEVADASON
CRAIG J. CODLIN
ANNE E. BEAUMONT
MELISSA E. LONDON
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MALA AHUJA HARKER
HEATHER WINDT
LISA S. GETSON
SHEILA V. FLYNN
ASAF REINDEL
JOHN N. ORSINI
JEFFREY R. WANG
LAURENCE D. BORTEN
VANESSA RICHARDS
CHAD B. PIMENTEL
JENNY F. KAUFMAN
LEE D. VARTAN
JOSHUA D. JACOBSON
JONATHAN GOTTFRIED

October 19, 2005

David Fleischer, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street,
New York, NY 10022

      Re:   *Cantor, et al. v. Perelman, et al.*
           Civ. Action No. 97-586 (KAJ) (D. Del.)

Dear Mr. Fleischer:

        This firm is counsel to the Trustees of the MAFCO Litigation Trust, who are plaintiffs in *Cantor, et al. v. Perelman, et al.* We write concerning defendants' assertions of privilege with respect to documents that plaintiffs have sought to obtain from defendants. This letter is written pursuant to the terms of section 2.04 of the MAFCO Litigation Trust Agreement, to the extent that Newco – *i.e.*, Marvel Entertainment, Inc. (formerly Marvel Enterprises, Inc.) – has any right to assert or waive any attorney-client privilege, work-product product immunity or other protection from disclosure originally belonging to the Marvel Debtors (as that term is defined in the Trust Agreement). We request that Marvel Entertainment, Inc. provide its consent (1) to the disclosure to the Trustees of the MAFCO Litigation Trust of any and all documents in the possession of defendants in *Cantor, et al. v. Perelman, et al.*; and (2) to the use by the Trustees of all such documents for purposes of the litigation without any restriction.

        Sincerely,

*Emily A. Stubbs*

Emily A. Stubbs

388643.1

# Paul*Hastings*
**ATTORNEYS**

Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street • New York, NY 10022
telephone 212 318 6000 • facsimile 212 319 4090 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(212) 318-6210
davidfleischer@paulhastings.com

October 19, 2005

**VIA E-MAIL – (estubbs@fklaw.com) AND FIRST CLASS MAIL**

Emily A. Stubbs, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, NY  10019-6708

Re:    Cantor v. Perelman

Dear Emily:

I write in response to your letter of today requesting the consent of our client, Marvel Entertainment, Inc., to the disclosure to the Trustees of the MAFCO Litigation Trust of any and all documents in the possession of defendants in the above-referenced action and to the use by the Trustees of all of such documents for purposes of the litigation without any restriction.  Please be advised that Marvel Entertainment, Inc. grants such consent.

Sincerely yours,

David Fleischer
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

LEGAL_US_E # 70141022.1

# EXHIBIT 9

FRIEDMAN KAPLAN SEILER & ADELMAN LLP 

875 THIRD AVENUE

NEW YORK, NY 10022-6225

TELEPHONE (212) 833-1100

FACSIMILE (212) 355-6401

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
212 833 1102

E-MAIL
EFRIEDMAN@FKLAW.COM

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT O. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
HAL NEIER
PHILIPPE ADLER
MATTHEW S. HAIKEN
PAUL J. FISHMAN
RICHARD M. HOFFMAN
LANCE J. GOTKO
ELLEN A. HARNICK
ROBERT S. LOIGMAN
KATHERINE L. PRINGLE
HERYL E. ROSENBLATT

IRA A. FREEDMAN
MARC N. EPSTEIN
COUNSEL

JOHN V.N. PHILIP
MARLA J. WASSERMAN
JOSHUA M. OLSHIN
JONATHAN M. SILVER
DANIEL B. RAPPORT
DAVID I. TANENBAUM
SNEHA DEVADASON
MISHELL B. KNEELAND
CRAIG J. CODLIN
MALLIE B. LEVIN
MICHAEL A. BERG
ANDREW R. GREENINGASS
ANNE E. BEAUMONT
LEE D. SOSSEN
JEFFREY H. WECHSELBLATT
MELISSA E. LONDON
EMILY A. STUBBS
MOORARI K. SHAH
JOSHUA A. POLAK
HEATHER WINDT

June 7, 2002

**BY FEDERAL EXPRESS**

The Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware
United States Courthouse
844 King Street
Wilmington, Delaware  19801

Re:    Ronald Cantor, et al. v. Ronald O. Perelman, et al.
       Civil Action No. 97-586-RRM (SLR) (MPT)

Dear Judge Thynge:

In advance of the telephone conference scheduled in the above matter for June 14, and as promised in my letter of May 28, I write to address defendants' assertions of privilege, as set forth in their privilege log and counsel's letter of May 23.

Plaintiffs believe that defendants have withheld documents that are not properly subject to the privilege claim identified in Defendants' Privilege Log (the "Privilege Log", a copy of which is attached hereto as Exhibit A). On April 29, 2002, plaintiffs wrote to defendants, identifying our specific concerns with respect to particular entries in the Privilege Log, and requesting that defendants either provide further information to support their claim of privilege or produce the requested documents. (*See* Letter from Emily Stubbs, a copy of which is attached hereto as Exhibit B.) When defendants completely failed to respond to the letter or produce any of the documents at issue, plaintiffs wrote Your Honor on May 16, 2002 with respect to this matter. Only after plaintiffs had sought the Court's intervention did defendants finally respond, by letter

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Mary Pat Thynge     - 2 -     June 7, 2002

dated May 23, 2002. (*See* Letter from Paul J. Lockwood ("Lockwood Letter"), a copy of which is attached hereto as Exhibit C.) Having reviewed defendants' response, plaintiffs continue to believe that defendants have inappropriately asserted claims of privilege, and respectfully request that the Court order defendants to produce the withheld documents.

**Plaintiffs Have Not Waived Their**
**Objections to Defendants' Assertions of Privilege**

       Only after repeated requests and two applications by plaintiffs to the Court, did defendants finally produce their privilege log on March 8, 2002 -- just three weeks before the close of discovery and while the parties were in the midst of taking numerous depositions (almost daily), addressing various discovery issues, and preparing extensive briefing in support of their respective motions for summary judgment. Despite their own inexcusable delay, defendants now contend that plaintiffs have waived their right to obtain production of documents improperly withheld by defendants. Defendants' argument should be rejected.

       Defendants first began producing documents on August 9, 2000. When no privilege log was forthcoming, plaintiffs made written requests for a privilege log on January 29, 2001, and again on January 7, 2002, but to no avail. Plaintiffs sought the Court's intervention, and on February 21, 2002, during a telephone conference with the Court, counsel for defendants agreed to "produce a privilege log, as I say, of whatever prelitigation privilege materials we have, and . . . give it to Mr. Friedman in due course." Still, defendants had not produced a privilege log almost two week later, and plaintiffs again sought the Court's intervention on March 5, 2002.

       Finally, on March 8, 2002, defendants provided their initial privilege log.[1] At that point, the parties were in the middle of a period of intensive discovery, including seventeen depositions between March 8 and March 29 (the discovery cutoff), and the preparation of opening, rebuttal, and supplemental expert reports, which were due on March 15, March 29, and April 10, respectively. The parties were also two weeks away from submitting opening papers in support of their respective motions for summary judgment, and briefing on those motions was not completed until April 18. Once these tasks were accomplished, plaintiffs promptly raised their objections to the Privilege Log. Under the circumstances, plaintiffs have acted in an entirely reasonable manner, defendants

---

    [1] Defendants subsequently supplemented the Privilege Log.

189944-3

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Mary Pat Thynge        - 3 -        June 7, 2002

have suffered no prejudice, and there is no basis for a finding that plaintiffs waived their objections to the Privilege Log.[2]

**Documents Concerning Communications with Marvel Employees
and Legal Advice Provided for the Benefit of Marvel Should Be Produced**

      Defendants have withheld numerous documents which were written by or provided to Marvel employees or other persons affiliated with or representing Marvel, or which reflect communications with Marvel employees. *See* Privilege Log Nos. 1, 5-6, 10-11, 13-15, 17, 21-22, 29-37, 42-45, 47-48, 53, 62, 64, 68, 70, 85, 88-90, and 92. In their response to plaintiffs' objections, defendants admit that many of these documents concern legal advice provided to Marvel, *see* Lockwood Letter, at 2, 4, 7-8 (Privilege Log Nos. 29, 42, 68); drafts of Marvel's public filings, *see id.* at 5 (Privilege Log Nos. 32, 33, 35, 43, 44, 45, 47); drafts of documents concerning Marvel's board meetings and minutes, *see id.* at 8 (Privilege Log Nos. 70 and 88); and drafts of Marvel's press releases, *see id.* at 9 (Privilege Log Nos. 30, 31, 34, 36, 37, 64, 66). Thus, to the extent these documents contain privileged information at all, it would appear that the privilege belongs to Marvel, and as Marvel's successors in interest, plaintiffs are entitled to review and obtain those materials.

      Defendants proffer various excuses for refusing to produce the disputed materials, all of which lack merit. First, defendants contend that some of the withheld documents concern matters for which there is a shared privilege between certain of the corporate defendants and Marvel, and plaintiffs cannot access such "jointly privileged" documents without defendants' consent. (*Id.* at 4.) Even if defendants are correct that these materials are jointly privileged[3], there is no basis for withholding them from plaintiffs.

      Defendants' argument proceeds from the mistaken assumption that plaintiffs are simply another "third party" with no other interest in the jointly privileged

---

    [2] In the meantime, by order dated March 21, 2002, this action was transferred from the Hon. Roderick R. McKelvie to the Hon. Sue L. Robinson, who referred this matter to Your Honor to hear and determine all pretrial matters and conduct all hearings. By order dated March 26, 2002, Your Honor directed the parties to submit a Joint Status Report, and by order dated April 11, 2002, Your Honor canceled all previously scheduled hearings, conferences and trial dates.

    [3] Based upon the limited information provided in the Privilege Log and defendants' response to plaintiffs' objections, plaintiffs cannot determine whether the materials in question are in fact properly subject to a "joint privilege."

189944-3

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Mary Pat Thynge           - 4 -                    June 7, 2002

Quite the contrary, plaintiffs stand squarely in Marvel's shoes. When the Court approved the reorganization plan for Marvel, it named plaintiffs as the Trustees of the MAFCO Litigation Trust for the purpose of pursuing this litigation on Marvel's behalf. Marvel contributed to the Trust all of its interest in the claims asserted in this lawsuit and "an interest, to be jointly shared by the MAFCO Litigation Trust with Newco[4], in the Marvel Debtors' right to the benefits of the attorney-client privilege, work-product immunity or other protection from disclosure with respect to the Shared Privilege Matters." (MAFCO Litigation Trust Agreement (the "Trust Agreement," a copy of which is attached hereto as Exhibit D), at 1.) "Shared Privilege Matters" are defined to mean "Documents, information and Communications, the disclosure of which is protected under the attorney-client privilege, work product immunity or other protection from disclosure of the Marvel Debtors (or any of them) immediately prior to the consummation of the Plan" relating to the issues in this lawsuit. (*Id.* at 6.) The Trust Agreement also provides a procedure by which plaintiffs can obtain access to Shared Privilege Materials from Marvel. (*Id.* § 2.04.) The obvious purpose of these provisions is to put plaintiffs on the same footing as Marvel with respect to Marvel's privileged materials.[5]

And with respect to the allegedly "jointly privileged" materials at issue here, the law is clear that defendants have no right to limit Marvel's (or plaintiffs') access. Where a lawyer jointly represents two clients with respect to the same matter, those clients have no reasonable expectation that their communications to the lawyer with respect to the joint matter will be kept secret from each other. *See, e.g., SIPA Prot. Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 588 (Bankr. N.D. Ill. 2000) (citing *In re Madison Mgmt. Group, Inc.*, 212 B.R. 894, 896 (Bankr. N.D. Ill. 1997)). As a result, when the interests of the parties subsequently become adverse (as has occurred here), there is no basis for either side to withhold materials concerning those jointly privileged communications. *See* 246 B.R. at 588.[6] This principle is equally applicable where one of the clients becomes bankrupt and is succeeded by a trustee. The trustee representing the interests of the

---

[4] "Newco" was the newly reconstituted Marvel Enterprises, Inc. that emerged from the Marvel Debtors' reorganization plan.

[5] Newco could refuse plaintiffs access to Shared Privilege Matters only if disclosing the information would have "an adverse economic impact" on Newco. (*See* Trust Agreement, § 2.04(a).) No such claim has ever been asserted by Newco.

[6] Under Delaware law, this rule has been codified at Del. R. Evid. 502(d)(5), which provides that there is no privilege "[a]s to a communication relevant to a matter of common interest between or among 2 or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."

189944-3

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Mary Pat Thynge          - 5 -                    June 7, 2002

bankrupt client has the right to know all that the other client knows with regard to the jointly privileged communications. *See In re Madison Mgmt. Group, Inc.*, 212 B.R. at 896 (trustee of debtor subsidiary entitled to jointly privileged materials in corporate parent's possession).

 Defendants also claim that they do not have to produce the purportedly "jointly privileged" materials because "there would be no means of guarding against waiver of their privilege as a result of plaintiffs' disclosure to third parties." (Lockwood Letter, at 5.) Plaintiffs, like Newco and defendants, have the same obligation to protect against the disclosure and waiver of jointly privileged materials. Defendants' insinuation that plaintiffs are somehow less capable of being trusted to fulfill their obligations in this regard is insulting and unwarranted.

 Finally, defendants assert that they have no obligation to produce any privileged Marvel materials in their possession, even those that are not "jointly privileged," because there is "no evidence that plaintiffs have complied with the procedure set forth in Section 2.04 of the MAFCO Litigation Trust Agreement." In fact, plaintiffs have fully complied with the requirements of Section 2.04. Section 2.04 provides that plaintiffs request "in writing in a manner that identifies with reasonable specificity the particular Shared Privilege Matters sought (*such as a request for the production of documents*)" (emphasis added). Newco then has thirty days to determine if disclosure of any of the requested materials "could have an adverse economic impact" on the company, and notify plaintiffs if it intends to deny access on that basis. (*Id.*) As defendants are well aware, plaintiffs requested various categories of documents from Newco, including materials of the type withheld by defendants. (*See* Letter from Paul J. Fishman, dated November 25, 1998, a copy of which is attached hereto as Exhibit E.) Newco has never asserted that disclosure of any of the requested materials would have an adverse economic impact on the company, and thus, plaintiffs are entitled to review any Shared Privilege Materials responsive to their request. It is unclear what more defendants would have plaintiffs do to comply with the requirements of Section 2.04.

 In the final analysis, all plaintiffs desire is equal access to the same Marvel materials that are in defendants' possession, and plaintiffs respectfully request that the Court order defendants to produce the withheld documents enumerated above.

189944-3

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

The Honorable Mary Pat Thynge          - 6 -                    June 7, 2002

        Plaintiffs look forward to the opportunity to discuss this and any other issues the Court deems appropriate during the telephone conference scheduled for June 14.

                        Respectfully yours,

                        *Edward A. Friedman/DBR*

                        Edward A. Friedman

cc:    Anthony W. Clark, Esq. (by fax w/o Exhibit A, and by Federal Express)
       Philip Trainer, Jr., Esq. (by fax w/o Exhibit A, and by Federal Express)
       Peter T. Dalleo, Clerk of the Court (by Federal Express)

189944-3

# EXHIBIT 10





## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE

P.O. BOX 636

WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651·3000

FAX: (302) 651·3001

http://www.skadden.com

DIRECT DIAL
(302) 651·3080

**FILED**

JUN 13 2002

MARY PAT THYNGE
U.S. MAGISTRATE JUDGE

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

June 12, 2002

BY HAND DELIVERY

The Honorable Mary Pat Thynge
United States Magistrate Judge, District of Delaware
United States Courthouse
844 King Street
Wilmington, Delaware 19801

Re:  Ronald Cantor, et al. v. Ronald O. Perelman, et al.
     C.A. No. 97-586-RRM (SLR) (MPT)

Dear Judge Thynge:

In connection with the telephone conference scheduled for this Friday, June 14, 2002, at 9:00 a.m., this responds to Mr. Friedman's June 7, 2002 letter regarding defendants' assertions of the attorney-client privilege (D.I. No. 319).[1]

**1.    Plaintiffs' Request For Relief Is Untimely.**

Plaintiffs admit they waited until a month after the close of discovery before raising any objections to defendants' privilege log, yet they seek to blame defendants. The record shows otherwise. This action was filed nearly five years ago, but plaintiffs largely ignored it until January 2002 when, at defendants' request, Judge McKelvie set the case for trial in May 2002. Plaintiffs' counsel said they were "prepared ... to work very hard between now and May to make sure the case is ready for trial" (Trans. of Jan. 10, 2002 teleconference at 23-24) and stipulated that "[a]ll discovery in this case shall be initiated so that it will be completed on or before March 29, 2002." (2/6/02 Am. Scheduling Order at ¶ 4 (c), D.I. No. 201) But without ever seeking a discovery extension, plaintiffs waited until long after the discovery cut off to object to the privilege log, which they received March 8, 2002, claiming now that they were just too busy in March to raise their objections sooner. Plaintiffs are responsible for their own delay, and their objections are untimely and have been waived. See, e.g., Ali v. A&G Co., Inc., 542 F.2d 595, 596 (2d Cir. 1976); Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co., Civ. A. No. 88-9752, 1992

---

[1]    Defendants note that Mr. Friedman's letter violates the Court's April 11, 2002 order (D.I. No. 299), which limits the parties to three-page letter submissions to the Court regarding discovery disputes.

The Honorable Mary Pat Thynge
June 12, 2002
Page 2

U.S. Dist. LEXIS 18162 (E.D. Pa. Nov. 25, 1992); Newton v. Raymark Indus., Inc.,
Civ. A. No. 84-0692, 1986 WL 1210, *1 (E.D. Pa. Jan. 23, 1986).

2.    **Plaintiffs Have Narrowed The Relief They Seek.**

       Mr. Friedman's letter, which is limited to the documents that plaintiffs
contend are subject to Marvel Entertainment Group, Inc.'s ("Marvel") privilege,
implicitly withdraws plaintiffs' earlier objections to defendants' assertions of privilege
set forth in Emily Stubbs' April 29, 2002 letter other than those based on Marvel's
shared privilege.[2] Therefore, since plaintiffs no longer seek to compel production of
the documents listed on defendants' privilege log as items 2, 8, 16, 18, 20, 38-40, 50-
52, 56-57, 61, 66, 67, 74-81, 83-84, 86 and 87, no further explanation of defendants'
assertion of privilege with respect to those documents is required.

3.    **Plaintiffs Have Not Established Grounds To Compel Production
       Of The Joint Privileged Documents.**

       Plaintiffs seek production of documents that were subject to a shared
privilege between Marvel and the defendants or their subsidiaries other than Marvel.[3]
Plaintiffs, as trustees of the Mafco Litigation Trust, contend that they "stand squarely
in Marvel's shoes" regarding privileged matters (Friedman Letter at 4), but the Mafco
Litigation Trust Agreement does not so provide. Rather, plaintiffs only have the right
to request a review of Marvel's privileged materials, which Marvel can reject in its
"sole discretion."[4] (Ex. A, Mafco Litigation Trust Agreement at § 2.04(a)) Thus,
even under the express terms of the Mafco Litigation Trust Agreement, plaintiffs are
not the same as Marvel with respect to privileged materials. Moreover, nothing in the

_____

[2]     Ms. Stubbs' letter is Exhibit B to Mr. Friedman's letter.

[3]     In a footnote, plaintiffs assert, without basis, that defendants have not provided
       sufficient information for them to assess the validity of defendants' joint privilege
       claims. The grounds for the joint privilege claims are explained in detail in Paul
       Lockwood's May 23, 2002 letter, which is attached to my letter to the Court of that
       same date. (D.I. No. 316)

[4]     Plaintiffs still provide no evidence that they have complied with the procedure in
       Section 2.4 of the Mafco Litigation Trust Agreement for obtaining access to
       privileged materials. Instead, they ask the Court to assume Marvel would have
       granted access to the privileged documents at issue because Marvel allegedly gave
       plaintiffs access to other Marvel documents. (Friedman Letter at 5)

The Honorable Mary Pat Thynge
June 12, 2002
Page 3

Mafco Litigation Trust Agreement even purports to give plaintiffs the right to inspect jointly privileged documents, nor could it, since Marvel had no power to unilaterally grant to third parties a right to inspect jointly privileged materials without the consent of the other parties, like defendants in this action, who also hold the joint privilege. See In re Madison Management Group, 212 B.R. 894, 896 (N.D. Ill. 1997) (rejecting bankruptcy trustee's attempt to turn over joint attorney-client privilege to third parties); In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 90 (5th Cir. 1976) (attorney-client privilege is not assignable "without the consent of all parties"). Thus, even if Marvel had agreed that plaintiffs could have access to jointly privileged materials, and it did not, Marvel could not waive defendants' privilege rights with respect to those jointly privileged documents which plaintiffs seek to compel.

For all of these reasons, plaintiffs' request to inspect the jointly privileged materials should be denied.

Respectfully,

Anthony W. Clark

cc:     Edward A. Friedman, Esq. (by fax)
        Lawrence C. Ashby, Esq. (by hand)
        Clerk of the Court (by hand)