IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
RONALD CANTOR, IVAN SNYDER and :
JAMES A. SCARPONE, as TRUSTEES OF :
THE MAFCO LITIGATION TRUST, :
: 
                                    Plaintiffs, :  No. 97-CIV-586-KAJ
: 
                - against - :
: 
RONALD O. PERELMAN, :
MAFCO HOLDINGS INC., :
MacANDREWS & FORBES HOLDINGS INC., :
ANDREWS GROUP INCORPORATED, :
WILLIAM C. BEVINS and :
DONALD G. DRAPKIN, :
: 
                                   Defendants. :
------------------------------------------------------------x

**COMPENDIUM OF UNREPORTED
OPINIONS CITED IN PLAINTIFFS'
BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
PLAINTIFFS' JURY DEMAND**

*Of Counsel:*

Edward A. Friedman
Andrew W. Goldwater
Daniel B. Rapport
Emily A. Stubbs
Jonathan Gottfried
FRIEDMAN KAPLAN SEILER
   & ADELMAN LLP
1633 Broadway
New York, New York 10019-6708
(212) 833-1100

Dated: November 23, 2005

ASHBY & GEDDES
Lawrence C. Ashby (I.D. 468)
Philip Trainer, Jr. (I.D. 2788)
Tiffany Geyer Lydon (I.D. 3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Plaintiffs*



A

Westlaw.

Not Reported in A.2d  
Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)  
(Cite as: Not Reported in A.2d)

Page 1

Only the Westlaw citation is currently available.  
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
CFLP
v.
CANTOR,
No. Civ.A. 16297.

Submitted June 11, 2003.
Decided June 19, 2003.

Counsel:

STEELE, J.

*1 On June 3, 2003, we had a conference to discuss the one remaining issue in this case-the terms of a final order fixing the amount and method of determining interest, if any, on the award of damages made in my earlier Orders of March 13, 2000, May 11, 2001, and July 8, 2002.

In this letter opinion, I intend to address your outstanding arguments. The procedural history and salient background facts are fully discussed in several opinions of this court, and need not be repeated in detail here. FN1 All that really needs to be added is that the parties filed letter-briefs addressing several issues with respect to the amount of interest on the award of damages, when interest should accrue, and the methodology for computing it.

   FN1. March 13, 2000 Opinion; May 11, 2001 Opinion; July 8, 2002 Opinion.

Both parties thankfully agree that this court has the discretion to award compound prejudgment interest on the damages. FN2 Defendants request, however, that I exercise my discretion by denying prejudgment interest but that if I do elect to award prejudgment interest, the interest should not be compounded and the rate should be calculated at a reduced rate. The parties also dispute from when the prejudgment interest should accrue. CFLP argues that the interest should be awarded on the entire amount from the date of the breach or calculated at the Legal Rate defined in 6 Del. C. § 2301 as CFLP's attorneys' fees came due. Defendants, on the other hand, request that any award of prejudgment interest be fixed from the date of the March 30, 2000 Opinion or incrementally from the dates on which CFLP actually paid each bill forming the basis for the damages.

   FN2. See, e.g., Defendants' June 9, 2003 Letter at 2; Plaintiff's June 11, 2003 Letter.

*CFLP is entitled to compound prejudgment interest*

A case involving a breach of the duty of loyalty permits broad, discretionary, and equitable remedies. FN3 "Where there is a 'a breach of the duty of loyalty ... potentially harsher rules [come] into play' and 'the scope of recovery ... is not to be determined narrowly [because t]he strict imposition of penalties under Delaware law are designed to discourage disloyalty." ' FN4 In addition, the Court of Chancery has discretion to award compound interest. FN5

   FN3. *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,* 817 A.2d 160, 175 (Del.2002).

   FN4. *Id.* at 176 (quoting *Cantor Fitzgerald, L.P. v. Cantor,* 2001 Del. Ch. LEXIS 70, *11).

   FN5. *Id.* at 173 (citing *Smith v. Nu-West Indus.,* 2001 WL 50206 (Del. Ch.) (granting an award of prejudgment interest at ten percent compounded monthly), *aff'd,* 781 A.2d 695 (Del.2001)).

Here, after balancing the equities, I conclude that CFLP is entitled to compound prejudgment interest. The many opinions addressing the merits all recite the egregious nature of the Defendants' breaches. FN6 Defendants' breaches of their duty of loyalty forced CFLP to engage in expensive, expedited litigation to thwart the threat posed and to defend its very existence as a viable closely held limited partnership:

   FN6. *See, e.g.,* March 13, 2000 Opinion; May 11, 2001 Opinion; July 8, 2002 Opinion.

• "It is clear ... that the Limited Partner Defendants

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have engaged in an egregious breach of the Partnership Agreement, that MDC aided and abetted the breach and tortiously interfered with the Partnership Agreement, and that the conduct of the Limited Partner Defendants was 'reasonably expected to harm' CFLP and violated their duty of loyalty in Section 3.03(b) of the 1996 Partnership Agreement." FN7

FN7. March 13, 2000 Opinion at 83-84.

*2 • "Defendants placed their own economic interests ahead of those of CFLP. They forced CFLP into a position where it had no choice but to defend its business position by attack litigation in its most expensive form: a request for expedited injunctive relief. This is clear evidence of bad faith." FN8

FN8. Id. at 91.

• "I made at least one point absolutely clear in the March decision-the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty." FN9

FN9. May 11, 2001 Opinion at 12.

• "Moreover, the defendants knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement." FN10

FN10. Id.

While I would like to believe that the selected passages from earlier opinions and the extensive record made by the parties fully justify the manner in which I choose to exercise my discretion, I also, after so much time has passed, believe that it is necessary to focus on two important considerations.

First, at the time action needed to be taken, CFLP was a closely knit organization of limited partners almost all of whom actively engaged in the core mission of the enterprise. While CFLP dominated world trading in the brokerage of U.S. Treasuries, that position was by no means assured by anything other than hard work, technology superiority, aggressive hold on market share and a sense of teamwork enhanced by active participation in the core business by an overwhelming percentage of the limited partners.

Second, the action taken to meet the threat posed by a combination of its limited partners, the vehicle dominated by those defalcating limited partners and the Chicago Board of Trade was necessary to preserve and protect CFLP's very existence and the professional and economic viability of the overwhelming percentage of loyal, active limited partners. It could be said, not unfairly, that the actions taken to enjoin the Defendants from their competitive pursuit conferred a benefit on the entire enterprise as an entity as well as a benefit to each loyal limited partner.

Certainly no "common fund" was created but the efforts to obtain injunctive relief resulted in a specific and substantial benefit. I recognize that this case could hardly be said to be the paradigm "corporate benefit" case. However, I must address the fairness of placing the burden of redressing the damage caused by the breach on either the limited partners who breached their duty of loyalty and their cohorts or on the limited partnership entity which acted to survive and its loyal limited partners. The injunctive relief obtained corrected a breach of the duty of loyalty, preserved the limited partnership as a viable economic entity, and protected the jobs and investments of the loyal limited partners. Under these circumstances, equity must act to make the wronged party whole.

In light of the forgoing factual and legal conclusions, any balancing of the equities weigh heavily in favor of CFLP-not Defendants. After considering the nature of the wrong to be remedied, the Plaintiff's unique organizational structure, the peculiar facts of this case including the financial sophistication of CFLP, and the return on money that CFLP could have made during the time period at issue if it had use of these funds, I find the legal rate to be the appropriate rate and that interest should, in fairness, be compounded.

*The prejudgment interest shall run from the date of each payment by CFLP to their attorneys*

*3 CFLP requests that I award interest on the entire damages from the date of the breach or in the alternative that the prejudgment interest should be compounded monthly, as CFLP's attorney's fees came due (which was thirty days from the date of the invoice). Defendants assert that prejudgment interest (if awarded at all) should run incrementally from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

date CFLP paid each of its legal fees.

It appears that Delaware courts have awarded prejudgment interest due from the date of the alleged wrong in tort actions. FN11 However, I do not view this case as a tort action. CFLP undoubtedly needed to shift resources in aggressively seeking a preliminary injunction to defend its very existence as a result of Defendants' breach of their duty of loyalty. The business opportunities lost in preventing direct competition from its own partners is speculative at best and arguably not quantifiable. It has long been my view that the more equitable alternative is to award CFLP interest on money actually spent to achieve its remedy as it was expended. As I wrote earlier, "these fees and expenses that I construed to be and continue to maintain are actual damages, were incurred directly as a result of the need to stymie, thwart or crush a fundamental and decisive threat to the very existence of CFLP." FN12 The approach of awarding interest as each bill was paid has the merit of fairly reflecting when the damages were suffered and results in damages that are readily and demonstrably calculable. As both parties acknowledged, cases *ex contractu* award prejudgment interest as obligations come due. FN13 Here, however, the fair triggering dates are those when CFLP lost the use of its funds by paying the costs to remedy the wrong perpetrated upon it by the Defendants. They are the incidents of measurable damages. To hold otherwise in the absence of a contractual obligation from the Defendants to CFLP would be unfair to the Defendants. I believe this methodology best balances the equities between the parties.

FN11. *Stephenson v. Capano Dev. Co, Inc.*, C.A. No. 81C-JA-83, 1985 WL 636429 (Del.Super.); *Rollins Environmental Services, Inc. v. WSMW Indus., Inc.*, 426 A.2d 1363, 1368-69 (Del.Super.1980).

FN12. July 8, 2002 Opinion.

FN13. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del.1992); *Hercules Inc. v. Aetna Cas. and Sur. Co.*, 1998 WL 962089 (Del.Super.). The parties and I note that the cases usually applying this theory are contract cases.

CFLP shall prepare a final order, consistent with this letter opinion, approved by the Defendants "as to form" setting forth the dates certain from which prejudgment and post judgment interest is to be calculated, the legal rate to be applied as of each date, the consequences of compounding and the amount of final judgment on damages.

IT IS SO ORDERED.

Del.Ch.,2003.
CFLP v. Cantor
Not Reported in A.2d, 2003 WL 21488707 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# B

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Page 1

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
CANTOR FITZGERALD, L.P., Plaintiff,
v.
Iris CANTOR, et al., Defendants.
Iris CANTOR and Cantor Fitzgerald Incorporated, Third-Party Plaintiffs,
v.
CANTOR FITZGERALD GROUP MANAGEMENT, INC., Third-Party Defendant.
No. 16297.

Submitted: April 17, 2001.
Decided: May 11, 2001.

Rodman Ward, Jr., Thomas J. Allingham II, and Karen Valihura of Skadden, Arps, Slate, Meagher & Flom, LLP Wilmington, Delaware. of Counsel: Thomas J. Schwarz and Joseph M. Asher of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. Attorneys for Plaintiff.
Stephen E. Jenkins and Richard I.G. Jones, Jr. of Ashby & Geddes, Wilmington, Delaware. of Counsel: Barry I. Slotnick and Michael Shapiro of Slotnick, Shapiro & Crocker, LLP, New York, New York; Saul B. Shapiro of Patterson, Belknap, Webb & Tyler LLP, New York, New York; Jack C. Auspitz and Howard E. Heiss of Morrison & Foerster LLP, New York, New York. Attorneys for Defendants.

MEMORANDUM OPINION

STEELE, Justice (by designation).
*1 Presently before this Court are the post-trial motions of both the plaintiff and the defendants. FN1 On March 13, 2000, this Court rendered its decision in this case in a lengthy opinion ("March decision"). FN2 That opinion contains a full discussion of the facts and prior procedural history of this action. For that reason, those matters will only be discussed in this opinion as they are necessary to the discussion and analysis of the merits of the motions.

FN1. For simplicity, where I refer to the "plaintiff," I mean Cantor Fitzgerald L.P. Where I refer to "defendants," I mean Iris Cantor, Cantor Fitzgerald, Inc., Market Data Corp., and Rodney Fisher.

FN2. See Cantor Fitzgerald, L.P. v. Cantor, Del. Ch., C.A. No. 16297, Steele, V.C. (March 13, 2000) (Mem.Op.).

In the March decision, the Court decided a number of issues. Pertinent to the present motions was the Court's ruling that the defendants, as limited partners in a limited partnership, owed the plaintiff contractually-created duties of loyalty. Moreover, the Court ultimately ruled that the defendants, in operating a competing business venture, committed an "egregious breach of the partnership agreement" that violated their duty of loyalty to the partnership. FN3 To remedy this breach of the partnership agreement and the duty of loyalty, the Court granted the plaintiff certain declaratory relief and an award of damages measured by the amount of money spent by the plaintiff to seek judicial redress for harm caused by the breach. FN4 The present motions relate to the Court's award of monetary damages predicated upon attorneys' fees and expenses incurred in the course of litigation related to redress of that harm.

FN3. Id. at 3.

FN4. Id.

On March 24, 2000, the defendants, challenging the Court's monetary award of damages, filed a motion pursuant to Court of Chancery Rules 59(a) and (e) and Rule 60(b) seeking either a new trial, an amended judgment, or relief from a judgment or order. On April 6, 2000, the plaintiff filed its application for redress of harm that set its outlay for attorneys' fees and expenses at $11,105,380. All motions were fully briefed and oral argument was heard on June 14, 2000. FN5 The defendants' motions will be addressed first and then the plaintiff's. For the reasons discussed below, the defendants' motions are denied and the plaintiff's application is granted in accordance with the March decision.

FN5. Other disputes between the parties and circumstances beyond their control have unfortunately delayed resolution of this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

issue for some time.

### I. *Defendants' Motions under Rule 59.*

The defendants have moved for relief from the Court's award of a monetary judgment under various provisions of Court of Chancery Rules 59 and 60. In general, Rule 59 provides a mechanism for a new trial and Rule 60 provides relief from a judgment or order. Rule 59(a) provides that:

A new trial may be granted to all or any of the parties, and on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity. The Court may open the judgment, if one has been entered, take additional testimony, amend or make new factual findings and legal conclusions, and direct the entry of a new judgment.

Rule 59(e), however, provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Finally, Rule 60(b) provides relief from a judgment or order because of "mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc." FN6

FN6. Court of Chancery Rule 60(b).

*2 Consideration of these motions is complicated by the fact that the Court naively assumed that the parties could confer and agree on a declaratory judgment order and has, therefore, not issued a final order in this case. Thus, the requirements for Rule 60(b) are not satisfied and the defendants are not entitled to relief under that rule. FN7 For the same reasons, the requirements for a motion under rule 59(e) are, likewise, unmet. FN8 Because "the manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors prior to appeal," FN9 the Court agrees that the defendants' motions are properly considered under Rule 59. However, as the defendants seek reconsideration of the Trial Court's findings of fact and/or conclusions of law, it is more properly considered a motion for reargument under Rule 59(f). FN10 For these reasons, the Court will evaluate the defendants' motions under the standards applicable for Rules 59(a) and (f). FN11

FN7. The "Court may relieve a party ...from a final judgment [or] order ...." Court of Chancery Rule 60(b).

FN8. Rule 59(e) is a motion to "alter or amend a *judgment.*" The Court of Chancery Rules define a judgment as "any order from which an appeal lies." Court of Chancery Rule 54(a). *See also* Court of Chancery Rule 58 ('The order of the Court shall constitute the judgment of the Court.").

FN9. *Eisenmann Corp. v. General Motors Corp.,* Del.Super., C.A. No. 99C-07-260, Quillen, J. (Feb. 24, 2000) Let. Op. and Order at 1.

FN10. *See id.*

FN11. The Court recognizes that the defendants motions may have been filed more than five days after "the filing of the Court's opinion or the receipt of the Court's decision." Court of Chancery Rule 59(f). The defendants, in their motion, requested that, should the Court find that Rule 59(f) is more appropriate, the time for the motion be enlarged pursuant to Court of Chancery Rule 6(b). *See* Defendants' Motion Pursuant to Rules 59(a) and (e) and 60(b) at n.1 (Mar. 24, 2000). I find that the defendants have met the requirements of Rule 6(b) because their conduct is even more benign than "excusable neglect." There was a legitimate argument that other provisions of Rule 59 applied and the defendants chose to proceed under those provisions. Moreover, enlarging the time for a motion for reargument by several days does not prejudice the plaintiff. For these reasons, the defendants' request to enlarge the time for a motion under Rule 59(f) is granted.

As noted above, the Court may grant a new trial under Rule 59(a) for "any of the reasons for which hearings have heretofore been granted in suits of equity." FN12 In ruling on such a motion, the Court is charged with exercising the "judicial discretion of the Court so that injustice may be prevented ...." FN13 The standard for a motion for reargument under Rule 59(f) is slightly different. The Court will generally deny a motion for reargument "unless the Court has overlooked a decision or principal of law that would have controlling effect or the Court has misapprehended the law or the facts so that the outcome of the decision would be affected." FN14

FN12. Court of Chancery Rule 59(a).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN13. *Daniel D. Rappa, Inc. v. Hanson,* Del.Supr., 209 A.2d 163, 166 (1965).

FN14. *Continental Ins. Co. v. Rutledge & Co., Inc.,* Del. Ch., C.A. No. 15539, Chandler, C. (Feb. 15, 2000) Let. Op. at 2 (citing *Miles, Inc. v. Cookson America, Inc.,* Del. Ch., 677 A.2d 505 (1995)).

ANALYSIS

The defendants argue that the Court improperly awarded the plaintiff its attorneys' fees as the prevailing party. Specifically, they argue that the parties never presented argument on the issue of fees and that the issue was never properly raised before the Court for consideration. More importantly, however, they direct the Court's attention to a provision in the partnership agreement that they allege proscribes an award of attorneys' fees in this case. Thus, they argue, the Court misapprehended both the facts and the resulting rule of law and that they should be granted either a new trial or an opportunity to reargue the issue of attorneys' fees.

The plaintiff, however, argues that the Court's March decision did not order "fee-shifting" in the traditional sense, but, rather, it found that the plaintiff had been damaged by the defendants' behavior, and the most appropriate measure of these damages was the amount the plaintiff had spent in prosecuting the action. In the alternative, the plaintiff argues that, in this case, the partnership agreement provision would not prevent the Court from shifting the responsibility for attorneys' fees and expenses to the culpable party under an exception to the American Rule.

As one can see, the parties have widely differing views on the Court's intent in crafting its remedy in the March decision. To the extent I failed to articulate my reasoning clearly in the language of that opinion, these motions allow me to re-articulate that reasoning. The plaintiff's reading of the March decision is correct. As discussed more fully below, the Court intended to use the plaintiff's fees and expenses as a measure of damages in this case. Even had that not been the Court's intent now that defendants raise the issue, traditional fee shifting would still be appropriate.

A. The Court's award of damages measured by attorneys' fees.

*3 In the March decision, the Court found that the plaintiff was harmed by the defendants' conduct in several identifiable, but inherently unmeasurable, ways. FN15 Any attempt to express those damages by a sum certain would have required the Court to engage in near speculation. Despite problems in quantifying the harm to the plaintiff, this "Court, fortunately, has broad discretion to tailor remedies to suit the situation as it exists." FN16 Moreover, where there has been a breach of the duty of loyalty, as here, "potentially harsher rules come into play" and "the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly .... The strict imposition of penalties under Delaware law are designed to discourage disloyalty." FN17

FN15. *See* March Decision at 80-82.

FN16. *Andresen v. Bucalo,* Del. Ch., C.A. No. 6372, Hartnett, V.C. (March 14, 1984) Mem. Op. at 10. *See also Bomarko, Inc. v. International Telecharge, Inc.,* Del. Ch., C.A. No. 13052, Lamb, V.C. (Nov. 4, 1999, revised on Nov. 16, 1999) Mem. Op. at 44-45 ("In determining damages, the Court's powers are complete to fashion any form of equitable and monetary relief as may be appropriate." (quoting *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 714 (1983) (internal quotations omitted)); *Universal Studios, Inc. v. Viacom, Inc.,* Del. Ch., 705 A.2d 579, 583 (1997) ("[W]hen the parties' agreements have been breached but neither the innocent party nor the venture suffers immediate quantifiable harm, the equitable powers of this Court afford me broad discretion in fashioning appropriate relief.").

FN17. *International Telecharge, Inc. v. Bomarko, Inc.,* Del. Supr., 766 A.2d 437, 441 (2000) (quoting from *Thorpe v. CERBCO, Inc.,* Del.Supr., 676 A.2d 436, 445 (1996)).

With this mantra as a guide, the Court set out to determine an adequate remedy that would make this plaintiff whole but would, at the same time, escape the peril of over-harshly punishing the defendants. In short, the opinion, however inartfully stated, attempted to directly match the cost of the wrongdoing with the clearest proof of the monetary costs to remedy that wrongdoing. It was quite clear from the evidence that the plaintiff was expending significant resources, both internally and externally,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to address, contain, and counteract the defendants' egregious breach of their duty of loyalty. Those internal costs, or expenditures, are not readily capable of quantification. The external costs, the fees for counsel and experts, however, are.

While awarding damages to the plaintiff equal to the fees and expenses spent in prosecuting this action will not make the plaintiff completely whole and will leave some harm unanswered, this Court, exercising the discretion given it, determined that damages, as measured by attorneys' fees and expenses spent to address the defendants' conduct, is an appropriate remedy for this egregious breach of the duty of loyalty. This award can be determined with specificity, is directly related to certain "injuries" to the plaintiff, and can not be characterized as punitive because it does not attempt to quantify and remedy the more subjective, if not speculative, internal costs. Thus, while the total harm to the plaintiff may actually lie at some unknown amount greater than the expenditure for attorneys' fees and expenses, the speculative nature of any additional monetary harm led me to conclude that including any such amount in any fashioned monetary remedy could fairly be deemed tantamount to awarding punitive damages.

The Court found that the defendants had breached their duty of loyalty and was faced with the task of crafting a remedy to address that wrong. On these facts, I found that the most appropriate award of damages would be an award measured by the plaintiff's expenditures for attorneys' fees and expenses in prosecuting this action. FN18 The Court reaffirms the remedy crafted in the March decision.

> FN18. The Court notes that this result is limited to these special facts and should not be read as stating a broad new principal, heretofore unknown, that expenditures for attorneys' fees and expenses will always be considered a component of more general damages. Extraordinary facts will sometimes call for extraordinary remedies. See *Modern Dust Bag Co., Inc. v. Commercial Trust Co.*, Del. Ch., 91 A.2d 469 (1952) ("[W]here the circumstances of a case are such as to require the application of equitable principles, the fact that no precedent can be found in which relief may be granted under a similar state of facts is no reason for refusing relief.").

B. Traditional "fee shifting" would also be appropriate.

*4 The preceding discussion fully addresses the Court's original reasoning for crafting the award as it did in this case. The defendants', however, viewed this as a decision by the Court to grant the plaintiff an award of attorneys' fees and expenses under traditional fee shifting exceptions to the American Rule. FN19 After reviewing the defendants' written and oral arguments on this issue, I have reconsidered any basis for an actual fee shifting and am now convinced that it would have been entirely appropriate to grant an award of attorneys' fees and expenses in the traditional sense in this case had I chosen to do so. The defendants do not argue that an award of attorneys' fees and expenses is not warranted in this case. Rather, they center their argument on the principal that the partnership agreement contains a pre-negotiated provision stating that both parties will bear their own attorneys' fees and expenses. Thus, there are two parts to this analysis. First, would an award of attorneys' fees and expenses generally be available under traditional common law rules? Second, may the Court award attorneys' fees and expenses despite a contractual provision purporting to address the issue? If the answer to both questions is "yes," then an award of fees and expenses under a fee shifting theory would be appropriate in this case.

> FN19. As noted above, the Court's intent was focused on crafting a damages remedy and not on fee shifting. The Court, however, in reading the March decision again, and after some time removed from the drafting process, acknowledges that language in the opinion could certainly lead the defendants to their interpretation. For this reason, their argument should not be dismissed "out-of-hand" and will be addressed fully so that no doubt will lie concerning the Court's rationale for, and its ability to craft, a remedy in this case.

Under what is commonly known as the "American Rule," absent express statutory provisions to the contrary, each party involved in litigation will bear only their individual attorneys' fees no matter what the outcome of the litigation. FN20 Over time, however, the Courts have acknowledged exceptions to this general rule. One exception relevant to this case is the "bad faith" exception to the American Rule. FN21

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                     Page 5
Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)
(Cite as: Not Reported in A.2d)

> FN20. See _Johnston v. Arbitrium (Cayman Islands) Handels AG,_ Del.Supr., 720 A.2d 542, 545 (1998).
>
> FN21. _Id._

No single definition for "bad faith" in this context exists and each determination will turn on the special facts of the particular case. FN22 Under this exception, fees may be awarded against a defendant where "the action giving rise to the suit involve[s] bad faith, fraud, 'conduct that was totally unjustified, or the like' and attorney's fees are considered an appropriate part of damages." FN23 I made at least one point absolutely clear in the March decision-the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty. FN24 Moreover, the defendants knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement. FN25 Under these facts, I find that these faithless defendants have acted in "bad faith" and that an award of attorneys' fees and expenses would be appropriate under the bad faith exception to the American Rule.

> FN22. _See id._ at 546. _See also,_ although in a totally different context, the Supreme Court's elaborate discussion of "bad faith" in _E.I. DuPont de Nemours and Co. v. Pressman,_ Del. Supr., 679 A.2d 436 (1996).
>
> FN23. _Barrows v. Bowen,_ Del. Ch., C.A. No. 1454, Allen, C. (Sept. 7, 1994) Mem. Op. at 3 (quoting _Weinberger v. U.O.P., Inc.,_ Del. Ch., 517 A.2d 653, 656 (1986)).
>
> FN24. _See_ March decision at 88-89.
>
> FN25. _See H & H Brand Farms, Inc. v. Simpler,_ Del. Ch., C.A. No. 1658, Chandler, C. (Sept. 1, 1994) (Court found "bad faith" where the defendants adopted and continued a course of conduct that they knew would be challenged.).

I must now consider whether the partnership agreement would trump the common law determination above and prevent an award of fees and expenses. For the reasons stated below, I find that it does not and the Court may award attorneys' fees and expenses despite any provision in the partnership agreement suggesting the contrary.

*5 The defendants point to Section 20.01 of the Partnership Agreement as evidence that the parties pre-negotiated for an agreement that the parties would bear their own attorneys' fees and expenses in a case such as this. FN26 Section 20.01 is a lengthy paragraph dealing with several matters. A significant portion of the paragraph deals with arbitration and arbitration procedure. Inserted dead in the middle of the arbitration procedure discussion is the following sentence: "Each party shall bear its own expenses for counsel and other out-of-pocket costs in connection with any judicial resolution of a dispute, difference or controversy." Taken by itself, and out of context, this sentence could evince an intent by the parties to bear their own attorneys' fees and expenses in this "judicial resolution of a dispute." Placed in context, in the center of an arbitration discussion, the intent of the parties is less clear. One should not lose sight of the fact that the bad faith breach of the duty of loyalty in this case generated a petition for extraordinary relief in the form of an injunction and involved a complex web of parties, many of whom were not parties to the Partnership Agreement. It seems disingenuous indeed, to stretch the parties' intent to pay their own fees and expenses in a dispute over the terms of the Partnership Agreement, which might be resolved by arbitration, to a multi-party controversy involving parties not subject to the terms of the Partnership Agreement. Ironically, despite the fervor with which the defendants assert the Partnership Agreement's language to be a bar against a fee award, I can not overlook the fact that they themselves sought an award of attorneys' fees in their pleadings. I find it impossible to conclude that the parties reference to "judicial resolution" in this context contemplated the course of events that have transpired in this litigation. Fortunately, for the purposes of this discussion, I do not need to unravel this enigma for even had the parties clearly intended that they bear their own fees and expenses under these extraordinary circumstances, the facts of this case warrant a remedy beyond that contemplated by the parties.

> FN26. _See_ Def. Motion at Ex.A. While the Partnership Agreement was an exhibit at trial, neither party directed the Court's attention to this provision. This provision is, nonetheless, a "fact" already in evidence.

As noted above, the Court has broad discretion to craft a remedy for a breach of the duty of loyalty. I

believe that when the facts demonstrate behavior as egregious as that here, the Court's normal deference to pre-negotiated partnership agreement provisions FN27 will yield to a conscientious effort to craft an appropriate remedy. Going beyond the remedies provided for by contract is not unknown in this jurisdiction when the Court is addressing particularly culpable conduct. FN28 This case warrants a similar deviation from the parties' alleged agreement. For that reason, I find that the Court would be justified in awarding attorneys' fees and expenses under the bad faith exception to the American Rule notwithstanding any contractual provisions arguably to the contrary.

> FN27. See generally Continental Ins. Co. v. Rutledge & Co., Inc., Del. Ch., 750 A.2d 1219 (2000); U.S. West, Inc. v. Time Warner, Inc., Del. Ch., C.A. No. 14555, Allen, C. (June 6, 1996) Mem. Op.

> FN28. See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Price, Del. Ch., C.A. No. 11097, Allen, C. (Sept. 13, 1989) Mem. Op.

CONCLUSION

*6 The defendants' motions for a new trial and reargument under Rule 59 are denied. The defendants have not shown that the Court misapprehended the law or the facts in a manner that would change the outcome. The defendants can not claim that the concept of measuring damages by attorneys' fees and expenses incurred in remedying their breach is a surprise in this case. Both parties, in the complaint and the counter-claims (despite the language of the Partnership Agreement), asserted that they sought attorneys' fees and expenses as a portion of their remedy. For these reasons, I reaffirm my decision to use the plaintiff's attorneys' fees and expenses as a measure of damages. I see a distinction between this and traditional fee shifting. To the extent, however, there is an argument that this is a "distinction without a difference," I find that an award of attorneys' fees and expenses under the bad faith exception to the American Rule would be warranted in this case. The award, as announced in the Court's March opinion is reaffirmed and stands as my final decision on the matter.

II. *Plaintiff's Application for Redress of Harm.*

In the March decision, the Court directed the plaintiff to submit an order for declaratory relief consistent with the opinion and an application for fees and expenses. FN29 That final order has yet to be resolved and has become further complicated as a result of the dispute in Civil Action No. 18101. Upon receipt of this opinion, I ask the parties to arrange a conference to discuss:

> FN29. March decision at 92.

1. Resolution of the actual monetary award in this action based upon Plaintiff's application for fees and expenses and defendants' opposition to that amount including the need for further factual hearings, if any; and,

2. The efficacy of a declaratory judgment order encompassing both this action and Civil Action No. 18101; and,

3. The extent to which any party seeks action by me under Court of Chancery Rule 54(b).

The defendants' Motions under Rule 59 are DENIED.

IT IS SO ORDERD.

Del.Ch.,2001.
Cantor Fitzgerald, L.P. v. Cantor
Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.