IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x
RONALD CANTOR, et al.,                          :
                                                :
             Plaintiffs,                        :
                                                :    No. 97-CIV-586-KAJ
       v.                                       :
                                                :
RONALD O. PERELMAN, et al.,                     :
                                                :
             Defendants.                        :
-----------------------------------------------------x

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

> Thomas J. Allingham II (I.D. No. 476)
> Anthony W. Clark (I.D. No. 2051)
> Paul J. Lockwood (I.D. No. 3369)
> SKADDEN, ARPS, SLATE,
>   MEAGHER & FLOM LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware  19899
> (302) 651-3000
> Attorneys for Defendants

DATED:  December 6, 2005

TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE MAFCO TRUSTEES HAVE NO RIGHT TO ACCESS
       DOCUMENTS SUBJECT TO A JOINT PRIVILEGE BETWEEN
       MARVEL AND DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.     Plaintiffs Are Not Marvel's Successors-In-Interest By Operation
              Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.     Plaintiffs Are Not Contractual Successors-In-Interest To
              Marvel's Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1.     The provisions cited by plaintiffs are not controlling . . . . . . . . . . . 9

              2.     This motion is not permitted under Section 2.04 of the
                     Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    Defendants' Joint Privileged Documents Should Not Be Turned Over To
       Newco For The Purpose Of Giving Them To Plaintiffs . . . . . . . . . . . . . . . . . . . 12

       A.     Plaintiffs Offer No Authority For A Motion To Compel
              Documents to a Non-Party to the Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.     Newco Is Not The Holder Of Marvel's Privilege . . . . . . . . . . . . . . . . . . . . 13

       C.     Neither Marvel Nor Newco Can Unilaterally Grant Plaintiffs
              Access To Joint Privileged Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       D.     In Camera Review Is Not Warranted For The Eight Documents
              Over Which Marvel Has No Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

In re American Metrocomm Corp.,
    274 B.R. 641 (Bankr. D. Del. 2002) ................................................... 16, 17

In re Asia Global Crossing, Ltd.,
    322 B.R. 247 (Bankr. S.D.N.Y. 2005) ....................................................... 14

CFTC v. Weintraub,
    471 U.S. 343 (1985) ............................................................................... 7

Demetree v. Commonwealth Trust Co.,
    C.A. No. 14354, 1996 WL 494910 (Del. Ch. Aug. 27, 1996) .................................. 11

FDIC v. McAtee,
    124 F.R.D. 662 (D. Kan. 1988) ................................................................. 8

In re Hechinger Inv. Co. of Del.,
    285 B.R. 601 (Bankr. D. Del. 2002) ........................................................ 17

Ince & Co. v. Silgan Corp.,
    C.A. Nos. 10941, 11159, 1994 WL 728799 (Del. Ch. Dec. 8, 1994) ....................... 11

Interfaith Housing Del., Inc. v. Town of Georgetown,
    841 F. Supp. 1393 (D. Del. 1994) ...................................................... 14, 16

Lee v. Engle,
    C.A. Nos. 13323, 13284, 1995 WL 761222 (Del. Ch. Dec. 15, 1995) ..................... 14

New Castle County v. Crescenzo,
    C.A. No. 7082, 1985 WL 21130 (Del. Ch.  Feb. 11), aff'd, 505 A.2d 454
    (Del. 1985) ...................................................................... 9, 10

In re Resorts Int'l, Inc., ,
    372 F.3d 154 (3d Cir. 2004) ............................................................. 7, 8

Samuelson v. Susen,
    576 F.2d 546 (3d Cir. 1978) ............................................................... 14

Tenneco Auto. Inc. v. El Paso Corp.,
     C.A. No. 18810-NC, 2001 WL 1456487 (Del. Ch. Nov. 7, 2001) ................ 14, 15, 16

United States v. Zolin,
     491 U.S. 554 (1989) .................................................................................................. 18

STATUTES                                                               PAGE(S)

Fed. R.Civ. P. 34 ............................................................................................... 12, 13

Fed. R.Civ. P. 37 ................................................................................................... 13

BLACK'S LAW DICTIONARY (8th ed. 2004) ........................................................... 13

## NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to the Court's instruction at the discovery conference held on

November 8, 2005 (D.I. 436), defendants hereby respond to plaintiffs' motion to compel

privileged documents, which was filed on November 22, 2005.  (D.I. 441)

## SUMMARY OF ARGUMENT

Defendants oppose plaintiffs' motion to compel 37 privileged documents, 29 of which are subject to a joint privilege among defendants and Marvel Entertainment Group, Inc. ("Marvel"). Plaintiffs do not contest the fact that all 37 documents are subject at least to a joint privilege among the corporate defendants and Marvel, but plaintiffs contend that they can access these documents as purported "successors-in-interest" to Marvel. These arguments fail for four reasons:

1. Plaintiffs are not successors-in-interest to Marvel by operation of law, as would be new management of a corporation following a merger or a bankruptcy trustee. Marvel continues as a separate corporation that is neither managed nor owned by plaintiffs.

2. Plaintiffs contend that they are successors-in-interest to Marvel's privilege under the terms of the Mafco Litigation Trust Agreement (the "Trust Agreement") (D.I. 443, Stubbs Decl. Ex. 3), but, at most, that agreement gives them the right to ask Newco, Marvel's corporate parent, for access to such materials. Newco retains the right to reject such requests in its sole discretion. Thus, plaintiffs are not Marvel's "successors-in-interest."

3. Plaintiffs' limited rights under the Trust Agreement do not authorize plaintiffs to bring this motion. On the contrary, Section 2.04(b) of the Trust Agreement expressly prohibits plaintiffs from seeking direct access to Marvel's privileged materials. Thus, the motion should be denied based on the terms of Section 2.04(b).

2

4.    Plaintiffs make an alternative motion in a one sentence footnote that asks the Court to compel defendants to produce the joint privileged documents to Newco. This motion is not only procedurally improper, but such relief would be meaningless because Newco would not be permitted to turn over Marvel's privileged documents to plaintiffs. Delaware law does not permit a holder of a joint privilege to give privileged materials to another party without the consent of each of the other holders of the privilege.

5.    In addition, eight of the documents sought in this motion are not subject to a joint privilege with Marvel. As explained in the Declaration of Steven L. Fasman (the "Fasman Declaration") submitted herewith, those eight documents are privileged, but do not concern the legal rights of Marvel.

Accordingly, defendants' assertions of the attorney-client privilege should be sustained and plaintiffs' motion to compel denied.

## STATEMENT OF FACTS

Prior to filing for bankruptcy in December 1996, Marvel was owned and controlled by defendants. As plaintiffs acknowledge, during that time period, defendants and Marvel often shared a joint attorney-client privilege in communications among representatives of Marvel and its corporate parents, as is typical in any parent-subsidiary relationship. (See Pl. Br. at 2) Twenty-nine of the documents sought by plaintiffs on this motion are documents subject to such a joint privilege among defendants and Marvel. (See Def. Priv. Log Nos. 1, 11, 17, 29-37, 42-45, 47-48, 53, 62, 64, 66, 68, 70, 85, 88-90, and 92) Eight more documents sought by plaintiffs do not concern Marvel's privilege at all. (Id. at Nos. 5, 6, 10, 13-15, 21 and 22; see Fasman Decl. ¶¶ 2-7)

In order to resolve this motion, the Court must determine whether plaintiffs are successors-in-interest to Marvel. To answer that question, the Court should look to the documents concerning Marvel's emergence from bankruptcy. Marvel emerged from bankruptcy pursuant to the terms of the Fourth Amended Joint Plan of Reorganization Proposed by The Secured Lenders and Toy Biz, Inc. (the "Plan"). (Stubbs Decl. Ex. 1) The Plan centered around a merger transaction involving Newco, Marvel and a Newco merger subsidiary. (See id. § 6.1)[1] In the merger transaction contemplated by the Plan, Marvel merged into a subsidiary of Newco and thereafter continued to exist

---

[1]    The company labeled "Newco" in the Plan is a Delaware corporation originally called "Toy Biz, Inc.", which later named itself "Marvel Enterprises, Inc.", and more recently "Marvel Entertainment, Inc." (See Plan at 15 ("'Newco' means Toy Biz, as its name may be changed, from and after the Consummation Date")) In this brief, we refer to that entity as Newco.

4

as a wholly owned subsidiary of Newco. (See Agreement and Plan of Merger by and Among Toy Biz, Inc., Marvel Entertainment Group, Inc. and MEG Acquisition Corp. at § 1.1, Whitney Decl. Ex. 1) To our knowledge, Marvel continues to exist today as a wholly owned subsidiary of Newco.

Following the Court's approval of the Plan, Marvel, Newco and plaintiffs entered into the Trust Agreement. Pursuant to the terms of the Trust Agreement, Marvel transferred a single asset – its purported claim against defendants – to the Trust, but did not transfer any of its other assets, such as its comic book or licensing businesses. (Trust Agreement at § 2.02) Indeed, Marvel continued in existence following this transfer, and continues in existence today, so far as the record in this proceeding shows.

Contrary to plaintiffs' contention, the Trust Agreement does not transfer Marvel's attorney-client privilege to plaintiffs – that privilege still resides at Marvel. The Trust Agreement provides plaintiffs with a far more limited right. They merely have the right to ask Newco for access to specifically identified privileged materials of Marvel that are in Newco's possession. (Trust Agreement at § 2.04(a)) Under the express terms of the Trust Agreement, Newco can deny such a request in its "sole discretion." (Id.) Furthermore, contrary to plaintiffs' stance as co-holders of Marvel's privilege, plaintiffs "will not have authority, without the written consent of Newco, to waive" Marvel's privilege except for Marvel privileged documents voluntarily given to plaintiffs by Newco. (Id. at § 2.04(d))

5

With respect to privileged documents not in Newco's possession, the Trust Agreement provides that plaintiffs have "no authority to undertake to gain direct access to [such documents] to which Newco has been denied access." (Id. at § 2.04(b)) Defendants have not given Newco access to any of defendants' files (we are not aware of any obligation to do so). Thus, this motion is barred by the express terms of the Trust Agreement.

**ARGUMENT**

I.    **THE MAFCO TRUSTEES HAVE NO RIGHT TO ACCESS DOCUMENTS SUBJECT TO A JOINT PRIVILEGE BETWEEN MARVEL AND DEFEN-DANTS.**

With the exception of eight documents discussed at page 18, <u>infra</u>, plaintiffs seek documents that both sides agree are subject to a joint attorney-client privilege between defendants and Marvel. (Pl. Br. at 6)  Plaintiffs argue that they are entitled to access these joint privileged documents on the grounds that they are allegedly "successors-in-interest" to Marvel.  However, as explained below, plaintiffs are not proper holders of Marvel's privilege, either by operation of law or by contract.

A.    **Plaintiffs Are Not Marvel's Successors-In-Interest By Operation Of Law.**

In order to properly frame plaintiffs' request, it bears emphasis that plaintiffs and the Trust are <u>not</u> a legal continuation of Marvel in any respect.  Marvel continues to exist today as a separate and distinct corporation that is not managed, controlled or owned by plaintiffs.  Apparently in recognition of this important point, plaintiffs no longer cite <u>CFTC v. Weintraub</u>, 471 U.S. 343, 349 (1985), which holds that new management of a corporation, or the trustee of a bankrupt corporation, has control over the corporation's privileges as part of its general control over the business and affairs of the corporation.  (<u>Compare</u> D.I. 437, plaintiffs' November 4, 2005 letter seeking privileged documents, citing <u>Weintraub</u>)

At most, plaintiffs are third-party contractual assignees of certain rights from Marvel.  The Third Circuit's decision in <u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154, 169

7

(3d Cir. 2004), makes this clear. In <u>Resorts</u>, the Third Circuit expressly rejected the argument that a post-confirmation litigation trust is a continuation of the bankruptcy estate. <u>Id.</u> at 169. The Third Circuit described the creation of a litigation trust as a "deliberate act to separate the litigation claims from the bankruptcy estate . . . ." <u>Id.</u> Thus, as a matter of bankruptcy law, plaintiffs are plainly <u>not</u> tantamount to Marvel. It is equally clear as a matter of corporation law that plaintiffs are not a continuation of Marvel. As noted above, following the confirmation of the Plan, Marvel continued to exist as a wholly owned subsidiary of Newco. (<u>See</u> p. 4-5, <u>supra</u>) Marvel's assignment of its claims to plaintiffs was merely an asset transfer, which does not provide the assignee with control over Marvel's attorney-client privilege. <u>See FDIC v. McAtee</u>, 124 F.R.D. 662, 664 (D. Kan. 1988) (holding FDIC, as assignee of defunct bank's claims against former officers of bank, could not assert attorney-client privilege for bank).

In sum, plaintiffs are not successors-in-interest to Marvel by operation of law. They are distinct and separate third parties who merely entered into a contract with Marvel.

## B.    Plaintiffs Are Not Contractual Successors-In-Interest To Marvel's Privilege.

Just as they are not successors to Marvel by operation of law, plaintiffs are not successors-in-interest to Marvel's privilege by contract. Plaintiffs misconstrue the extremely narrow and inapplicable interest they received under the Trust Agreement into a broad status as purported successors-in-interest to Marvel's privileges. The Trust

Agreement not only fails to make plaintiffs the rightful holder of Marvel's privilege, it specifically bars plaintiffs from bringing this motion.

### 1.    The provisions cited by plaintiffs are not controlling.

Plaintiffs cite Section 7.1 of the Plan and the "whereas" clauses of the Trust Agreement for the proposition that the Trust Agreement transferred Marvel's privilege to them. (Pl. Br. at 7-9) Those provisions do not control this dispute. Indeed, plaintiffs' reliance on those provisions as the source of their rights is disingenuous.

On its face, the Plan is not the document that determines whether Marvel assigned its privilege to plaintiffs. The Plan provides that any assignment or conveyance of an interest in Marvel's privileges is "to the extent and only to the extent provided in the MAFCO Litigation Trust Agreement." (Plan at 7.1(b))

Plaintiffs' reliance on the "whereas" clauses of the Trust Agreement is equally dubious. The Court should look to Section 2.04 of the Trust Agreement – the provision that specifically addresses plaintiffs' rights with respect to Marvel's privileges – instead of the opening recitals to the contract. "Generally, recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument." New Castle County v. Crescenzo, C.A. No. 7082, 1985 WL 21130, at *3 (Del. Ch. Feb. 11), aff'd, 505 A.2d 454 (Del. 1985). "If the recitals are inconsistent with the operative or granting part,

the latter controls." Id.[2] Any doubt about which terms of the Trust Agreement govern the privilege is eviscerated by the opening sentence of Section 2.04: "[t]he MAFCO Litigation Trustees shall not obtain or disclose any Shared Privilege Matters except as set forth in this Section 2.04."[3] (Trust Agreement at § 2.04)

## 2.    This motion is not permitted under Section 2.04 of the Trust Agreement.

Section 2.04 of the Trust Agreement does not designate plaintiffs as successors-in-interest to Marvel's privileges. Rather, the Trust Agreement merely gives plaintiffs the ability to ask Newco, the parent company of Marvel, to grant plaintiffs access to privileged materials. Under Section 2.04(a) of the Trust Agreement, Newco can reject any such request in its "sole discretion." This limited right to request access to privileged materials is not applicable here because the documents are not in Newco's possession. Where privileged documents are not in Newco's possession, Section 2.04(b) applies.[4]

---

[2]    The Trust Agreement acknowledges the rule of interpretation invoked in Crescenzo. The third whereas clause cited by plaintiffs contains the caveat: "except as otherwise specifically provided or conditioned herein . . . ." (Trust Agreement at p. 1)

[3]    The phrase "Shared Privilege Matters" refers to materials over which the pre-bankruptcy Marvel debtors held a privilege, not materials for which Marvel holds a privilege jointly with defendants or others.

[4]    Another provision that shows that plaintiffs are not true holders of Marvel's privilege is Section 2.04(d), which provides that plaintiffs do "not have authority, without the written consent of Newco, to waive any Shared Privilege except to the extent that documents, information and communications have been specifically provided to the MAFCO Litigation Trustees by Newco."

10

Section 2.04(b) does not permit plaintiffs to bring this motion. It provides that plaintiffs "shall have no authority to undertake to gain direct access to Shared Privilege Matters to which Newco has been denied access." Here, defendants will not permit Newco access to their documents (we are not aware of any obligation to do so). Thus, plaintiffs cannot maintain this motion.

Plaintiffs argue that Section 2.04(b) does not mean what it says, based on a convoluted interpretation of the "intent" of the provision that is divorced from its language. (Pl. Br. at 12-13)  The Court should disregard plaintiffs' attempt to obfuscate the clear, literal meaning of the words of the contract and enforce them as they are written. See Demetree v. Commonwealth Trust Co., C.A. No. 14354, 1996 WL 494910, at *4 (Del. Ch. Aug. 27, 1996) ("[I]f a contract is clear on its face, the Court should rely solely on the clear, literal meaning of the words."); Ince & Co. v. Silgan Corp., C.A. Nos. 10941, 11159, 1994 WL 728799, at *2 (Del. Ch. Dec. 8, 1994) ("[Defendant] cannot alter the clear meaning of the contract language by referring to the supposed purpose of [the] clause.")

Moreover, plaintiffs' assertion that Section 2.04(b) was drafted to protect Newco, not defendants, misses the point. Section 2.04 is the provision governing *plaintiffs'* rights. Plaintiffs have an interest in Marvel's privileges "to the extent and only to the extent provided in the MAFCO Litigation Trust Agreement." (Plan at 7.1(b)) The Trust Agreement does not give them the authority to seek direct access to Marvel's

11

privileged documents, so they have no such authority. Accordingly, plaintiffs' motion
should be denied pursuant to the express terms of Section 2.04(b) of the Trust Agreement.

## II.    Defendants' Joint Privileged Documents Should Not Be Turned Over To Newco For The Purpose Of Giving Them To Plaintiffs.

In a footnote in their brief, plaintiffs ask "[i]n the alternative . . . that the
Court direct defendants to produce the challenged documents to Newco . . . ." (Pl. Br. at
13 n.7)  Such relief is not mentioned elsewhere in plaintiffs' brief, nor in the motion to
compel, nor in plaintiffs' proposed order.  Such an extraordinary request, which seeks to
compel defendants to produce documents to a non-party which has not sought them in its
own right, cannot be justified or fairly presented in a one sentence footnote, and it should
summarily denied for that reason alone.  Assuming, however, that the Court considers
this issue fairly raised by that footnote, the Court should deny this request because (i)
plaintiffs cite no authority for a motion to compel production of documents to a third
party which is not before the Court; (ii) Newco is not Marvel, is therefore not a co-holder
of the joint privilege, and is thus not entitled to these privileged documents; and (iii)
neither Marvel nor Newco can unilaterally turn over joint privileged documents to
plaintiffs without defendants' consent.

## A.    Plaintiffs Offer No Authority For A Motion To Compel Documents to a Non-Party to the Lawsuit.

Plaintiffs' footnote request for an order compelling production to Newco
cites no authority for the request.  We are not aware of any.  Rule 34 authorizes the
production of documents to a party or someone acting on behalf of a party.  Fed. R. Civ.

P. 34(a). Neither Rule 34 nor Rule 37 contains a mechanism for compelling the produc-

tion of documents to a non-party to the lawsuit that is acting on its own behalf. See Fed.

R. Civ. P. 34, 37.

It is true that Section 2.04(b) of the Trust Agreement permits plaintiffs to

apply to a court of competent jurisdiction to cause a custodian of Marvel's privileged

documents to give them to Newco, but that contract term does not authorize this motion.

That phrase contemplates a situation where the documents were in the possession of a

"custodian" – which means the holder of the documents is not the owner, but a "person or

institution that has charge or custody (of . . . papers . . .)." BLACKS LAW DICTIONARY (8th

ed. 2004). Thus, Section 2.04(b) permits plaintiffs to seek the return of documents

belonging to Marvel, but does not contemplate plaintiffs seeking to compel defendants to

produce their own files to Newco.

## B.    Newco Is Not The Holder Of Marvel's Privilege.

Plaintiffs' request for an order compelling production of the joint privi-

leged documents to Newco has a second flaw. Newco is not Marvel. (See pp. 4-5,

supra). Thus, to the extent any party could overcome defendants' privilege objections and

then turn the joint privileged documents over to plaintiffs, that party would have to be

Marvel (the other holder of the joint privilege), not Newco. (Although, as explained

below, even Marvel cannot do so). At the very least, the contested nature of Newco's

purported right to substitute for Marvel (the privilege holder) with respect to such a

hypothetical motion to compel by a non-party to this lawsuit underscores why the court

13

should not hear this complicated procedural issue based on an aside in a footnote in plaintiffs' brief. Defendants submit that such complicated questions of standing and corporate form should wait until an actual motion is filed and either Newco or Marvel make an appearance.

## C.     Neither Marvel Nor Newco Can Unilaterally Grant Plaintiffs Access To Joint Privileged Materials.

This Court also should not grant plaintiffs' belated and procedurally improper alternative request for relief (ordering production of documents to Newco so that Newco can turn them over to plaintiffs) because it is pointless, and this Court should not engage in pointless acts. It is pointless because, no matter whether Marvel or Newco should obtain the documents from defendants, the recipient cannot then turn them over to plaintiffs without defendants' consent. A holder of a joint attorney-client privilege cannot grant a third party access to joint privileged materials without the consent of the other holders of the privilege. Tenneco Auto. Inc. v. El Paso Corp., C.A. No. 18810-NC, 2001 WL 1456487, at *2 (Del. Ch. Nov. 7, 2001). See also Interfaith Housing Del., Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1400-02 (D. Del. 1994) (waiver by one holder of joint privilege ineffective as against all other holders because they did not consent).[5]

---

[5]     Plaintiffs seem to agree that Delaware law governs the privilege. Federal courts apply the privilege law of the forum state, including conflicts of law, where a claim concerns state law issues. Samuelson v. Susen, 576 F.2d 546 (3d Cir. 1978). Delaware courts apply Delaware privileges to corporations organized under Delaware law. Lee v. Engle, C.A. Nos. 13323, 13284, 1995 WL 761222, at *7 (Del. Ch. Dec. 15, 1995). In any event, recent federal case law follows the Delaware rule. See In re Asia Global Crossing, Ltd., 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005)
(continued...)

14

Tenneco is directly on point. In Tenneco, "Old Tenneco" spun off
businesses known as "New Tenneco" and "Shipbuilding." 2001 WL 1456487, at *1.
The remainder of Old Tenneco subsequently merged with a subsidiary of El Paso
Corporation. Id. El Paso had certain privileged memoranda in its possession that were
subject to a joint privilege among New Tenneco, Shipbuilding and El Paso because they
were created by an attorney acting on behalf of all three companies to smooth their
transition into separate entities. Id. El Paso wanted to give these documents to its
insurance companies in connection with a settlement of litigation, but New Tenneco
objected. Id. The Court of Chancery ruled that El Paso could not give the joint privi-
leged memos to the insurance companies without New Tenneco's consent. Id. at *2-3.

Here too, Marvel (actually Newco) purports to have the unilateral right to
give another party access to joint privileged documents (after considering solely Marvel's
interest in keeping the documents confidential). Delaware law does not grant Marvel that
unilateral right. It must obtain defendants' consent, which Marvel (or Newco) has not
done.

Plaintiffs' attempts to distinguish Tenneco are unavailing. Plaintiffs fall
back on the argument that they are Marvel, and therefore succeed to its joint privilege.
(See Pl. Br. at 17) This is a tautology – plaintiffs rely on the transfer to justify the

---

[5]      (...continued)
        ("Once established, the privilege cannot be waived without the consent of all of the
        parties that share it.").

15

transfer. As noted above, Marvel continues to exist and plaintiffs are not Marvel. At best, plaintiffs have a contractual right to ask Newco to turn over privileged documents, which Newco will do only after first considering its interest, but not the interest of its co-holders of a joint privilege. If that suffices to distinguish Tenneco, then Tenneco is a dead letter, because El Paso and the insurance companies merely had to create a written document assigning the insurance companies an interest in the privilege to dodge the rule.

Moreover, the Trust Agreement's mechanics demonstrate the stark unfairness that would occur if Newco's ability to grant plaintiffs access to privileged documents were extended to cover jointly privileged documents. Under the terms of Section 2.04(a), Newco gives up its privilege only after considering its interest, but it gives no consideration to the interests of any other holders of a joint privilege. The rule in Tenneco and Interfaith Housing was created to prevent such selfishness by co-holders of a privilege.

Plaintiffs' response to Interfaith Housing is even weaker than their response to Tenneco. Plaintiffs argue that Interfaith Housing permits a unilateral waiver of a joint privilege because one of the holders of the privilege in that case disclosed privileged information against the wishes of his fellow holders. (Pl. Br. at 16) Plaintiffs miss the point of Interfaith Housing. The court did not allow that unilateral waiver to affect the rights of the other holders; the court treated the materials subject to the joint privilege as inadmissible against the parties that had not waived their privilege. Interfaith Housing, 841 F. Supp. at 1402.

16

Plaintiffs also cite two bankruptcy cases that turned on entirely inapposite principles of law and did not involve joint privileges. (See Pl. Br. at 9-10, citing In re Hechinger Inv. Co. of Del., 285 B.R. 601, 604 (Bankr. D. Del. 2002); In re American Metrocomm Corp., 274 B.R. 641, 654 (Bankr. D. Del. 2002)). In Hechinger, a liquidation trust created in the bankruptcy proceedings sought to compel production of privileged documents from the defunct company's former lawyers, officers and directors. In contrast to this case, the court found that the documents in question were not subject to any joint privilege held by the parties opposing production. See Hechinger, 285 B.R. at 612-13. Citing CFTC v. Weinberg, the court held that the bankruptcy trustee controls the privilege, not the former officers and directors who no longer managed the company. See id. at 610-11. Defendants have no quarrel with that principle, but it has no application here. (See pp. 7-8, supra).

The other bankruptcy related case cited by plaintiffs, American Metrocomm, stands for the undisputed proposition that a corporation's attorneys cannot invoke the attorney-client privilege against their own client. See 274 B.R. at 654. The Court held that defendants, as attorneys for AMC, could not assert the attorney-client privilege on AMC's behalf. See id. As in Hechinger, the American Metrocomm defendants had no interest in the privilege themselves. See id.

Neither Hechinger nor American Metrocomm addresses the situation presented here, where the post-bankruptcy company's corporate parent purports to have the right unilaterally to grant access to joint privilege information after considering only

17

its own interests and not the interests of any of the co-holders. As explained above, such an arrangement is not permitted under Delaware law.

Accordingly, if the Court were to consider this a motion to compel defendants to produce documents to Newco so that Newco can turn them over to plaintiffs, that motion should be denied.

**D.    In Camera Review Is Not Warranted For The Eight Documents Over Which Marvel Has No Privilege.**

Plaintiffs request in camera review of documents 5, 6, 10, 13, 14, 15, 21 and 22 because they dispute defendants' explanation that these documents are not subject to a joint privilege with Marvel. As plaintiffs have no right to joint privileged documents, this request is moot.

In any event, plaintiffs have not established grounds for an in camera review. In order to obtain an in camera review of privileged materials, the party opposing the privilege must show "a factual basis adequate to support a good faith belief by a reasonable person" that the review will reveal that the documents are subject to production. United States v. Zolin, 491 U.S. 554, 572 (1989) (citation omitted). Here, plaintiffs have failed to make such a showing. Indeed, as demonstrated in the Fasman Declaration submitted herewith, defendants' position that Marvel has no interest in these privileged documents is well supported.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to compel should be denied

in its entirety.

           /s/ Thomas J. Allingham
           Thomas J. Allingham II (I.D. No. 476)
           Anthony W. Clark (I.D. No. 2051)
           Paul J. Lockwood (I.D. No. 3369)
           SKADDEN, ARPS, SLATE,
            MEAGHER & FLOM LLP
           One Rodney Square
           P.O. Box 636
           Wilmington, Delaware  19899
           (302) 651-3000
           Attorneys for Defendants

DATED:  December 6, 2005