# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
RONALD CANTOR, et al.,                    :
                                          :
              Plaintiffs,                 :
                                          :        No. 97-CIV-586-KAJ
        v.                                :
                                          :
RONALD O. PERELMAN, et al.,               :
                                          :
              Defendants.                 :
-------------------------------------------------------x
```

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION TO STRIKE PLAINTIFFS' JURY DEMAND

Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Attorneys for Defendants

DATED: December 7, 2005

## TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ................................. i

SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ........................................................ 3

I.   EACH PRONG OF THE GRANFINANCIERA TEST WEIGHS HEAVILY
     IN FAVOR OF STRIKING THE JURY DEMAND ....................... 3

     A.   The Remedy For A Breach Of The Duty Of Loyalty Under
          Delaware Law Is Equitable In Nature ...................... 3

     B.   The Historical Test Overwhelmingly Favors Equity ............... 12

II.  MARVEL'S COMMENCEMENT OF THIS ACTION WHILE A
     DEBTOR IN BANKRUPTCY ELIMINATED ANY RIGHT
     TO A JURY TRIAL ............................................. 16

CONCLUSION ...................................................... 18

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

Billing v. Ravin, Greenberg & Zackin, P.A.,
    22 F.3d 1242 (3d Cir. 1994) ................................................................................ 16, 17

Bomarko, Inc. v. International Telecharge, Inc.,
    794 A.2d 1161 (Del. Ch. 1999), aff'd, 766 A.2d 437 (Del. 2000) ......................... 3, 5, 8, 9

Boyer v. Wilmington Materials, Inc.,
    754 A.2d 881 (Del. Ch. 1999) .................................................................................... 7

Broadnax Mills, Inc. v. Blue Cross & Blue Shield,
    876 F. Supp. 809 (E.D. Va. 1995) ............................................................................ 13

Cantor Fitzgerald, L.P. v. Cantor,
    C.A. No. 16297, 2000 WL 307370 (Del. Ch. Mar. 13, 2000) ......................................... 10

Cantor Fitzgerald, L.P. v. Cantor,
    C.A. No. 16297, 2001 WL 536911 (Del. Ch. May 11, 2001) ....................................... 3, 10

Cantor v. Perelman,
    414 F.3d 430 (3d Cir. 2005) ............................................................................ 7, 8, 11, 12

In re Carter Paper Co.,
    220 B.R. 276 (Bankr. M.D. La. 1998) ..................................................................... 14, 15

CFTC v. American Metals Exch. Corp.,
    991 F.2d 71 (3d Cir. 1993) .......................................................................................... 6

In re Crowe Rope Indus. LLC,
    307 B.R. 1 (Bankr. D. Me. 2004) ........................................................................... 13, 16

Ed Peters Jewelry Co. v. C & J Jewelry Co.,
    51 F. Supp. 2d 81, 90 (D.R.I. 1999), aff'd, 215 F.3d 182 (1st Cir. 2000) ......................... 13

G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp.,
    888 F. Supp. 44 (S.D.N.Y. 1995) .................................................................................. 6

Gallagher v. Wilton Enters., Inc.,
    962 F.2d 120 (1st Cir. 1992) ........................................................................................ 4

Germain v. Connecticut Nat'l Bank,
    988 F.2d 1323 (2d Cir. 1993) ..................................................................................... 16

Gilliken v. Hughes,
    609 F. Supp. 178 (D. Del. 1985) ..................................................................................... 13

Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,
    817 A.2d 160 (Del. 2002) ..................................................................................... 2, 5, 12

Granfinanciera, S.A. v. Nordberg,
    492 U.S. 33 (1989) ................................................................................................... 1, 2

Hatco Corp. v. W.R. Grace & Co.,
    59 F.3d 400 (3d Cir. 1995) ................................................................................. 2, 3, 4, 9

In re Hechinger Inv. Co. of Del.,
    327 B.R. 537 (D. Del. 2005) ........................................................................................ 14

HMG/Courtland Props., Inc. v. Gray,
    749 A.2d 94 (Del. Ch. 1999) ........................................................................................... 5

Hutchins v. Fordyce Bank Trust Co. (In re Hutchins),
    211 B.R. 322 (Bankr. E.D. Ark. 1997) .......................................................................... 17

In re Jensen,
    946 F.2d 369 (5th Cir. 1991) ........................................................................................ 16

Longo v. McLaren (In re McLaren),
    3 F.3d 958 (6th Cir. 1993) ............................................................................................ 16

Miner v. Community Mut. Ins. Co.,
    778 F. Supp. 402 (S.D. Ohio 1991) ............................................................................... 13

N.I.S. Corp. v. Hallahan (In re Hallahan),
    936 F.2d 1496 (7th Cir. 1991) ...................................................................................... 16

Perceira v. Farace,
    413 F.3d 330 (2d Cir. 2005) .................................................................................... 12, 13

Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow),
    C.A. Nos. 97-35168DAS, 98-0833,
    1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999) .......................................................... 17

S.E.C. v. Hughes Capital Corp.,
    124 F.3d 449 (3d Cir. 1997) ........................................................................................... 6

Smith v. Shell Petroleum, Inc.,
    C.A. No. 8395, 1990 WL 186446 (Del. Ch. Nov. 26, 1990) ........................................... 10

Standard Chlorine of Del., Inc. v. Sinibaldi,
    821 F. Supp. 232 (D. Del. 1992) ............................................................................... 14, 15

Thorpe v. Cerbco,
    676 A.2d 436 (Del. 1996) ................................................................................................... 5

## SUMMARY OF ARGUMENT

Defendants' motion to strike plaintiffs' jury demand should be granted because both prongs of the two-part test set forth in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989), require treatment of plaintiffs' claims as equity claims, which are not entitled to a jury. The Granfinanciera test requires the Court to (i) compare plaintiffs' cause of action to its 18th century analogs, and (ii) determine whether the remedy provided for the claim is legal or equitable in nature. The court then balances these two factors, giving greater weight to the remedy factor. Id. Plaintiffs assert that defendants' opening brief contains an incomplete and misleading analysis of the two prongs of Granfinanciera because the brief does not discuss the relative weight of the two factors. (Pl. Br. at 9-10) Defendants did not discuss the relative weight of the factors in our opening brief because, as that brief explains, both factors argue strongly in favor of equity and striking the jury demand. Their weighting was thus a moot point.[1]

The relative weight of the two Granfinanciera factors has now come into play, however, because plaintiffs' opposition brief concedes that the first prong overwhelmingly favors equity, but joins issue as to the remedy prong. Plaintiffs argue that because they seek compensatory damages, they have a per se right to a jury trial regard-

---

[1]    Plaintiffs correctly point out a mistake in the block quote on page 2 of defendants' opening brief, which omits the sentence: "The second stage of this analysis is more important than the first." (See Def. Op. Br. at 2, compare Granfinanciera, 492 U.S. at 42). In removing some distracting long citations from the quote (with notations to that effect), defendants' counsel unintentionally also removed the above sentence, without any ellipses to signify the omission. Defendants' counsel apologizes to the Court and counsel for that error.

less of the character of their claim. In characterizing the relief they seek as classically

legal, plaintiffs overlook the distinctly equitable remedy analysis that a court must

perform if it finds a breach of fiduciary duty under Delaware law. While compensatory

damages is one possible remedy for a breach of the duty of loyalty, a court will grant such

relief only after exercising the traditional discretion of a Chancellor "'to fashion any form

of equitable and monetary relief as may be appropriate.'" Gotham Partners, L.P. v.

Hallwood Realty Partners, L.P., 817 A.2d 160, 176 (Del. 2002) (citation omitted). The

equitable factors that a fact finder must consider before issuing a remedy takes plaintiffs'

breach of fiduciary duty claim outside the realm of a jury. See Hatco Corp. v. W.R.

Grace & Co., 59 F.3d 400, 414 (3d Cir. 1995). Thus, the remedy prong strongly favors

equity, but even if it were unclear, or slightly in favor of the legal side, the decisive and

clear result on the historic prong puts the balance in favor of equity, despite the greater

weight given to the remedy prong.

       Moreover, assuming, for the sake of argument, that the balance of the first

two prongs provides for a jury trial, under Granfinanciera the Court must still consider

whether Congress has assigned the claim to a non-Article III adjudicative body that does

not use a jury as fact finder. 492 U.S. at 42. Here, Marvel's bankruptcy filing eliminated

plaintiffs' jury trial right because (i) Marvel waived its right to a jury trial by voluntarily

filing for bankuptcy, or, (ii) in the alternative, there is no jury trial right because these

claims arise out of the claims-allowance process.

## ARGUMENT

### I.    EACH PRONG OF THE <u>GRANFINANCIERA</u> TEST WEIGHS HEAVILY IN FAVOR OF STRIKING THE JURY DEMAND.

As defendants explained in the opening brief, <u>both</u> the historical prong and the remedy prong of the <u>Granfinanciera</u> standard weigh in favor of striking plaintiff's jury demand. Thus, even if the remedy prong were the only meaningful prong (as plaintiff incorrectly argues), then the Court should still strike the jury demand because the remedy analysis that the Court must perform under Delaware law should be categorized as equitable under the Third Circuit's controlling decision in <u>Hatco</u>. 59 F.3d at 414.

### A.    The Remedy For A Breach Of The Duty Of Loyalty Under Delaware Law Is Equitable In Nature.

Plaintiffs' brief ignores the broad and discretionary remedy analysis that would be performed if plaintiffs were to succeed in proving a breach of the fiduciary duty of loyalty under Delaware law. Under Delaware law, if plaintiffs can prove a breach of the duty of loyalty, then "significant discretion is given to the Court in fashioning an appropriate remedy." <u>Bomarko, Inc. v. International Telecharge, Inc.</u>, 794 A.2d 1161, 1184 (Del. Ch. 1999), <u>aff'd</u>, 766 A.2d 437 (Del. 2000). <u>See also</u> <u>Cantor Fitzgerald, L.P.</u> <u>v. Cantor</u>, C.A. No. 16297, 2001 WL 536911, at *5 (Del. Ch. May 11, 2001) ("[T]he Court has broad discretion to craft a remedy for a breach of the duty of loyalty."). Thus, contrary to plaintiffs' implication, compensatory damages is not ineluctably the relief that would be awarded if plaintiffs were to prove their cause of action for breach of fiduciary duty, and whatever the remedy may ultimately be, it must be the result of a comprehen-

3

sive consideration of all relevant factors, equitable and legal, and all possible remedies, equitable and legal.

Presumably because plaintiffs cannot possibly characterize the required exercise of broad discretion to craft a remedy (including, quite possibly, an equitable remedy), after giving consideration to equitable factors, as the work of a jury, see Hatco, 59 F.3d at 414, plaintiffs do not even try. Instead, they argue that the Delaware case law is inapposite and that no such exercise of broad and equitable discretion to craft a remedy is required here, because the Seventh Amendment does not apply in state court and the right to a jury trial is a matter of federal law. (Pl. Br. at 7)  These assertions miss the point.  While federal law determines whether an action should be characterized as equitable or legal under the Seventh Amendment, "[a] federal court must look first to state law to determine the elements of the cause of action and the propriety of the remedies sought."  Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 122 (1st Cir. 1992). In other words, the test for whether an action is legal or equitable can be found in federal law.  But where, as here, the cause of action arises under state law, the nature of the applicable remedies (the focus of one prong of the federal test) is a matter determined under the state law that creates the claim.  See id.

Plaintiffs mischaracterize defendants' argument as "suggesting that plaintiffs' claims for unjust enrichment deprive them of a jury trial as to all claims, legal or equitable."  (Pl. Br. at 6)  But plaintiffs have not pleaded and do not have separate causes of action for unjust enrichment and damages.  (See D.I. 149, Sec. Am. Compl.

4

¶¶ 47-50)  Under Delaware law, these are alternative possible <u>remedies</u> for plaintiffs'
single breach of fiduciary duty claim, and neither remedy can be granted until a court
performs a comprehensive, unitary remedy analysis to select the most appropriate remedy
for that single claim, taking into account all relevant circumstances.  <u>See</u> <u>Gotham</u>
<u>Partners</u>, 817 A.2d at 176 (to remedy breach of duty of loyalty, court must exercise
traditional discretion of a Chancellor "'to fashion any form of equitable and monetary
relief as may be appropriate'") (quoting <u>Weinberger v. UOP, Inc.</u>, 457 A.2d 701, 714
(Del. 1983)).

Because the court must consider the full range of potential equitable or
monetary relief before selecting a remedy, the "damages" that may be awarded for breach
of fiduciary duty under Delaware law require determinations that differ substantially from
the type of compensatory relief awarded by a jury.  "In determining damages, the Court's
'powers are complete to fashion any form of equitable and monetary relief as may be
appropriate . . . .'"  <u>Bomarko</u>, 794 A.2d at 1184 (quoting <u>Weinberger</u> 457 A.2d at 714).
Thus, even where damages is one of the possible remedies sought, the Court must do its
"best to 'craft from the panoply of equitable remedies a damage award . . . .'"
<u>HMG/Courtland Props., Inc. v. Gray</u>, 749 A.2d 94, 122-23 (Del. Ch. 1999) (quoting <u>Ryan</u>
<u>v. Tad's Enters., Inc.</u>, 709 A.2d 682, 699 (Del. Ch.), <u>aff'd mem.</u>, 693 A.2d 1082 (Del.
1997)).  For example, the scope of potential monetary relief for a breach of fiduciary duty
under Delaware law may be designed to require disgorgement of profits instead of
compensation for injuries.  <u>See</u> <u>Thorpe v. Cerbco</u>, 676 A.2d 436, 445 (Del. 1996).

5

It is well-settled that this type of disgorgement remedy is equitable and

does not give rise to a jury trial. See, e.g., S.E.C. v. Hughes Capital Corp., 124 F.3d 449,

455 (3d Cir. 1997) ("'Disgorgement is an equitable remedy . . . .'") (citation omitted);

CFTC v. American Metals Exch. Corp., 991 F.2d 71, 76 & n.9 (3d Cir. 1993) (same);

G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp., 888 F. Supp. 44

(S.D.N.Y. 1995) (disgorgement of profits is tried by the court, not a jury). Because the

law is so clear on this point, plaintiffs have repeatedly conceded it. On January 24, 2002,

plaintiffs' counsel told Judge McKelvie:

> [W]e advised Your Honor during the January 10 telephonic conference
> that the trial in this action would be a jury trial. However, the principal
> relief plaintiffs seek – disgorgement of the $553.5 million that Ronald
> Perelman obtained as a result of his breaches of fiduciary duty – is equita-
> ble in nature. Therefore, we believe (and have discussed with defendants'
> counsel) that there is no right to a jury trial on such a claim.

(Jan. 24, 2002 letter of D. Rapport to the Court, p. 3, D.I. No.164) Plaintiffs' counsel

reaffirmed this position at the June 14, 2002 teleconference: "My understanding is that

plaintiffs' claim for disgorgement is an equitable remedy that will be tried by the

Court . . . ." (D.I. 326, Tr. at 41)

Thus, the damages analysis required by Delaware law is not suited for a

jury because one decision-maker must choose, from among all possible forms of equita-

ble remedies or monetary awards, the remedy that is most appropriate. This choice – and

the balancing of equitable factors and review of possible remedies (both equitable and

legal) that it requires of the trier of fact – is well-illustrated in two cases in which the

Delaware Court of Chancery explicitly considered whether compensatory damages or the

6

remedy of equitable disgorgement of profits was the appropriate remedy for a breach of fiduciary duty. See Boyer v. Wilmington Materials, Inc., 754 A.2d 881 (Del. Ch. 1999);[2] Bomarko, 794 A.2d at 1184.

In Boyer, the court found that the defendant directors had breached their duty of loyalty by causing the corporation to give up (for no consideration) its lease of a manufacturing plant that was owned by the defendants. 754 A.2d at 890-91, 907. Specifically, defendants breached their duty of loyalty by obtaining the lease amendment without disclosing to the other directors that defendants could not obtain a $1.5 million "holdback" from the sale proceeds of their business until the corporation agreed to amend its lease. Id. at 907. The court framed the remedy issues as follows: "The question then is whether [defendants] must disgorge the Holdback to [the corporation] or incur some other remedy for breach of fiduciary duty." Id. The court considered three options – disgorgement of all of the holdback, disgorgement of some portion of the holdback or an award of damages equal to the economic harm suffered by the corporation. Id. After exercising its discretion, and giving consideration to Delaware's "strong policy of discouraging acts of disloyalty," the court opted for an award of $150,000 (10% of the holdback) because it represented the amount that the defendants likely would have had to pay the corporation to agree to amend the lease following arm's-length negotiations. Id. at 908. This partial disgorgement remedy was plainly equitable.

---

[2]   The Third Circuit cited Boyer with approval in its summary judgment ruling. See Cantor v. Perelman, 414 F.3d 430, 437 (3d Cir. 2005).

In <u>Bomarko</u>, the court faced a similar question of what remedy would be appropriate for a breach of the duty of loyalty. The court found that the defendant CEO breached his fiduciary duty of loyalty in connection with a merger, then considered several possible remedies, including the equitable remedies of disgorgement and rescissory damages (in lieu of rescission, which was impossible). 794 A.2d at 1183-84. Ultimately, the court chose to award compensatory damages equal to the monetary value that plaintiffs would have received on their investment had defendants not breached their fiduciary duties. <u>Id.</u> at 1184-85. Having decided that compensatory damages was the most appropriate remedy under the circumstances, the court declined to order disgorgement of the benefits the defendant received from the merger because "any order requiring disgorgement would constitute a double recovery for the plaintiffs." <u>Id.</u> at 1190.

Here, as in <u>Boyer</u> and <u>Bomarko</u>, if plaintiffs prove their breach of fiduciary duty claim, the trier of fact will have to consider all equitable factors and, in the exercise of discretion, choose the most appropriate remedy under the circumstances. Thus, if circumstances warrant, the trier of fact will have the discretion to order defendants to disgorge profits in the amount of what Marvel would have received in arm's-length bargaining to agree to be bound to the notes. <u>See</u> <u>Cantor</u>, 414 F.3d at 437. Alternatively, the trier of fact could decide that the better remedy would be to compensate Marvel for any purported injury it suffered from complying with the restrictions contained in the notes. <u>See</u> <u>id.</u> at 438. These potential remedies are inconsistent with each other – <u>e.g.</u>, if the court orders defendants to disgorge funds equal to what Marvel would have received

8

to agree to be bound by the notes, then Marvel would receive a double recovery if it were also compensated for its "injury" from complying with the notes. Thus, a single determination needs to be made as to which remedy is more appropriate to avoid double recovery, which is not permitted, even for a breach of the duty of loyalty. See Bomarko, 794 A.2d at 1190.

This unitary remedy analysis, which requires the exercise of a Chancellor's discretion and consideration of awarding possible equitable remedies, cannot appropriately be performed by a jury – even though one possible outcome is an order requiring defendants to pay compensatory damages – because other possible outcomes require the exercise of equitable powers to issue equitable remedies. The Third Circuit's decision in Hatco demonstrates that a claim resulting in a monetary judgment should still be tried without a jury if it results from "a flexible remedy that may be based on circumstances not cognizable in nor readily adaptable to an action at law." 59 F.3d at 414. (See Def. Op. Br. at 10-11) That conclusion applies even more strongly here, where damages can only be granted after first considering whether an equitable remedy would be more appropriate.[3]

---

[3]    Plaintiffs offer no response to Hatco – a controlling case – other than to dismiss it in a string-cite footnote as a claim for "contribution." (Pl. Br. at 6 n.2) It is true that from a historical perspective, a claim for contribution was heard in a court of equity, see Hatco, 59 F.3d at 413, but the same is true for a breach of fiduciary duty. In concluding that the remedy was equitable, despite its monetary form, the Third Circuit was particularly "impressed" with the statute's requirement that monetary liability should be apportioned "'using such equitable factors as the court determines are appropriate.'" Id. (citation omitted).

Moreover, in applying Delaware's broad and flexible remedy analysis, the

Court is not even limited to considering the remedies proposed by the parties. It is not

uncommon for a Delaware court to ignore the parties' suggestions and to apply its own

creative approach to craft appropriate relief for a breach of fiduciary duty. See, e.g.,

Smith v. Shell Petroleum, Inc., C.A. No. 8395, 1990 WL 186446, at *5 (Del. Ch. Nov.

26, 1990) (court rejected remedies proposed by parties and crafted its own remedy). For

example, in Cantor Fitzgerald, L.P. v. Cantor, C.A. No. 16297, 2000 WL 307370 (Del.

Ch. Mar. 13, 2000), the Court began its breach of fiduciary duty remedy analysis by

stating: "In what way, then, and based upon what proven facts, does equity shape an

appropriate remedy?" Id. at *28. After an exhaustive analysis of the equities, the Court

rejected the remedies proposed by the parties and awarded "damages" equal to the cost of

prosecuting the case against the disloyal fiduciaries. See id. at *32. On reargument, Chief

Justice Steele explained the judgment as follows: "The Court found that the defendants

had breached their duty of loyalty and was faced with the task of crafting a remedy to

address that wrong. On these facts, I found that the most appropriate award of damages

would be an award measured by the plaintiff's expenditures for attorneys' fees and

expenses in prosecuting this action." Cantor Fitzgerald, L.P. v. Cantor, C.A. No. 16297,

2001 WL 536911, at *3 (Del. Ch. May 11, 2001) (footnote omitted). While the court

used the word "damages" to describe that award, plainly a jury would not have the

discretion to award attorneys' fees in lieu of traditional damages.

Plaintiffs seem to have understood these points of law when they drafted

the Second Amended Complaint. It pleads a single cause of action (for breach of

10

fiduciary duty) and asks the Court to hold defendants "liable . . . for damages, including

all benefits received as a result of their breaches of fiduciary duty . . . ." (D.I. 149, Sec.

Am. Compl. ¶ 49) See also id., WHEREFORE clause). Thus, plaintiffs did not plead

separate and independent causes of action for damages and unjust enrichment, but only a

single claim for breach of fiduciary duty, which seeks disgorgement and damages as

alternative remedies. Indeed, when plaintiffs obtained leave of court to file their Second

Amended Complaint, they described it as reducing the case to "one remaining claim for

breach of fiduciary duty arising out of the bond transactions . . . ." (D.I. 155, Pl. Reply

Br. in Further Supp. of Mot. for Leave to File Sec. Am. Compl. at 13)

> Plaintiffs offer no substantive response to any of these points. Their only

other argument on the Granfinanciera remedy prong is that, contrary to their own Second

Amended Complaint, they have two separate and independent causes of action – as

evidenced, they say, by the Third Circuit's use of the headings "unjust enrichment claim"

and "damages claims" in ruling on the cross-motions for summary judgment, see Cantor,

414 F.3d at 435-37 – and that the latter of those claims is a claim at law triable before a

jury. Plaintiffs take the Third Circuit's words entirely out of context. No one presented to

the Third Circuit the issue of whether plaintiffs had independent causes of action for

unjust enrichment and for damages, or whether those were merely alternative remedies

for one breach of fiduciary duty claim. The Third Circuit's opinion uses the terms

"damages claim" and "unjust enrichment claim" as a shorthand way of describing

whether, consistent with Rule 56, plaintiffs had established that they could plausibly

obtain either of those remedies for the alleged breach of the fiduciary duty of loyalty. See

11

Cantor, 414 F.3d at 435, 437. The appellate court held that the record presented on

summary judgment did not foreclose either remedy. See id. The Third Circuit's opinion

contains no discussion of whether those remedies can be considered separately, or must

be addressed as part of a unitary remedy analysis, but it does make one thing perfectly

clear: Delaware law controls the remedy for the only remaining claim plaintiff asserts.

See id. at 436 ("Delaware law dictates that the scope of recovery for a breach of the duty

of loyalty is not to be determined narrowly.") And, as described above, for breach of

fiduciary duty claims Delaware law requires the trier of fact to employ a single compre-

hensive remedy analysis, in which it exercises the traditional discretion of a Chancellor

"'to fashion any form of equitable and monetary relief as may be appropriate.'" Gotham

Partners, 817 A.2d at 176 (citation omitted). Nothing in the Third Circuit's opinion is to

the contrary.

In sum, the "remedy" prong of the Granfinanciera test leans heavily toward

equity.

## B.    The Historical Test Overwhelmingly Favors Equity.

Plaintiffs do not dispute defendants' showing in the opening brief that the

historical prong tips entirely in favor of equity. Indeed, rather than addressing the first

prong of Granfinanciera, plaintiffs tellingly ask the Court to ignore this prong altogether.

(See Pl. Br. at 10) Plaintiffs cite Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005), for the

proposition that the Court should look only to the remedy prong, but Pereira expressly

rejects this position:

12

> After three decades of grappling with the law versus equity analysis, the late Justice William Brennan threw up his hands. He had wearied of "rattling through dusty attics of ancient writs" and suggested that Seventh Amendment jurisprudence should sever its dependence on historical analogies to English common law as it existed in 1791. Chauffers, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 574-75 . . . (1990) (Brennan, J., concurring). However much we may sympathize with his position, Justice Brennan's suggestion has gone unheeded, and thus, we are left to scour through the 'duty attics' ourselves.

Id. at 337-38. In short, both steps must be taken into account.

In furtherance of their attempt to collapse the Granfinanciera standard into a single factor test, plaintiffs insist that "[d]efendants do not cite a single case denying a jury [trial] where compensatory damages were sought for a breach of fiduciary duty." (Pl. Br. at 6) That assertion is false. Defendants cite several such cases in their opening brief. See, e.g., In re Crowe Rope Indus. LLC, 307 B.R. 1, 5 (Bankr. D. Me. 2004) (striking jury demand for breach of fiduciary duty claim despite prayer for monetary damages because "[f]ederal courts are nearly unanimous in holding that a breach of fiduciary duty claim is an action in equity, to which no jury right attaches"); Gilliken v. Hughes, 609 F. Supp. 178, 181-82 (D. Del. 1985) (striking jury demand for breach of fiduciary duty claim even though compensatory and punitive damages were requested).[4]

---

[4]    The cases cited in the opening brief were illustrative. There are many others. See, e.g., Miner v. Community Mut. Ins. Co., 778 F. Supp. 402, 404 (S.D. Ohio 1991) ("It follows that because monetary damages for a breach of fiduciary duty are deemed to be equitable in nature, there is no right to a jury trial on claims to enforce such a remedy.") Ed Peters Jewelry Co. v. C & J Jewelry Co., 51 F. Supp. 2d 81, 90 (D.R.I. 1999) (jury trial not available for breach of fiduciary duty claim seeking damages against corporate directors because claim is inherently equitable), aff'd, 215 F.3d 182 (1st Cir. 2000); Broadnax Mills, Inc. v. Blue Cross & Blue Shield, 876 F. Supp. 809, 815-17 (E.D. Va. 1995) (plaintiff not entitled to jury trial for breach of fiduciary duty claim seeking monetary
                                                                                                    (continued...)

Indeed, the manner in which plaintiffs purport to distinguish In re

Hechinger Inv. Co. of Del., 327 B.R. 537 (D. Del. 2005), In re Carter Paper Co., 220 B.R.

276 (Bankr. M.D. La. 1998), and Standard Chlorine of Del., Inc. v. Sinibaldi, 821

F. Supp. 232, 254-55 (D. Del. 1992), only serves to confirm that plaintiffs' claim here is

inherently equitable. Plaintiffs label the claims in those cases as equitable (and thus argue

they are distinguisable from this case) because they involved relief in the form of

accounting, restitution or a constructive trust, and those forms of relief are not sought

here. But the conceptual basis for monetary relief sought in those cases was no different

than that of the damages remedy proposed by plaintiffs here. In this action, plaintiffs

contend that the restrictions in the notes injured Marvel, thereby reducing its market

capitalization, and they seek a monetary award of $470,825,000 to restore Marvel to its

equity market value as of November 12, 1996. (See Lockwood Decl. Ex. 1, Supplement

to the Reports of William H. Purcell at 3) In Hechinger, the plaintiffs alleged that the

directors had breached their duties to creditors by approving an acquisition that cashed

out shareholders, and the plaintiffs sought damages from the directors equal to at least the

value of the amounts paid to the shareholders in that transaction. 327 B.R. at 525. In

denying the jury demand, Judge Robinson described these damages as restitutional. Id.[5]

---

[4]     (...continued)
        damages because claim is "inherently equitable").

[5]     In describing the relief as restitution, Judge Robinson noted that the amended complaint
        alleged that the defendant directors possessed the funds sought by plaintiffs. Hechinger,
        327 B.R. at 454 n.8. However, the Hechinger amended complaint does not seek to
        (continued...)

14

In Carter, the court similarly characterized as restitution a claim that sought to hold a

bankruptcy trustee liable in monetary damages for a reduction in the value of estate

property caused by his conduct. 220 B.R. at 306. The type of monetary relief sought in

those cases is no different than the "compensatory damages" theory advanced by plaintiffs

here in which they seek to force a fiduciary to restore the value of Marvel.[6] Thus,

although the courts in Hechinger and Carter labeled the damages as restitution, the

borderline equitable nature of the remedies in those cases suggest that the historical status

of a breach of fiduciary duty as an inherently equitable cause of action was a significant

component of the calculus performed by those courts.

Indeed, as noted above, several cases hold that the inherently equitable

nature of a fiduciary duty claim is so clear and obvious that it is *by itself* sufficient to deny

a jury demand, even where a plaintiff seeks monetary damages. (See p. 14, supra). In

---

[5]    (...continued)
recover just the funds received by the directors. The directors approved a transaction
that resulted in a $127 million distribution to all shareholders, which the directors
received, pro rata, to the extent that they owned shares. (See Lockwood Decl. Ex. 2,
Hechinger Am. Compl. at ¶¶ 13-19, 99-102) Plaintiffs sought to hold the directors liable
for the full value of the payout to all shareholders based on allegations that the directors
breached their fiduciary duties in approving the transaction. (Id. at 99-102, WHERE-
FORE clause ¶ 1) Thus, the relief sought in Hechinger (damages equal to the value of
the corporation's loss resulting from the directors' decision) is indistinguishable from
plaintiffs' damages theory in this action.

[6]    Standard Chlorine is another case where a claim for monetary damages was determined
to be equitable because it involved a breach of fiduciary duty. The plaintiff sought
money damages through the mechanism of a "constructive trust," even though plaintiff
did not target specific property or proceeds. Judge Robinson refused to dismiss the
request because "this equitable remedy also can be applied to the recovery of money
when the right asserted by the plaintiff is distinctly equitable in nature, including a right
arising from breach of a fiduciary duty." Standard Chlorine, 821 F. Supp. at 254.

15

this case, however, the Court need not go that far, because here the remedy prong also

favors equity. Thus, on balance, the two prongs of the Granfinanciera test strongly favor

striking the jury demand because both the historical treatment of a fiduciary duty claim

and the flexible and discretionary remedies provided for such a claim under Delaware law

give the claim here status as an equity claim. Accordingly, defendants' motion to strike

the jury demand should be granted.

## II.    MARVEL'S COMMENCEMENT OF THIS ACTION WHILE A DEBTOR IN BANKRUPTCY ELIMINATED ANY RIGHT TO A JURY TRIAL.

Finally, plaintiffs have no right to a jury trial because this action was

commenced by Marvel as a voluntary debtor in bankruptcy and plaintiffs sue as Marvel's

successors-in-interest. Thus, plaintiffs' right to a jury trial was extinguished by Marvel's

bankruptcy filing. See Op. Br. at 13-14, citing In re Crowe Rope, 307 B.R. at 3-4; N.I.S.

Corp. v. Hallahan (In re Hallahan), 936 F.2d 1496, 1505 (7th Cir. 1991). Plaintiffs

counter with the assertion that the waiver rule announced in Hallahan has been "rejected

or criticized by most other courts, including the Third Circuit." (Pl. Br. at 14) It is true

that the waiver rule has created a split among the Circuits, with the Six and Seventh

Circuits adopting it, see Longo v. McLaren (In re McLaren), 3 F.3d 958, 960 (6th Cir.

1993), and the Second and Fifth Circuits rejecting it. See Germain v. Connecticut Nat'l

Bank, 988 F.2d 1323, 1329-30 (2d Cir. 1993); In re Jensen, 946 F.2d 369, 373. (5th Cir.

1991). The Third Circuit has raised questions in dictum about the Hallahan waiver rule,

but it has quite clearly not rejected Hallahan, contrary to plaintiffs' claim. As another

court bound to follow Third Circuit precedent has put it: in Billing v. Ravin, Greenberg

16

& Zackin, P.A., 22 F.3d 1242, 1251-53 (3d Cir. 1994), "the Third Circuit discussed but did not resolve the split of the Circuits . . . ." Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow), C.A. Nos. 97-35168 DAS, 98-0833, 1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999). In fact, in Billing the Third Circuit merely noted that the waiver theory raises questions, such as whether it could apply to an involuntary debtor, then resolved the narrow issue before it without ruling on the waiver theory. See Billing, 22 F.3d at 1252. As Marvel was a voluntary debtor, the waiver theory should apply here.

Plaintiffs' suggestion that the waiver theory has been rejected by most courts is flatly wrong. While there is an even split among the four Circuits that have addressed the issue, the district courts and bankruptcy courts in other Circuits have largely embraced the theory. "The vast majority of cases hold that a debtor in bankruptcy has submitted his claims to the equitable jurisdiction of the bankruptcy court such that there is no entitlement to a trial by jury." Hutchins v. Fordyce Bank Trust Co. (In re Hutchins), 211 B.R. 322, 324 (Bankr. E.D. Ark. 1997) (citing nine cases adopting the waiver theory).

Plaintiffs next argue that the waiver theory cannot be applied broadly to cover any prepetition claim brought by the debtor. But, the logic of the rule extends to all of the debtor's pre-petition claims, and that is how courts have applied it. See id. at 324 ("[A] debtor in bankruptcy does not have a right to [a] jury trial on pre-petition claims.").

17

## CONCLUSION

For all of the foregoing reasons, defendants' motion to strike plaintiffs' jury

demand should be granted.

/s/ Thomas J. Allingham II
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Attorneys for Defendants

DATED: December 7, 2005