# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

RONALD CANTOR, et al.,          :
                                :
            Plaintiffs,         :
                                :    No. 97-CIV-586-KAJ
        v.                      :
                                :
RONALD O. PERELMAN, et al.,     :
                                :
            Defendants.         :
---------------------------------------------------------x

## COMPENDIUM OF UNREPORTED OPINIONS DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFFS' JURY DEMAND

Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for Defendants

DATED: December 7, 2005

INDEX

<u>CASE</u>                                                                    <u>TAB NO</u>

Cantor Fitzgerald. L.P. v. Cantor,
        C.A. No. 16297, 2000 WL 307370 (Del. Ch. Mar. 13, 2000) . . . . . . . . . . . 1

Cantor Fitzgerald. L.P. v. Cantor,
        C.A. No. 16297, 2001 WL 536911 (Del. Ch. May 11, 2001) . . . . . . . . . . . 2

Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow),
        C.A. Nos. 97-35168DAS, 98-0833,
        1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999) . . . . . . . . . . . . . . . . . . . . . 3

Smith v. Shell Petroleum, Inc.,
        C.A. No. 8395, 1990 WL 186446 (Del. Ch. Nov. 26, 1990) . . . . . . . . . . . . 4

TAB 2

Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
CANTOR FITZGERALD, L.P., Plaintiff,
v.
Iris CANTOR, et al., Defendants.
Iris CANTOR and Cantor Fitzgerald Incorporated, Third-Party Plaintiffs,
v.
CANTOR FITZGERALD GROUP MANAGEMENT, INC., Third-Party Defendant.
No. 16297.
Submitted: April 17, 2001.
Decided: May 11, 2001.

Rodman Ward, Jr., Thomas J. Allingham II, and Karen Valihura of Skadden, Arps, Slate, Meagher & Flom, LLP Wilmington, Delaware. of Counsel: Thomas J. Schwarz and Joseph M. Asher of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. Attorneys for Plaintiff.
Stephen E. Jenkins and Richard I.G. Jones, Jr. of Ashby & Geddes, Wilmington, Delaware. of Counsel: Barry I. Slotnick and Michael Shapiro of Slotnick, Shapiro & Crocker, LLP, New York, New York; Saul B. Shapiro of Patterson, Belknap, Webb & Tyler LLP, New York, New York; Jack C. Auspitz and Howard E. Heiss of Morrison & Foerster LLP, New York, New York. Attorneys for Defendants.

MEMORANDUM OPINION

STEELE, Justice (by designation).

**\*1** Presently before this Court are the post-trial motions of both the plaintiff and the defendants.[FN1] On March 13, 2000, this Court rendered its decision in this case in a lengthy opinion ("March decision").[FN2] That opinion contains a full discussion of the facts and prior procedural history of this action. For that reason, those matters will only be discussed in this opinion as they are necessary to the discussion and analysis of the merits of the motions.

> FN1. For simplicity, where I refer to the "plaintiff," I mean Cantor Fitzgerald L.P. Where I refer to "defendants," I mean Iris Cantor, Cantor Fitzgerald, Inc., Market Data Corp., and Rodney Fisher.

> FN2. *See Cantor Fitzgerald, L.P. v. Cantor,* Del. Ch., C.A. No. 16297, Steele, V.C. (March 13, 2000) (Mem.Op.).

In the March decision, the Court decided a number of issues. Pertinent to the present motions was the Court's ruling that the defendants, as limited partners in a limited partnership, owed the plaintiff contractually-created duties of loyalty. Moreover, the Court ultimately ruled that the defendants, in operating a competing business venture, committed an "egregious breach of the partnership agreement" that violated their duty of loyalty to the partnership.[FN3] To remedy this breach of the partnership agreement and the duty of loyalty, the Court granted the plaintiff certain declaratory relief and an award of damages measured by the amount of money spent by the plaintiff to seek judicial redress for harm caused by the breach.[FN4] The present motions relate to the Court's award of monetary damages predicated upon attorneys' fees and expenses incurred in the course of litigation related to redress of that harm.

> FN3. *Id.* at 3.

FN4. *Id.*

On March 24, 2000, the defendants, challenging the Court's monetary award of damages, filed a motion pursuant to Court of Chancery Rules 59(a) and (e) and Rule 60(b) seeking either a new trial, an amended judgment, or relief from a judgment or order. On April 6, 2000, the plaintiff filed its application for redress of harm that set its outlay for attorneys' fees and expenses at $11,105,380. All motions were fully briefed and oral argument was heard on June 14, 2000.[FN5] The defendants' motions will be addressed first and then the plaintiff's. For the reasons discussed below, the defendants' motions are denied and the plaintiff's application is granted in accordance with the March decision.

> FN5. Other disputes between the parties and circumstances beyond their control have unfortunately delayed resolution of this issue for some time.

### I. *Defendants' Motions under Rule 59.*

The defendants have moved for relief from the Court's award of a monetary judgment under various provisions of Court of Chancery Rules 59 and 60. In general, Rule 59 provides a mechanism for a new trial and Rule 60 provides relief from a judgment or order. Rule 59(a) provides that:
A new trial may be granted to all or any of the parties, and on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity. The Court may open the judgment, if one has been entered, take additional testimony, amend or make new factual findings and legal conclusions, and direct the entry of a new judgment.
Rule 59(e), however, provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Finally, Rule 60(b) provides relief from a judgment or order because of "mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc."[FN6]

> FN6. Court of Chancery Rule 60(b).

**\*2** Consideration of these motions is complicated by the fact that the Court naively assumed that the parties could confer and agree on a declaratory judgment order and has, therefore, not issued a final order in this case. Thus, the requirements for <u>Rule 60(b)</u> are not satisfied and the defendants are not entitled to relief under that rule.[FN7] For the same reasons, the requirements for a motion under rule 59(e) are, likewise, unmet.[FN8] Because "the manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors prior to appeal,"[FN9] the Court agrees that the defendants' motions are properly considered under Rule 59. However, as the defendants seek reconsideration of the Trial Court's findings of fact and/or conclusions of law, it is more properly considered a motion for reargument under Rule 59(f).[FN10] For these reasons, the Court will evaluate the defendants' motions under the standards applicable for Rules 59(a) and (f).[FN11]

> FN7. The "Court may relieve a party ⋯from a final judgment [or] order ⋯." <u>Court of Chancery Rule 60(b)</u>.

> FN8. Rule 59(e) is a motion to "alter or amend a *judgment.*" The Court of Chancery Rules define a judgment as "any order from which an appeal lies."<u>Court of Chancery Rule 54 (a)</u>. *See also*<u>Court of Chancery Rule 58</u> ('The order of the Court shall constitute the judgment of the Court.").

> FN9. *Eisenmann Corp. v. General Motors Corp.,* Del.Super., C.A. No. 99C-07-260, Quillen, J. (Feb. 24, 2000) Let. Op. and Order at 1.

FN10. *See id.*

FN11. The Court recognizes that the defendants motions may have been filed more than five days after "the filing of the Court's opinion or the receipt of the Court's decision."Court of Chancery Rule 59(f). The defendants, in their motion, requested that, should the Court find that Rule 59(f) is more appropriate, the time for the motion be enlarged pursuant to Court of Chancery Rule 6(b). *See* Defendants' Motion Pursuant to Rules 59(a) and (e) and 60(b) at n.1 (Mar. 24, 2000). I find that the defendants have met the requirements of Rule 6(b) because their conduct is even more benign than "excusable neglect." There was a legitimate argument that other provisions of Rule 59 applied and the defendants chose to proceed under those provisions. Moreover, enlarging the time for a motion for reargument by several days does not prejudice the plaintiff. For these reasons, the defendants' request to enlarge the time for a motion under Rule 59(f) is granted.

As noted above, the Court may grant a new trial under Rule 59(a) for "any of the reasons for which hearings have heretofore been granted in suits of equity."[FN12] In ruling on such a motion, the Court is charged with exercising the "judicial discretion of the Court so that injustice may be prevented ...."[FN13] The standard for a motion for reargument under Rule 59(f) is slightly different. The Court will generally deny a motion for reargument "unless the Court has overlooked a decision or principal of law that would have controlling effect or the Court has misapprehended the law or the facts so that the outcome of the decision would be affected."[FN14]

FN12. Court of Chancery Rule 59(a).

FN13. *Daniel D. Rappa, Inc. v. Hanson,* Del.Supr., 209 A.2d 163, 166 (1965).

FN14. *Continental Ins. Co. v. Rutledge & Co., Inc.,* Del. Ch., C.A. No. 15539, Chandler, C. (Feb. 15, 2000) Let. Op. at 2 (citing *Miles, Inc. v. Cookson America, Inc.,* Del. Ch., 677 A.2d 505 (1995)).

## ANALYSIS

The defendants argue that the Court improperly awarded the plaintiff its attorneys' fees as the prevailing party. Specifically, they argue that the parties never presented argument on the issue of fees and that the issue was never properly raised before the Court for consideration. More importantly, however, they direct the Court's attention to a provision in the partnership agreement that they allege proscribes an award of attorneys' fees in this case. Thus, they argue, the Court misapprehended both the facts and the resulting rule of law and that they should be granted either a new trial or an opportunity to reargue the issue of attorneys' fees.

The plaintiff, however, argues that the Court's March decision did not order "fee-shifting" in the traditional sense, but, rather, it found that the plaintiff had been damaged by the defendants' behavior, and the most appropriate measure of these damages was the amount the plaintiff had spent in prosecuting the action. In the alternative, the plaintiff argues that, in this case, the partnership agreement provision would not prevent the Court from shifting the responsibility for attorneys' fees and expenses to the culpable party under an exception to the American Rule.

As one can see, the parties have widely differing views on the Court's intent in crafting its remedy in the March decision. To the extent I failed to articulate my reasoning clearly in the language of that opinion, these motions allow me to re-articulate that reasoning. The plaintiff's reading of the March decision is correct. As discussed more fully below, the Court intended to use the plaintiff's fees and expenses as a measure of damages in this case. Even had that not been the Court's intent now that defendants raise the issue, traditional fee shifting would still be appropriate.

A. The Court's award of damages measured by attorneys' fees.

***3** In the March decision, the Court found that the plaintiff was harmed by the defendants' conduct in several identifiable, but inherently unmeasurable, ways.[FN15] Any attempt to express those damages by a sum certain would have required the Court to engage in near speculation. Despite problems in quantifying the harm to the plaintiff, this "Court, fortunately, has broad discretion to tailor remedies to suit the situation as it exists."[FN16] Moreover, where there has been a breach of the duty of loyalty, as here, "potentially harsher rules come into play" and "the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly ···· The strict imposition of penalties under Delaware law are designed to discourage disloyalty."[FN17]

FN15. *See* March Decision at 80-82.

FN16. *Andresen v. Bucalo,* Del. Ch., C.A. No. 6372, Hartnett, V.C. (March 14, 1984) Mem. Op. at 10. *See also Bomarko, Inc. v. International Telecharge, Inc.,* Del. Ch., C.A. No. 13052, Lamb, V.C. (Nov. 4, 1999, revised on Nov. 16, 1999) Mem. Op. at 44-45 ("In determining damages, the Court's powers are complete to fashion any form of equitable and monetary relief as may be appropriate." (quoting *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 714 (1983)* (internal quotations omitted)); *Universal Studios, Inc. v. Viacom, Inc.,* Del. Ch., 705 A.2d 579, 583 (1997) ("[W]hen the parties' agreements have been breached but neither the innocent party nor the venture suffers immediate quantifiable harm, the equitable powers of this Court afford me broad discretion in fashioning appropriate relief.").

FN17. *International Telecharge, Inc. v. Bomarko, Inc.,* Del. Supr ., 766 A.2d 437, 441 (2000) (quoting from *Thorpe v. CERBCO, Inc.,* Del.Supr., 676 A.2d 436, 445 (1996)).

With this mantra as a guide, the Court set out to determine an adequate remedy that would make this plaintiff whole but would, at the same time, escape the peril of over-harshly punishing the defendants. In short, the opinion, however inartfully stated, attempted to directly match the cost of the wrongdoing with the clearest proof of the monetary costs to remedy that wrongdoing. It was quite clear from the evidence that the plaintiff was expending significant resources, both internally and externally, to address, contain, and counteract the defendants' egregious breach of their duty of loyalty. Those internal costs, or expenditures, are not readily capable of quantification. The external costs, the fees for counsel and experts, however, are.

While awarding damages to the plaintiff equal to the fees and expenses spent in prosecuting this action will not make the plaintiff completely whole and will leave some harm unanswered, this Court, exercising the discretion given it, determined that damages, as measured by attorneys' fees and expenses spent to address the defendants' conduct, is an appropriate remedy for this egregious breach of the duty of loyalty. This award can be determined with specificity, is directly related to certain "injuries" to the plaintiff, and can not be characterized as punitive because it does not attempt to quantify and remedy the more subjective, if not speculative, internal costs. Thus, while the total harm to the plaintiff may actually lie at some unknown amount greater than the expenditure for attorneys' fees and expenses, the speculative nature of any additional monetary harm led me to conclude that including any such amount in any fashioned monetary remedy could fairly be deemed tantamount to awarding punitive damages.

The Court found that the defendants had breached their duty of loyalty and was faced with the task of crafting a remedy to address that wrong. On these facts, I found that the most appropriate award of damages would be an award measured by the plaintiff's expenditures for attorneys' fees and expenses in prosecuting this action.[FN18] The Court reaffirms the remedy crafted in the March decision.

FN18. The Court notes that this result is limited to these special facts and should not be read as stating a broad new principal, heretofore unknown, that expenditures for attorneys' fees and expenses will always be considered a component of more general damages. Extraordinary facts will sometimes call for extraordinary remedies. *See Modern Dust Bag Co., Inc. v. Commercial Trust Co.,* Del. Ch., 91 A.2d 469 (1952) ("[W]here the circumstances of a case are such as to require the application of equitable principles, the

fact that no precedent can be found in which relief may be granted under a similar state of facts is no reason for refusing relief.").

### B. Traditional "fee shifting" would also be appropriate.

***4** The preceding discussion fully addresses the Court's original reasoning for crafting the award as it did in this case. The defendants', however, viewed this as a decision by the Court to grant the plaintiff an award of attorneys' fees and expenses under traditional fee shifting exceptions to the American Rule.[FN19] After reviewing the defendants' written and oral arguments on this issue, I have reconsidered any basis for an actual fee shifting and am now convinced that it would have been entirely appropriate to grant an award of attorneys' fees and expenses in the traditional sense in this case had I chosen to do so. The defendants do not argue that an award of attorneys' fees and expenses is not warranted in this case. Rather, they center their argument on the principal that the partnership agreement contains a pre-negotiated provision stating that both parties will bear their own attorneys' fees and expenses. Thus, there are two parts to this analysis. First, would an award of attorneys' fees and expenses generally be available under traditional common law rules? Second, may the Court award attorneys' fees and expenses despite a contractual provision purporting to address the issue? If the answer to both questions is "yes," then an award of fees and expenses under a fee shifting theory would be appropriate in this case.

> FN19. As noted above, the Court's intent was focused on crafting a damages remedy and not on fee shifting. The Court, however, in reading the March decision again, and after some time removed from the drafting process, acknowledges that language in the opinion could certainly lead the defendants to their interpretation. For this reason, their argument should not be dismissed "out-of-hand" and will be addressed fully so that no doubt will lie concerning the Court's rationale for, and its ability to craft, a remedy in this case.

Under what is commonly known as the "American Rule," absent express statutory provisions to the contrary, each party involved in litigation will bear only their individual attorneys' fees no matter what the outcome of the litigation. [FN20] Over time, however, the Courts have acknowledged exceptions to this general rule. One exception relevant to this case is the "bad faith" exception to the American Rule.[FN21]

> FN20. See _Johnston v. Arbitrium (Cayman Islands) Handels AG,_ Del.Supr., 720 A.2d 542, 545 (1998).

> FN21. _Id._

No single definition for "bad faith" in this context exists and each determination will turn on the special facts of the particular case.[FN22] Under this exception, fees may be awarded against a defendant where "the action giving rise to the suit involve[s] bad faith, fraud, 'conduct that was totally unjustified, or the like' and attorney's fees are considered an appropriate part of damages."[FN23] I made at least one point absolutely clear in the March decision-the defendants' behavior constituted an egregious breach of the partnership agreement and their duty of loyalty.[FN24] Moreover, the defendants knew, from the outset, that their acts were designed to challenge directly the core business of the plaintiff and that those acts were in derogation of the partnership agreement.[FN25] Under these facts, I find that these faithless defendants have acted in "bad faith" and that an award of attorneys' fees and expenses would be appropriate under the bad faith exception to the American Rule.

> FN22. _See id._ at 546. _See also,_ although in a totally different context, the Supreme Court's elaborate discussion of "bad faith" in _E.I. DuPont de Nemours and Co. v. Pressman,_ Del. Supr ., 679 A.2d 436 (1996).

FN23. *Barrows v. Bowen,* Del. Ch., C.A. No. 1454, Allen, C. (Sept. 7, 1994) Mem. Op. at 3 (quoting *Weinberger v. U.O.P., Inc.,* Del. Ch., 517 A.2d 653, 656 (1986)).

FN24. *See* March decision at 88-89.

FN25. *See H & H Brand Farms, Inc. v. Simpler,* Del. Ch., C.A. No. 1658, Chandler, C. (Sept. 1, 1994) (Court found "bad faith" where the defendants adopted and continued a course of conduct that they knew would be challenged.).

I must now consider whether the partnership agreement would trump the common law determination above and prevent an award of fees and expenses. For the reasons stated below, I find that it does not and the Court may award attorneys' fees and expenses despite any provision in the partnership agreement suggesting the contrary.

**\*5** The defendants point to Section 20.01 of the Partnership Agreement as evidence that the parties pre-negotiated for an agreement that the parties would bear their own attorneys' fees and expenses in a case such as this. [FN26] Section 20.01 is a lengthy paragraph dealing with several matters. A significant portion of the paragraph deals with arbitration and arbitration procedure. Inserted dead in the middle of the arbitration procedure discussion is the following sentence: "Each party shall bear its own expenses for counsel and other out-of-pocket costs in connection with any judicial resolution of a dispute, difference or controversy." Taken by itself, and out of context, this sentence could evince an intent by the parties to bear their own attorneys' fees and expenses in this "judicial resolution of a dispute." Placed in context, in the center of an arbitration discussion, the intent of the parties is less clear. One should not lose sight of the fact that the bad faith breach of the duty of loyalty in this case generated a petition for extraordinary relief in the form of an injunction and involved a complex web of parties, many of whom were not parties to the Partnership Agreement. It seems disingenuous indeed, to stretch the parties' intent to pay their own fees and expenses in a dispute over the terms of the Partnership Agreement, which might be resolved by arbitration, to a multi-party controversy involving parties not subject to the terms of the Partnership Agreement. Ironically, despite the fervor with which the defendants assert the Partnership Agreement's language to be a bar against a fee award, I can not overlook the fact that they themselves sought an award of attorneys' fees in their pleadings. I find it impossible to conclude that the parties reference to "judicial resolution" in this context contemplated the course of events that have transpired in this litigation. Fortunately, for the purposes of this discussion, I do not need to unravel this enigma for even had the parties clearly intended that they bear their own fees and expenses under these extraordinary circumstances, the facts of this case warrant a remedy beyond that contemplated by the parties.

FN26. *See* Def. Motion at Ex.A. While the Partnership Agreement was an exhibit at trial, neither party directed the Court's attention to this provision. This provision is, nonetheless, a "fact" already in evidence.

As noted above, the Court has broad discretion to craft a remedy for a breach of the duty of loyalty. I believe that when the facts demonstrate behavior as egregious as that here, the Court's normal deference to pre-negotiated partnership agreement provisions [FN27] will yield to a conscientious effort to craft an appropriate remedy. Going beyond the remedies provided for by contract is not unknown in this jurisdiction when the Court is addressing particularly culpable conduct. [FN28] This case warrants a similar deviation from the parties' alleged agreement. For that reason, I find that the Court would be justified in awarding attorneys' fees and expenses under the bad faith exception to the American Rule notwithstanding any contractual provisions arguably to the contrary.

FN27. *See generally Continental Ins. Co. v. Rutledge & Co., Inc.,* Del. Ch., 750 A.2d 1219 (2000); *U.S. West, Inc. v. Time Warner, Inc.,* Del. Ch., C.A. No. 14555, Allen, C. (June 6, 1996) Mem. Op.

FN28. *See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Price,* Del. Ch., C.A. No. 11097, Allen, C. (Sept. 13, 1989) Mem. Op.

## CONCLUSION

**\*6** The defendants' motions for a new trial and reargument under Rule 59 are denied. The defendants have not shown that the Court misapprehended the law or the facts in a manner that would change the outcome. The defendants can not claim that the concept of measuring damages by attorneys' fees and expenses incurred in remedying their breach is a surprise in this case. Both parties, in the complaint and the counter-claims (despite the language of the Partnership Agreement), asserted that they sought attorneys' fees and expenses as a portion of their remedy. For these reasons, I reaffirm my decision to use the plaintiff's attorneys' fees and expenses as a measure of damages. I see a distinction between this and traditional fee shifting. To the extent, however, there is an argument that this is a "distinction without a difference," I find that an award of attorneys' fees and expenses under the bad faith exception to the American Rule would be warranted in this case. The award, as announced in the Court's March opinion is reaffirmed and stands as my final decision on the matter.

### II. *Plaintiff's Application for Redress of Harm.*

In the March decision, the Court directed the plaintiff to submit an order for declaratory relief consistent with the opinion and an application for fees and expenses.[FN29] That final order has yet to be resolved and has become further complicated as a result of the dispute in Civil Action No. 18101. Upon receipt of this opinion, I ask the parties to arrange a conference to discuss:

FN29. March decision at 92.

1. Resolution of the actual monetary award in this action based upon Plaintiff's application for fees and expenses and defendants' opposition to that amount including the need for further factual hearings, if any; and,
2. The efficacy of a declaratory judgment order encompassing both this action and Civil Action No. 18101; and,
3. The extent to which any party seeks action by me under Court of Chancery Rule 54(b).
The defendants' Motions under Rule 59 are DENIED.
IT IS SO ORDERD.
Del.Ch.,2001.
Cantor Fitzgerald, L.P. v. Cantor
Not Reported in A.2d, 2001 WL 536911 (Del.Ch.)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 3

Not Reported in B.R., 1999 WL 97939 (Bankr.E.D.Pa.)
Only the Westlaw citation is currently available.

United States Bankruptcy Court, E.D. Pennsylvania.
In re: Patricia Anne KRIDLOW Debtor
Andrew N. SCHWARTZ, Trustee, Patricia Anne Kridlow, Plaintiffs
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Prudential Property and Casualty
Insurance Company, Pruco, Inc and Their Affiliates, Defendants
Nos. 97-35168DAS, 98-0833.

Feb. 19, 1999.

F. Emmet Ciccone, Havertown, PA, for Debtor.
H. Joseph Byron, Phila., PA, for Defendants.
Gary McCafferty, Phila., PA, for Wells Fargo Bank, Interested Creditor.

*MEMORANDUM*

SCHOLL, Chief Bankruptcy J.

**\*1** The instant adversary proceeding ("the Proceeding"), arising out of the individual voluntary Chapter 7 bankruptcy case of PATRICIA ANNE KRIDLOW ("the Debtor"), presently presents us with several pre-trial motions filed by the Defendants, PRUDENTIAL INSURANCE COMPANY OF AMERICA, ("Prudential"), PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY ("Prupac"), and PRUCO, INC. ("Pruco"). These include motions (1) to dismiss the claims against prudential and Pruco ("the Dismissal Motion"); (2) to disqualify Harris R. Rosen, Esquire, special counsel ("Counsel") appointed for ANDREW SCHWARTZ ("the Trustee") ("the Disqualification Motion"); and (3) to strike the Plaintiffs' jury demand ("the Jury Motion"). Adhering to the tenor of our decisions touching on the issues raised in the motions, we grant the Jury Motion and deny the other Motions in readiness for the scheduled date of a non-jury trial of the Proceeding in this court on March 23, 1999.

This case was filed on December 12, 1997, undoubtedly prompted by a judgment of over $4.3 million entered against the Debtor as the result of a March 9, 1991, motor vehicle accident which she struck a pedestrian. The Defendants, who insured the Debtor under a policy limited to $100,000 liability and $10,000 first party benefits, allegedly improperly and in bad faith, refused her any coverage for the accident. The Trustee, by application of November 17, 1998, obtained the appointment of Counsel, who had previously represented the guardian of the injured pedestrian in obtaining the verdict against the Debtor, in an Order of December 2, 1998. The Complaint, naming the Trustee and the Debtor as Plaintiffs and all three Defendants and "their affiliates," was filed on December 16, 1998.

After a colloquy with interested counsel at a January 7, 1999, hearing on a discovery motion, at which the Defendants raised issues regarding improper service and expressed an intention to file the Dismissal Motion and Disqualification Motion, we entered an Order of January 8, 1999, which, *inter alia,* directed the Defendants to file and brief any such Motions by January 29, 1999, and for the Plaintiffs to file responses by February 12, 1999. Noting the Debtor's January 29, 1999, jury demand and the absence of an answer to the Complaint, we entered a further Order of February 2, 1999, directing the Defendants to file Answers to the Complaint and for both parties to address the validity of the jury demand and indicate whether they consented to our conducting any permissible jury trial by February 12, 1999, as well. The latter aspect of this Order prompted the filing of the Jury Motion by the Defendants among the filings on February 12, 1999. The Plaintiffs also filed an Amended Complaint on February 11, 1999, which it is alleged only changed the allegation that the Proceeding is core to one that it is either core or non-core.

As we noted at the outset, all of the pre-trial motions are addressed herein. The first that we will address is the Disqualification Motion. This Motion is based upon the following premises:

**\*2** 1. Counsel represented the pedestrian's guardian in the suit against the Debtor, thus allegedly creating a conflict as described in *In re BH & P, Inc.,* 949 F.2d 1300 (3d Cir.1991).

2. The Bankruptcy Code provision relating to appointment of special counsel, 11 U.S.C. § 327(e), provides as follows:

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

3. Since this section purportedly requires that special counsel "has represented the debtor" in the past, and Counsel had not, his appointment is inappropriate under this statutory provision.
4. Furthermore, alleging that "it is expected" that Counsel will be a witness in the trial of the Proceeding, his appointment violated Rule 3.7 of the Rules of Professional Conduct.
In *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 476 (3d Cir.1998), the court, discussing the provisions of § 327 generally, clarified and narrowed its holdings in *BH & P* regarding analysis of measuring the effect of conflicts of counsel as follows:
(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion-- pursuant to § 327(a) and consistent with § 327(c)--disqualify an attorney who has a potential conflict of interest and (3) the district court may disqualify an attorney on the appearance of conflict alone. Although they note that Counsel has represented a creditor of the Debtor prior to his appointment to represent the Trustee, the Defendants fail to identify any actual conflict of interest between the creditor and the Trustee. *See also In re ATR Development Co.,* 1997 WL 607553, at *1- *2 (Bankr.E.D.Pa. Sept. 29, 1997). To the contrary, it appears that both have a common interest in vigorously pursuing any insurance benefits to which the Debtor is entitled from the Defendants. The Defendants cite *In re Greater Pottstown Community Church of the Evangelical Congregational Church,* 80 B.R. 706, 711 (Bankr.E.D.Pa.1987), for the principle that simultaneous representation of a creditor and debtor is impermissible because counsel for a debtor, under 11 U.S.C. § 327(a), must be disinterested. However, the "disinterestedness" requirement applies only to general counsel appointed pursuant to § 327(a), not to special counsel appointed, as was Counsel here, for the "specified special purpose" of pursuing this litigation, pursuant to 11 U.S.C. § 327(e). *See In re G & H Steel Service, Inc.,* 76 B.R. 508, 510 (Bankr.E.D.Pa.1987).
Although there is some support for the Defendants' reading of § 327(e) as limiting appointment of special counsel to counsel who previously represented the debtor, *e.g. Meespierson, Inc. v. Strategic Telecom, Inc.,* 202 B.R. 845, 848-49 (D.Del.1996), and cases cited therein, that interpretation of § 327(e) has not been accepted by this court. *See In re Jefsaba, Inc.,* Bankr.No. 91-23043DWS (Bankr.E.D.Pa. Dec. 1, 1994); and *In re Renninger Mason Contractors, Inc.,* 58 B.R. 516, 517 (Bankr.E.D.Pa.1986). *See also In re Fondiller,* 15 B.R. 890, 892-93 (Bankr.9 th Cir.1981).
**\*3** We note the presence of 11 U.S.C. § 327(c), which provides that,
[i]n a case under chapter 7, 12 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.
This section allows a creditor's attorney to be appointed as special or general counsel for a trustee, as long as there is no actual conflict between the representation of the creditor and the trustee or debtor, as was the case in *Greater Pottstown, supra.*
There is, moreover, no logical reason to limit the appointment of special counsel to an attorney who previously represented a debtor. Indeed, in some of the more memorable cases in this court, prosecuting special counsel was simultaneously counsel for a creditor. *See In re Schachter,* 228 B.R. 359, 362 (Bankr.E.D.Pa.1999); and *In re Main, Inc.,* 1998 WL 778017 (Bankr.E.D.Pa. Nov. 4, 1998); and *In re Clayton,* 1996 WL 537852 (Bankr.E.D.Pa. Sept. 17, 1996). In all of these cases, as in the instant case, counsel for a very active creditor was appointed as special counsel to the trustee by this court and vigorously represented the trustees' interests on behalf or against the respective debtors. Finally, we note that Counsel had already *been* appointed as the Trustee's special counsel without objection prior to his commencing the Proceeding. The more appropriate time for raising an objection to Counsel's appointment would have been at the time of appointment rather than after significant services pursuant to the appointment have already been undertaken by Counsel. *See In re Engle,* 124 F.3d 567, 580-90 (3d Cir.1997) (conc. & dis. ops.).
We therefore conclude that Counsel was properly appointed as the Trustee's special counsel under § 327(e) and that there is no actual conflict between Counsel's former representation of a creditor against the Debtor and his present representation of the Trustee requiring his disqualification. We also reject the argument that because they may call counsel as a witness, he should be for that reason, disqualified. As we noted in *G & H, supra,* 76 B.R. at 511-12, we are skeptical of this argument. It is not clear whom the Defendants actually anticipate calling as witnesses. The Plaintiffs indicate in their reply brief that they will not call Counsel, but would call his co-counsel for any testimony otherwise adducable from Counsel. The Defendants may insist on calling Counsel, but should not, for that reason, be able to eliminate him as the Trustee's chosen representative. *Id.* at

512. The Disqualification Motion will therefore be denied.

Next, we address the Jury Motion. This issue arises in what is an unusual posture. In most instances, a jury demand is interposed in a bankruptcy court proceeding by a defendant creditor who either wishes to exit the bankruptcy forum, or delay litigation against it, or both. Here, the jury demand is made by the Plaintiffs, the Trustee and the Debtor, who have consented to our conducting the requested jury trial in this court. The Defendants, meanwhile, have made no counter-jury demand and they declined to consent to our conducting the jury trial requested by the Plaintiffs.

**\*4** This state of affairs has unusual consequences. Because all parties do not consent to our doing so, even though the non-consenting party is not the party demanding the jury trial, this court could not conduct any jury trial to which the Plaintiffs might be entitled by the terms of 28 U.S.C. § 157(e). In any event the Proceeding, as a complex cause of action arising solely from pre-petition events, is clearly non-core, *see Beard v. Braunstein,* 914 F.2d 434, 443-45 (3d Cir.1991), which status would also preclude our conducting a jury trial without the Defendants' consent. *Id. at 442-43.* The non-core status of the Proceeding will also preclude us from finally determining the Proceeding, if not from hearing it, even if the jury demand is stricken. *See* 28 U.S.C. § 157(c)(1).

The Defendants contend that the Plaintiffs have no right to a jury trial on their bad faith insurance claims under 42 Pa.C.S. § 8371 in any forum, citing *Younis Brothers & Co. v. CIGNA Worldwide Ins. Co.,* 882 F.Supp. 1468 (E.D.Pa.1994); *Coyne v. Allstate Ins. Co.,* 771 F.Supp. 673 (E.D.Pa.1991); and *Terletsky v. Prudential Property & Casualty Ins. Co.,* 437 Pa.Super. 108, 649 A .2d 680 (1994), *allocatur denied,* 540 Pa. 641, 659 A.2d 560. We find, however, that, among these cases, only *Younis* actually discusses the jury trial issue and that decision concludes that a right to a jury trial *does* exist for most § 8371 claims, the only exemptions being potential claims for interest, court costs, and attorneys fees. 882 F.Supp. at 1474-77. This result is consistent with the authorities cited by the Plaintiffs which support a right to a jury trial of most § 8371 claims, *Kraeger v. Nationwide Mutual Ins. Co.,* 1997 WL 30627 (E.D.Pa. Jan. 27, 1997); and *Fahy v. Nationwide Mutual Fire Ins. Co.,* 885 F.Supp. 678, 680-81 (M.D.Pa.1985). Since the Plaintiffs would, out of bankruptcy court, have a right to a jury trial as to at least part of their claims, they would appear to retain a right to a jury trial in the Proceeding, were same not otherwise precluded. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962); and *Beacon Theatres v. Westover,* 359 U.S. 500, 510 (1959) (cases presenting intermingled jury and non-jury issues must be first tried to a jury except in narrowly-limited circumstances). However, in our Order of February 2, 1999, we drew the parties' attentions to the decision in *In re Hutchins,* 211 B.R. 322, 324 (Bankr.E.D.Ark.1997), which cites what it terms

[t]he vast majority of cases [which] hold that a debtor in bankruptcy who has submitted his claims to the equitable jurisdiction of the bankruptcy court such that there is no entitlement to trial by jury. *See Longo v. McLaren (In re McLaren),* 3 F.3d 958 (6 th Cir.1993); *N.I.S. Corp. v. Hallahan (Matter of Hallahan),* 936 F.2d 1496, 1505 (7 th Cir.1991) ("Even if we were to assume that the dischargeability action was legal in nature, however, Hallahan cannot claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to the bankruptcy court."); *Parsons v. United States (In re Parsons),* 153 B.R. 585 (M.D.Fla.1993); *Romar International Georgia, Inc. v. Southtrust Bank of Alabama, National Association (In re Romar International Georgia, Inc.),* 198 B.R. 407, 412 (Bankr.M.D.Ga.1996) ("The Court is persuaded that, by filing this adversary proceeding, Plaintiff has subjected its lender liability claims to this Court's equitable powers to allow, disallow, and offset mutual debts, even though Plaintiff's claims are legal in nature.") *Crews v. Lyons (In re Lyons),* 200 B.R. 459 (Bankr.S.D.Ga.1994); *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.),* 132 B.R. 979 (Bankr.S.D.Ga.1991); *Leslie Salt Co. v. Marshland Development, Inc. (In re Marshland Development, Inc.),* 129 B.R. 626 (Bankr.N.D.Cal.1991); *The Splash v. Irvine Co. (In re Lion Country Safari, Inc. California),* 124 B .R. 566 (Bankr.C.D.Cal.1991); *In re Beugen,* 81 B.R. 994 (Bankr.N.D.Cal.1988).

**\*5** *Accord, In re Scotland Guard Services, Inc.,* 179 B.R. 764, 767-68 (Bankr.D.P.R.1993); *In re Cummins,* 174 B.R. 1005, 1007 n. 1 (Bankr.W.D.Ark.1994); *In re Auto Imports, Inc.,* 162 B.R. 70, 71-72 (Bankr.D.N.H.1003); and *In re Oggi's Int'l Foods, Inc. Oggi's Int'l Foods, Inc. v. Hibernation,* Bankr.No. 89-11683F, Adv. No. 90-0087 (Bankr.E.D. Pa. April 30, 1990).

Despite this authority, the principle that the debtor waives a jury trial by maintaining, in the bankruptcy court, a proceeding triable in alternative forums was expressly rejected in *Germain v. Connecticut Nat'l Bank,* 988 F.2d 1323, 1330 (2d Cir.1993); and *In re Jensen,* 946 F.2d 369, 373-74 (5 th Cir.1991). The Third Circuit discussed but did not resolve the split of the Circuits in light of the contrary decisions in *McLoren* and *Hallahan, supra,* in *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1250-52 (3d Cir.1994). The *Billing* court ultimately held that no jury trial was permissible in the proceeding before it because it concluded that the malpractice claims asserted there by a

trustee against the debtor's bankruptcy counsel were equitable in nature. *Id.* at 1252-53. This court has consistently held that the assertion of counterclaims against a debtor in the course of bankruptcy court litigation by even creditors who have not filed proofs of claim effects a waiver of any right to a jury trial by the creditor asserting the counterclaims. *See In re Labrum & Doak, LLP,* 1998 WL 233749, at *3 (Bankr.E.D.Pa. May 8, 1998); *In re Pocono Springs Co.,* 1997 WL 695617, at *2 *3 (Bankr.E.D.Pa. Nov. 6, 1997); and *In re Lloyd's Securities, Inc.,* 156 B.R. 750, 752-55 (Bankr.E.D.Pa.1993). *Cf. In re Brown,* 219 B.R. 373, 381 (Bankr.E.D.Pa.1998) (pleading counterclaims renders a proceeding as core under 28 U.S.C. § 157(b)(2)(B)). We have thus supported the principle that a party who chooses, when alternatives are available to it, to lay its claims at the door of the bankruptcy court submits itself to the equitable processes therein, as does a creditor who chooses to file a proof of claim. *See Langenkamp v. Culp,* 498 U.S. 42, 44 (1990); and *Travelers Int'l, A.G. v. Robinson,* 982 F.2d 96, 98-100 (3d Cir.1992).

The same principles which apply to creditors should apply to a debtor or a trustee. Thus, if such parties choose the bankruptcy forum when alternative forums exist, they should be prepared to forfeit their right to a jury trial in this forum. The claims asserted in the instant Proceeding clearly could have been asserted in state court and possibly also in federal district court in the first instance. Moreover, even if we reorganized the Plaintiffs' assertion of a jury demand, we would be compelled to relegate the Plaintiffs to the federal district court forum for trial as a result of our determination that this Proceeding is non-core. *See Beard, supra,* 914 F.2d at 442-43. The only means for us to retain the Plaintiffs' chosen forum in this court is thus for us to strike their jury demand. We therefore conclude that it is appropriate for us to do so and we will so order.

**\*6** The final matter remaining before us for disposition is the Dismissal Motion. In support of this Motion, the Defendants argue that the Debtor's policy was issued solely by Prupac and that the only theory under which Prudential and Pruco could possibly be held liable is by an impermissible application of vicarious liability. *See Kasprzak v. American General Life & Accident Ins. Co.,* 914 F.Supp. 144, 146-47 (E.D.Tex.1996); and *Local 397, Int'l Union of Electronics, etc. Workers v. Midwest Fasteners, Inc.,* 779 F.Supp. 788, 792-93 (D.N.J.1992).

However, it is not clear on what theory the Plaintiffs are suing Prudential and Pruco. The Amended Complaint identifies all of the Defendants collectively as the Debtor's insurer, and therefore it appears that the Plaintiffs are suing all three (and their affiliates) on the theory that one or more of them is the Debtor's actual insurer, and not on any applicable theory of vicarious liability.

We have consistently held that Motions such as these,

"based upon Federal Rule of Bankruptcy Procedure 7012(b), incorporating Federal Rule of Civil Procedure ("F.R.Civ.P.") 12(b)(6), since they seek dismissal of the Proceeding for failure to state a cause of action ....can be granted only if

" "the plaintiff includes allegations which show on the face of the complaint that there is some "insuperable bar" to relief.' *In re Katz,* 1998 WL 85165, at *1 (Bankr.E.D.Pa. February 26, 1998) (citations omitted). Rule 12(b)(6) thus imposes a very substantial burden of proof upon the moving party because the factual allegations contained in the nonmovant's pleading at issue are presumed to be true and all factual inference must be drawn in favor of the nonmoving party and against the movant. *Id.* Thus, courts will not dismiss a complaint under F.R.Civ.P. 12(b)(6) unless the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." " *Id.,* quoting *Conley v. Gibson,* 355 U.S. 41, 45- 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *In re Main, Inc.,* 1998 WL 156684 at * 1 (Bankr.E.D.Pa. March 31, 1998)." *In re Labrum & Doak, LLP,* 1998 WL 184413, at *1 (Bankr.E.D. Pa. April 13, 1998) ...'

*In re Labrum & Doak, LLP,* 1998 WL 295542 at *2 (Bankr.E .D. Pa. June 1, 1998) ("Labrum III")." *In re Labrum & Doak, LLP,* 1998 WL 404301, at *2 (Bankr.E.D.Pa. July 15, 1998).

The Complaint does not, on its face, reveal any "insuperable bar" to the Plaintiffs' obtaining relief from any of the named Defendants. It is only when we add the Defendants' apparently-disputed factual assertion that Prupac alone is the Debtor's insurer to the facts that dismissal of Prudential and Pruco is justified. If the Defendants' factual averments are in fact correct, it will be simple enough to mold a judgment holding only the correctly-identified insurer liable to the Plaintiffs. We perceive no hardship to the Defendants from deferring a decision as to which is (are) liable to the Plaintiffs because they are all represented by the same counsel. We note that we view with disfavor a pre-trial motion such as the Dismissal Motion which is of limited usefulness in shortening trials or sharpening or narrowing the issues presented at trial. *See In re Jackson,* 92 B.R. 987, 989, 1000 (Bankr.E.D.Pa.1988).

**\*7** We will therefore proceed to deny the Dismissal Motion. We add to our Order a directive that the

Defendants, if necessary, promptly amend their Answers in light of the Plaintiffs' filing an Amended Complaint in order that the Proceeding can be readied for trial on March 23, 1999. The underlying bankruptcy case of the Debtor is now quite dated. The final audit papers were due to be filed on December 31, 1998, per our Order of May 11, 1998. However, it is now apparent that resolution of the Proceeding must precede completion of this case's administration. As a result, any further continuances of the trial are most unlikely. We also will schedule a status hearing in the Debtor's main case on the date of the trial to attempt to ascertain when the final audit papers will in fact be filed.

*ORDER*

AND NOW, this 19 th day of February, 1999, upon consideration of the Defendants' Motion to Dismiss certain aspects of the Plaintiffs' Complaint ("the Dismissal Motion"), their Motion to Disqualify the Plaintiffs' Counsel ("the Disqualification Motion"), and their Motion to strike the Plaintiffs' Demand for Jury Trial ("the Jury Motion") in the above-entitled proceeding ("the Proceeding"), and the parties' submissions addressing these Motions, and noting that the Plaintiffs have filed a slightly Amended Complaint, which may require slightly amended Answers prior to the scheduled trial of the Proceeding on March 23, 1999, it is hereby ORDERED as follows:

1. The Dismissal Motion and the Disqualification Motion are DENIED.

2. The Jury Motion is GRANTED.

3. The Defendants shall file and serve any necessary Amended Answers to the Amended Complaint on or before February 26, 1999.

4. The trial of the Proceeding remains scheduled on

TUESDAY, MARCH 23, 1999, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107. No further continuances will be favored.

5. A status hearing to determine when the final audit papers in this case must be filed and how our Order of May 11, 1998, should be amended is also scheduled on March 23, 1999.

Bkrtcy.E.D.Pa.,1999.

In re Kridlow

Not Reported in B.R., 1999 WL 97939 (Bankr.E.D.Pa.)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 4**

Westlaw.

Not Reported in A.2d                                                      Page 1

Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371
**(Cite as: Not Reported in A.2d)**

▷

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware, New Castle County.
SMITH
v.
SHELL PETROLEUM, INC.
**Civ. A. No. 8395.**

Submitted: July 20, 1990.
Decided: Nov. 26, 1990.

Clark W. Furlow, Susan L. Parker, Lassen, Smith, Katzenstein & Furlow, Wilmington.
Richard L. Sutton, William O. LaMotte, III, Thomas C. Grimm, Luke W. Mette, Morris, Nichols, Arsht & Tunnell, Wilmington.

DECISION ON THE REMEDY AFTER TRIAL

HARTNETT, Vice-Chancellor.
*1 Still to be addressed in this suit is the appropriate relief to be awarded to the plaintiff Class following this Court's June 19, 1990 decision that the June 10, 1985 disclosure documents sent by defendant SPNV Holdings, Inc., now Shell Petroleum, Inc., to the former minority shareholders of Shell Oil Co. in connection with the June 7, 1985 cash-out merger contained material misdisclosures and omissions in violation of defendant's duty of complete candor.

Because the possible remedies were not adequately addressed in the post-trial briefs, the parties were directed to briefly submit suggestions as to potential remedies. See *Smith v. Shell Petroleum, Inc.,* Del.Ch., C.A. No. 8395-NC, Hartnett, V.C. (June 19, 1990), slip op. at 65.

After considering all the facts and circumstances, the Court finds that $2 per share should be paid to the shareholders who were sent the defective disclosure materials and have not sought an appraisal.

I

As its preferred remedy, defendant suggests that the Class members, after receiving supplemental disclosures from the defendant, should be required to promptly make an election either to continue to retain the merger consideration which they have already received or to give it up and receive a sum equal to the value of the Shell shares which this Court will determine in the pending appraisal proceeding, *In re Appraisal of Shell Oil Co.,* Del.Ch., C.A. No. 8080-NC. Under defendant's proposal, if the Class members choose to elect to receive the value as will be established in the appraisal action, they would have to return the merger consideration, with appropriate interest, at the time they make the election. If the members of the Class elected to return the merger consideration, with interest, they would eventually receive an amount equal to the net appraisal award, including any interest which may (or may not) be awarded, after the appraisal action (and perhaps any appeal) is concluded. Defendant claims that because the determination of the appraised value is *sub judice* and could be higher or lower than the merger consideration already received by the members of the Class, its proposed remedy is appropriate because it will give the Class members no more nor less than those who are entitled to an appraisal will receive.

The defendant further suggests that the supplemental disclosure information should include: (1) the June 19, 1990 Opinion in this matter; (2) a corrected version of the disclosures found to be misleading in the June 19, 1990 Opinion; (3) all previous disclosures regarding the cash-out merger; and (4) a description of the election being offered and the risks involved, including the uncertainty in amount and timing, which is inherent in electing to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 2

Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371
**(Cite as: Not Reported in A.2d)**

seek an appraisal.

Defendant also proposes two other possible alternative remedies. First, defendant requests that if its favored remedy is rejected, a trial relating to the appropriate remedy be held because it asserts that there is no other evidentiary basis for ascertaining damages. Such a trial, defendant contends, would have to consider the following factors:

**\*2** "1) The extent to which shareholders generally do elect an appraisal and the number of shareholders who chose appraisal here.

2) The extent of any causal relationship between the Court's disclosure findings and an actual change in decision for a 'reasonable' shareholder in the context of all of the material information properly supplied to the Class.

3) The effect of the 'primary' error was incorrectly to reduce a Company discounted estimated, future net cash flow ("DCF") of proved and probable reserves by approximately $1 billion or only about $3 per share. Even when corrected for that about $3 primary error, the 1985 DCF would still be about $9 per share (or about $3 billion) *lower* than the *comparable* Company 1984 DCF calculated when Goldman Sachs and the Special Committee determined that $70 was fair. PX 24 p. I-18.

4) The disclosure defects relate to liquidation analysis, only one of the valuation factors to be considered in an appraisal context.

5) An identifiable, substantial segment of the Class did not use the disclosure materials to make a choice of either appraisal or the extra $2 per share offered in lieu of appraisal.

6) The effect of the Class already having been offered $2 in settlement of appraisal claims.

7) The effect of having for five years the use of $60.

8) The 'inadvertence' of the primary error."

As a "last resort" remedy, the defendant proposes

that the Class be decertified in accordance with a reservation made by the defendant in the Class Certification Order of September 1989. Defendant asserts that such an approach would then allow each Class member's claim for damages to be addressed in light of the particulars of its individual circumstances regarding causation and the amount of damage sustained, if any, despite that this would involve the testimony of thousands of former stockholders.

II

Plaintiffs counter that the appropriate remedy is for the Court to automatically award to the Class the difference between what they have already received as the merger consideration and the fair value of their shares as will be determined by this Court in the pending Shell appraisal proceeding. Plaintiffs contend that the Class should not be required to perform any "mechanical steps," such as revoking their prior tenders or demanding or electing appraisal prior to this Court's ruling on fair value in the appraisal action. This optimistically reflects plaintiffs confidence that the appraisal price, when it is determined by this Court, will be greater than the merger price. Plaintiffs argue that any requirement that a stockholder rescind his acceptance of the merger consideration would be inappropriate because in such a case Royal Dutch (SPNV Holdings' parent company) would have an opportunity "to again dissuade a sizeable number of shareholders from receiving fair value for their shares."

After reviewing the remedies proposed by the parties, the Court finds that none of them are appropriate.

III

Plaintiffs' proposed remedy (damages consisting of the difference between the sums already received by the members of the Class from their acceptance of the merger consideration, and the fair value of the Shell stock as determined in the pending appraisal proceeding), is rejected as being unfair and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                        Page 3

Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371
**(Cite as: Not Reported in A.2d)**

unsupported under Delaware law and the facts of this case.

**\*3** Under the Delaware appraisal statute, 8 *Del.C.* § 262, a shareholder deciding to seek an appraisal must forgo the merger consideration until after the appraisal action is completed. He therefore forgoes the use of his money while the appraisal action is pending. A shareholder seeking an appraisal also faces the risks inherent in such an action-such as, the likely long duration of the appraisal proceeding and the possibility that the Court may determine the fair value to be less than the merger consideration. He likewise must face the real possibility that because only a relatively few stockholders will seek an appraisal, it will not be economically feasible to mount an effective legal battle. In addition to considering whether the merger price is fair, he must weigh his own tax situation and his economic and investment goals and opportunities.

Plaintiffs' proposed remedy ignores these factors. Under the plaintiffs' proposal, the Class members would be far better off than those shareholders who actually elected to seek an appraisal in strict compliance with 8 *Del.C.* § 262, because the Class members have had the use of the merger consideration for over 5 years, without assuming any of the risks inherent in seeking an appraisal. Such a result would be unfair and cannot be reconciled with the statutory appraisal scheme under 8 *Del.C.* § 262.

In addition, plaintiffs' proposed remedy is apparently based on the mistaken assumption that all Class members would have sought an appraisal if Holdings had properly disclosed all material information in the June 10, 1985 disclosure documents. In light of the history of this case, however, such an assumption is clearly an over-generalization, which is not supported in the record.

In *Joseph v. Shell Oil Co.,* Del.Ch., 482 A.2d 335 (1984), this Court ordered that additional disclosures be made (including the existence of a $91 per share valuation) and that shareholders who had previously tendered be given the opportunity to rescind their tender. However, only 1/2 of 1%

(about 363,000 out of 78,277,566 shares) of the tendered shares were withdrawn after receipt of the revised disclosure documents. The low percentage of shares withdrawn after receipt of the revised disclosures indicates that, although the additional information disclosed was "material" in the legal sense of promoting full disclosure, there was little direct causal relationship between that information and the decision whether to tender.

That result is analogous to the present issue; yet plaintiffs' proposed remedy effectively assumes, without proof, a direct cause and effect relationship between the defective disclosure documents and each Class member's economic decision not to seek an appraisal. That assumption is unsound because, as indicated, there are numerous factors that influence a shareholder's decision to seek an appraisal (or accept the cash-out merger consideration) other than the quality of the disclosures made.

**\*4** In this case, the Court must additionally take into consideration that the primary disclosure violation was an inadvertent underevaluation of Shell's proved oil reserves. The value of proved oil reserves, by their very nature, is a matter of differing opinions. It seems highly likely that even if those shareholders of Shell who chose not to seek an appraisal in response to the June 10, 1985 disclosure documents had been provided with completely accurate disclosures, most of them would still have decided to accept the cash-out merger price rather than seek an appraisal. See *Weinberger v. UOP, Inc.,* Del.Ch., C.A. No. 5642-NC, Brown, C. (Jan. 30, 1985), slip op. at 23, *aff'd,* Del.Supr., 497 A.2d 792 (1985) (Order).

IV

Defendant's remedy proposals are also unfair. Defendant's primary proposal would allow the defendant to issue supplemental disclosure documents correcting the prior mistakes but would force the plaintiff Class members to decide whether to retain the merger consideration or to return it with appropriate interest, and then receive an amount equal to the net appraisal award, including

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                               Page 4

Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371
**(Cite as: Not Reported in A.2d)**

appraisal interest, if any.

Defendant's redisclosure remedy proposal would be unfair to the Class because the harm to the plaintiff Class occurred in June 1985 when Holdings inadvertently breached its fiduciary duty in making its disclosures and as a result the Class was denied the opportunity to make a fully informed decision whether to accept the cash-out merger consideration or to seek an appraisal.

Arguably, if it were still 1985, shortly after the cash-out merger, a redisclosure of accurate information might be a fair remedy to restore the opportunity lost by shareholders to make an informed choice in June, 1985. This was the procedure followed in *Joseph v. Shell Oil Co.,* Del.Ch., 482 A.2d 335 (1984). Over five years later, however, financial conditions and tax laws have changed, people have retired, died, and reinvested money in other enterprises, among other things. Defendant's proposal also assumes that a stockholder who would desire to rescind after receiving the additional disclosures would be financially able to return the sums received plus interest. Clearly, the defendant's plan would penalize the shareholders by forcing them to make a new election under conditions substantially different from June, 1985. It would also delay indefinitely a final decision in the appraisal action which has been pending for over five years.

In addition, the defendant's primary redisclosure remedy would be unfair because it would undermine a defendant's disclosure duties. Under defendant's theory, a majority shareholder (such as SPNV Holdings) could fail to properly comply with its fiduciary duty to disclose all material information, and then merely issue corrective disclosures five years later. Under such a scenario, majority shareholders would be less likely to meet their disclosures obligations. Furthermore, the defendant has not cited any authority indicating that its proposed redisclosure remedy is fair or reasonable.

**\*5** The defendant's two alternative remedies are also unsound, on their face, and, consequently, are rejected.

V

Because the remedies proposed by the parties have been rejected, this Court must devise its own remedy. In doing so this Court, as a Court of Equity, must strive to find an equitable remedy and it traditionally has had broad discretion in doing so. *Lynch v. Vickers Energy Corp.,* Del.Supr., 429 A.2d 497 (1981); *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 714 (1983); *Wilmont Homes, Inc. v. Weiler,* Del.Supr., 202 A.2d 572 (1964); *Lichens Co. v. Standard Commercial Tobacco Co.,* Del.Ch., 40 A.2d 447 (1944).

Of particular importance in this case is that the primary disclosure violation was inadvertent and the disputed short-form merger was completed over five years ago. Rescission of the transaction therefore would be neither practicable nor equitable. *Smith v. Shell Petroleum, Inc.,* Del.Ch., C.A. No. 8395-NC, Hartnett, V.C. (June 19, 1990), slip op. at 65. See also DOBBS *Handbook on the Law of Remedies* § 256 (1973).

The injury has been proven here with certainty because the shareholders were deprived of their right to make an informed decision regarding a corporate transaction because of a disclosure failure. There is therefore ample precedent for awarding monetary damages to the Class. *Weinberger v. UOP, Inc.,* Del.Ch., C.A. No. 5642-NC, Brown, C. (Jan. 30, 1985), *aff'd,* Del.Supr., 497 A.2d 792 (1985) (Order); *In re: Tri-Star Pictures, Inc. Litigation,* Del.Ch., C.A. No. 9477-NC (Cons.), Jacobs, V.C. (June 14, 1990); DOBBS, supra.

*Weinberger* indicates, however, that where the harm consists solely of minor disclosure violations unaccompanied by any direct clearly discernible financial injury, the damage recovery may, in the court's discretion, be minimal. *Tri-Star,* supra, slip op. at 19. In *Weinberger,* the Court awarded damages of $1 per share. *Weinberger,* supra, slip op. at 26.

The primary disclosure violation in this case occurred because the defendant failed to disclose the existence of proved oil and gas reserves having

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371
**(Cite as: Not Reported in A.2d)**

a value of approximately $1 billion. This equals approximately $3 per share. The understatement of proved reserves by approximately $1 billion, however, does not necessarily translate into an increase in the overall value of Shell Oil Company by $3 per share because of the many uncertainties regarding production of the oil (such as costs to produce the oil, oil prices, etc.).

The Court therefore finds that $2 per share is an appropriate measure of damages to be awarded to the plaintiff Class, especially because there were also other minor disclosure violations in the 1985 disclosure documents which were "indicative of a conscious decision of the defendant to be less than candid." *Smith v. Shell Petroleum, Inc.,* Del.Ch., C.A. No. 8395-NC, Hartnett, V.C. (June 19, 1990), slip op. at 49.

An appropriate order may be submitted.

Del.Ch.,1990.
Smith v. Shell Petroluem, Inc.
Not Reported in A.2d, 1990 WL 186446 (Del.Ch.), 59 USLW 2371

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.