IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD CANTOR, IVAN SNYDER and )
JAMES A. SCARPONE, as TRUSTEES )
OF THE MAFCO LITIGATION TRUST, )
)
)
Plaintiffs, )
)
v. ) Civil Action No. 97-586-KAJ
)
RONALD O. PERELMAN, et al., )
)
Defendants. )
)
)

## MEMORANDUM OPINION

Lawrence C. Ashby, Esq., Philip Trainer, Jr., Esq., Tiffany Geyer Lydon, Esq., Ashby & Geddes, 222 Delaware Avenue, 17th Floor, Wilmington, Delaware 19899; Counsel for Plaintiffs.
    Of Counsel: Edward A. Friedman, Esq., Andrew W. Goldwater, Esq., Daniel B. Rapport, Esq., Emily A. Stubbs, Esq., Jonathan Gottfried, Esq., Friedman Kaplan Seiler & Adelman LLP, 1633 Broadway, New York, New York 10019.

Thomas J. Allingham, II, Esq., Anthony W. Clark, Esq., Paul J. Lockwood, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, Delaware 19899; Counsel for Defendants.

February 10, 2006
Wilmington, Delaware



JORDAN, District Judge

## I. INTRODUCTION

This case involves alleged breaches of fiduciary duty by former directors of Marvel Entertainment Co., Inc. ("Marvel"). The original complaint was filed by Marvel, which was then a debtor-in-possession in bankruptcy, against Ronald O. Perelman, William C. Bevins, Donald G. Drapkin, MAFCO Holdings Inc., MacAndrews & Forbes Holdings Inc., and Andrews Group Incorporated (collectively, "Defendants"). (Docket Item ["D.I."] 1.) Pursuant to the reorganization plan from the bankruptcy proceeding, Marvel assigned the claims in this case to the MAFCO Litigation Trust, and the trustees ("Plaintiffs") have been substituted as the plaintiffs in this action (D.I. 120). In their Second Amended Complaint (D.I. 149, Ex. A; the "Complaint"), Plaintiffs alleged (1) that Perelman, Bevins, and Drapkin breached their fiduciary duties as directors of Marvel and (2) that the remaining defendants aided and abetted those breaches. Jurisdiction is proper under 28 U.S.C. § 1334. Before me now is Defendants' Motion to Strike Plaintiffs' Jury Demand. (D.I. 433; the "Motion.") For the reasons that follow, the Motion will be granted.

## II. BACKGROUND

The background of this case has been set forth in earlier opinions. *Cantor v. Perelman*, 414 F.3d 430, 433-35 (3d Cir. 2005); *Cantor v. Perelman*, 235 F. Supp. 2d 377, 378-80 (D. Del. 2002). Because the analysis of Plaintiffs' demand for a jury requires a careful consideration of Plaintiffs' claims, I will discuss that background in some detail again here.

A.   *Allegations in the Complaint*

Perelman was a director of Marvel and Chairman of Marvel's board. *Cantor*, 414 F.3d at 433. He also owned a controlling interest in Marvel through the following "chain of wholly-owned corporations": Perelman owned 100% of defendant MAFCO Holdings Inc., which owned 100% of defendant MacAndrews & Forbes Holdings Inc., which owned 100% of Marvel III Holdings Inc. ("Marvel III"), which owned 100% of Marvel (Parent) Holdings Inc. ("Marvel Parent"), which owned 100% of Marvel Holdings Inc. ("Marvel Holdings") (collectively, those five companies are referred to herein as the "Marvel Holding Companies"). *Id.* (Complaint, at ¶¶ 18-19, 25.) The remaining defendant, Andrews Group Incorporated, was a wholly-owned subsidiary of MacAndrews & Forbes Holdings Inc. (*Id.* at ¶ 20.) "Marvel Parent and Marvel Holdings together held 60% to 80% of Marvel's publicly traded, outstanding shares during the relevant period." *Cantor*, 414 F.3d at 433. Bevins and Drapkin were also directors of Marvel, and Perelman, Bevins, and Drapkin comprised the entire board of each of the Marvel Holding Companies. *Id.*

Plaintiffs alleged that, in 1993 and 1994, Defendants caused Marvel Holdings, Marvel Parent, and Marvel III to issue three tranches of notes. *Id.* Defendants received $553.3 million in proceeds and pledged all of their stock in Marvel as collateral. *Id.* "None of the proceeds went to Marvel or were used for Marvel's benefit." *Id.* Furthermore, in the note indentures, the issuing companies agreed, through Perelman's control of Marvel, to prevent Marvel from (1) issuing debt or preferred stock except under specified circumstances, (2) issuing stock that might dilute the holding

companies' stake in Marvel, and (3) making "restricted payments," which were defined to include dividends and stock buybacks. *Id.* According to Plaintiffs, "[a]s a result of Perelman's agreement to these restrictions, Marvel's future access to the capital markets was inhibited, with no corresponding benefit to Marvel." (Complaint, at ¶ 34.)

Plaintiffs further alleged that Defendants artificially inflated Marvel's earnings by making licensing agreements, booking the entire amount of the guaranteed license fees as income at the time the agreements were made, and later writing the fees off and never collecting them. (*Id.* at ¶¶ 40-45.) According to Plaintiffs, Defendants' accounting methods allowed them to maintain the price of Marvel stock, the only asset of the Marvel Holding Companies. (*Id.* at ¶ 36.) By artificially holding off a major decline in the price of Marvel stock, Defendants allegedly held off the bankruptcy of the Marvel Holding Companies and prevented the $553.5 million in note proceeds from being treated as preferential payments. (*Id.*) Plaintiffs further allege that, in executing that plan, Marvel employees made misrepresentations to potential licensees. (*Id.* at ¶¶ 41-45.)

Eventually, "Marvel filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 27, 1996. The Note holders have not been repaid." *Cantor*, 414 F.3d at 434. Marvel's bankruptcy was followed by the bankruptcy of Marvel Holdings, Marvel Parent, and Marvel III. (Complaint, at ¶ 36.)

Plaintiffs set forth two "Causes of Action" in their Complaint. First, Plaintiffs alleged that Perelman, Bevins, and Drapkin "breached their fiduciary duties of loyalty, care, and good faith, and are liable to plaintiffs for damages, including all benefits

received as a result of their breaches of fiduciary duty, in an amount to be determined at trial, but believed to be not less than $553.3 million plus pre-judgment interest." (*Id.* at ¶ 49.) Second, Plaintiffs alleged that the other defendants "knowingly participated in and aided and abetted those breaches by, *inter alia*, facilitating the receipt and distribution of the improperly obtained bond proceeds for the benefit of Perelman, Bevins and Drapkin." (*Id.* at ¶ 54.) As a result, those Defendants "are liable for knowingly participating in and aiding and abetting the foregoing breaches of duty in amounts to be determined at trial, but believed to be not less than $553.5 million plus pre-judgment interest." (*Id.* at ¶ 55.)

Plaintiffs requested the following remedies:

(i) compensatory damages, including all benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to be no less than $553.3 million plus pre-judgment interest, and punitive damages in an amount to be determined at trial; and

(ii) such other and further relief as the Court deems just and proper.

(*Id.* at 16-17.)

  B. *Procedural History*

    1. *District Court Proceedings*

This case was referred to Magistrate Judge Mary Pat Thynge on March 21, 2002.[1] (D.I. 262.) In response to the parties' motions, Judge Thynge issued a Memorandum and Order recommending that summary judgment be granted for

---

[1] This case was originally assigned to the Honorable Roderick R. McKelvie. When he retired from the court in 2002, the case was referred to Magistrate Judge Thynge. (D.I. 262.) On January 6, 2003, the case was reassigned to me. (D.I. 387.)

4

Defendants on the claims of breach of fiduciary duty related to the note transactions and the accompanying restrictions on Marvel. *Cantor*, 235 F. Supp. 2d at 381-83. Judge Thynge determined that Delaware law required Plaintiffs to show "that Perelman caused Marvel to take action which benefitted Perelman and harmed Marvel." *Id.* at 382 (citing *Bragger v. Budacz*, C.A. No. 13376, 1994 WL 698609, at *4 (Del. Ch. Dec. 7, 1994)). "Since Marvel was not a party to the note agreements, and did not attempt to perform or refrain from one of the prohibited acts, Perelman's potential conflicting loyalties between Marvel and the holding companies never materialized and cannot form the basis of a breach of fiduciary duty claim." *Cantor*, 235 F. Supp. 2d at 382-83.

While Plaintiffs argued that Marvel had been harmed because the note restrictions prevented it "from restructuring its debt, and ultimately contributed to its bankruptcy," Judge Thynge found that the evidence showed that Marvel was prevented from financial restructuring by covenants in other credit agreements that "were more restrictive than those in the note agreements." *Id.* at 383. Thus, Plaintiffs had failed to show that Marvel was harmed, and the potential conflicts raised by the note restrictions never materialized and so could not support a claim for breach of fiduciary duty. *Id.*

As to the claimed breaches of fiduciary duty based on Defendants' alleged inflation of Marvel's earnings, Judge Thynge recommended that summary judgment be granted for the Defendants, because, by relying on the expertise of professional accountants, the directors "met [their] fiduciary duties with regard to accounting." *Id.* at 387-88. However, for claims related to misrepresentations by Marvel employees, Judge Thynge recommended that summary judgment be denied, *id.* at 388-89, noting

that the record lacked sufficient evidence to decide whether Defendants had failed in their oversight duties pursuant to *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

I adopted Judge Thynge's recommendations in all respects and issued an order granting summary judgment in part for Defendants, pursuant to those recommendations. (D.I. 404.) Summary judgment was later granted for Defendants on the *Caremark* claim as well.[2] (D.I. 417.)

2. Third Circuit Decision

Plaintiffs appealed the decision as to the alleged breaches of fiduciary duty related to the note restrictions,[3] and the United States Court of Appeals for the Third Circuit reversed in part. *Cantor*, 414 F.3d at 442. First, in a discussion section entitled "The Unjust Enrichment Claim," the Third Circuit held that it was not necessary for Plaintiffs to show that Marvel was harmed by the note restrictions. *Id.* at 435-37. Instead, if Defendants "exploited their fiduciary position for personal gain," that would support a claim for breach of fiduciary duty, as well as a remedy for unjust enrichment, even if Defendants' gain did not come at Marvel's expense. *Id.* at 435. The Court noted that an unjust enrichment award for the entire $553.5 million benefit "could result in a windfall," suggesting that an award would be appropriately based on "what the defendants would have had to pay Marvel, after arm's length bargaining, for the

---

[2] Plaintiffs acknowledged (D.I. 415; D.I. 419) that they could not adduce any evidence to support the remaining *Caremark* claim. Thus, summary judgment was granted for the Defendants on that claim. (D.I. 417.)

[3] The *Caremark* claim was not addressed by the Third Circuit.

6

restrictions defendants secured without compensation." *Id.* at 437 (citing *Boyer v. Wilmington Materials, Inc.*, 754 A.2d 881 (Del. Ch. 1999)).

Second, in a discussion section entitled "The Damages Claims," the Third Circuit held that there was a genuine issue of material fact as to whether the note restrictions harmed Marvel. *Cantor*, 414 F.3d at 437-38. While Defendants presented evidence that Marvel's credit agreements had restrictions that were more constraining than those accompanying the notes, the record also contained evidence from Plaintiffs' expert that Marvel's capital structure would have been different without the note restrictions and that Marvel was indeed prevented from pursuing more favorable financing by those restrictions. *Id.* That evidence was sufficient to raise a genuine issue for trial. *Id.* at 438.

Finally, in a discussion that again used the titles "The Unjust Enrichment Claims" and "The Damages Claims," the Court held that the Plaintiffs were time-barred from seeking damages arising from the issuance of notes by Marvel Holdings, because this action was filed after the limitations period. *Id.* at 439-41. Plaintiffs' remaining claims[4] were remanded. *Id.* at 442.

## III. APPLICABLE LAW

Plaintiffs base their demand for a jury trial on the Seventh Amendment, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

---

[4]Because the damages remedy based on the Marvel Holdings notes was time-barred, the remaining claims relate to the Marvel Parent and Marvel III notes and to remedies other than damages for the Marvel Holdings notes. *Cantor*, 414 F.3d at 442.

7

"[T]he thrust of the Amendment was to preserve the right to jury trial as it existed in 1791." *Curtis v. Loether*, 415 U.S. 189, 193 (1974). In defining the scope of that protection, the Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 31, 41 (1989) (emphasis in original) (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830)). Whether a suit is legal or equitable is a question of federal law, even in a diversity case based on substantive state law. *Simler v. Conner*, 372 U.S. 221, 222 (1963).

In addition to causes of action that were decided in courts of law in 1791, the Seventh Amendment protects the right to a jury trial for causes of action that did not exist at that time but "are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera*, 492 U.S. at 42 (citing *Curtis*, 415 U.S. at 193). To decide whether a jury trial is required for a modern cause of action,[5] courts must balance two factors:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.

---

[5] By its literal terms, the *Granfinanciera* test applies to *statutory* actions. I will use that test here, in a case based on Delaware common-law, because the parties, as well as courts in other cases, have so framed their analyses. *See Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (using *Granfinanciera* factors to decide whether the Seventh Amendment requires a jury for a claim of breach of fiduciary duty under Delaware law); *Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 543-45 (D. Del. 2005) (same).

8

> Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

*Granfinanciera*, 492 U.S. at 42 (citing *Tull v. United States*, 481 U.S. 412, 417-18, 421 (1987)) (internal quotations and citations omitted).[6]

IV.  **DISCUSSION**

    A.    *Definition of Plaintiffs' Claims*

Before I analyze Plaintiffs' claims according to the *Granfinanciera* factors, I must address a preliminary dispute as to what those claims are. Plaintiffs contend that they have set forth separate claims for unjust enrichment and for compensatory damages. (D.I. 444 at 2-3, 5-6.) Because that contention is not supported by the law or by the Complaint itself, I conclude that the claims to be analyzed are the two claims set forth as causes of action in the Complaint, one for breach of fiduciary duty and one for aiding and abetting that breach.

Plaintiffs note (*id.* at 6) that, "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970). That proposition, while undisputed, does not settle the question as to whether there are indeed separate legal and equitable claims in this action. In *Ross*, the Court

---

[6]"If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment," the court must then decide whether Congress has properly assigned the claim "to a non-Article III adjudicative body that does not use a jury as a factfinder." *Granfinanciera*, 492 U.S. at 42. Because I conclude, after balancing the two factors, that Plaintiffs have no right to a jury trial in this case, the third prong is not relevant here.

9

held that a legal claim does not transform into an equitable one simply because it is presented in the form a derivative suit, a procedure with historical roots in equity. *Id.* at 538-43. That case does not stand for the proposition that a particular *remedy* is an issue that must be examined separately to determine whether it is legal or equitable.

While Plaintiffs' right to a jury will not be denied based on a lack of precision in their pleadings, a careful reading of the Complaint as a whole shows that there are not separate claims for unjust enrichment and compensatory damages. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."). First, Plaintiffs have stated two claims in their First and Second Causes of Action, one for breach of fiduciary duty and one for aiding and abetting a breach of fiduciary duty. (Complaint at ¶¶ 47-56.) Second, Plaintiffs' request for relief for unjust enrichment is intertwined with the request for compensatory damages. Plaintiffs ask for "compensatory damages, including all benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty." (*Id.* at 16.) The unjust enrichment, i.e., the "benefits obtained by defendants," is affirmatively included as a part of the "compensatory damages." (*Id.*) Third, beyond the wording and organization of the Complaint, Plaintiffs do not allege separate breaches, some of which support an award for unjust enrichment and some of which support an award of compensatory damages. Rather, the alleged breach is based on the note transactions as a group. (*Id.* at ¶¶ 30-35, 49, 54-55.) Therefore, the Complaint appears to state a claim for breach of fiduciary duty and a claim for aiding and abetting that breach, with

multiple forms of possible relief. It does not state separate claims for unjust enrichment and compensatory damages.

When read as a whole, the Third Circuit's decision is not to the contrary. According to Plaintiffs, because the Third Circuit entitled part of its discussion "The Damages Claims," *Cantor*, 414 F.3d at 437, the Complaint states a claim for compensatory damages that must be analyzed separately under the Seventh Amendment. (D.I. 444 at 5.) I disagree, since the issue of whether a compensatory damages claim exists separately from the unjust enrichment claim does not appear to have been addressed to or by the Court of Appeals. Indeed, there are other more reasonable explanations for the Court's choice of section titles.

First, Judge Thynge's report made two conclusions: (1) that Plaintiffs needed to show that Marvel was forced to act to its detriment as a result of the note restrictions, and (2) that the evidence failed to show such harm. *Cantor*, 235 F. Supp. 2d at 382-83. The Third Circuit disagreed with both conclusions, stating (1) that Plaintiffs did not need to show harm to recover a remedy based on unjust enrichment, and (2) that a genuine issue of material fact remained as to whether Marvel was harmed. *Cantor*, 414 F.3d at 435-38. Thus, the Third Circuit's discussion appears to have simply tracked the issues on appeal, with corresponding section titles to organize that discussion.

Second, the Third Circuit partially affirmed the summary judgment, because Plaintiffs were time-barred from seeking damages arising from the issuance of notes by Marvel Holdings. *Id.* at 440. The Court followed the Delaware rule that the statute of limitations, rather than the doctrine of laches, applies when the action is for "damages or other relief which is legal in nature." *Id.* at 439 (quoting *Laventhol, Krekstein,*

11

*Horwath & Horwath v. Tuckman*, 372 A.2d 168, 169-70 (Del. 1976)). But the application of the statute of limitations only indicates that the *relief* is legal in nature and not that the *claim* is legal. Under Delaware law, "whether the claim asserted is legal in nature or equitable, whenever plaintiff seeks money in a derivative suit, her claim is subject to the statute of limitations." *Kahn v. Seaboard Corp.*, 625 A.2d 269, 274 (Del. Ch. 1993). Thus, since the Third Circuit held that some money damages were time-barred, the discussion appears to have been separated and titled to reflect the different treatment of the types of relief and not to say anything at all about the nature of the claims themselves.

I conclude that the Complaint does not state separate claims for compensatory damages and unjust enrichment. Furthermore, the Third Circuit likely did not intend to decide that issue when it placed titles on its discussion sections. The Plaintiffs' claims are for breach of fiduciary duty and for aiding and abetting a breach, and the *Granfinanciera* test will be applied to those claims. Since the legal or equitable nature of the aiding and abetting claim appears to be indistinguishable from that of the underlying claim for breach, and since the parties make no distinction between the two claims for purposes of this Motion, the following analysis focuses on the breach of fiduciary duty claim, and the conclusions apply to the aiding and abetting claim as well.

    B.    *Historical Roots of a Corporate Fiduciary Duty Claim*

Defendants argue (D.I. 434 at 7-9; D.I. 450 at 12), and Plaintiffs apparently concede (D.I. 444 at 9-10), that Plaintiffs' breach of fiduciary claim under Delaware corporate law is historically equitable. Plaintiffs' concession is understandable, since

12

the point is inarguable. "Directors of Delaware corporations are fiduciaries who owe duties of due care, good faith and loyalty to the company and its stockholders." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)). "Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders." *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). Thus, a violation of those duties is treated as a breach of fiduciary duty analogous to that owed by a trustee to a beneficiary. Here, the Complaint alleges such a breach.

That type of claim was historically "within the exclusive jurisdiction of courts of equity." *Chauffeurs, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990) (citing 2 J. Story, Commentaries on Equity Jurisprudence § 960, p. 266 (13th ed. 1886)). Because they "are almost uniformly actions 'in equity,'" such claims historically carry with them "no right to trial by jury." *In re Evangelist*, 760 F.2d 27, 29 (1st Cir. 1985); *accord In re Hechinger*, 327 B.R. at 544. That treatment is consistent with the fact that, "[i]n Delaware, breach of fiduciary duty claims are routinely heard in chancery court, which is a court of equity." *In re Hechinger*, 327 B.R. at 544. Thus, "[w]hile federal, not state law, governs whether . . . [a] claim is entitled to a jury trial, the well-established precedent in Delaware . . . reinforces the common law tradition affording courts of equity jurisdiction over these matters." *Id.*

Plaintiffs point to several cases (D.I. 444 at 5) where courts looked underneath the claim for breach of fiduciary duty claim and found an underlying legal claim, based,

for example, on fraud or negligence.[7] *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005); *Resnick v. Resnick*, 763 F. Supp. 760, 767 (S.D.N.Y. 1991); *Doyle v. Mellon Bank (East) Nat'l Ass'n (In re Globe Parcel Serv.)*, 75 B.R. 381, 385 n.9 (E.D. Pa. 1987); *Stalford v. Blue Mack Transp., Inc. (In re Lands End Leasing, Inc.)*, 193 B.R. 426, 433 (Bankr. D.N.J. 1996); *Luper v. Banner Indus., Inc. (In re Lee Way Holding Co.)*, 118 B.R. 544, 549 (Bankr. S.D. Ohio 1990). According to those analyses, a breach of fiduciary duty claim may be historically legal. The Second Circuit recently rejected that approach, reasoning that to analyze claims that way "would effectively permit every breach of fiduciary duty claim to be recast as an action at law such that parties seemingly would be entitled to a jury trial on any and all breach of fiduciary duty claims." *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005) (internal quotations omitted). Given the deep historical roots of such claims in equity, that result seems contrary to the Seventh Amendment mandate to "preserve the right to jury trial as it existed in 1791." *Curtis*, 415 U.S. at 193. Therefore, like the Second Circuit, I decline to parse Plaintiffs' fiduciary duty claims in search of legal elements.

Instead, I conclude that Plaintiffs' claims are historically equitable, which weighs against Plaintiffs' right to a jury.

---

[7]In the same string of citations, Plaintiffs point to two other cases where courts refused to strike a jury demand because legal claims were joined with equitable claims. *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 260 B.R. 915, 919-20 (Bankr. N.D. Ga. 2001); *Miller v. Weber (In re Anchor/Davis-Jay Container Co.)*, Bankr. No. 92-11720S, Adv. No. 93-0042S, 1993 WL 119818, at *2 (Bankr. E.D. Pa. Apr. 15, 1993). Those cases are only relevant here if at least one of Plaintiffs' claims is legal rather than equitable, and Plaintiffs' reliance on them simply begs that question.

14

C.  *Balancing History with Remedies*

The second *Granfinanciera* factor focuses on the remedy sought for Plaintiffs' claims. Since that factor is more important than the first, *Granfinanciera*, 492 U.S. at 42, the parties spend considerable effort to show that the compensatory damages sought here constitute the type of relief, legal or equitable, that favors their respective positions. (D.I. 434 at 9-12; D.I. 444 at 5-8; D.I. 450 at 3-12.) I conclude, for purposes of this Motion, that, even if Plaintiffs are correct that such relief is legal, Plaintiffs' claims nevertheless seek both equitable and legal relief.

Defendants argue that the remedy for a Delaware breach of fiduciary duty claim is equitable, regardless of whether it includes compensatory damages. (D.I. 450 at 3-12.) They point out that, under Delaware law, "significant discretion is given to the Court in fashioning an appropriate remedy" for a breach of fiduciary duty. *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1184 (Del. Ch. 1999); *see also Cantor Fitzgerald, L.P. v. Cantor*, C.A. No. 16297, 2001 WL 536911, at *5 (Del. Ch. May 11, 2001) ("[T]he Court has broad discretion to craft a remedy for a breach of the duty of loyalty."). Thus, according to Defendants, the remedy here is equitable, even if it compensates Plaintiffs for harm done to Marvel.

Plaintiffs argue (D.I. 444 at 7-8) that under federal law, which must apply to this analysis, *Simler*, 372 U.S. at 222, equitable relief is narrowly defined as remedies that "restore to the plaintiff particular funds or property *in the defendant's possession*" and not those remedies that "impose personal liability on the defendant." *Pereira*, 413 F.3d at 340 (emphasis in original) (quoting *Great-West Life & Annuity Ins. Co. v. Knudsen*,

15

534 U.S. 204, 214 (2002)).  So, according to Plaintiffs, a remedy for the harm done to Marvel is a legal remedy, regardless of how it is treated in Delaware.

In *Pereira*, the Second Circuit agreed with that proposition.  In that case, the Court used the narrow definition of "equitable relief" from the Supreme Court's decision in *Great-West* to show that the plaintiff's claims for breach of fiduciary duty under Delaware law sought a legal remedy, because that remedy was not for money that was unjustly possessed by defendants, but was instead a measure of the harm to the corporation.  *Pereira*, 413 F.3d at 340 (applying *Great-West*, 534 U.S. at 214).  Because the remedy was legal, the Court reasoned, and because the second *Granfinanciera* factor must be afforded greater weight, the factors weighed in favor of a Seventh Amendment jury right, even though the claims were historically equitable.  *Id.*  Plaintiffs argue for a similar conclusion here, but I cannot agree.

To begin with, there is some reason to doubt whether the Second Circuit's conclusion is correct.  The Supreme Court's *Great-West* decision, on which the Second Circuit's opinion in *Pereira* depends, defined the term "equitable relief" as it is found in section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3).  The Supreme Court's analysis began with the statement that, because ERISA is a "comprehensive and reticulated statute," the Court has been "especially reluctant to tamper with the enforcement scheme . . . by extending remedies not specifically authorized by its text."  *Great-West*, 534 U.S. at 209 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)) (internal quotations omitted).  Applying the narrow definition of

"equitable relief" crafted in that particular context to a common law breach of fiduciary duty claim such as this tears that definition from a key logical underpinning. Moreover, in deciding that "equitable relief" in that case only applied when the plaintiff sought "particular funds or property in the defendant's possession," *Great-West*, 534 U.S. at 214, the Supreme Court expressly held that trust remedies did not apply to "define the reach of § 502(a)(3)." *Id.* at 219. By contrast, the claims here are directly analogous to claims against a trustee by a beneficiary. *See supra* Section IV.B. It thus appears that the Second Circuit may have taken the *Great-West* decision out of context.

However, I need not decide here whether *Pereira* was correctly decided. Even if Plaintiffs are correct that compensatory damages are a form of legal relief under federal law, both claims here also seek equitable relief for Defendants' alleged unjust enrichment.

Plaintiffs seek to recover "the benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to be no less than $553.5 million." (Complaint at 16.) The dollar amount here refers directly to the proceeds received by Defendants from the note transactions at issue. That remedy for unjust enrichment is equitable even under the narrow definition used in *Great-West*.

Thus, even under a narrow definition of equitable relief, the second *Granfinanciera* factor leads to a mixed result: the claims seek both legal and equitable relief. When I consider the long history of treating breach of fiduciary duty claims as equitable and balance that with the mixed equitable and legal remedies sought here,

17

the scales tip in favor of Plaintiffs' claims being judged equitable. To weigh the factors differently would effectively ignore the historical factor, contrary both to the Seventh Amendment's purpose to "preserve the right to jury trial as it existed in 1791," *Curtis*, 415 U.S. at 193, and to the express holding of *Granfinanciera*, 492 U.S. at 42, that history is to be accorded weight in the balancing. Therefore, I will strike Plaintiffs' demand for a jury trial of their claims.[8]

## V.  CONCLUSION

For the reasons set forth herein, I will grant Defendants' Motion (D.I. 433). An appropriate order will issue.

---

[8] Because I conclude there is no right to a jury in this case, I need not address the parties' arguments over whether Plaintiffs have waived that right. (D.I. 434 at 12-14; D.I. 444 at 11-15; D.I. 450 at 16-17.)