**7.6  Commencement of Avoidance Actions.** Unless otherwise authorized by the Bankruptcy Court, the Avoidance Litigation Trustee may not commence actions under sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code later than four (4) months after the Consummation Date.

**7.7  Reduction of Judgment and Indemnifications.** It is the intention of the Proponents, the Creditors Committee, the Equity Committee, LaSalle, High River, Westgate and the Trustee that no Exculpated Person shall have any liability to any person or entity, including without limitation, Contribution Bar Parties, including, without limitation, any liability with respect to claims in the nature of contribution or indemnification, however denominated or described, in connection with, arising out of or in any way related to Litigation Claims or Covered Claims and that any such claims-over shall be satisfied as provided herein.

(a)  No Exculpated Person shall have any liability to any Contribution Bar Party for contribution or indemnification with respect to any asserted or threatened Litigation Claim or Covered Claim, and the Litigation Trust or the Covered Person, as applicable, (i) shall reduce and credit against any judgment it may obtain against any Contribution Bar Party in any action in connection with, arising out of, or which is in any way related to any Litigation Claim or Covered Claim, the amount of any claim which any such Contribution Bar Party is found to have established against any Exculpated Person on whatsoever theory in any action involving Litigation Claims or Covered Claims; and (ii) shall be obligated to use good faith efforts to obtain, and in the context of a settlement shall be deemed to have obtained, from any such Contribution Bar Party for the benefit of any implicated Exculpated Persons a satisfaction in full of such Contribution Bar Party's claim against any such Exculpated Person.

(b) Each Exculpated Person shall provide and cooperate in discovery in any action involving the Litigation Trust or Covered Person and one or more of the Contribution Bar Parties, but shall retain all rights to object to discovery requests under applicable law, as if the Exculpated Person were named as a party to the action. In addition, neither Litigation Trust nor any Covered Person shall oppose the standing or right of any Contribution Bar  Party to make any submission or argument to the court or the jury in any action involving the Litigation Trust or Covered Person and one or more of the Contribution Bar Parties that seeks to account (in whole or in part) for the asserted responsibility of the Exculpated Persons just as if they were parties to the action, including but not limited to the Contribution Bar Parties' right to assert that any Exculpated Person is fully or partially responsible for any claims asserted

43

or relief sought in any such action; provided, however, that nothing herein shall preclude the Litigation Trust or Covered Person from contesting on the merits the asserted responsibility of the Exculpated Person(s).

(c)  For good and valuable consideration including the benefits to be received hereunder by holders of Claims against the Debtors, the investment by the New Investors and the contribution of all issued and outstanding common stock of Toy Biz to Newco, the applicable Litigation Trust primarily and Newco secondarily shall by operation of this Plan of Reorganization indemnify and hold harmless each Exculpated Person from and against any and all liability (including fees and expenses of counsel and other professionals (other than any costs of internal personnel), amounts paid in judgment, penalty or otherwise) with respect to claims-over on whatsoever theory (whether by way of third- or subsequent party complaint, cross-claim, separate action or otherwise) by any person or entity to recover in whole or in part any liability, direct or indirect, whether by way of judgment, penalty or otherwise of any person or entity in connection with, arising out of, or which is in any way related to any Litigation Claim asserted by such applicable Litigation Trust or any Covered Claim, it being understood that the Avoidance Litigation Trust's indemnity shall be subordinate to its obligation to pay up to one million one hundred thousand dollars ($1,100,000) of professional fees and expenses of the professionals for the Avoidance Litigation Trust and the Creditors Committee or to repay any loans made by third parties to the Avoidance Litigation Trust and the MAFCO Litigation Trust's indemnity shall be subordinate to its obligation to pay up to one million dollars ($1,000,000) of professional fees and expenses of the professionals for the MAFCO Litigation Trust or to repay any loans made by third parties to the MAFCO Litigation Trust; provided, however, that such indemnity shall not apply to any Independent Cause of Action.  For the avoidance of doubt, this Section 7.7(c) is not intended to impose upon either Litigation Trust any indemnification obligation with respect to Covered Claims that are not Litigation Claims.  Without limitation on any of the foregoing, if separate counsel is required as to any such claim-over, the applicable Litigation Trust shall pay for the reasonable fees and expenses of competent counsel selected by the Exculpated Person, subject to the approval of the applicable Litigation Trustee(s) which will not be unreasonably withheld or delayed.  No settlement of any such claim-over shall require any financial contribution on the part of any Exculpated Person.

(d)  Subject to all other provisions in this Section 7.7, the Confirmation Order shall be deemed to constitute a permanent injunction against all persons and entities, including, but not limited to, defendants or potential defendants in

44

controversies in connection with, arising out of, or which are in
any way related to any Litigation Claim or Covered Claim, either
directly, representatively, or in any other capacity from
instituting or prosecuting or continuing to prosecute, any
action, claim or claim-over against any Exculpated Person on
whatsoever theory (whether by way of third or subsequent-party
complaint, cross-claim, separate action or otherwise, and whether
under federal or state law) to recover in whole or in part any
liability, direct or indirect, of such person or entity to any
other person or entity in connection with, arising out of, or
which is in any way related to any Litigation Claim or Covered
Claim.

(e)  For the avoidance of doubt, nothing contained in
this Plan of Reorganization, either Litigation Trust Agreement,
in the Confirmation Order, or any other order or agreement
executed in connection with the Plan shall preclude any person or
entity from prosecuting or continuing to prosecute any
Independent Cause of Action against any Exculpated Person and
there shall be no rights of indemnification arising hereunder in
connection with Independent Causes of Action.

(f)  The provisions of this Section 7.7 shall be
binding on and inure to the benefit of all successors and assigns
of the Debtors, the Litigation Trust, Covered Persons, Exculpated
Persons and Contribution Bar Parties.

7.8  <u>Timing of Distributions</u>. Notwithstanding anything
contained herein or in the Litigation Trust Agreement to the
contrary, no distributions may be made to any of the
Beneficiaries in their capacity as Beneficiaries of either
Litigation Trust unless and until (a) the applicable Litigation
Trust has paid all sums due and owing pursuant to the applicable
Professional Fee Reimbursement Note, (b) the applicable
Litigation Trust has provided Newco with an instrument in form
and substance reasonably satisfactory to Newco releasing Newco
from any further liability pursuant to the applicable Litigation
Trust Loan Agreement; and (c) after consultation with Newco the
applicable Litigation Trust has established a reasonable reserve
for all indemnity claims theretofore asserted pursuant to Section
7.7(c) hereof and sixty (60) days have elapsed since the
applicable Litigation Trust notifies Newco in writing of the
amount of the reserve and that it waives the right to prosecute
any Litigation Claims that it has not already begun to prosecute
as of the date of such notice.

7.9  <u>Objections to Claims</u>.

The Creditors Committee shall have the right to apply
to the Court to direct the Avoidance Litigation Trustee to object
to any Claim not Allowed by this Plan of Reorganization if the

Creditors Committee believes that Newco has not exercised reasonable business judgement in failing to prosecute or in settling any specified Claims objections.  In the event that the Creditors Committee is successful in connection with such application, Newco shall pay the reasonable fees and expenses of the Avoidance Litigation Trust in connection with the prosecution of such objection.

7.10  <u>Jurisdiction</u>.

The Bankruptcy Court shall have jurisdiction over the Litigation Trustees, the Litigation Trusts, the Litigation Claims, the Avoidance Litigation Trust Assets and the MAFCO Litigation Trust Assets, including, without limitation, jurisdiction to determine all controversies and disputes arising under or in connection with the Litigation Trust Agreements and the Litigation Trust Loan Agreements.  Notwithstanding the foregoing, nothing contained herein shall be construed as limiting the right of the MAFCO Litigation Trust to assert any Litigation Claim to which it has title in any court of competent jurisdiction. The Litigation Trustees shall have the power and authority to bring any action in the Bankruptcy Court to prosecute the Litigation Claims.  The Bankruptcy Court shall have the authority to construe and interpret the Litigation Trust Agreements and the Litigation Trust Loan Agreements and to establish, amend and revoke rules and regulations for the administration of the Litigation Trusts, including, but not limited to, correcting any defect or supplying any omission, or reconciling any inconsistency in the Litigation Trust Agreements, in the manner and to the extent it shall deem necessary or advisable to make the Litigation Trust fully effective; and all decisions and determinations by the Bankruptcy Court in the exercise of this power shall be final and binding upon the Litigation Trustees, Newco and the Beneficiaries.

SECTION 8.    <u>PROVISIONS GOVERNING DISTRIBUTIONS</u>

8.1  <u>Date of Distributions</u>.

Any distributions and deliveries to be made hereunder shall be made on the Consummation Date or as soon as practicable thereafter and deemed made on the Consummation Date.  In the event that any payment or act under this Plan of Reorganization is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

46

8.2    Entities to Exercise Function of Disbursing Agent.

All distributions under this Plan of Reorganization shall, at the election of the Proponents, be made by Newco as Disbursing Agent or such other entity designated by the Proponents prior to the conclusion of the Confirmation Hearing as a Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Newco.

8.3    Surrender and Cancellation of Instruments.

Each holder of a promissory note, Existing Warrant or other instrument evidencing a Claim or Equity Interest (other than a holder of a promissory note issued under any of the Existing Credit Agreements) shall surrender such promissory note, Existing Warrant or instrument to the Disbursing Agent, and the Disbursing Agent shall distribute or shall cause to be distributed to the holder thereof the appropriate distribution, if any, hereunder. No distribution hereunder shall be made to or on behalf of any holder of such a Claim unless and until such promissory note or instrument is received or the unavailability of such note or instrument is reasonably established to the satisfaction of the Disbursing Agent. In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim or Equity Interest that fails to (a) surrender or cause to be surrendered such promissory note or instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent and (b) in the event that the Disbursing Agent requests, furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to the Disbursing Agent, within one (1) year from and after the Consummation Date shall be deemed to have forfeited to Newco all rights, claims and interests and shall not participate in any distribution hereunder.

8.4(a)    Delivery of Distributions.

Subject to Bankruptcy Rule 9010 and except as set forth in Section 8.4(b) below, all distributions to any holder of an Allowed Claim or an Allowed Equity Interest shall be made at the address of such holder as scheduled on the Schedules filed with the Bankruptcy Court unless the Debtors or Reorganized Debtors, as applicable, have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that relates an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to

47

any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the fourth anniversary of the Consummation Date. After such date, all unclaimed property or interests in property shall be distributed on a pro rata basis to other holders of Claims or Equity Interests in the same class or subclass and the Claim or Equity Interest in respect of which such property or interest in property was not delivered shall be discharged and forever barred. As promptly as practical after the first, second, third and fourth anniversaries of the Consummation Date, the Disbursing Agent shall file with the Bankruptcy Court a list of holders to whom distributions have not been able to be made as of those anniversary dates because the current address of each such holder has not been determined. The distributions to be made on the Consummation Date to each holder of an Allowed Senior Secured Claim shall be made to the Administrative Agent for distribution to holders of Allowed Senior Secured Claims in accordance with the provisions of the Existing Credit Agreements.

(b)  LaSalle Distributions.

Provided that LaSalle certifies to the Disbursing Agent that it has foreclosed upon the Pledged Shares or the Bankruptcy Court has entered a Final Order declaring that neither Newco nor the Disbursing Agent shall have any liability to the record holder of the Pledged Shares for having made distributions in respect of the Pledged Shares directly to LaSalle, all distributions in respect of the Pledged Shares shall be distributed directly to LaSalle in consideration of the lien of LaSalle under the Indentures and the lien of LaSalle on the Pledged Shares and the LaSalle Claim, and LaSalle shall tender the Pledged Shares under the terms of the Fourth Amended Plan to the Debtors in exchange therefor.  The distributions to be received by LaSalle in full satisfaction and discharge of the LaSalle Claim shall be distributed directly to LaSalle.

8.5  Manner of Payment Under Plan of Reorganization.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

48

8.6  <u>Reserves and Distributions</u>.

The Disbursing Agent shall reserve in a trust account for the benefit of holders of Allowed Unsecured Claims cash, securities or other property in an amount determined by the Bankruptcy Court on account of (a) Disputed Claims in Class 4 (Unsecured Claims) and Class 5 (Class Securities Litigation Claims) and, as applicable, each subclass thereof and (b) Resulting Claims. Upon the resolution from time to time of Disputed Claims in Class 4 (Unsecured Claims) and Class 5 (Class Securities Litigation Claims) and, as applicable, each subclass thereof, the Disbursing Agent may make distributions on account of such claims in such manner deemed appropriate in the judgment of the Disbursing Agent.

8.7  <u>Resulting Claims</u>.

In the event that any person or entity becomes entitled to an Allowed Unsecured Claim in subclasses 4A through 4I and to receive distributions on account of such Allowed Unsecured Claim as a result of the compromise, adjustment, arbitration, settlement or enforcement or other resolution of an action commenced, asserted or which could have been commenced or asserted by the Avoidance Litigation Trustee and such Allowed Unsecured claim is a Resulting Claim, such person's or entity's only rights with respect to the Cash portions of the distributions it would otherwise have been entitled to as a holder of such Allowed Unsecured Claim is to take a set off equal to the aggregate amount of all such Cash payments against any liability such person has or may have to the Avoidance Litigation Trust. Such setoff shall be deemed a distribution under the Plan on account of such Allowed Claim.

8.8  <u>Distributions After Consummation Date</u>.

Distributions made after the Consummation Date to holders of Disputed Claims that are not Allowed Claims as of the Consummation Date but which later become Allowed Claims shall be deemed to have been made on the Consummation Date.

8.9  <u>Rights And Powers Of Disbursing Agent</u>.

(a)  <u>Powers of the Disbursing Agent</u>. The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan of Reorganization, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan of

49

Reorganization, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)  **Expenses Incurred on or after the Consummation Date.**  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Consummation Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable fees and expenses of counsel) made by the Disbursing Agent, shall be paid in Cash by Newco.

(c)  **Exculpation.**  Each Disbursing Agent, from and after the Consummation Date, is hereby exculpated by all entities, including, without limitation, holders of Claims and Equity Interests and other parties in interest from any and all claims, Causes of Action and other assertions of liability (including, without limitation, breach of fiduciary duty) arising out of the discharge by such Disbursing Agent of the powers and duties conferred upon it hereby or any order of the Bankruptcy Court entered pursuant to or in furtherance hereof, or applicable law, except solely for actions or omissions arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or an Equity Interest or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance herewith or for implementing the terms hereof.

8.10  **Distributions of Certain Warrants.**

If on the first (1st) anniversary of the Consummation Date, any Stockholder Series B Warrants have not been issued, Newco will issue such Warrants to the Warrant Liquidation Agent which shall sell such Warrants into the market as promptly as reasonably practical to permit an orderly sale.  Newco will use its reasonable efforts either (i) to obtain a no-action letter from the staff of the Securities and Exchange Commission to the effect that the staff of the Securities and Exchange Commission will not recommend any enforcement action if the distribution of Warrants to the Warrant Liquidation Agent or the resale of Warrants by the Warrant Liquidation Agent is made without registration under the Securities Act, or (ii) if it does not obtain such a no-action letter, file and cause to become effective a registration statement under the Securities Act registering that issuance or resale or both, as the case may be, in either case on before the first (1st) anniversary of the Consummation Date.  One-half of the fees and expenses of the Warrant Liquidation Agent shall be paid from the net proceeds of the sale of those Warrants if those net proceeds are sufficient to pay the fees and expenses of the Warrant Liquidation Agent. The balance of the fees and expenses of the Warrant Liquidation

Agent shall be paid by Newco.   Any remaining net proceeds of the sale of such Warrants shall be delivered to the Disbursing Agent to be held in a trust account in lieu of the Warrants sold pursuant to this Section 8.10 for the benefit of holders of Class 5 Claims and Class 6A Equity Interests whose Claims or Equity Interests become Allowed following the first (1st) anniversary of the Consummation Date and for all holders of Allowed Class 5 Claims and Allowed Class 6A Equity Interests following the allowance or disallowance of all Class 5 Claims and Class 6A Interests.

SECTION 9.   .   PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PLAN OF REORGANIZATION

9.1  Objections to Claims.

Subject to Section 7.9 hereof, Newco shall be the sole party to object to Claims.  Any objections to Claims shall be filed by the latest of (a) ninety (90) days after the Consummation Date, (b) thirty (30) days after a proof of claim is filed and served upon Newco, and (c) such later date as may be fixed by the Bankruptcy Court.

9.2  No Distributions Pending Allowance.

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of the disputed portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

9.3  Cash Reserve.

On the Consummation Date, Newco shall deposit the sum of eight million dollars ($8,000,000) in an interest bearing trust account for the benefit of holders of Allowed Unsecured Claims under the Plan.

9.4  Distributions After Allowance.

Payments and distributions to each holder of a Disputed Claim or Equity Interest or any other Claim or Equity Interest that is not an Allowed Claim or Equity Interest, to the extent that such Claim or Equity Interest ultimately becomes an Allowed Claim or Equity Interest, shall be made in accordance with the provisions hereof governing the class or subclass of Claims or Equity Interests in which such Claim or Equity Interest is classified.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Equity Interest or any other Claim or Equity Interest that is not an Allowed Claim or Equity Interest becomes a Final Order,

51

the Disbursing Agent shall distribute to the holders of such Claim or Equity Interest any payment or property that would have been distributed to such holder if the Claim or Equity Interest had been allowed on the Consummation Date, together with any interest earned thereon.

9.5  Fractional Securities.

Neither fractional shares of Convertible Preferred Stock, nor fractional shares of Newco Common Stock, nor Fractional Warrants shall be distributed pursuant to this Plan of Reorganization.  Instead, as of the record date for distributions to any class of Claims or Interests, holders of Allowed Claims or Allowed Interests otherwise entitled to receive a fractional share of Convertible Preferred Stock or Newco Common Stock or a Fractional Warrant shall receive a whole share of Convertible Preferred Stock or Newco Common Stock or a whole Warrant if the holder was to receive a fractional share of Convertible Preferred Stock or Newco Common Stock of 0.5 or more or a Fractional Warrant to acquire 0.5 shares or more of Convertible Preferred Stock or Newco Common Stock and no share of Convertible Preferred Stock or Newco Common Stock or no Warrant if the holder was to receive a fractional share of Convertible Preferred Stock or Newco Common Stock of less than 0.5 or a Fractional Warrant to acquire shares of Convertible Preferred Stock or Newco Common Stock of less than 0.5.

SECTION 10.     PROVISION GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN

10.1  General Treatment.

Except as set forth in Section 10.4 below, this Plan of Reorganization constitutes a motion by the Debtors governed by this Plan of Reorganization to assume, as of the Consummation Date, all executory contracts and unexpired leases to which any of the Debtors are parties, except for an executory contract or unexpired lease that (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, or (b) is specifically rejected on Schedule 10.1 hereto filed by the Proponents on or before the commencement of the Confirmation Hearing or such later date as may be fixed by the Bankruptcy Court, or (c) is otherwise assumed hereunder.  Any executory contract or unexpired lease assumed hereunder may be freely assigned by any Debtor to any other Debtor or Reorganized Debtor or Newco and any such assignment shall constitute a novation of the obligations of the assigning Debtor under any such executory contract or unexpired lease.  Any such assignment shall be effected by filing a notice thereof with the Bankruptcy Court on or before the commencement of the Confirmation Hearing.  For purposes hereof, each executory contract and unexpired lease listed on Schedule 10.1 hereto that

52

relates to the use of occupancy of real property shall include (a) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedule 10.1 hereto and (b) executory contracts or unexpired leases appurtenant to the premises listed on Schedule 10.1 hereto, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases, unless any of the foregoing agreements are assumed.

10.2    Amendments to Schedule; Effect of Amendments.

The Debtors shall assume each of the executory contracts and unexpired leases not listed in Schedule 10.1 hereto; provided, that the Proponents may on or before the last Business Day before the Confirmation Date amend Schedule 10.1 hereto to delete or add any executory contract or unexpired lease thereto, in which event such executory contract or unexpired lease shall be deemed to be, respectively, assumed and, if applicable, assigned as provided therein, or rejected. The Proponents shall provide notice of any amendments to Schedule 10.1 hereto to the parties to the executory contracts or unexpired leases affected thereby.  The fact that any contract or lease is scheduled on Schedule 10.1 hereto shall not constitute or be construed to constitute an admission by any Proponent or any Debtor that any Debtor has any liability thereunder.

10.3    Bar to Rejection Damage Claims.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for each of the Proponents on or before thirty (30) days after the earlier to occur of (a) the giving of notice to such party under Section 10.1 or 10.2 hereof and (b) the entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or lease.

10.4  <u>Certain Panini Agreements</u>.

(a)  <u>Panini Sticker Agreement</u>.  Notwithstanding
anything else contained herein to the contrary, the Panini
Sticker Agreement shall be assumed and all amounts owing by any
of the Panini Entities to any of the Debtors on or prior to
December 31, 1997 shall be forgiven. In addition, Newco shall
permit the Panini Entities to assign the Panini Sticker Agreement
to any other entity in connection with any subsequent sale of
Panini except to a Designated Competitor.

(b)  <u>Panini Comic Distribution Agreement</u>.
Notwithstanding anything else contained herein to the contrary,
the Panini Comic Distribution Agreement shall be assumed and
modified as follows:  (i) the term shall be through December 31,
1998, (ii) the royalty rate through December 31, 1998 shall be
six percent (6%), (iii) the minimum guaranteed royalty (A) shall
be eliminated for the period from January 1, 1997 through
December 31, 1997 and (B) shall be two million dollars
($2,000,000) for the period from January 1, 1998 through
December 31 1998, (iv) the license shall entitle the Panini
Entities to the use of a minimum of fifty (50) titles at all
times during 1998, and (v) any and all amounts owing thereunder
to the Debtors on or prior to December 31, 1997 shall be
forgiven.  In addition, Newco shall permit the Panini Entities to
assign the Panini Comic Distribution Agreement, as modified, to
any other entity in connection with a sale of the Panini Entities
except to a Designated Competitor.  From and after the
Consummation Date, any and all royalties owed to the National
Basketball Association in respect of sticker sales and card sales
made by Panini pursuant to the NBA License Agreement shall be the
sole responsibility of Panini.

(c)  <u>Other Panini Agreements</u>.  All other
agreements, if any, by and between Panini and any of the Debtors
shall be rejected, terminated and of no further force or effect
as of the Consummation Date and neither Panini nor any of the
Debtors shall have any liability or Claim as a result of such
rejection or termination.

SECTION 11.     CONDITIONS PRECEDENT TO CONFIRMATION DATE
                <u>AND CONSUMMATION DATE</u>

11.1  <u>Conditions Precedent to Confirmation of Plan of
Reorganization</u>.

The confirmation of this Plan of Reorganization is
subject to satisfaction of the following conditions precedent:

(a)  <u>Confirmation Order</u>.  The Confirmation Order to be
entered by the Clerk of the Bankruptcy Court shall be in a

54

form that (i) does not materially and adversely affect the
benefits to be received hereunder by any of (A) the Debtors'
estates, (B) Toy Biz, (C) the holders of Senior Secured
Claims, (D) the holders of DIP Claims, (E) the holders of
Unsecured Claims, (F) the holders of Class 5 Claims and
Class 6A Equity Interests, (G) High River and Westgate, and
(H) LaSalle; (ii) determines that the Plan satisfies each of
the applicable requirements of section 1129 of the
Bankruptcy Code; (iii) approves the delivery of the
Transmittal Materials to all persons receiving Warrants
under the Plan; (iv) approves the releases contained in the
Stipulation and Agreement; (v) includes the contribution
bar, indemnification and judgment reduction provisions set
forth in section 7.7 hereof, (vi) determines that the
distributions of securities to be made pursuant to this Plan
of Reorganization (other than pursuant to Section
4.2(b)(i)(A)(6)) are exempt from the Securities Act and
state blue sky laws pursuant to section 1145 of the
Bankruptcy Code, (vii) determines that the succession to an
interest in certain privileges and immunities of the Debtors
by the MAFCO Litigation Trust pursuant to Section 7.1(b)
hereof does not constitute a waiver of any such privilege or
immunity and (viii) is otherwise in form and substance
reasonably acceptable to the Proponents, the Creditors
Committee, the Equity Committee, High River, Westgate and
the Trustee.

    11.2  <u>Conditions Precedent to Consummation Date of Plan
of Reorganization</u>.

        The occurrence of the Consummation Date of this Plan of
Reorganization is subject to satisfaction of the following
conditions precedent:

        (a)  <u>SEC Proxy Statement</u>.  The Securities and Exchange
Commission shall have stated that it has no further comments
on the proxy statement filed by Toy Biz with respect to the
meeting of the stockholders of Toy Biz called for the
purpose of approving the transactions contemplated by this
Plan of Reorganization, such proxy statement shall have been
delivered to all holders of Toy Biz common stock in
accordance with the rules of the Securities and Exchange
Commission, twenty (20) business days (computed in
accordance with Schedule 14A of the Securities and Exchange
Commission) shall have elapsed since such delivery and Toy
Biz shareholders shall have voted to approve the
transactions contemplated hereby;

        (b)  <u>HSR</u>. All applicable waiting periods (and any
extensions thereof) under the Hart-Scott-Rodino Antitrust

Improvements Act of 1976 shall have expired or been terminated;

    (c) <u>Restructured Panini Loan Documents</u>. The Restructured Panini Loan Documents shall be in full force and effect;

    (d) <u>Secured Lender Consummation Date</u>. The Consummation Date shall occur not later than October 15, 1998;

    (e) <u>Toy Biz Consummation Date</u>. The Consummation Date shall occur not later than November 20, 1998;

    (f) <u>Standstill Agreements</u>. The Standstill Agreements shall have been executed and delivered by all of the parties thereto;

    (g) <u>NBA Agreement</u>. The Court shall have entered an order (a) approving an NBA Settlement Agreement and the NBA Settlement Agreement shall be in full force and effect, (b) pursuant to which the Bankruptcy Court determines that such NBA Settlement Agreement is fair and equitable and in the best interests of the Debtors' estates, and (c) providing that any reserves required under this Plan of Reorganization on account of the unsecured component of the NBA's Claim shall be based on a Claim in an amount not greater than twenty million dollars ($20,000,000);

    (h) <u>Receipt of Certain Funds</u>. Newco shall have received (a) the Perlmutter Capital Contribution, and (b) the proceeds of the loan described in Section 6.20 hereof;

    (i) <u>Receipt of Settlement Amount</u>. Berlack, Israels and Liberman LLP shall have received the Settlement Amount from Toy Biz for the benefit of High River and Westgate;

    (j) <u>Certain Payments for Contingent Senior Secured Claims</u>. Chase as agent for the holders of Contingent Senior Secured Claims shall have received (a) the thirteen million dollar ($13,000,000) payment provided for in the definition of Newco Guaranty to be paid to the holders of claims pursuant to the Existing Panini Senior Credit Agreements in accordance with the terms of the Panini Subordination Agreement, and (b) the letters of credit provided for by Section 6.1 hereof; and

    (k) <u>Shareholders Agreement</u>. The Shareholder Agreement shall have been executed and delivered by Isaac Perlmutter, Isaac Perlmutter, T.A., Avi Arad, the New Investors and the Secured Lenders.

**11.3   Waiver of Conditions Precedent.**

Each of the conditions precedent in Sections 11.1 and 11.2 hereof may only effectively be waived, in whole or in part, if waived, by the Proponents acting jointly except that the consent of Toy Biz is not required to waive the condition precedent contained in Section 11.2(d) hereof.  Any such waiver of a condition precedent in Section 11.1 or 11.2 hereof may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action other than filing a notice of waiver with the Bankruptcy Court and otherwise proceeding to consummate this Plan of Reorganization. Notwithstanding the foregoing, the conditions precedent contained in Sections 11.1(a)(i)(E) and 11.2(g) may only be waived with the consent of the Creditors Committee, the condition precedent contained in section 11.1(a)(i)(F) may only be waived with the consent of the Trustee, the Equity Committee, High River and Westgate, the conditions precedent contained in sections 11.1(a)(i)(G), (iii), and (iv) may only be waived with the consent of High River, Westgate, the Creditors Committee and the Equity Committee the condition precedent contained in section 11.2(h) may only be waived with the consent of High River and Westgate, the condition precedent contained in section 11.1(a)(viii) may only be waived with the consent of the Trustee, the Creditors Committee and the Equity Committee and the condition precedent contained in section 11.1(a)(i)(H) may only be waived with the consent of LaSalle.

**SECTION 12.    EFFECT OF CONFIRMATION**

**12.1   General Authority.**

Until the completion of all transactions contemplated to occur on the Consummation Date, the Bankruptcy Court shall retain custody and jurisdiction of each of the Debtors, its properties and interests in property and its operations.  On the Consummation Date, each of the Debtors, its properties and interests in property and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, except as provided in Section 14.1 hereof.

**12.2   Discharge of Debtors.**

(a)   **General Discharge.**  The treatment of all Claims against or Equity Interests in each of the Debtors hereunder shall be in exchange for and in complete satisfaction, discharge and release of all Claims against and any Equity Interests in such Debtor of any nature whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against its estate or properties or interests in property.

57

Except as otherwise provided herein, upon the Consummation Date, all Claims against and Equity Interests in each of the Debtors will be satisfied, discharged and released in full exchange for the consideration provided hereunder. All entities shall be enjoined and precluded from asserting against any Debtor or Newco or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date.

(b) <u>Exculpations</u>. From and after the Consummation Date, no Exculpated Person shall have or incur any liability to any other Exculpated Person or any entity accepting any distribution under this Plan of Reorganization (i) for any act taken or omission made in connection with or in any manner related to negotiating, formulating, implementing, confirming or consummating (x) this Plan of Reorganization (or prior iterations) or the transactions contemplated hereby, or (y) any agreement, instrument or other documents created in connection with this Plan of Reorganization, (ii) for the actions or other participation of such Exculpated Person in respect of any of the Reorganization Cases (including the negotiation of any other plan of reorganization, settlement or arrangement), (iii) for any matters that relate, directly or indirectly, by implication or otherwise, to the Existing Credit Documents, the DIP Claims, or the Senior Secured Claims, (iv) for any matters that relate, directly or indirectly, to or were asserted in or could have been asserted in the District Court Complaint, or (v) for any matters that relate, directly or indirectly, to or were asserted in or could have been asserted in the LaSalle Action; <u>provided, however</u>, that such exculpation shall not affect the rights and obligations of parties to agreements entered into in connection with the Plan of Reorganization or under the Plan of Reorganization. All Exculpated Persons as well as all entities receiving any distribution under this Plan of Reorganization shall be enjoined and precluded from asserting against the Exculpated Persons or their respective properties or interests in property any other Claims based upon liability exculpated pursuant to the preceding sentence.

(c) <u>Treatment of Indemnification Claims</u>. Notwithstanding Del. Code Ann. (General Corporation) §145 (1997) or any other state or local statute or rule, all existing indemnification and other similar obligations as of the Confirmation Date of any Debtor are released or discharged except as provided in this Section 12.2(c), and the Confirmation Order shall be deemed an injunction enforcing such releases and discharge; provided, that: (i) existing indemnity obligations shall survive to the extent of insurance coverage, but shall in no event entitle such directors or officers to assert any Claim (including, without limitation, with respect to any deductible)

58

against Newco, Toy Biz, Marvel or any of their Affiliates, and (ii) any such directors or officers shall be entitled to make Claims only against the insurance and the proceeds thereof.  This Section 12.2(c) shall not limit any right of directors or officers or former directors and officers from asserting Claims against any Debtor based upon timely filed proofs of claim or requests for payment of Administration Expense Claims nor shall it limit the right of Newco to object to any such Claim or request for payment of Administration Expense Claims. Notwithstanding any provision of the Plan to the contrary, nothing contained herein, including, but not limited to, Section 12.2(a) hereof, shall be construed or interpreted in any manner to eliminate, reduce or otherwise limit in any fashion the availability of insurance coverage for the benefit of officers and directors, whether for indemnification, liability or other purposes.  Newco shall render reasonable assistance to the officers and directors in ensuring their access to such insurance coverage, it being understood that such assistance shall not in any way operate as a waiver of Newco's right to object to the Allowance of any Administration Expense Claim or proof of claim. To the extent such Claims are Allowed Claims, such Claims shall be treated under this Plan of Reorganization with Claims in any class or subclass, as applicable, having the same legal rights and priority as such Claims; provided, that the Confirmation Order shall establish a bar date for Administration Expense Claims.

   12.3   Term of Injunctions or Stays.

   Unless otherwise provided, all injunctions or stays provided for in the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Consummation Date.

   SECTION 13.    WAIVER OF CLAIMS

   13.1   Avoidance Actions.

   Effective as of the Consummation Date, Newco shall have the right to prosecute and release any actions under sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code that are not Litigation Claims conveyed, granted, assigned, transferred or delivered to the Avoidance Litigation Trust in accordance with Section 7.1(a) of this Plan of Reorganization and the applicable Litigation Trust shall have the right to prosecute and release any actions under sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code that are Litigation Claims conveyed, granted, assigned, transferred or delivered to the Avoidance Litigation Trust in accordance with Section 7.1(a) of this Plan of Reorganization; provided, however, that

59

notwithstanding the foregoing, the applicable Litigation Trust, the Debtors and Newco will be deemed to have waived the right to assert or pursue any claims, rights, and causes of action to recover preferences or fraudulent conveyances, or to pursue similar avoidance actions against any current customers or suppliers of the Panini Entities (solely in such capacities) or otherwise relating, directly or indirectly, to any of the Panini Entities.

SECTION 14.    RETENTION OF JURISDICTION

14.1  Retention of Jurisdiction.

The Bankruptcy Court may retain jurisdiction of and, if the Bankruptcy Court exercises its retained jurisdiction, shall have exclusive jurisdiction of all matters arising out of, and related to, the Reorganization Cases and this Plan of Reorganization pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)  To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)  To determine any and all adversary proceedings, applications and contested matters including, without limitation, proceedings relating to Litigation Claims, matters relating to the extent, scope and effect of the succession to certain privileges and immunities by the MAFCO Litigation Trust pursuant to Section 7.1(b) and the MAFCO Litigation Trust Agreement, matters concerning the Litigation Trust and actions pursuant to Section 7.9 hereof;

(c)  To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided herein;

(d)  To hear and determine any timely objections to Administration Expense Claims or to proofs of claim and equity interests filed, both before and after the Confirmation Date, including, without limitation, any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Equity Interest, in whole or in part;

(e)  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)  To issue such orders in aide of execution of this Plan of Reorganization, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)  To consider any amendments to or modifications of this Plan of Reorganization, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)  To hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Consummation Date;

(i)  To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan of Reorganization, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(j)  To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k)  To hear any other matter not inconsistent with the Bankruptcy Code;

(l)  To hear and determine all disputes involving the existence, scope and nature of the discharges granted under Section 12.2 hereof;

(m)  To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of this Plan of Reorganization;

(n)  To hear and determine all disputes regarding the reasonableness of fees requested pursuant to the Litigation Trust Professional Fee Guaranty or any other dispute concerning the administration of the Litigation Trust; and

(o)  To enter a final decree closing the Reorganization Cases.

14.2  <u>Amendment of Plan of Reorganization</u>.

Amendments of this Plan of Reorganization may be proposed in writing only jointly by the Proponents at any time before confirmation, provided that this Plan of Reorganization, as amended, satisfies the conditions of sections 1122 and 1123 of

61

the Bankruptcy Code, and the Proponents shall have complied with section 1125 of the Bankruptcy Code. This Plan of Reorganization may be amended only by the Proponents acting jointly at any time after confirmation and before substantial consummation, provided that this Plan of Reorganization, as amended, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Plan of Reorganization as amended under section 1129 of the Bankruptcy Code and the circumstances warrant such amendments. A holder of a Claim or Equity Interest that has accepted this Plan of Reorganization shall be deemed to have accepted this Plan of Reorganization as amended if the proposed amendment does not materially and adversely change the treatment of the Claim or Equity Interest of such holder. Notwithstanding the foregoing, this Plan of Reorganization may not be amended in a manner which (a) adversely changes the distributions to holders of Unsecured Claims or otherwise materially and adversely affects the rights of holders of Unsecured Claims without the consent of the Creditors Committee, (b) adversely changes the distributions to the holder of the LaSalle Claim or otherwise materially and adversely affects the rights of holders of the LaSalle Claim without the consent of LaSalle, (c) adversely changes the distributions to holders of Equity Interests in Class 6A or otherwise materially and adversely affects the rights of holders of Equity Interests in Class 6A without the consent of the Equity Committee, High River, Westgate, LaSalle, and the Trustee, or (d) adversely impacts the rights of High River and Westgate with respect to the Settlement Payment without the consent of High River and Westgate. Notwithstanding the foregoing, this Plan of Reorganization may not be amended in a manner which increases the distributions to any class of Claims or Equity Interests without the consent of the Creditors Committee, the Equity Committee, LaSalle, High River, Westgate and the Trustee.

SECTION 15.    MISCELLANEOUS PROVISIONS

15.1    Payment of Statutory Fees.

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Consummation Date. Any such fees accrued after the Consummation Date will constitute an Allowed Administration Expenses Claim and be treated in accordance with Section 2.2 hereof.

15.2    Retiree Benefits.

On and after the Consummation Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors or Newco, as applicable, shall continue to pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code), at

15.6    <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan of Reorganization shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without regard to the principles of the conflicts of law.

15.7    <u>Further Assurances</u>.    All parties in interest shall execute and deliver such documents, instruments, certificates, assignments, and other writings, and do such other acts as may be necessary or desirable to carry out the intents and purposes of this Plan of Reorganization, including, without limitation, effecting the Merger Agreement.

15.8    <u>Time of the Essence</u>.

Time shall be of the essence relative to any and all dates contained in this Plan of Reorganization on the Confirmation Date.

15.9    <u>Counterparts</u>.

This Plan of Reorganization may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

15.10    <u>Notices</u>.

All notices, requests, and demands, to be effective, shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

MARVEL ENTERTAINMENT GROUP, INC.
387 Park Avenue South
12th Floor
New York, New York 10016
Attn:  Mr. Joseph Calamari
Telephone:  (212) 696-0808
Telecopier:  (212) 576-9260

64

If to Toy Biz:

        TOY BIZ, INC.
        685 Third Avenue
        New York, New York 10017
        Attn:  Mr. Joseph M. Ahearn
        Telephone:    (212) 588-5103
        Telecopier:  (212) 588-5330

               -and-

        BATTLE FOWLER LLP
        75 East 55th Street
        New York, New York 10022
        Attn:  Lawrence Mittman, Esq.
              Douglas L. Furth, Esq.
              Madlyn Gleich Primoff, Esq.
        Telephone:    (212) 856-7000
        Telecopier:  (212) 856-7807

               -and-

        PEPPER HAMILTON LLP
        1201 Market Street, Suite 1600
        P.O. Box 1709
        Wilmington, Delaware 19899
        Attn:  David B. Stratton, Esq.
        Telephone:  (302) 777-6500
        Telecopier:  (302) 777-8865

If to The Secured Lenders:

        THE CHASE MANHATTAN BANK
        380 Madison Avenue, 9th Floor
        New York, New York 10017
        Attn:  Ms. Susan E. Atkins
        Telephone:  (212) 622-4834
        Telecopier:  (212) 622-4880

               -and-

        WACHTELL, LIPTON, ROSEN & KATZ
        51 West 52nd Street
        New York, New York 10019
        Attn:  Chaim J. Fortgang, Esq.
        Telephone:  (212) 403-1000
        Telecopier:  (212) 403-2000

               -and-

65

                        ZALKIN, RODIN & GOODMAN LLP
                        750 Third Avenue
                        New York, New York 10017-2771
                        Attn:  Richard S. Toder, Esq.
                        Telephone:  (212) 455-0600
                        Telecopier:  (212) 682-6331

    If to The Chapter 11 Trustee:

                        John J. Gibbons, Esq.
                        Gibbons, Del Deo, Dolan, Griffinger &
                        Vecchione
                        One Riverfront Plaza
                        Newark, New Jersey 07102
                        Telephone:  (973) 596-4521
                        Telecopier:  (973) 639-6250

                             -and-

                        Frank J. Vecchione, Esq.
                        Gibbons, Del Deo, Dolan, Griffinger
                        & Vecchione
                        One Riverfront Plaza
                        Newark, New Jersey 07102
                        Telephone:  (973) 596-4521
                        Telecopier:  (973) 639-6250

    If to Creditors Committee:

                        Tonny K. Ho, Esq.
                        Willkie Farr & Gallagher
                        787 Seventh Avenue
                        New York, New York 10019
                        Telephone:  (212) 728-8000
                        Telecopier:  (212) 728-8111

    If to Equity Committee:

                        Gary Schildhorn, Esq.
                        Adelman Lavine Gold and Levin
                        Two Penn Center Plaza, Suite 1900
                        Philadelphia, PA 19102-1799
                        Telephone:  (215) 569-5082
                        Telecopier: (215) 557-7922

                             66

If to LaSalle:

      James Spiotto, Esq.
      Chapman & Cutler
      111 West Monroe
      Chicago, IL 60603
      Telephone:  (312) 845-3763
      Telecopier: (312) 701-6604

If to High River and Westgate:

      Edward Weisfelner, Esq.
      Berlack, Israels & Liberman LLP
      120 West 45th Street
      New York, New York 10036
      Telephone:  (212) 704-0100
      Telecopier: (212) 704-0196

67

Dated:      Wilmington, Delaware
            July 31, 1998

                    Respectfully submitted,

                    TOY BIZ, INC.

                    By:
                        Name:    Joseph M. Ahearn
                        Title:   President

                    BATTLE FOWLER LLP
                    Attorneys for Toy Biz, Inc.
                    75 East 55th Street
                    New York, New York 10022
                    (212) 856-7000

                            -and-

                    PEPPER HAMILTON LLP
                    1201 Market Street
                    Wilmington, Delaware 19899
                    (302) 777-6500

                    By:

WACHTELL, LIPTON, ROSEN, KATZ
Attorneys for The Secured
 Lenders
51 West 52nd Street
New York, New York  10019
(212) 403-1000

                -and-


RICHARDS, LAYTON & FINGER, P.A.
Attorneys for The Secured
 Lenders
One Rodney Square
Wilmington, Delaware  19899
(302) 658-6541

By: _____

69