# SCHEDULE A-2

# Part 4 of 4

# Hamermesh

# Hamermesh

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD CANTOR, IVAN SNYDER and    :
JAMES A. SCARPONE, as TRUSTEES OF  :
THE MAFCO LITIGATION, and as         :
SUCCESSORS IN INTEREST TO MARVEL  :
ENTERTAINMENT GROUP, INC. et al.,    :
                              :
       Plaintiffs,              :
                              :
       v.                 :    C. A. No. 97-586-KAJ
RONALD O. PERELMAN, MAFCO      :
HOLDINGS INC., MacANDREWS &     :
FORBES HOLDINGS INC., ANDREWS   :
GROUP INC., WILLIAM C. BEVINS and  :
DONALD G. DRAPKIN,           :
                              :
       Defendants.           :

**Expert Report of Lawrence A. Hamermesh**

    1.   I am the Ruby R. Vale Professor of Corporate and Business Law at Widener
University School of Law in Wilmington, Delaware, and currently serve as Visiting
Professor at the University of Pennsylvania Law School. At the request of counsel for
the defendants in this proceeding, I have reviewed the question of the scope of the
authority of the board of directors of Marvel Entertainment Group, Inc. ("Marvel") to
issue stock of Marvel, or options to acquire such stock, sufficient to reduce the ownership
of such stock by the Marvel Holding Companies[1] to less than a majority of Marvel's
outstanding voting stock. This question implicates important policies governing the
ownership and control of corporations, which policies (as expressed and understood at
the time relevant to the events at issue in this proceeding) I review below. That review
proceeds from the perspective of law and policy prevailing as of the period from 1993 to
1996.

    2.   My qualifications to engage in that review are summarized below and set out
in more detail in my resume attached as Exhibit A. I have been a professor at Widener
since 1994 and I have taught classes in business organizations, corporate finance,
securities regulation, mergers and acquisitions and equity/equitable remedies. I serve as
Director of the Widener Law School Institute of Delaware Corporate Law and serve as an
advisor for the Delaware Journal of Corporate Law. In Spring 2004, I was a Visiting

---

[1] The Marvel Holding Companies are Marvel Holdings Inc., Marvel (Parent) Holdings Inc., and Marvel III
Holdings Inc.

1

Professor at the University of Pennsylvania Law School and in Winter 2002, I was a Visiting Professor at the University of Michigan Law School.

3.   I received my J.D. from Yale Law School in 1976.  Following law school, I was a practicing attorney at Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where I was an associate from 1976 to 1984, and a partner from 1985 to 1994.  At Morris Nichols, my practice focused on counseling companies, and their officers and directors on areas of corporate governance.  I also litigated cases raising corporate governance issues, including class actions and derivative actions concerning the role of directors of companies and the fiduciary duties of those directors.  I was Delaware counsel in a number of noteworthy cases concerning corporate governance, including *Revlon, Viacom, Phillips Petroleum* and *Time, Inc.*

4.   I have also participated in task forces and written and spoken extensively on the role of directors and what and on whom a director can reasonably rely on in the course of meeting his or her fiduciary obligations to a company and its shareholders.  For example, in 2002 and 2003 I served as the Reporter for the ABA's Task Force on Corporate Responsibility.  I was the principal drafter of the Task Force's preliminary and final reports.  More recently, I was appointed as a commissioner on the National Association of Corporate Directors Blue Ribbon Commission on Implementing the Authority of the Empowered Board – Going Beyond Compliance, a group of about 25 individuals consisting primarily of inside and outside counsel and corporate directors.  I have also written a number of law review articles concerning the role of board members.

5.   I have also participated in drafting legislation relating to corporate governance.  In 2001, I was appointed by the ABA Section of Business Law to its Committee on Corporate Laws.  In the last few years I have chaired the Committee's Task Force on Articulation of Director Duties, whose work has led to the recent promulgation of an extensive set of amendments to the provisions of the Model Business Corporation Act addressing director oversight and other director responsibilities.  I have served since 1995 as a member of the Council of the Corporation Law Section of the Delaware State Bar Association, on which I served as Chair from 2002 until 2004.  The Council has primary responsibility for reviewing, drafting and proposing amendments to the Delaware General Corporation Law.

6.   In addressing the policies pertinent to the question of board authority to issue equity (stock or stock options) sufficient to eliminate a majority stockholder's status as such, I begin by observing that majority stock ownership is widely regarded – and certainly regarded by the policies of Delaware corporate law – as uniquely valuable.  *See, e.g., Paramount Communications, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 42-43 (Del. 1994).  The value of that control, moreover, for good reasons of policy aimed at promoting the free flow of capital and the market for corporate control, is considered to belong to the holder of a majority voting stock interest in a corporation.  *See Mendel v. Carroll*, 651 A.2d 297, 305 (Del. Ch. 1994) ("The law has acknowledged, albeit in a guarded and complex way, the legitimacy of the acceptance by controlling shareholders

2

of a control premium," but noting limitations, such as negligence doctrine, on the majority stockholder's ability to sell control).

7.  Consistent with the unique value attaching to ownership of a majority voting stock interest in a corporation, the holder of such an interest is acknowledged to be entitled to take extraordinary steps to protect that interest against efforts by the board of directors to issue sufficient shares to eliminate that majority voting power.  Thus, for example, the owner of a majority voting block has been found entitled to adopt a by-law requiring unanimity as a requirement for action by the board of directors – an extraordinary requirement by normal standards of corporate practice, but a requirement that was found justified because of the possibility that, absent the requirement, a board of directors might use its formal power to issue shares so as to eliminate the owner's existing majority voting control.  *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401 (Del. 1985) ("the EAC bylaw amendments were a permissible part of EAC's attempt to avoid its disenfranchisement as a majority shareholder ... .").

8.  Also consistent with the unique value attaching to ownership of a majority voting stock interest in a corporation, and consistent as well with the validation of strong measures by the holder of such an interest to protect its majority position, it is also widely acknowledged that a board of directors may not, except in extreme circumstances not yet encountered in judicial opinions, issue shares sufficient to deprive a stockholder of its majority control position, absent the majority stockholder's own consent to such an action.  This policy has been applied in a variety of contexts:

    a.    It is settled policy of Delaware corporate practice and law that directors may not issue shares to deprive a majority stockholder of control for the purpose of protecting their own positions as directors. *E.g., Mendel v. Carroll*, 651 A.2d at 304, *citing Condec Corp. v. Lunkenheimer Co.*, 230 A.2d 769 (Del. Ch. 1967), and *Canada Southern Oils, Ltd. v. Manabi Exploration Co.*, 96 A.2d 810 (Del. Ch. 1953) ("Surely if the principal motivation for such dilution is simply to maintain corporate control ("entrenchment") it would violate the norm of loyalty.").

    b.    It is similarly settled policy of Delaware corporate practice and law that directors have no obligation to issue shares to deprive a majority stockholder of control for the purpose of promoting a sale of control to a third party on terms which they believe, even in good faith, to constitute a valuable transaction for the corporation and its other stockholders, where the majority stockholder opposes the transaction. *E.g., Mendel v. Carroll*, 651 A.2d at 306; *Freedman v. Restaurant Associates Indus., Inc.*, 1987 WL 14323 (Del. Ch. Oct. 16, 1987).

9.  Accordingly, it is generally recognized in the 1993-1996 time period that directors cannot, consistent with their obligations as directors, seek to eliminate a majority stockholder's control through the issuance of shares, in the absence of some circumstance in which such an issuance would be necessary to protect the corporation

and its stockholders from exploitation or breach of fiduciary duty by the majority stockholder. *Mendel v. Carroll*, 651 A.2d at 306. Indeed, it has been suggested that directors defending such an issuance would have a "heavy burden" of demonstrating the existence of such a justifying circumstance. *Id.* at 306 n. 20. And the indication that the directors would bear a "heavy burden" is drawn from an opinion describing that burden as one of demonstrating that a "compelling justification" exists warranting the board's action. *Blasius Indus. v. Atlas Corp.*, 564 A.2d 651, 661 (Del. Ch. 1988). To my knowledge, no judicial opinion has yet found the existence of such a justification for the issuance of shares for the purpose of eliminating the majority control position of an existing stockholder. In my view, moreover, the concept of "compelling justification" precludes such an issuance of shares unless the directors can demonstrate that there is no other, less drastic measure to accomplish the same compelling corporate goal.

10. In light of these policies, the practice and effect of Delaware corporate law as of the period from 1993 to 1996 largely duplicated the indirect effect of Section 4.09(a) of the indentures limiting Marvel's ability to issue shares to reduce the Marvel Holding Companies' ownership of Marvel voting stock to less than a majority, assuming for purposes of argument that such restriction could or would have bound Marvel. That provision, therefore, did not in any significant way, if at all, prevent Marvel and its board of directors from engaging in an issuance of equity securities that they otherwise would have been permitted to accomplish under governing Delaware corporate law and policy.

_____

Lawrence A. Hamermesh

DATED:        January 13, 2006

4

# EXHIBIT A

**LAWRENCE A. HAMERMESH**
**Widener University School of Law**
**4601 Concord Pike, P.O. Box 7474**
**Wilmington, Delaware 19803-0474**
Phone: (302) 477-2132
Fax: (302) 477-2257
E-mail: Lawrence.A.Hamermesh@law.widener.edu

**PERSONAL DATA:**
Home address:
 126 Hitching Post Drive
 Wilmington, Delaware 19803
Date of birth: June 14, 1952
Married: August 7, 1983, to Marion Yager Hamermesh
Children: Simon E., born 1984; Naomi Kate, born 1987

**EDUCATION AND CAREER HISTORY:**

**Admitted to the Delaware Bar, 1976; United States Supreme Court, 1999**

**Ruby R. Vale Professor of Corporate and Business Law, Widener University School of Law**
- 1994-present, teaching business organizations, corporate finance, securities regulation, mergers and acquisitions, professional responsibility, equity/equitable remedies
- Director, Widener Law School Institute of Delaware Corporate Law
- Adviser, Delaware Journal of Corporate Law

**Visiting Professor, University of Michigan Law School, Winter 2002**
**Visiting Professor, University of Pennsylvania Law School, Spring 2004, Spring 2006**

**Morris, Nichols, Arsht & Tunnell**, Wilmington, Delaware
- Associate, 1976-1984
- Partner, 1985-1994

**Yale Law School**
- J.D., 1976
- Barristers' Union (trial practice) participant
- Yale Legislative Services

**Haverford College**
- B.A., 1973
- National Merit Scholar
- Magna cum laude, political science
- Phi Beta Kappa
- 1971-1972, study at the University of Edinburgh, Edinburgh, Scotland

**Other Professional Qualifications and Background Information:**

Member, American Law Institute (elected 1999)

Member, Council of the Corporation Law Section of the Delaware State Bar Association,
  1995 to present; Vice Chair, 2000-2002; Chair, 2002-2004

Member, Corporate Laws Committee, American Bar Association Business Law Section, 2001-

Reporter, ABA Task Force on Professional Responsibility (2002-2003)

2004 Daniel L. Herrmann Professional Conduct Award, Delaware State Bar Association

Secretary, Delaware Board of Bar Examiners, 1983-1987

Member, National Association of Corporate Directors Blue Ribbon Commission on Implementing the Authority of the Empowered Board, 2005

Editorial Advisory Board, The Business Lawyer (2005- )

Treasurer, Delaware Volunteer Legal Services, Inc., 1991-2000
Chairman, Lawyer Referral Service Committee of the Delaware State Bar Association, 1993-1998, 2001-

Lecturer, University of Pennsylvania Law School, mergers and acquisitions, 1991-1993

## Areas of Private Legal Practice

Corporate counseling:  interpretation of and opinions concerning the Delaware General Corporation Law relating to mergers, dividends, meetings of stockholders, stock issuances, rights of preferred stockholders, corporate powers and authority, dissenters' rights, amendments to the certificate of incorporation and other corporate issues

Corporate litigation: primarily in the Delaware Supreme Court and Chancery Court
  (i)   defense of stockholder derivative and class actions based on alleged breaches of director and controlling stockholder fiduciary duties
  (ii)  prosecution and defense of corporate stock valuation (dissenters' rights) litigation (for Salomon Brothers Inc, Bear Stearns & Co., Getty Oil Co., among others)

(iii)  takeover-related litigation (preliminary injunction and other challenges to defensive actions allegedly in violation of fiduciary duties; stockholder election review proceedings; actions claiming violation of disclosure obligations under the federal securities laws)

Participated in such litigation as Delaware counsel to:

- Viacom, Inc. (in connection with merger with Paramount Communications, Inc.)
- Time, Incorporated (in connection with tender offer by Paramount Communications, Inc.)
- Stanley Stahl (in connection with the acquisition of Apple Bancorp, Inc.)
- Revlon, Inc. (in connection with the acquisition by Pantry Pride, Inc.)
- Phillips Petroleum Co. (in connection with the tender offer by Mesa Petroleum Co.)
- Consolidated Gold Fields (in connection with the tender offer by Ivanhoe Partners for Newmont Mining Corp.)

**PUBLISHED WRITINGS** (partial list)

*The Fair Value of Cornfields in Delaware Appraisal Law*, Journal of Corporation Law (forthcoming 2006) (with Michael Wachter)

*Corporate Officers and the Business Judgment Rule: A Reply to Professor Johnson*, 60 Business Lawyer 865 (2005) (with A. Gilchrist Sparks III)

*Premiums in Stock for Stock Mergers and Some Consequences in the Law of Director Fiduciary Duties*, 152 University of Pennsylvania Law Review 881 (2003)

*The ABA Task Force on Professional Responsibility and the 2003 Changes to the Model Rules of Professional Conduct*, 17 Georgetown Journal of Legal Ethics 35 (2003)

*Corporate Responsibility in Real Time: The Work (So Far) of the ABA Task Force on Corporate Responsibility*, 21 Delaware Lawyer 18 (Spring 2003)

*A Kinder, Gentler Critique of* Van Gorkom *and its Less Celebrated Legacies*, 96 Northwestern Law Review 595 (2002)

*Why I Do Not Teach* Van Gorkom, 34 Georgia Law Review 477 (2000)

*Corporate Democracy and Stockholder-Adopted By-Laws: Taking Back the Street?*, 73 Tulane Law Review 409 (December 1998)

Recipient of Volume 73 John Minor Wisdom Award for Academic Excellence in Legal Scholarship; selected as one of the ten best corporate and securities articles of 1999, 41 Corporate Practice Commentator 1453-1454

*Calling Off the* Lynch *Mob: The Corporate Director's Fiduciary Disclosure Duty*, 49 Vanderbilt Law Review 1087 (October 1996)

*Common Law Duties of Non-Director Corporate Officers* (with A. Gilchrist Sparks, III), 48 BUS. LAWYER 215 (1992)

"Appraisal Rights," chapter 36 of Drexler, Black and Sparks, DELAWARE CORPORATION LAW AND PRACTICE (Matthew Bender 1986)

"Defensive Techniques in Proxy Contests," Review of Securities & Commodities Regulation, May 23, 1990

"The Director as Auctioneer - A Role of Choice, Not a Rule of Law," Directors and Boards (Winter 1987)

"The Reliance on Counsel Defense," Review of Securities and Commodities Regulation, December 18, 1985

"Going Private Mergers After UOP," Review of Securities and Commodities Regulation, March 23, 1983

*Recent Continuing Legal Education Programs* (accompanying written materials in parentheses):

Third Circuit Judicial Conference, Nov. 2003 (Philadelphia), The Current Crisis in Corporate Governance

Federalist Society, 7th Annual Corporate Governance Conference, Sep. 24, 2003 (New York), Director Independence

ABA Section of Business Law, May 2003 (Washington, D.C.), Sarbanes-Oxley Revolution in Disclosure and Corporate Governance, New Corporate Governance Regime

Glasser LegalWorks 21st Annual Institute on Federal Securities, Feb. 2003 (Miami)

Practising Law Institute, The New Disclosure & Corporate Governance Regime (Oct. 2002) (Lawyer Responsibilities in the New Disclosure & Corporate Governance Regime)

Valuation Practice in Delaware, Seminar on Current Delaware Corporate Litigation and Transactional Problems, 2002, New York, New York ("Stand Clear of the Closing Doors: Obstacles to Judicial Valuation Under Delaware Law")

13th Annual Tulane Corporate Law Institute, Corporate Law Developments, 2001 ("Recent Delaware Corporate Law Cases," with David C. McBride and Christian Douglas Wright)

Stockholder-Adopted By-Laws After *Fleming*, Committee Forum of the Committee on Business and Corporate Litigation, Business Law Section, American Bar Association, Atlanta, Georgia (moderator and program chair)

The Next Century of Corporate Law: A Symposium on the Centennial of the Delaware General Corporation Law, Wilmington, Delaware 1999

**EXPERT WITNESS AND *AMICUS CURIAE***

*In re Request of the Governor*, 722 A.2d 307 (Del. 1998) (appointed by the Court *pro bono publico* to advocate on appointments clause of the State Constitution)

*Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039 (Del. 1996) (appointed by the Court to advocate on class action attorneys' fee award)

*California Public Employees Retirement System v. Felzen, et al.*, 119 S.Ct. 720, 142 L.Ed.2d 766 (1999) (*amicus curiae* in support of petitioner on issue of appellate standing in stockholder derivative actions)

*Worldspan, L.P. v. Abacus Distribution Systems Pte Ltd, et al.*, International Chamber of Commerce, International Court of Arbitration Case No. 9833/FMS (expert witness on fiduciary responsibilities of partners in a Delaware limited partnership)

*AMP Inc. v. Allied Signal, Inc.*, C.A. Nos. 98-4405, 98-4053, 98-4109 (E.D.Pa. 1998) (expert witness on fiduciary responsibilities under Delaware law of bidder officers and directors as directors of target corporation)

*Onti, Inc. v. Integra Bank*, 751 A.2d 904, 931-32 (Del. Ch. 1999) (expert witness on valuation of contingent claims including shareholder derivative claims)

*In the Matter of Banc of America Capital Management, LLC, et al.* and *In the Matter of Columbia Management Advisors, Inc.* (Securities and Exchange Commission, 2005) (appointment as independent distribution consultant in connection with mutual fund settlements)

## OTHER AFFILIATIONS

ACLU Delaware, Inc., director (President, 1996-2003); representative to the National Board of Directors 2004 --

Wilmington Community Orchestra, violin