<u>**SCHEDULE D-2**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
:
RONALD CANTOR, IVAN SNYDER and :
JAMES A. SCARPONE, as TRUSTEES OF :
THE MAFCO LITIGATION TRUST, :
:
            Plaintiffs, :   Civil Action No. 97-586 (KAJ)
:
    - against - :
:
RONALD O. PERELMAN, :
MAFCO HOLDINGS INC., :
MacANDREWS & FORBES HOLDINGS INC., :
ANDREWS GROUP INCORPORATED, :
WILLIAM C. BEVINS and :
DONALD G. DRAPKIN, :
:
            Defendants. :
:
------------------------------------------------------------x

**PLAINTIFFS' RESPONSES TO**
**DEFENDANTS' MOTION IN LIMINE**

Plaintiffs respectfully submit these responses to defendants' motions in limine seeking to exclude (i) evidence relating to the tax sharing arrangement among Marvel, Marvel III and MAFCO, (ii) evidence that the Marvel Holding Companies did not repay the Notes, and (iii) testimony from defendants' expert Peter A. Fowler. Plaintiffs' response to defendants' motion concerning the tax sharing agreement is set forth at pp. 2-5 hereof; plaintiffs' response concerning evidence that the Marvel Holding Companies did not repay the Notes is set forth at pp. 6-9 hereof; plaintiffs' response concerning Peter A. Fowler is set forth at pp. 10-13 hereof.

415059.3

*PLAINTIFFS' RESPONSE TO DEFENDANTS'*
*MOTION IN LIMINE TO EXCLUDE EVIDENCE*
*RELATING TO THE*
*TAX SHARING ARRANGEMENT*
*AMONG MARVEL, MARVEL III AND MAFCO*

In opposition to defendants' motion in limine to exclude evidence relating to the tax sharing arrangement among Marvel, Marvel III and Mafco, plaintiffs aver as follows:

## I.

## PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY IS A CLAIM RELATING TO THE HOLDING COMPANY NOTE ISSUANCES NOT THE TAX SHARING AGREEMENT

Defendants contend that plaintiffs "have recently recast their case in order to pursue at trial claims relating to a tax sharing agreement between MAFCO and Marvel." That is untrue. The gravamen of plaintiffs' claim is -- and always has been -- that Ronald O. Perelman breached his fiduciary duty to Marvel in connection with three Note issuances that resulted in proceeds of $553.5 million for the sole benefit of Mr. Perelman and corporations he wholly owned. There were no proceeds or other benefits provided to Marvel, a public corporation that was majority-owned by Mr. Perelman. Yet Marvel was a vital and active participant in the marketing of the Notes; Marvel resources were expanded to effectuate the issuance of the Notes; and, the Note Indentures contained express provisions restricting Marvel's financing activities.

Instead of fulfilling his duty as a director of Marvel, Mr. Perelman advanced his personal financial interests to the detriment of Marvel. His duty as a director of Marvel required him, at a minimum, to recognize that the Note transactions

were contrary to Marvel's interests and to ensure that Marvel did not facilitate and assist the effectuation of the Note issuances.

Moreover, contrary to Mr. Perelman's defense that after the Notes were issued he could have, and would have, deferred to a special committee of independent Marvel directors whenever a conflict arose between his personal financial interest as a result of the Note issuances and Marvel's best interest, the evidence at trial will show that after the Notes were issued, Mr. Perelman continued to advance his personal financial interests in preference to Marvel's and that he never recused himself from any Marvel Board actions concerning Marvel's financing decisions. Those decisions resulted in Marvel's exclusive reliance on bank debt which was contrary to Marvel's best long-term interest, but good for Mr. Perelman's financial position in light of burdens and obligations he would have faced under the Indentures if, for example, Marvel had issued equity rather than bank debt to obtain financing.

In sum, plaintiff's claim for breach of fiduciary duty is not a claim relating to tax sharing agreement.

## II.

### PLAINTIFFS' EVIDENCE CONCERNING HARM TO MARVEL CAUSED BY THE NOTES DOES NOT TRANSMUTE THEIR CLAIM INTO A CLAIM RELATING TO TAX SHARING AGREEMENT

Having persuaded the Court that plaintiffs have no right to a jury trial -- by arguing that plaintiffs have asserted just one claim for breach of fiduciary duty and that a court of equity has broad discretion to award compensatory damages, unjust enrichment, and any other appropriate relief -- defendants now are trying to mischaracterize plaintiffs' claim and truncate plaintiffs' proof of actual damages.

In support of their motion in limine, defendants point to certain statements plaintiffs set forth in their draft pre-trial order concerning Section 4.14 of the Marvel III Indenture. Section 4.14 of that Indenture provides that if Marvel ceases to be a member of an affiliated group of corporations, including Marvel III, for purposes of filing a consolidated federal income tax return, holders of the Marvel III Notes would have the right to require Marvel III to repurchase the holder's Marvel III Notes at a premium and before maturity. Thus, in order for Marvel to issue any new common equity and not trigger what is called a tax deconsolidation event under Section 4.14 of the Marvel III Indenture, Mr. Perelman's affiliated group of corporations would have had to purchase sufficient new equity to maintain an 80% ownership stake.

Accordingly, one consequence of the Marvel III Note issuance was that Mr. Perelman's interest diverged from Marvel's interest on the issue of whether or not Marvel should issue equity to obtain financing. The conflict is due to the fact that Mr. Perelman would face costs and burdens from Marvel's issuance of equity that would not be faced by Marvel or Marvel's other shareholders. As explained by plaintiffs' expert Jeffrey Baliban, the failure of Marvel to issue equity and its over-reliance on bank debt after the Marvel III Note issuance, was a cause of major financial distress to Marvel, and loss of market value.

The fact that Section 4.14 of the Marvel III Indenture refers to tax consolidation and the fact that Marvel III was using tax sharing payments from Marvel to pay interest on the Marvel III Notes does not mean that plaintiffs' claim herein is a claim relating to the tax sharing agreement. Marvel's claims relating to the tax sharing agreement including claims that defendants breached their fiduciary duty by causing

Marvel to enter into the tax sharing agreement, that defendants breached the tax sharing agreement itself and that defendants are liable to return to Marvel certain payments or benefits under the agreement or benefits in connection with "net-loss carry forwards" were litigated and adjudicated in a separate lawsuit against Mr. Perelman brought by Marvel Enterprises, Inc. *See Marvel Entm't Group, Inc. v Mafco Holdings, Inc.*, 273 B.R. 58, 71 (D. Del. 2002).

By mischaracterizing plaintiffs' claim, defendants are apparently trying to preclude plaintiffs' expert, Jeffrey Baliban, from testifying about the actual harm caused to Marvel by the Note issuances, and the Marvel III issuance in particular (as to which the Third Circuit held, as a matter of law, that plaintiffs' claim for compensatory damages is timely). In fact, Mr. Baliban's testimony is proper with respect to the issue of damages caused to Marvel by the Note issuance, and there is no basis for excluding any of the facts that underlie his opinion.

## CONCLUSION

Accordingly, plaintiffs respectfully submit that defendants' motion to exclude evidence relating to the tax sharing agreement should be denied.

*PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION IN LIMINE TO PRECLUDE EVIDENCE
THAT THE MARVEL HOLDING COMPANIES DID
NOT REPAY THE NOTES*

In opposition to defendants' motion in limine to preclude evidence that the Marvel Holding Companies did not repay the Notes, plaintiffs aver as follows:

### THE MARVEL HOLDING COMPANIES' BANKRUPTCIES SHOULD NOT BE EXCLUDED FROM EVIDENCE

Plaintiffs believe that when Mr. Perelman's unjust enrichment is evaluated as of the time of the issuance of the Notes, the evidence at trial will show that the entire amount of the Note proceeds was obtained as a result of the restrictions on Marvel and Marvel's participation in the issuance of the Notes; that no part of the $553.5 million was obtained independent of the restrictions on Marvel or independent of Marvel's assistance and participation; and that defendants considered, but were unwilling or unable to pursue, alternatives to the Notes as a means of monetizing Mr. Perelman's ownership interest in Marvel. Moreover, the evidence will show that although Mr. Perelman received the full benefit of the $553.5 million in Note proceeds, he never had any obligation or expectation of repaying the Notes other than through the Marvel Holding Companies and only to the extent that the pledged shares of Marvel stock were sufficiently valuable to support such repayment.

Defendants argue that evidence demonstrating that Mr. Perelman in fact did not repay the Notes when the Holding Companies went bankrupt should be excluded "because the Third Circuit held this fact is not relevant." (Defs.' Motion at 2.) Defendants themselves have demonstrated their intention to rely upon the Holding Company bankruptcies as part of their defense. But more importantly, defendants have

415059.3              6

misconstrued both what the Third Circuit said, and the relevance of the Holding Company bankruptcies in measuring defendants' unjust enrichment (in accordance with the Third Circuit's decision) as of the time of the Note issuance.

To begin with, defendants have repeatedly referred to the bankruptcies of the Marvel Holding Companies, and the consequences of those bankruptcies to Mr. Perelman, in trying to exculpate Mr. Perelman or argue that Mr. Perelman was not unjustly enriched. For example, defendants have asserted:

- "Mr. Perelman . . . risked, and lost, his multi-billion dollar controlling stake in Marvel as a result of pledging those shares in the Note offerings." (Opening Brief in Support of Defendants' Motion for Summary Judgment, at 3.)

- "From the viewpoint of Marvel, all Mr. Perelman did was pledge his own stock in order to borrow money, and then lose that stock -- worth more than two billion dollars at the time of last offering -- when the collateral was foreclosed upon by the bondholders." (*Id.*)

- "As the Court knows, Perelman lost all of his Marvel stock -- and his position as controlling shareholder of Marvel -- when the bondholders asserted their rights to the collateral for the Notes." (*Id.* at 45.)

- "And, when the Issuers filed for bankruptcy, thereby causing a default, the burden of that default was felt by Mr. Perelman, who lost the 80% interest in Marvel he had pledged to the Noteholders." (Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment, at 10.)

- "As an initial matter, plaintiffs have moved for summary judgment solely against Mr. Perelman in order to strip him of $265 million in alleged profits [the proceeds of the Parent and Marvel III Notes], but they have not shown that Mr. Perelman personally profited from the Note offerings. If anything, he suffered the biggest loss of all when his indirect controlling interest in Marvel was lost to foreclosure." (*Id.* at 37.)

The Third Circuit expressly did not set any limits on the evidence that plaintiffs could present at trial. Rather, the Third Circuit noted that "the issue of the extent of any unjust enrichment is, ..., not before us. For that reason, *it would not be appropriate for us to restrict plaintiffs' proof on remand." Cantor v. Perelman*, 414 F.3d

415059.3                                  7

430, 437 (3d. Cir. 2005) (emphasis added). In a footnote, the Third Circuit also stated: "We reject plaintiffs' argument that the amount of unjust enrichment defendants received should take into account the fact that the subsequent bankruptcies of defendants [i.e., the Holding Companies] resulted in their not having to repay the loans evidenced by the Notes. Any unjust enrichment occurred at the time of the issuance of the Notes and must be evaluated as of that point in time." *Id.* at n. 5. Taken in full context, the Third Circuit was making the point that defendants' unjust enrichment should be measured as of "the time of the issuance of the Notes," not as of the date that the Holding Companies went bankrupt. The Third Circuit did not say that any evidence of the Holding Company bankruptcies would be irrelevant to the measure of unjust enrichment as of the time that the Notes were issued, and should be excluded as a matter of law.

Indeed, to the extent that plaintiffs will present evidence of the bankruptcies, that proof will support plaintiffs' claim for unjust enrichment, measured as of the time that Notes were issued. As noted above, Mr. Perelman caused the Notes to be issued and reaped over half a billion dollars in proceeds for his personal benefit, proceeds that he was able to raise without any personal obligation to repay the Notes precisely because he was breaching his fiduciary duty, and improperly using his fiduciary position for personal gain. Plaintiffs believe that the evidence at trial will support the conclusion that defendants' unjust enrichment, measured as of the time that the Notes were issued, is the amount of the Note proceeds. The fact that the Notes were never repaid supports plaintiffs' contention that Mr. Perelman had no personal obligation to repay the Notes as of the time that the Notes were issued, and that Mr. Perelman expected as of the time that the Notes were issued that if the price of the stock pledged as collateral declined in value,

he would simply walk away from the stock. In short, evidence of the bankruptcies simply confirms what was true as of the time the Notes were issued, and for that reason is both relevant and admissible.

Defendants also contend that the fact that the Notes were not repaid should be excluded at trial because Marvel was not owed repayment, the Holding Companies are not defendants here, and the Noteholders were unsuccessful in their lawsuits against defendants for repayment of the Notes. (Defs.' Motion at 3.) All of these arguments are non-sequiturs, and are based on the insupportable notion that plaintiffs are standing in the shoes of the Noteholder seeking repayment of the Notes. In fact, plaintiffs are the successors-in-interest to Marvel (not the Noteholders) and they are suing not for repayment of the Notes, but for breaches of fiduciary duty by those who unquestionably owed Marvel the highest duty of care and loyalty. What plaintiffs seek to recover is the amount by which defendants were unjustly enriched from their breach of duty or the damage to Marvel caused by such breach.

Finally, the statement by the Third Circuit that certain facts are not to be taken into account for determining the amount of unjust enrichment does not mean that these facts are not otherwise admissible and relevant, especially where, as here, defendants themselves repeatedly refer to the bankruptcies of the Marvel Holding Companies to try to mitigate Mr. Perelman's liability.

## CONCLUSION

Accordingly, plaintiffs respectfully submit that defendants' motion to exclude evidence that the Marvel Holding Companies did not repay the Notes should be denied.

### *PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFFS FROM CALLING DEFENDANTS' EXPERT, PETER A. FOWLER, AS A LAY WITNESS IN THEIR CASE IN CHIEF*

In opposition to defendants' motion in limine to preclude plaintiffs from calling Peter A. Fowler as a lay witness in their case-in-chief, plaintiffs aver as follows:

### INTRODUCTION

The fact that Mr. Fowler is being called by defendants as an expert witness does not preclude plaintiffs from calling Mr. Fowler (in person or by deposition) as a fact witness if the testimony offered by Mr. Fowler would be otherwise proper and admissible. Defendants argue that plaintiffs' calling of Mr. Fowler as a lay witness would violate Rule 602 of the Federal Rules of Evidence because Mr. Fowler lacks personal knowledge of relevant matters. This is not correct. Mr. Fowler has personal knowledge of admissions by defendants. Thus, plaintiffs may properly offer Mr. Fowler's testimony concerning such admissions. Specifically, Mr. Fowler testified at his deposition in this action that he had conversations with Irwin Engelman and Greg Woodland, senior executives who are current employees of Mr. Perelman's holding companies and who were employed by Mr. Perelman's holding companies at the time of the Note issuances. The statements made by Mr. Engelman and Mr. Woodland are "admissions" and, as such, may be offered into evidence by plaintiffs. Mr. Fowler has personal knowledge of such statements and has provided testimony as to such statements at his deposition.

I.

## PETER FOWLER'S TESTIMONY ABOUT HIS CONVERSATIONS WITH DEFENDANTS' OFFICERS AND EMPLOYEES DOES NOT VIOLATE RULE 602 AND IS ADMISSIBLE

Defendants argue that "[a]s Mr. Fowler never perceived an event at issue here, Rule 602 bars him from testifying about any of those events as a lay witness for plaintiff." (Defs.' Motion at 1.) However, in order for Mr. Fowler's deposition testimony to satisfy Fed. R. Evid. 602, Mr. Fowler need not have perceived an event at issue; he need only have personal knowledge of Mr. Engelman and Mr. Woodland's statements to him. Mr. Engelman and Mr. Woodland, in turn, must have personal knowledge of relevant information concerning the Note issuances, and that they do. *See* Fed. R. Evid. 602 advisory committee's note (stating that the rule does not "govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement."); *see also U.S. v. Owens*, 789 F.2d 750, 753-54 (9th Cir. 1986), rev'd on other grounds, 484 U.S. 554 ("Before an out-of-court identification can satisfy the provisions of Rule 602, the personal knowledge requirement must be applied twice. First, the witness, who testifies in the courtroom that a statement of identification was made out of court, must have personal knowledge as to the making of the out-of-court statement; he need not, however, have personal knowledge as to the events that were the subject of his statement. Second, the declarant who made the out-of-court statement must have had personal knowledge of the events that were the subject of his statement."); *U.S. v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985) (same).

Here, Irwin Engelman and Greg Woodland were senior officers working for defendants who were involved in, and had first-hand knowledge concerning, the

issuance of the Notes. (Fowler Dep. 62:11-23.) At the time the Notes were issued, Mr. Engelman was the Executive Vice President, Chief Financial Officer and a director of MacAndrews & Forbes Holdings Inc., and Mr. Woodland was Vice President-Finance of MacAndrews & Forbes Holdings Inc. According to Mr. Fowler, Messrs. Engelman and Woodland spoke to him at length about why the Notes were issued, the reason for the restrictions on Marvel contained in the Note Indentures, and alternatives to the Notes considered by defendants. (*Id.* 64:5-66:22.) For example, Mr. Engelman told Mr. Fowler that the restrictions on Marvel in the Note Indentures were included "as part of the negotiation between the issuer and the underwriter" and were likely included at the underwriter's request. (*Id.* 66:14-16, 68:20-69:8.) Mr. Engelman also told Mr. Fowler that defendants explored at least two alternatives in addition to the Notes – margin loans with commercial banks and convertible securities – but that defendants rejected both of these alternatives because they would raise less money or require defendants to make valuable concessions they were not willing to make. (*Id.* 79:25-80:7, 82:15-23.)

Mr. Fowler clearly has personal knowledge of his conversations with Messrs. Engelman and Woodland. In turn, they have personal knowledge of the Note transactions. Indeed, the statements by Messrs. Engelman and Woodland are admissible under Fed. R. Evid. 602 even without a showing of their personal knowledge because their statements constitute admissions by defendants as party-opponents. *See Zipf v. American Tel. and Tel. Co.*, 799 F.2d 889, 895 n.8 (3d Cir. 1986) ("[A]n out-of-court statement is admissible under Fed. R. Evid. 801(d)(2) without a showing that the declarant had personal knowledge of the matters asserted."); *U.S. v. Ammar,* 714 F.2d 238, 254 (3d Cir. 1983) (same). This conclusion is especially appropriate here because

defendants' counsel in this action advised Mr. Fowler to obtain information from Messrs. Engelman and Woodland concerning the Note issuances. Defendants thus may be held to have adopted their statements, pursuant to Fed. R. Evid. 801(d)(2)(B) & (C). *See* 4 J. Wigmore, Evidence § 1070, p. 100 (J. Chadbourn rev. ed. 1972) ("If a party, instead of expressing his belief in his own words, names another person as one whose expected utterances he approves beforehand, this amounts to an anticipatory adoption of that person's statement; and it becomes, when made, the party's own."); *Burwell v. Crist*, 373 F.2d 78, 80-81 (3d Cir. 1967) (party who referred investigator to knowledgeable third party and was present during conversation was bound by third party's admissions).

## II.

### PLAINTIFFS ARE NOT SOLICITING A LAY OPINION FROM PETER FOWLER, OR USING HIM AS AN EXPERT

Defendants also suggest that plaintiffs are calling Mr. Fowler to provide a lay opinion or to use him as their own expert. (Defs.' Motion at 2-3.) Defendants are not correct. Plaintiffs will not be offering any opinion testimony from Mr. Fowler, either lay or expert. The only testimony from Mr. Fowler offered by plaintiffs will be fact testimony about his conversations with defendants' officers, Messrs. Engelman and Woodland. Thus, the cases cited by defendants, all of which concern opinion testimony, are simply inapposite. *See S.E.C. v. Infinity Group Co.*, 212 F.3d 180, 197-98 (3d Cir. 2000) (discussing admissibility of lay opinion); *Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 629-30 (3d Cir. 1993) (same).

## CONCLUSION

Accordingly, plaintiffs respectfully submit that defendants in limine motion to preclude plaintiffs from calling Peter A. Fowler should be denied.