**HIGH RIVER LIMITED PARTNERSHIP**
767 Fifth Avenue.
47th Floor
New York, New York 10153
(212) 702-4300

August 28, 2008

**VIA FED EX and REGULAR MAIL**

Clerk of the Court
United States District Court of the District of Delaware
844 North King Street
Wilmington, Delaware 19801

Lawrence C. Ashby
Phillip Trainer, Jr.
Ashby & Geddes                        **HEARING DATE: September 11, 2008**
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899

Edward A. Friedman
Daniel B. Rapport
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019

Re: <u>Cantor, et al. v. Perelman, et al.</u>, No. 97-CIV-586-SLR

Gentlemen:

Please accept this letter as the statement of objection of High River Limited Partnership ("High River") to the Trustee's Motion For An Order Approving Settlement (the "Trustee's Motion"). Enclosed in further support of High River's objection are the Affidavit of Paul Morelli, the Affidavit of Nancy Axilrod, and a Notice of Appearance.

High River is a beneficiary of the Trust because it is a holder of an Allowed Equity Interest. Specifically, High River is the holder of various Marvel senior notes totaling $251,520,000 par value. High River makes this objection because, at best, plaintiffs have failed to provide sufficient facts upon which this Court can meaningfully review the proposed settlement. Furthermore, based upon the facts

that can be gleaned from the record, there is a serious concern that beneficiaries may not receive the full amount of the settlement funds to which they are entitled.

Specifically, and as set forth more fully below, plaintiffs' motion is flawed because it fails to correctly identify High River as the holder of the notes referenced above and because, despite a request, plaintiffs have failed to provide assurances that the beneficiaries will receive all settlement proceeds earmarked for the holders of the Allowed Equity Interest. As such, neither High River, nor other beneficiaries, has any assurances that it will receive the settlement proceeds to which it is entitled. Consequently, the Trustee's motion should be denied.

High River is a holder of Marvel notes totaling $251,520,000 par value. As the enclosed affidavit of Merrill Lynch employee Paul Morelli makes clear, the overwhelming majority of High River's Marvel holdings are on account at Merrill Lynch. Specifically, notes totaling $251,519,000 par value are held through Merrill Lynch as follows:

| | |
|---|---|
| Marvel Holdings Senior Notes (CUSIP 57383QAC03) | $93,165,000 |
| Marvel Parent Holdings Senior Notes (CUSIP 573845AA-02) | $121,404,000 |
| Marvel III Holding Inc. Senior Notes (CUSIP 573848AC02) | $36,950,000 |
| Total: | $251,519,000 |

(Morelli Affidavit, paragraph 3.)

In addition to the above referenced securities, High River holds, in certificate form, an additional note of $1,000 par value. This certificate is for Marvel Parent Holdings Senior Notes, for a total of $251,520,000 par value. (Axilrod Affidavit, Exhibit A.)

On or about October 9, 2002, LaSalle Banks sent a letter to The Depository Trust & Clearing Corporation ("DTCC") stating that the Marvel notes bearing the above referenced CUSIP numbers are "Worthless Securities." (Morelli Affidavit, Ex. A.) We believe that DTCC marked the Marvel notes "worthless" and eliminated them from DTCC's records. The "Worthless Securities" letter was received by Merrill Lynch on December 20, 2005. (Morelli Affidavit, paragraph 4.) Upon receipt of the Worthless Securities letter, Merrill Lynch marked High River's Marvel notes as worthless. (Id. at paragraph 6 and Ex. B ). Merrill Lynch similarly marked at least some of the Marvel notes of its other customers as "worthless". (Id. at paragraph 6.) After December 2005, the

Marvel notes did not appear on High River's Merrill Lynch statements. (Id. at paragraph 8.)

Pursuant to paragraph 33 of the Trustee's Motion, the Trustee's represented that they would "provide notice of this motion to the beneficiaries of the Trust [.]" According to LaSalle as Trustee, it sent a letter to noteholders on or about August 19, 2008. High River did not receive the August 19th letter and instead contacted Ann Acker, counsel for LaSalle. High River asked LaSalle for the notice and also asked for a list of the note holders, so that High River could be certain that its interests were properly reflected on the list of note holders that would be beneficiaries of the settlement funds. On August 26, 2008, LaSalle's counsel sent an email to High River attaching the August 19th letter and the notice to beneficiaries. (Axilrod Affidavit, Ex. B.) LaSalle declined to provide its list of note holders but stated that "the registered holder lists show only one entry for High River: 1,000 par value of the Marvel (Parent) Holdings Senior Discount Notes." (Id.)

High River sent a responsive email to LaSalle later on the same day – August 26, 2008, forwarding the "Worthless Securities" letter. (Id. at Ex. C.) High River sought two assurances from LaSalle. First, that High River's total Marvel holdings would be reflected on the holder list (i.e.: High River's full $251,520,000 par value, not just the $1,000 currently reflected on LaSalle's list).

Secondly, High River sought assurances that "whatever monies are received by LaSalle (which currently is estimated at $31.9 million) will be passed through directly to the beneficiaries. (Id.) High River went on to stress that "[i]f it is LaSalle's position that there will be some type of withholding from, or charges against, the full amount of the settlement proceeds" it should so state. (Id.)

To date, High River has not received a response from LaSalle, other than a promise to "be back to [High River] when [we] have further information on this and the answers to your other questions." (Id. at Ex. D.)

Having sent the "Worthless Securities" letter, LaSalle has put in action a chain of events that has resulted in an inaccurate and deficient list of note holders. Although we are not privy to LaSalle's "list" we have learned that despite High River's notes totaling $251,520,000 par value, High River is only credited for the ownership of $1,000 par value. Neither we, nor the Court, have any way of knowing the extent to which the list of note holders improperly minimizes or excludes the interests of other beneficial owners.

Considering the high degree of confusion surrounding the note holders' list, plaintiffs' should be required to confirm that High River will receive the settlement funds in the full amount to which it is entitled, and will also receive all the notes it owns, and any other benefits derived or derivable there from.

August 28, 2008
Page 4

Faced with the current uncertainty, the Court should deny the Trustee's request to approve the settlement. Such denial, if made without prejudice, would not prevent the Trustees from renewing their motion once they have adequately identified the note holders, and have provided them with adequate notice of the motion.

A separate and equally compelling issue that mandates denial of the motion at this time is LaSalle's failure to represent that the beneficiaries of the Allowed Equity Interests (once properly identified) will receive all monies due to them. In its August 19, 2008 letter to the note holders, LaSalle mysteriously wrote that "it is impossible at this time to predict the exact amount that will be available for LaSalle as Trustee for distribution to eligible holders of notes." (Axilrod Affidavit at Ex. B.) Upon seeing this language for the first time on August 26, 2008, High River asked LaSalle for confirmation that "whatever monies are received by LaSalle (which currently is estimated at $31.9 million) will be passed through directly to the beneficiaries. If it is LaSalle's position that there will be some type of withholding from, or charges against, the full amount received in settlement, please let [High River] know." (Id. at Ex. C.) LaSalle has not responded to this request, other than to promise to "be back to [High River]" when it gets further information. (Id. at Ex. D.) Thus, it is impossible to know what, if any, monies the beneficiaries will receive. If it is LaSalle's intent to deduct legal fees or other type of charges from the monies due to the beneficiaries of the Allowed Equity Interests, (over and above the approximately $30 million that the applicants already seek to deduct from the total settlement award for such expenses), this Court, as well as the beneficiaries, should be advised of the amount and reasons for such deductions. Similarly, the beneficiaries should be given a full and fair opportunity to object to such deductions. Only then can the Court possibly engage in a meaningful review of the settlement it has been asked to approve.

In sum, neither this Court, nor the beneficiaries of the Trust, has been given the facts necessary to engage in a proper review of the proposed settlement. Based upon the facts we do have, however, High River, and possibly other beneficiaries, are in jeopardy of being prevented from receiving the settlement funds to which they are entitled. Accordingly, plaintiffs' motion should be denied.

August 28, 2008
Page 5


    High River respectfully reserves its right to appear and speak before the Court at the hearing on this matter currently scheduled for September 11, 2008. Thank you.

                                    Respectfully submitted,

                                    Edward E. Mattner
                                    High River Limited Partnership


Enclosures

cc: The Honorable Sue L. Robinson (w/ enclosures)
      Via Fed Ex and Regular Mail

{44160\1040\8/27/2008\00529281v1}