IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD CANTOR, IVAN SNYDER and JAMES A. SCARPONE, as TRUSTEES OF THE MAFCO LITIGATION TRUST,

Plaintiffs,

- against -

RONALD O. PERELMAN, MAFCO HOLDINGS INC., MacANDREWS & FORBES HOLDING INC., ANDREWS GROUP INCORPORATED, WILLIAM C. BEVINS and DONALD G. DRAPKIN,

Defendants

No. 97-CIV-586-SLR

AFFIDAVIT OF NANCY AXILROD

HEARING DATE:
September 11, 2008
4:00 p.m. (E.T.)

NANCY AXILROD, being duly sworn, deposes and says:

1. I am Assistant General Counsel of Icahn Associates Corp. and its affiliated companies, including High River Limited Partnership ("High River"). I make this affidavit in support of High River's opposition to the Trustee's Motion For An Order Approving Settlement in this matter.

2. Attached hereto as Exhibit "A" is a true and correct copy of High River's certificate of ownership of a note of Marvel Parent Holdings, in the amount of $1,000 par value.

3. Attached hereto as Exhibit "B" is a true and correct copy of an email and attachments I received on August 26, 2008, from Ann Acker, Esq., counsel to LaSalle Bank, N.A.

4. Attached hereto as Exhibit "C" is a true and correct copy of an email and attachment I sent to Ann Acker on August 26, 2008.

5. Attached hereto as exhibit "D" is a true and correct copy of an email I received on August 27, 2008, from Ann Acker.

Nancy Axilrod

Subscribed and sworn to before me this
28th day of August, 2008

Notary Public

Dolores Toomey
Notary Public, State of New York
No.41-4771811
Qualified in Queens County
Commission Expires May 31,2010

# EXHIBIT A



6396 152634 13-3626974 HIGH RIVER LIMITED

FOR PURPOSES OF SECTION 1273 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), THIS SECURITY HAS ORIGINAL ISSUE DISCOUNT. FOR PURPOSES OF SECTION 1273 OF THE CODE, THE ISSUE PRICE IS $586.62 AND THE AMOUNT OF ORIGINAL ISSUE DISCOUNT IS $413.38, IN EACH CASE PER $1,000 PRINCIPAL AMOUNT AT MATURITY OF THIS SECURITY. FOR PURPOSES OF SECTION 1275 OF THE CODE, THE ISSUE DATE OF THIS SECURITY IS OCTOBER 20, 1993. FOR PURPOSES OF SECTION 1272 OF THE CODE, THE YIELD TO MATURITY (COMPOUNDED SEMI-ANNUALLY) IS 12½%.

REGISTERED

NUMBER

R 0099

R99

# MARVEL (PARENT) HOLDINGS INC.

**Senior Secured Discount Note Due 1998**

**Principal Amount at Maturity $251,678,000**

REGISTERED

*******1,000*****

CUSIP 573845 AA 2

MARVEL (PARENT) HOLDINGS INC., a Delaware corporation, promises to pay to

HIGH RIVER LIMITED PARTNERSHIP
ONE
WALL ST COURT
SUITE 980
NEW YORK, NY 10005

******1000*********
*******1000********
********1000*******
*********1000******
**********1000*****

, or registered assigns, the principal sum of ONE THOUSAND DOLLARS **DOLLARS** on April 15, 1998.

Additional provisions of this Security are set forth on the other side of this Security.

Dated: 02/20/98

MARVEL (PARENT) HOLDINGS INC.

by [signature] PRESIDENT

[signature] SECRETARY

MARVEL (PARENT) HOLDINGS INC. CORPORATE SEAL 1988 DELAWARE

# MARVEL (PARENT) HOLDINGS INC.

## Senior Secured Discount Note Due 1998

1. *Interest*

If the Principal Amount at Maturity hereof or any other amount in respect of the Securities is not paid when due, Marvel (Parent) Holdings Inc., a Delaware corporation (such corporation, and its successors and assigns under the Indenture hereinafter referred to, being herein called the "Company"), promises, on demand, to pay interest on overdue Principal at the rate of 12½% per annum, and it shall pay interest on overdue installments of interest at the same rate to the extent lawful. Interest will be computed on the basis of a 360-day year of twelve 30-day months. Except as provided in this paragraph, there will be no periodic payments of interest.

2. *Method of Payment*

Holders must surrender Securities to a Paying Agent to collect Principal payments in respect of the Securities. The Company will pay Principal in money of the United States that at the time of payment is legal tender for payment of public and private debts. However, the Company may pay Principal and Interest, if any, by check payable in such money.

3. *Paying Agent and Registrar*

Initially, NationsBank of Georgia, National Association ("Trustee"), will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent, Registrar or co-registrar without notice. The Company or any of its domestically incorporated Wholly Owned Recourse Subsidiaries may act as Paying Agent, Registrar, co-registrar or transfer agent.

4. *Indenture*

The Company issued the Securities under an Indenture dated as of October 1, 1993, ("Indenture"), between the Company and the Trustee. The terms of the Securities include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 *U.S.C.* §§ 77aaa-77bbbb) as in effect on the date of the Indenture (the "Act"). Capitalized terms used herein and not defined herein have the meanings ascribed thereto in the Indenture. The Securities are subject to all such terms, and Securityholders are referred to the Indenture and the Act for a statement of those terms.

The Securities are secured obligations of the Company limited to $251,878,000 aggregate Principal Amount at Maturity (subject to Section 2.07 of the Indenture). This Security is one of the Securities referred to in the Indenture. The Indenture imposes certain limitations on the issuance of debt and redeemable stock by the Company, the issuance of debt and preferred stock of MHI, Marvel and its Subsidiaries, the payment of dividends and other distributions and acquisitions or retirements of the Company's Capital Stock, the creation of liens on assets of the Company and transactions with Affiliates.

5. *Optional Redemption*

The Company may redeem the Securities in whole at any time or in part from time to time at 100% of the Principal Amount at Maturity of the Securities to be redeemed.

The Securities may be redeemed at the option of the Company in connection with the occurrence of a Change of Control as a whole at a redemption price equal to the sum of (i) the Accreted Value thereof at the time of payment, plus (ii) the Applicable Premium at the time of payment.

6. *Notice of Redemption*

Notice of redemption will be mailed at least 30 days but not more than 60 days before the redemption date to each Holder of Securities to be redeemed at his registered address. Securities in denominations larger than $1,000 Principal Amount at Maturity may be redeemed in part but only in whole multiples of $1,000 Principal Amount at Maturity. If money sufficient to pay the redemption price of all Securities (or portions thereof) to be redeemed on the redemption date is deposited with the Paying Agent on or before the redemption date and certain other conditions are satisfied, on and after such date Accreted Value ceases to increase, and interest, if any, ceases to accrue, on such Securities (or such portions thereof) called for redemption.

7. *Put Provisions*

Upon a Change of Control, any Holder of Securities will have the right to cause the Company to repurchase all or any part of the Securities of such Holder at a repurchase price equal to the Put Amount of the Securities to be repurchased as provided in, and subject to the terms of, the Indenture.

8. *Security*

To secure the due and punctual payment of the Principal and Interest, if any, on the Securities and all other amounts payable by the Company under the Indenture and the Securities when and as the same shall be due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Securities and the Indenture, the Company has granted a security interest in the Collateral to the Trustee for the benefit of the Holders of Securities pursuant to the Indenture

9. *Denominations; Transfer; Exchange*

The Securities are in registered form without coupons in denominations of Principal Amount at Maturity of $1,000 and whole multiples of $1,000. A Holder may transfer or exchange Securities in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes and fees required by law or permitted by the Indenture. The Registrar need not register the transfer of or exchange any Securities selected for redemption (except, in the case of a Security to be redeemed in part, the portion of the Security not to be redeemed) or any Securities for a period of 15 days before a selection of Securities to be redeemed

10. *Persons Deemed Owners*

The registered Holder of this Security may be treated as the owner of it for all purposes.

11. *Unclaimed Money*

If money for the payment of Principal or interest, if any, remains unclaimed for two years, the Trustee or Paying Agent will pay the money back to the Company at its request unless an abandoned property law designates another person. After any such payment, Holders entitled to the money must look only to the Company and not to the Trustee for payment.

12. *Defeasance*

Subject to certain conditions, the Company at any time may terminate some or all of its obligations under the Securities and the Indenture if the Company deposits with the Trustee money or U.S. Government Obligations for the payment of Principal and interest, if any, on the Securities to redemption or maturity, as the case may be.

13. *Amendment, Waiver*

Subject to certain exceptions set forth in the Indenture, (i) the Indenture or the Securities may be amended with the written consent of the Holders of at least a majority in Principal Amount at Maturity outstanding of the Securities and (ii) any default or noncompliance with any provision may be waived with the written consent of the Holders of a majority in Principal Amount at Maturity outstanding of the Securities. Subject to certain exceptions set forth in the Indenture, without the consent of any Securityholder, the Company and the Trustee may amend the Indenture or the Securities to cure any ambiguity, omission, defect or inconsistency, or to comply with Article V of the Indenture, or to provide for uncertificated Securities in addition to or in place of certificated Securities, or to add guarantees with respect to the Securities or to secure (or provide additional security for) the Securities, or to add additional covenants or surrender rights and powers conferred on the Company, or to to comply with any request of the SEC in connection with qualifying the Indenture under the Act, or to make any change that does not adversely affect the rights of any Securityholder. A consent to any amendment or waiver of any provision in the Indenture or in the Securities by any Holder given in connection with a tender of such Holder's Securities shall not be rendered invalid by such tender.

14. *Defaults and Remedies*

Under the Indenture, Events of Default include (i) default in payment of Principal on the Securities at maturity, upon redemption pursuant to paragraph 5 of the Securities, upon declaration or otherwise, or failure by the Company to redeem or purchase Securities when required; (ii) failure by the Company to comply with other agreements in the Indenture or the Securities, in certain cases subject to notice and lapse of time; (iii) certain accelerations (including failure to pay within any grace period after final maturity) of other Debt of the Company or any Significant Subsidiary if the total principal amount on the portion of such Debt that is accelerated (or so unpaid) exceeds $25,000,000 and continues for 10 days after the required notice to the Company or such Significant Subsidiary; (iv) certain events of bankruptcy or insolvency with respect to the Company or any Significant Subsidiary; (v) certain judgments or decrees for the payment of money in excess of $25,000,000; and (vi) certain issuances of Debt secured by shares of Marvel Common Stock by the Company or its Affiliates prior to the third anniversary of the original issuance of the Securities. If an Event of Default occurs and is continuing, the Trustee or the Holders of at least 25% in Principal Amount at Maturity of the Securities may declare the Default Amount of all the Securities to be due and payable immediately. Certain events of bankruptcy or insolvency are Events of Default which will result in the Default Amount of the Securities being due and payable immediately upon the occurrence of such Events of Default.

Securityholders may not enforce the Indenture or the Securities except as provided in the Indenture. The Trustee may refuse to enforce the Indenture or the Securities unless it receives reasonable indemnity or security. Subject to certain limitations, Holders of a majority in Principal Amount at Maturity of the Securities may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Securityholders notice of any continuing Default (except a Default in payment of Principal or interest) if it determines that withholding notice is in their interest.

15. *Trustee Dealings with the Company*

Subject to certain limitations imposed by the Act, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Securities and may otherwise deal with and collect obligations owed to it by the Company or its Affiliates and may otherwise deal with the Company or its Affiliates with the same rights it would have if it were not Trustee.

16. *No Recourse Against Others*

A director, officer, employee or stockholder, as such of the Company or the Trustee shall not have any liability for any obligations of the Company or the Trustee under the Securities or the Indenture or for any claim based on, in respect of or by reason of such obligations or their creation. By accepting a Security, each Securityholder waives and releases all such liability. The waiver and release are part of the consideration for the issue of the Securities.

17. *Authentication*

This Security shall not be valid until an authorized signatory of the Trustee (or an authenticating agent) manually signs the certificate of authentication on the other side of this Security.

18. *Abbreviations*

Customary abbreviations may be used in the name of a Securityholder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian) and U/G/M/A (=Uniform Gift to Minors Act).

19. *CUSIP Numbers*

Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Company has caused CUSIP numbers to be printed on the Securities and has directed the Trustee to use CUSIP numbers in notices of redemption as a convenience to Securityholders. No representation is made as to the accuracy of such number either as printed on the Securities or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Company will furnish to any Securityholder upon written request and without charge to the Securityholder a copy of the Indenture which has in it the text of this Security in larger type. Requests may be made to: Marvel (Parent) Holdings Inc., 38 East 63rd Street, New York, NY 10021, Attention of Chief Financial Officer.

### ASSIGNMENT FORM

To assign this Security, fill in the form below:

I or we assign and transfer this Security to

________________________________________

________________________________________

________________________________________

(Print or type assignee's name, address and zip code)

________________________________________

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint

________________________________________ agent

to transfer this Security on the books of the Company. The agent may substitute another to act for him.

Date: ____________________ Your Signature: ____________________

### OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Security purchased by the Company pursuant to Section 4.07 or 4.10 of the Indenture, check the box:

☐

If you want to elect to have only part of this Security purchased by the Company pursuant to Section 4.07 or 4.10 of the Indenture, state the Principal Amount at Maturity:

$ ________________

Date: ____________________ Your Signature: ____________________

(Sign exactly as your name appears on the other side of the Security)

Signature Guarantee: ____________________

(Signature must be guaranteed)

# EXHIBIT B

**Nancy Axilrod**

**From:** Ann Acker [acker@chapman.com]
**Sent:** Tuesday, August 26, 2008 3:49 PM
**To:** Nancy Axilrod
**Subject:** Fwd: Marvel/August 19, 2008 Mailing Material for Marvel


Marvel Holdings Letter to Note...


Notice to Beneficiaries of the..


ATT00002.txt (2 KB)

Nancy, the registered holder lists show only one entry for High River: 1,000 par value of the Marvel (Parent) Holdings Senior Discount Notes. the address shown is One Wall St. Court, Suite 980, New York 10005.
> I assume the rest must be held through Cede. Attached are the letter
> and notice that went to all registered holders.
>
>
>
>
>
>
>
>
>
>

CIRCULAR 230 DISCLOSURE:

ANY STATEMENTS REGARDING TAX MATTERS MADE HEREIN, INCLUDING ANY ATTACHMENTS, CANNOT BE RELIED UPON BY ANY PERSON TO AVOID TAX PENALTIES AND ARE NOT INTENDED TO BE USED OR REFERRED TO IN ANY MARKETING OR PROMOTIONAL MATERIALS. TO THE EXTENT THIS COMMUNICATION CONTAINS A TAX STATEMENT OR TAX ADVICE, CHAPMAN AND CUTLER LLP DOES NOT AND WILL NOT IMPOSE ANY LIMITATION ON DISCLOSURE OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTIONS TO WHICH SUCH TAX STATEMENT OR TAX ADVICE RELATES.

Chapman and Cutler LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

NOTICE OF CONFIDENTIALITY: The information contained in this email transmission is confidential information which may contain information that is legally privileged and exempt from disclosure under applicable law. The information is intended solely for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this email transmission is strictly prohibited. If you have received this email transmission in error, please notify us immediately by telephone to arrange for the return of the original transmission to us.

LaSalle Bank

LaSalle Bank N.A.
135 S. LaSalle St., Ste. 1560
Chicago, IL 60603

August 19, 2008

VIA FIRST CLASS MAIL

Re: Marvel August 19Holdings Inc. (*"Holdings I"*) Senior Secured Discount Notes due 1998 and Series B Senior Secured Discount Notes due 1998 (the *"Holdings I Note Issue"*) issued pursuant to an Indenture dated as of April 15, 1993 between Holdings I and NationsBank of Georgia, National Association, as Original Trustee (the *"Holdings I Indenture"*) CUSIP 57383Q-AC

Marvel (Parent) Holdings Inc. (*"Holdings II"*) Senior Secured Discount Notes due 1998 (the *"Holdings II Note Issue"*) issued pursuant to an Indenture dated as of October 1, 1993 between Holdings II and NationsBank of Georgia, National Association as Original Trustee (the *"Holdings II Indenture"*) CUSIP 573845-AA

Marvel III Holdings Inc. (*"Holdings III"*) Senior Secured Notes due 1998 and Series B Senior Secured Notes due 1998 (the *"Holdings III Note Issue"*) [collectively, *"Holdings I Note Issue, Holdings II Note Issue* and *Holdings III Note Issue,"* are hereinafter referred to as the *"Note Issues"*] issued pursuant to an Indenture dated as of February 15, 1994 between Holdings III and NationsBank of Georgia, National Association as Original Trustee (the *"Holdings III Indenture"*) CUSIP 573848-AC

Dear Noteholders:

LaSalle Bank N.A. acts as Successor Indenture Trustee ("LaSalle as Trustee" or the "Indenture Trustee") for the above Note Issues and is writing this letter to you pursuant to the Holdings I, II and III Indentures. The purpose of this letter is to provide you with a copy of the Notice to Beneficiaries of the Mafco Litigation Trust which we have received from Trustees of the Trust. A copy of the Notice is attached. LaSalle as Trustee is not the author of the Notice and makes no representations or warranties with respect to the content thereof.

As you may recall from the prior correspondence from the Indenture Trustee, including but not limited to our letter of March 23, 1999, under the provisions of the Fourth Amended Plan of Reorganization in the bankruptcy cases of Marvel Entertainment Group, Inc. ("Marvel Entertainment") and certain of its subsidiaries, LaSalle as Trustee on behalf of the holders of the Note Issues was to receive a package of consideration including a certain percentage of Litigation Proceeds if such proceeds ever came into being, from litigation claims asserted by the Marvel Entertainment Debtors against Ronald Perelman and other defendants in a separate Federal court action (the "Mafco Perelman Litigation"). The litigation was conducted by the Mafco Litigation Trust on behalf of the Beneficiaries of that Trust. Because to secure payment of the Note Issues, LaSalle as Trustee had a lien on certain shares of Marvel Entertainment common stock on which the Indenture Trustee subsequently foreclosed, LaSalle as Trustee is considered a holder of Allowed Equity Interests in Marvel Entertainment and, hence, one of the Beneficiaries of the Mafco Litigation Trust.

The Trustees of the Mafco Litigation Trust (which are individuals who have no connection to LaSalle as Trustee) have entered into a settlement with the Defendants in the Mafco Perelman Litigation that settles and resolves all claims. The terms of the proposed settlement are set forth in the attached Notice, and we direct your attention to the Notice for further information.

The Notice contains information on an internet web page, www.mafcosettlement.com, which contains the complete text of the settlement proposal. You will note that the deadline for written statements with respect to the settlement is August 29, 2008 and the hearing date for approval of the settlement before the United States District Court for the District of Delaware is September 11, 2008 at 4:00 p.m. Eastern Standard Time. The Notice provides further directions with respect to opportunities

to attend and speak at the hearing. Under the terms of the Trust Agreement creating the Mafco Litigation Trust, the Beneficiaries have no management or control of the Mafco Litigation Trust. In fact, the Trustees of the Mafco Litigation Trust have the exclusive power to settle these claims subject to court approval. Accordingly, LaSalle as Trustee does not anticipate taking any position with respect to the approval of the settlement at the court hearing.

As previously noted, LaSalle as Trustee is deemed to be a holder of an Allowed Equity Interest on behalf of those holders of the Notes who did not previously elect to obtain a distribution of Marvel Entertainment common stock as authorized by the court. You will see a discussion of the likely net proceeds available for distribution to trust beneficiaries at paragraph 9 of the Notice. While the Notice speculates that approximately $31.9 million will be paid to the holders of Allowed Equity Interest, it is impossible at this time to predict the exact amount that will be available for LaSalle as Trustee for distribution to eligible holders of the Notes. Assuming that the settlement is approved, LaSalle as Trustee will provide further information on the mechanics holders should follow in order to process the distribution of the Litigation Proceeds pursuant to the Fourth Amended Plan of Reorganization and the terms of the Indentures.

If you should have any question you may contact Frank A. Pierson, Assistant Vice President, LaSalle Global Trust Services, (312) 904-5527.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD CANTOR, IVAN SNYDER and JAMES A. SCARPONE, as TRUSTEES OF THE MAFCO LITIGATION TRUST,

Plaintiffs,

- against -

RONALD O. PERELMAN, MAFCO HOLDINGS INC., MacANDREWS & FORBES HOLDINGS INC., ANDREWS GROUP INCORPORATED, WILLIAM C. BEVINS and DONALD G. DRAPKIN,

Defendants.

No. 97-CIV-586-SLR

**NOTICE OF TRUSTEES' MOTION FOR AN ORDER APPROVING SETTLEMENT**

**DEADLINE FOR WRITTEN STATEMENTS: August 29, 2008**

**HEARING DATE: September 11, 2008 4:00 p.m. (E.T.)**

## NOTICE TO BENEFICIARIES OF THE MAFCO LITIGATION TRUST

The Trustees of the MAFCO Litigation Trust (the "Trust") are providing this Notice in order to inform you of their Motion for an Order Approving Settlement (the "Motion"). On June 20, 2008, the Trustees and all defendants entered into a settlement agreement (the "Settlement") that settles and resolves all claims in this action (the "Action"). On behalf of the Trust, the Trustees have exclusive power to settle or otherwise compromise these claims, subject, however, to Court approval. The Motion requests Court approval of the Settlement.

As more fully described below, under the terms of the Settlement, the Trust will receive $80 million (the "Settlement Amount") if the Settlement is approved by the Court, and the order of approval becomes final and non-appealable. In such event, the beneficiaries of the Trust will be entitled to receive a distribution from the Trust. If the Settlement is not approved by the Court, the settlement agreement will be of no effect, and the Action will continue.

Just because you are receiving this Notice does not mean that you are a beneficiary of the Trust. This Notice describes below who are the beneficiaries of the Trust.

Any beneficiary who wishes to do so may submit written statements in support of or in objection to the Motion. Any such statement must be in writing, mailed to the addresses specified in paragraph 10 below, and postmarked on or before August 29, 2008. The Court has also scheduled a hearing at which it will consider the Motion. The hearing will be held

on September 11, 2008, at 4:00 p.m (E.T.), at the United States Courthouse for the District of Delaware, 844 N. King Street, 6th Floor, Courtroom #6B, Wilmington, Delaware 19801. Any beneficiary may attend the hearing. However, any beneficiary who wishes to be heard by the Court either personally or through counsel must submit a written statement on or before the August 29, 2008 deadline for such statements.

Beneficiaries of the Trust are not required to respond to this Notice or take any other action at this time in order to maintain their rights as beneficiaries.

## BACKGROUND OF THE ACTION AND THE TRUST

### 1. What is this lawsuit about?

In 1996, Marvel Entertainment Group, Inc. and its affiliates ("Marvel") filed for bankruptcy protection. In 1997, Marvel commenced this Action asserting that the defendants had breached their fiduciary duties (or aided and abetted a breach of fiduciary duty) when in 1993 and 1994 certain companies that held a majority of Marvel's stock – and which companies were indirectly owned by defendant MacAndrews & Forbes Holdings, Inc. (formerly known as Mafco Holdings Inc. and referred to herein as "Mafco") – issued three tranches of notes. The claims in this Action allege, among other things, that the defendants used their fiduciary positions in Marvel to obtain benefits from the note issuances that were not shared with Marvel or Marvel's other shareholders.

### 2. What is the Trust and how were the Trustees appointed?

In 1998, Marvel emerged from bankruptcy pursuant to a reorganization plan (the "Plan") confirmed by the Court. As part of the Plan, the Trust was established and the Trustees were appointed pursuant to the MAFCO Litigation Trust Agreement (the "Trust Agreement") to continue the litigation of the claims in this Action.

Ronald Cantor and Ivan Snyder were designated as Trustees by, respectively, the Equity Committee and the Creditors Committee in the Marvel bankruptcy. James Scarpone was designated as a Trustee by the Court-appointed Chapter 11 Trustee for Marvel (the Honorable John J. Gibbons, former Judge of the United States Court of Appeals for the Third Circuit).

The Trustees have served continuously in that capacity since their appointment.

### 3. Who are the beneficiaries of the Trust?

Under the terms of the Plan and the Trust Agreement, the beneficiaries of the Trust are the holders of: (i) certain Allowed Unsecured Claims and (ii) Allowed Equity Interests. If there had been Allowed Class Securities Litigation Claims, the holders of such claims would also have been beneficiaries of the Trust. However, the Trustees have determined that there are no holders of Allowed Class Securities Litigation Claims because none of those claims have been reduced to a judgment, as required by the Plan and the Trust Agreement. Thus, only holders of certain Allowed Unsecured Claims and Allowed Equity Interests are beneficiaries of the Trust.

Two of the Trustees are beneficiaries of the Trust. Ivan Snyder is a holder of an Allowed Unsecured Claim, and Ronald Cantor is a holder of an Allowed Equity Interest. Mr. Cantor's son is also a holder of an Allowed Equity Interest.

**4. What interest do the beneficiaries have in the claims asserted in this Action?**

The beneficiaries' sole right under the Trust Agreement is the contingent right to share in any distribution the Trustees make pursuant to the terms of the Trust Agreement. The beneficiaries have no voting rights with respect to their beneficial interests in the Trust or the management of Trust assets, and no legal title to any part of the Trust assets. The beneficiaries do not have a right to approve or disapprove any settlement entered into by the Trustees, but any settlement must be approved by the Court.

**5. Why is the Action being settled?**

The Trustees have determined that the Settlement is in the best interests of the Trust and the beneficiaries of the Trust, and is consistent with their obligations under the Trust Agreement to prosecute or settle the claims in the Action. The Trustees believe that the substantial monetary value of the Settlement outweighs the considerable uncertainty as to the ultimate outcome of this Action, as well as the timing of that outcome, if the parties proceeded to trial (and the likely appeal by one side or the other).

In determining to enter into the Settlement, the Trustees relied on the advice of their counsel who have substantial experience in matters of this nature, and their judgment concerning the strengths and weaknesses of the case developed during the decade that the Action has been vigorously litigated by the parties. During that time the Trustees and their counsel have devoted great efforts to develop legal and factual support for the claims in this Action, and the defendants have raised numerous defenses to such claims. In 2004, the defendants made a motion for summary judgment, which was granted in large part by the Court and resulted in the dismissal of virtually all of the claims. However, the Trustees appealed to the United States Court of Appeals for the Third Circuit. In 2005, the Court of Appeals reversed in part and affirmed in part, thereby permitting the Action to proceed. The Trustees recognize that there is no assurance that the Trust would be entitled to any recovery if the case proceeded to trial.

## DISTRIBUTION OF THE SETTLEMENT AMOUNT

**6. How will the Settlement Amount be distributed?**

If an order approving the Settlement becomes final and non-appealable, and the Trust receives the Settlement Amount, the Trust Agreement requires that the Trustees pay the costs and expenses incurred by the Trust before distributing the net proceeds to the beneficiaries of the Trust. Such costs and expenses include the fees described below, as well as: (a) $550,000 in estimated administration costs to wind up the affairs of the Trust, including future Trustee fees and expenses necessary to make distributions to the beneficiaries, and (b) $2,000,000 in estimated unpaid principal and interest due on a loan to the Trust from Marvel Enterprises, Inc.

**7. What are the fees payable to the Trustees under the Trust Agreement?**

The Trustees are entitled to fees as provided for in the Trust Agreement. To date, the Trustees have been paid a total of $224,250 in fees; they are owed another $317,250 in total fees for the period through June 30, 2008. Assuming the Settlement becomes final, it is anticipated that the Trustees will be paid an additional $76,500 in total fees for the period through December 31, 2009.

In addition, the two Trustees who are beneficiaries of the Trust – Ronald Cantor and Ivan Snyder – will be entitled to their proportionate distributions as beneficiaries of the Trust.

**8. What are the legal fees due to the attorneys representing the Trust?**

To date, counsel for the Trust have been paid $839,172. Of that amount, $725,000 has been paid to the law firm of Friedman Kaplan Seiler & Adelman LLP ("FKSA").

If the Settlement is approved and becomes final, the Trust will owe FKSA additional fees of $25,941,667, pursuant to the terms of the retainer agreement entered into between the Trustees and FKSA. The original retainer agreement was amended as of March 2006 because the Trust was unable to make the payments of fees and expenses it had previously agreed to make to FKSA under that original agreement. In the amended retainer agreement, FKSA agreed that it would not receive any additional fees for its services, or reimbursement of the funds it advanced to pay expert fees and other litigation costs, unless there was a settlement or judgment in the Action. In consideration, the Trustees agreed that FKSA would be entitled to a share (not to exceed one-third) of any settlement or judgment as payment of its fees.

As a point of reference, FKSA personnel have devoted over 18,000 hours to this case during the past ten years. The total charges for those services had they been billed out at FKSA's standard rates – and had the Trust been able to pay those charges – would have been approximately $7 million. In addition, FKSA has advanced $1,151,896 to pay expert fees and other costs related to the Action, which will be separately reimbursed from the Settlement Amount. The Trustees believe that the fee arrangements with FKSA are fair and appropriate, and were entered into in accordance with their authority under the Trust Agreement to act for the benefit of the Trust and its beneficiaries.

**9. What will be the net proceeds for distribution to the Trust beneficiaries?**

After paying the costs referred to above, approximately $50 million of the Settlement Amount (subject to adjustment depending on actual costs incurred) is expected to be distributed to the beneficiaries of the Trust as follows: approximately $18.2 million will be paid to holders of Allowed Unsecured Claims, and approximately $31.9 million will be paid to holders of Allowed Equity Interests.

The amount any individual beneficiary would receive would depend upon, among other things, the size of the claim held by that beneficiary relative to all claims held by that particular class of beneficiaries. For example, if a beneficiary held an Allowed Unsecured Claim that represented 1% of all Allowed Unsecured Claims, that beneficiary would

receive approximately $180,000. Unclaimed distributions will be redistributed to the remaining Trust beneficiaries in accordance with the terms of the Trust.

## WRITING TO THE COURT ABOUT THE MOTION

### 10. How can I tell the Court if I support or object to the Motion?

If you wish to support or object to the Motion, you may do so by mailing to the Clerk of the Court, as well as counsel for the Trustees, a written statement describing the specific reasons for your support or objection, together with any evidence or legal authority you believe supports your position. The statement must also contain the name of the Action (*Cantor v. Perelman*), your name, address, and whether you are a beneficiary of the Trust because you are a holder of an Allowed Unsecured Claim or an Allowed Equity Interest. Your statement of support or objection must be postmarked on or before August 29, 2008 and sent to both:

| the Court: | and counsel for the Trustees: |
|---|---|
| Clerk of the Court<br>United States District Court of the District of Delaware<br>844 North King Street<br>Wilmington, Delaware 19801 | Lawrence C. Ashby<br>Philip Trainer, Jr.<br>Ashby & Geddes<br>500 Delaware Avenue<br>P.O. Box 1150<br>Wilmington, Delaware 19899<br><br>- and -<br><br>Edward A. Friedman<br>Daniel B. Rapport<br>Friedman Kaplan Seiler & Adelman LLP<br>1633 Broadway<br>New York, New York 10019 |

Please note, Beneficiaries of the Trust are not required to respond to this Notice or take any other action at this time in order to maintain their rights as beneficiaries.

## THE COURT HEARING ON THE MOTION

### 11. When and where will the hearing take place?

The Court will hold a hearing on September 11, 2008 at 4:00 p.m. The hearing will be held in Courtroom 6B, United States District Court for the District of Delaware, 844 North King Street, Wilmington, Delaware 19801. The Court reserves the right to reschedule the hearing without further notice to the beneficiaries of the Trust.

At the hearing, the Court will consider whether the Settlement should be approved. We do not know when the Court will make its decision whether or not to approve the Settlement.

**12. May I attend, and speak at, the hearing?**

You do not need to attend the hearing, but you may do so at your own expense if you wish. You may also pay your own lawyer to attend, but it is not necessary. If you or your lawyer intends to speak at the hearing, you or your lawyer must send a Notice of Appearance together with your written statement referred to above and any written materials to be presented to the Court, to (a) the Clerk of the Court, and (b) counsel for the Trustees, at the addresses listed above. These materials must be postmarked on or before August 29, 2008.

## IMPORTANT INFORMATION

You may obtain the complete text of the Settlement, the Motion, the Trust Agreement and the Plan: (i) at http://www.mafcosettlement.com/ or (ii) from the Court file (which is available for your inspection during regular business hours at the address specified in paragraph 10 above). This Notice is intended to provide a summary of the Settlement and related matters, and is qualified by reference to the documents referred to herein.

There will be no distribution to the beneficiaries of the Trust in connection with the Settlement unless and until the Court approves the Settlement, and the order of approval becomes final and non-appealable.

Dated: August 1, 2008

Submitted on behalf of Ronald Cantor,
Ivan Snyder and James A. Scarpone,
the Trustees of the MAFCO Litigation Trust

by

ASHBY & GEDDES
Lawrence C. Ashby
Philip Trainer, Jr.
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899

-and-

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
Edward A. Friedman
Daniel B. Rapport
1633 Broadway
New York, New York 10019
drapport@fklaw.com

# EXHIBIT C

**Nancy Axilrod**

**From:** Nancy Axilrod
**Sent:** Tuesday, August 26, 2008 4:38 PM
**To:** 'acker@chapman.com'
**Subject:** FW: MAFCO.PDF - Adobe Acrobat Professional
**Importance:** High

Ann: Thanks for your email. However, please see the attached, which I received from Merrill Lynch. The vast majority of High River's Marvel interests are held through Merrill Lynch. It is obviously important that High River's Marvel interests (which as you know are significant) are properly reflected on your Registered Holder list. Such proper identification needs to be effectuated promptly – especially given the upcoming deadlines set forth in the Notice of Motion.

Also, can you please confirm for me LaSalle's position regarding the distribution to beneficiaries? LaSalle's August 19th letter to Noteholders states that "it is impossible at this time to predict the exact amount that will be available for LaSalle…for distribution to eligible holders of the Notes." I am looking for confirmation that whatever monies are received by LaSalle (which currently is estimated at $31.9 million) will be passed through directly to the beneficiaries. If it is LaSalle's position that there will be some type of withholding from, or charges against, the full amount received in settlement, please let me know. Otherwise, please indicate that the full amount of the settlement proceeds earmarked for the Allowed Equity Interests will be paid out to beneficiaries.

Regards,
-Nancy

Nancy Axilrod, Esq.
Assistant General Counsel
Icahn Enterprises, LP
Icahn Associates Corp. and Affiliated Companies
767 Fifth Avenue, 47th Floor
New York, New York 10153
office: (212) 702-4345
cell: (646) 761-6324
fax: (212) 688-1158

NOTICE: This email and any attachment(s) to this email message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this email or any attachment(s) to it. If you have received this email in error, please immediately notify us by return email or by telephone at 212-702-4300 and delete this message.

TOTAL P.001

DEC. 20. 2005 3:45PM LA SALLE BANK N. A. NO. 5238 P. 1

LaSalle Bank N.A.

**LASALLE BANKS**

135 South LaSalle Street
Chicago, Illinois 60603
(312) 904-2000

Trust and Asset Management

Via Fax 212/855-5009
October 9, 2002

**"Worthless Securities"**

Ms. Ingrid Sharpe
DTCC

Re: 11-1/4% Senior Secured Discount Notes due 1998 of Marvel Holdings, Inc. DX777 / C6CB6
(CUSIP 57383QAC3 or 57383QAD1)
11-7/8% Senior Secured Discount Notes due 1998 of Marvel (Parent) Holding, Inc.
(CUSIP 573845AA2 or 573845AB0) DX790 / C6CB8
9-1/8% Senior Secured Notes due 1998 issued by Marvel III Holding, Inc.
(CUSIP 573848AC2 or 573848AD0) C6AUS / C6CB7

Dear Ms. Sharpe:

The Marvel Holding Companies filed for bankruptcy in December 1997. At this time, all court actions related to the above-referenced notes as identified have been concluded. The Marvel Holding Companies did not reorganize. It was only the operating subsidiary, Marvel Entertainment Group, Inc. which emerged out of bankruptcy through a merger with Toy Biz to form Marvel Enterprise. Pursuant to the merger and reorganization of the Marvel Enterprise entity, there were three classes of Warrants (Class A, B & C) issued to all former shareholders. All three classes of Warrants have expired.

Since the bankruptcy filing in 1997, we have not made any type of payment distribution to the noteholders. LaSalle Bank is no longer performing transfers for any of these note issues nor did we receive a recovery for the benefit of the noteholders. We are in the process of closing our books. Should we receive any contingency funds in the future, the noteholders will be contacted at that time.

If we can be of any further assistance, please do not hesitate to contact us at 312/904-2444.

Sincerely,

/Sarah H. Webb
Senior Vice President

| Post-it® Fax Note 7671 | Date | # of pages ▸ |
|---|---|---|
| To: Bob A. | From: Alice Wolan | |
| Co./Dept. | Co. | |
| Phone # 201-557-3309 | Phone # 904-2230 | |
| Fax # 201-557-0472 | Fax # | |

# EXHIBIT D

**Nancy Axilrod**

**From:** Ann Acker [acker@chapman.com]
**Sent:** Wednesday, August 27, 2008 4:14 PM
**To:** Nancy Axilrod
**Subject:** Re: MAFCO.PDF - Adobe Acrobat Professional

Nancy, Merrill is not shown as a registered holder either. I assume that Merrill is a dtc participant, and we will be following up with the Trustee . I will be back to you when I have further information on this and the answers to your other questions.
On Aug 26, 2008, at 3:38 PM, Nancy Axilrod wrote:

> Ann: Thanks for your email. However, please see the attached,
> which I received from Merrill Lynch. The vast majority of High
> River's Marvel interests are held through Merrill Lynch. It is
> obviously important that High River's Marvel interests (which as you
> know are significant) are properly reflected on your Registered
> Holder list. Such proper identification needs to be effectuated
> promptly – especially given the upcoming deadlines set forth in the
> Notice of Motion.
> Also, can you please confirm for me LaSalle's position regarding the
> distribution to beneficiaries? LaSalle's August 19th letter to
> Noteholders states that "it is impossible at this time to predict the
> exact amount that will be available for LaSalle…for distribution to
> eligible holders of the Notes." I am looking for confirmation that
> whatever monies are received by LaSalle (which currently is estimated
> at $31.9 million) will be passed through directly to the
> beneficiaries. If it is LaSalle's position that there will be some
> type of withholding from, or charges against, the full amount
> received in settlement, please let me know. Otherwise, please
> indicate that the full amount of the settlement proceeds earmarked for
> the Allowed Equity Interests will be paid out to beneficiaries.
>
> Regards,
> -Nancy
>
> Nancy Axilrod, Esq.
> Assistant General Counsel
> Icahn Enterprises, LP
> Icahn Associates Corp. and Affiliated Companies
> 767 Fifth Avenue, 47th Floor
> New York, New York 10153
> office: (212) 702-4345
> cell: (646) 761-6324
> fax: (212) 688-1158
>
>
> NOTICE: This email and any attachment(s) to this email message
> contains confidential information that may be legally privileged.
> If you are not the intended recipient, you must not review,
> retransmit, convert to hard copy, copy, use or disseminate this email