IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------x
RONALD CANTOR, IVAN SNYDER and :
JAMES A. SCARPONE, as TRUSTEES OF :
THE MAFCO LITIGATION TRUST, :
                                                                :        Civil Action No. 97-586 (SLR)
               Plaintiffs, :
                                                              :
              vs. :        Hearing Date: September 11, 2008 @ 4:00 p.m.
                                                              :
RONALD O. PERELMAN, ET AL., :
                                                              :
               Defendants. :
------------------------------------x

**REPLY OF LASALLE BANK N.A., NOT INDIVIDUALLY, BUT SOLELY IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE TO THE AUGUST 28, 2008 LETTER (DOCKET NO. 523) OF HIGH RIVER LIMITED PARTNERSHIP IN OPPOSITION TO THE TRUSTEE'S MOTION FOR AN ORDER APPROVING SETTLEMENT (DOCKET NO. 520)**

LaSalle Bank N.A., not individually, but solely in its capacity as Successor Indenture Trustee ("LaSalle as Trustee") files its reply to the August 28, 2008 letter of High River Limited Partnership ("High River"), filed at Docket No. 523, in opposition to the Trustee's Motion For An Order Approving Settlement (the "Trustee's Motion"), filed at Docket No. 520, and states as follows:

LaSalle as Trustee acts as successor indenture trustee under three separate indentures (the "Indentures") relating to the issuances of notes (collectively, the "Notes") in the face amount of $517,447,000 by Marvel Holdings, Inc. ("Holdings"), $251,678,000 by Marvel (Parent) Holdings, Inc. ("Parent") and $125,000,000 by Marvel III Holdings, Inc. ("Marvel III"). As explained more fully below, by virtue of LaSalle as Trustee's having been pledged a substantial amount of the shares of Marvel Entertainment Group, Inc. ("Marvel") to secure the Notes, LaSalle as Trustee, in such capacity, holds an Allowed Equity Interest under Marvel's bankruptcy plan and, as a result, is a beneficiary of the Mafco Litigation Trust.

PHIL1 803770-1

By this reply, LaSalle as Trustee responds to and clarifies certain misstatements and allegations contained in the August 28, 2008 letter/objection of High River opposing the Trustee's Motion.

Most notably, High River appears to have no qualms over the substantive terms or fairness of the settlement (the "Trustee's Settlement"). Instead, High River seeks denial, and effectively an indefinite delay, of the Trustee's Motion on the grounds that (i) the amount of High River's holdings of the Notes purportedly conflicts with the Registered Holder list of LaSalle as Trustee, and (ii) High River does not know whether LaSalle as Trustee intends to pay its fees and expenses permitted under the Indentures from the proceeds it receives on account of the Trustee's Settlement (the "LaSalle Settlement Proceeds") prior distributing the remainder thereof to noteholders. We will respond to each of those contentions below, but preliminarily note that High River's apparent concerns are clearly outside the scope of the Trustee's Motion and have no bearing on the fairness, terms or merits of the Trustee's Settlement or the Mafco Litigation Trust's plan to distribute the Settlement Proceeds to the beneficiaries of the Mafco Litigation Trust. Rather, they amount to, albeit baseless, noteholder/indenture trustee matters that are completely outside the province of these proceedings, the Trustee's Motion or, respectfully, the jurisdiction of this Court.

Prior to responding to High River's arguments, LaSalle as Trustee wishes to inform the Court that it is not a party to the *Cantor v. Perelman* action, will not be filing any objection to the Trustee's Motion or the terms of the Trustee's Settlement contained therein, and is not a trustee of, or connected in any way to any of the trustees of, the Mafco Litigaton Trust.

BACKGROUND OF THE NOTES AND PARTIAL DISTRIBUTION OF PLEDGED STOCK

The Notes described above were secured by pledges to LaSalle as Trustee of the common stock of Marvel.[1] After Marvel filed for bankruptcy protection in 1997, various noteholders indicated to LaSalle as Trustee their desire to obtain their respective *pro rata* shares of pledged Marvel stock collateral attributable to their respective Note holdings. Ultimately, in 1998 LaSalle as Trustee, Holdings and Parent negotiated a settlement under which noteholders could elect to receive their *pro rata* shares of pledged Marvel stock (the "Pledged Share Settlement"). By Order dated March 3, 1998, as supplanted by an Amended Order dated March 17, 1998, a copy of which is attached hereto as Exhibit A, the United States District Court for the District of Delaware authorized and approved the Pledged Share Settlement (as amended or further supplemented, the "Approval Order").

The Approval Order (which initially authorized the distribution of up to 12.5 million Marvel shares to electing noteholders was further supplemented on or about April 9, 1998 to allow for additional amounts) set forth a protocol by which electing noteholders were to complete and submit a transmittal letter to LaSalle as Trustee in exchange for receiving their *pro rata* amount of Marvel stock and new, or stamped, unsecured Note(s). All told, holders holding approximately $349,409,000 in face amount of Notes elected to receive their *pro rata* share of pledged Marvel stock collateral, representing approximately 30 million Marvel shares.[2] Pursuant to the Approval Order, once electing Noteholders tendered their notes, LaSalle as

---

[1] Specifically, the Holdings Notes were secured by a pledge of 48 million Marvel shares, the Parent Notes were secured by a pledge of 20 million Marvel shares, and the Marvel III Notes were secured by 9,302,326 Marvel shares through a secured guaranty executed by Parent to LaSalle as Trustee.

[2] Holders of (a) $211,267,000 of the $517,447,000 in face amount of Holdings Notes, (b) $78,115,000 of the $251,678,000 in face amount of Parent Notes, and (c) $59,9227,000 of the $125,000,000 in face amount of Marvel III Notes participated in the Pledged Share Settlement and collectively received 30,043,623 Marvel shares.

3

<>...

Trustee stamped such notes to indicate that they were no longer secured by Marvel stock (or other appropriate notations were to be made in cooperation with the Depository Trust Company ("DTC")). Therefore, at the end of the day, electing noteholders, upon tendering their Notes and complying with the protocols in the Approval Order, would receive (i) their *pro rata* shares of Marvel stock and (ii) a "new" or stamped unsecured Note. At the insistence of the DTC, LaSalle as Trustee applied for and obtained new CUSIP numbers to reflect these new or stamped unsecured Notes (collectively, the "Unsecured Notes").[3] After giving effect to the Pledged Share Settlement, LaSalle as Trustee, under the terms of the Approval Order, was to receive new global stock certificates, which ultimately totaled 47,258,703 shares after giving effect to the Pledged Share Settlement.[4] Such certificates continued to serve as collateral for the Notes held by nonparticipating holders.

Under the provisions of the Fourth Amended Plan of Reorganization in Marvel's bankruptcy case (the "Marvel Plan"), LaSalle as Trustee on behalf of the holders of the Notes was to receive a package of consideration including a certain percentage of Net Mafco Litigation Proceeds (as defined therein), if such proceeds ever came into being, from litigation claims asserted by the Marvel debtors against Ronald Perelman and other defendants in what ultimately became the above-referenced action. The Mafco Litigation Trust conducted such litigation on behalf of the beneficiaries of that trust. Given the pledge of the Marvel shares identified above to LaSalle as Trustee, it is considered a holder of Allowed Equity Interests under the Marvel Plan

---

[3] The original and remaining secured Holdings Notes bear CUSIP 57383QAC3 and the stamped, unsecured Holdings Notes bear CUSIP 57383QAD1. The original and remaining secured Parent Notes bear CUSIP 573845AA2 and the stamped, unsecured Parent Notes bear CUSIP 573845AB0. The original and remaining secured Marvel III Notes bear CUSIP 573848AC2 and the stamped, unsecured Marvel III Notes bear CUSIP 573848AD0.

[4] The original pledged share certificates contained transfer restrictions. Pursuant to the Approval Order, both the Marvel shares to be received by electing Noteholders and the shares to remain in the name of LaSalle as Trustee to secure the notes held by non-participating Noteholders were to contain no restrictive legends.

4

and, hence, one of the beneficiaries of the Mafco Litigation Trust. On August 19, 2008, LaSalle as Trustee transmitted a copy of the Notice to Beneficiaries of the Mafco Litigation Trust to the Registered Holders of the Notes and other interested parties who have been identified.

Because holders of the Unsecured Notes already received their *pro rata* share of Marvel stock and became direct holders of Marvel stock, they are not entitled to receive any distribution of the LaSalle Settlement Proceeds. Accordingly only holders that did not participate in the Pledged Share Settlement and, as a result, hold their original, secured Notes are entitled to receive a distribution of LaSalle Settlement Proceeds.

Under the Indentures, payments to noteholders on account of the Notes is to be made only to those holders registered on the books of LaSalle as Trustee ("Registered Holders"). The vast majority of Noteholders hold their interests through nominees, (*i.e.*, brokerages, such as Merrill Lynch) which, in turn, hold such securities through the DTC or its nominee CEDE and Co. as the Registered Holder. Only Registered Holders have legal rights under the Indentures to direct and instruct the LaSalle as Trustee. In the event a holder of the Notes elects not to be a Registered Holder and hold its Notes through a DTC participant (*i.e.*, a brokerage such as Merrill Lynch), such holder must coordinate any actions (including any directions and instructions to the Indenture Trustee) regarding the Notes through the DTC participant.

The Indentures, and as confirmed in paragraphs 9(2) and 11 of the Approval Order, further provide LaSalle as Trustee with a lien on any proceeds recovered to compensate the Trustee for its services as well as for all reasonable out-of-pocket expenses incurred or made by it, including costs of collection. Such expenses shall include the reasonable compensation and expenses, disbursement and advances of LaSalle as Trustee's agents, counsel, accountants and experts (collectively, the "Trustee Reimbursable Fees and Expenses"). In or around 1997, a

majority of holders, including High River, directed and instructed LaSalle as Trustee to initiate a lawsuit against Ronald Perelman and certain of the same defendants in this action based on, *inter alia,* the wrongful transfer and receipt of the proceeds of the Note issuances. In connection with that litigation, LaSalle as Trustee incurred substantial expenses, including, without limitation, attorneys' fees and expenses, some of which to this day, and together with any outstanding fees and expenses of LaSalle as Trustee incurred in connection with Marvel's bankruptcy proceeding as well as the Trustee's Motion and intended distribution of the LaSalle Settlement Proceeds, remain unpaid. LaSalle as Trustee is currently determining the amount of outstanding Trustee Reimbursable Fees and Expenses and it intends to develop a recommendation to holders of such amount prior to making a distribution to eligible noteholders.

1.  HIGH RIVER'S CONTENTION THAT ITS NOTE HOLDINGS ARE MISREPRESENTED

High River contends LaSalle as Trustee has determined that only $1,000 of High River's purported $251,519,000 face amount of Note holdings appears on LaSalle as Trustee's list of Registered Holders. Preliminarily, only if High River did not elect to participate in the Pledged Share Settlement would it be deemed eligible to receive a distribution of Settlement Proceeds on account of its holding of original secured Notes. Assuming that to be the case, High River is operating under the mistaken fear that it will only receive a distribution, if it is so eligible, on account of $1,000 of its holdings as a Registered Holder. Nothing could be further from the truth, as High River is no doubt a sophisticated investor that could choose on its own to become a Registered Holder or receive its distributions through DTC and its DTC participant. High River has produced statements showing it holds its Notes through Merrill Lynch. Merrill Lynch, however, acknowledges in paragraph 4 of the Morelli Affidavit attached to the High River objection that it holds the Notes as a nominee through DTC, as it received prior notices regarding the Notes from the DTC. In fact, the DTC participant list shows Merrill Lynch holding positions

in the Notes slightly above the amounts represented by High River in its objection. Thus, High River obviously should know that its holdings would not be directly reflected on LaSalle as Trustee's list of Registered Holders, but rather, would indirectly be represented through the DTC, or its nominee, CEDE & Co., as the Registered Holder.

Additionally, High River's raising the issue of the "worthless security" letter is a red herring. As High River well knows, DTC seeks such communication from indenture trustees to eliminate the need for frequent reporting by DTC with respect to a security where a recovery is delayed or uncertain. The letter was generated by LaSalle as Trustee at the behest of DTC during the time period when the results of the instant litigation were uncertain and clearly indicated the facts therein were subject to change.

The bottom line is that High River's issue here lies with the DTC and Merrill Lynch, not LaSalle as Trustee. LaSalle as Trustee intends to make a distribution to Registered Holders, and since CEDE & Co. is the Registered Holder that holds the vast majority of the face amount of the Notes, it is up to that entity and the respective DTC participants to figure out how to distribute the proceeds it receives from LaSalle as Trustee to its participants.

It is senseless to allege that a Court should deny, or even delay, the Trustee's Motion because one of the noteholders potentially standing to benefit from the settlement has raised an "internal" issue with the Indenture Trustee. LaSalle as Trustee does not intend to make a distribution to eligible holders until it fully and finally (i) develops a recommendation to holders regarding the payment of Trustee Reimbursable Fees and Expenses permitted under the Indentures out of the LaSalle Settlement Proceeds received from the Mafco Litigation Trust (the net amount being the "Net Settlement Proceeds"), and (ii) confirms and implements a procedure to ensure that the Registered Holders who receive the distribution of Net Settlement Proceeds are

only holders who hold Notes that were not surrendered as part of the Pledged Share Settlement. LaSalle as Trustee submits that neither of these actions should impact or impede the consideration and approval of the Trustee's Motion. LaSalle as Trustee is currently endeavoring to make such determinations and implement a procedure so that when it receives the LaSalle Settlement Proceeds it can be in a position to make the distribution of Net Settlement Proceeds to the appropriate holders.

2.  HIGH RIVER'S CONTENTION REGARDING UNKNOWN INDENTURE TRUSTEE FEES

High River attempts to cast a pall on the Trustee's Motion by contending that noteholders are somehow "in jeopardy of being prevented from receiving the settlement funds to which they are entitled." High River goes on to request the Court to deny the Trustee's Motion because of such fear and mistakenly implies that it should be viewed as a direct beneficiary of the Mafco Litigation Trust. High River further asserts (incorrectly) that LaSalle as Trustee allegedly is not representing the beneficiaries of the Mafco Litigation Trust.

By virtue of its holding an Allowed Equity Interest on account of the pledged Marvel shares, it is LaSalle as Trustee, and not High River, that is one of the actual beneficiaries of the Mafco Litigation Trust. But for itself, LaSalle as Trustee does not represent or act on behalf of any of the other beneficiaries of the Mafco Litigation Trust. The trustees of the Mafco Litigation Trust represent the beneficiaries of that trust, not LaSalle as Trustee. Thus, High River cannot be viewed as an actual beneficiary of the Mafco Litigation Trust and should not even be permitted standing to object to the Trustee's Settlement. As stated above, High River is not taking issue with the fairness or amount of the Trustee's Settlement nor the amount of estimated LaSalle Settlement Proceeds to be distributed to LaSalle as Trustee on account of the Allowed Equity Interest held by LaSalle as Trustee. LaSalle as Trustee will get whatever it gets under the Trustee's Settlement on account of the approximate 47.3 million Marvel shares pledged to it

should the Court approve the Trustee's Settlement. Once LaSalle as Trustee receives such funds from the Mafco Litigation Trust, it intends to follow the two steps identified at the end of the paragraph immediately preceding the previous paragraph so that it can distribute the Net Settlement Proceeds to appropriate holders as expeditiously as possible.

Moreover, it is simply wrong for High River to suggest that LaSalle as Trustee, by taking actions prescribed by the Indentures and the Approval Order, is somehow "jeopardizing" the holders' ability to receive their shares of the Net Settlement Proceeds. LaSalle as Trustee is not taking any action with respect to the Trustee's Motion and will receive whatever proceeds it is entitled to receive as the holder of an Allowed Equity Interest should the Court grant the Trustee's Motion and approve the Trustee's Settlement. Once LaSalle as Trustee receives the Settlement Proceeds, it intends to act in accordance with the Indentures and distribute the Net Settlement Proceeds in accordance therewith. Indeed, if High River takes issue with LaSalle as Trustee's recommendation regarding the Trustee Reimbursable Fees and Expenses or other rights and obligations of LaSalle as Trustee under the Indentures, then such dispute is completely outside the province of this proceeding, the Trustee's Motion and, respectfully, the jurisdiction of this Court.

If High River truly holds Notes that were not tendered as part of the Pledged Share Settlement, and are therefore still secured by Marvel stock, then it should expect to receive its share of the distribution of the Net Settlement Proceeds. Because it filed an objection asserting rights to such distribution, we can only assume High River is certifying that it did not participate in the Pledged Share Settlement.

In conclusion, it would be patently unfair to all of the beneficiaries of the Mafco Litigation Trust for this Court to deny or delay the Trustee's Motion on account of the arguments

9

advanced by High River. High River's Note holdings are what they are, as is LaSalle as Trustee's list of Registered Holders. High River should be communicating with Merrill Lynch and the DTC to ensure its holdings are properly documented, as it appears to be the case that High River's holdings are ultimately held through the DTC. Furthermore, LaSalle as Trustee's forthcoming recommendation regarding payment of the Trustee Reimbursable Fees and Expenses is a matter of right under the Indentures and recognized by the Approval Order and has absolutely no bearing on the Trustee's Settlement or Motion. If High River has an issue with such amount, it is free to pursue whatever rights it may have, but just not in this forum, in this proceeding or in connection with the Trustee's Motion. LaSalle as Trustee respectfully reserves its right to appear and be heard before the Court at the hearing on this matter currently scheduled for September 11, 2008.

Wherefore, LaSalle as Trustee respectfully requests that the Court disregard and overrule the High River objection to the Trustee's Motion in all respects.

Respectfully submitted,

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

By: /s/ *Richard M. Beck*
    Richard M. Beck (Del. Bar No. 3370)
    Kelly A. Green (Del. Bar No. 4095)
    919 Market St.
    Suite 1000
    Wilmington, DE 19801
    Phone: (302) 552-5501
    Fax: (302) 426-9193
    RBeck@klehr.com

and

Mark D. Rasmussen (pro hac vice -pending)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Phone: (312) 845-3000
Fax: (312) 701-2361
mark.rasmussen@chapman.com

Counsel to LaSalle Bank N.A. as Indenture Trustee