IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD CANTOR, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : No. 97-586-SLR |
| | : |
| RONALD O. PERELMAN, *et al.*, | : |
| | : |
| Defendants. | : |

**DEFENDANTS' RESPONSE TO
THE OBJECTION OF HIGH RIVER LIMITED PARTNERSHIP**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
Email: Thomas.Allingham@skadden.com
Attorneys for Defendants

DATED: September 9, 2008

## TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 3

ARGUMENT ............................................................................................................................... 6

HIGH RIVER'S OBJECTION SHOULD BE REJECTED BECAUSE IT DOES NOT
    CHALLENGE THE OVERALL FAIRNESS AND REASONABLENESS OF
    THE SETTLEMENT. ..................................................................................................... 6

    A.    High River's Dispute With LaSalle Is Not Relevant To The Settlement. ................ 7

    B.    Even If This Court Were An Appropriate Forum For Resolving High
        River's Dispute With LaSalle, The Court Should Still Approve The
        Settlement And Should Address That Dispute In Subsequent Proceedings. ........... 9

CONCLUSION .......................................................................................................................... 14

# TABLE OF CASES AND AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381,*
    818 F.2d 145 (2d Cir. 1987)..................................................................................12

*Cantor v. Perelman,*
    235 F. Supp. 2d 377 (D. Del. 2002).........................................................................3

*Cantor v. Perelman,*
    414 F.3d 430 (3d Cir. 2005)....................................................................................3

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)...........................................................................10, 11

*In re Johns-Manville Corp.,*
    340 B.R. 49 (S.D.N.Y. 2006)................................................................................12

*In re Key3Media Group, Inc.,*
    336 B.R. 87 (Bankr. D. Del. 2005),
    *aff'd*, C. A. Nos. 03-10323, 05-828-SLR,
    2006 WL 2842462 (D. Del. Oct. 2, 2006) ............................................................10

*In re Marvel Entm't Group, Inc.,*
    222 B.R. 243 (D. Del. 1998)................................................................................10

*Marvel Entm't Group, Inc. v. Perelman,*
    C. A. No. 97-586-KAJ, 2004 WL 332813 (D. Del. Feb. 18, 2004).........................3

*In re Phila. Stock Exch., Inc.,*
    945 A.2d 1123 (Del. 2008) ............................................................................11, 12

*In re Warfarin Sodium Antitrust Litig.,*
    212 F.R.D. 231 (D. Del. 2002) .......................................................................10, 11

## PRELIMINARY STATEMENT

Defendants Ronald O. Perelman, William C. Bevins, Donald G. Drapkin, MacAndrews & Forbes Holdings Inc. (f/k/a Mafco Holdings Inc.), MacAndrews & Forbes Inc. (f/k/a MacAndrews & Forbes Holdings Inc.) and Andrews Group Incorporated ("Defendants") hereby respond to the letter dated August 28, 2008 of Edward E. Mattner of High River Limited Partnership ("High River"), which sets forth High River's objection to the settlement executed on June 16, 2008 (the "Settlement") between Defendants and the Trustees of the Mafco Litigation Trust (the "Trustees"). Defendants respectfully submit that High River's objection provides no grounds to deny the Trustees' motion for approval of the Settlement.

High River's letter raises no issues regarding the overall fairness of the Settlement to the beneficiaries of the Mafco Litigation Trust, but merely asks the Court to referee a tense relationship between High River, as the holder of certain notes, and LaSalle National Bank, N.A., the indenture trustee for those notes. High River contends its ownership of the notes gives it a right to receive proceeds of the Settlement and asserts that LaSalle's record keeping does not reflect the full extent of High River's note ownership. (*See* High River Let. at 2-4)  LaSalle has responded to those assertions in a lengthy reply to the High River letter. (*See* D.I. 526, Reply of LaSalle Bank N.A., Sept. 9, 2008, at 2) (the "LaSalle Reply"))  This dispute between High River and LaSalle has nothing to do with the motion before the Court, which ask the Court to consider whether the Settlement between Defendants and the Trustees of the Mafco Litigation Trust is a fair and reasonable resolution of the claims asserted by the Mafco Litigation Trust.

Moreover, even if the Court were to allow High River to inject its dispute with LaSalle into this action, there would still be no grounds to delay approval of the Settlement. The issue before the Court is whether the $80 million that Defendants have agreed to pay the Mafco Litigation Trust is a fair and reasonable settlement of the Mafco Litigation Trust's claims. The Court can and should make that determination now, and any dispute regarding the distribution of the $80 million received by the Mafco Litigation Trust can be addressed in subsequent proceedings.

## FACTUAL BACKGROUND

This lawsuit was initially filed by Marvel Entertainment Group, Inc. ("Marvel"), then a debtor-in-possession in bankruptcy, in October 1997. In June 1998, this Court confirmed the Fourth Amended Plan of Reorganization for Marvel (the "Plan") (*See* Trustees' Motion, Exs. 4 (Plan) and 5 (Confirmation Order))  Pursuant to the Plan, Marvel assigned its claims against Defendants in this action to the Mafco Litigation Trust as partial satisfaction for the claims of the former unsecured creditors and holders of equity interests of Marvel. (*See* Trustees' Motion, Ex. 3 (Mafco Litigation Trust Agreement) (the "Trust Agreement")  The Trustees thereafter substituted as plaintiffs in this action and for the next ten years prosecuted this case against Defendants.

Following discovery, Defendants were initially successful in defeating these claims on summary judgment. On December 9, 2002, Magistrate Judge Mary Pat Thynge granted in part and denied in part Defendants' motion for summary judgment. (D.I. 385); *Cantor v. Perelman*, 235 F. Supp. 2d 377, 378 (D. Del. 2002). On February 18, 2004, Judge Kent Jordan adopted Magistrate Judge Thynge's report in all respects. (D.I. 404); *Marvel Entm't Group, Inc. v. Perelman*, C. A. No. 97-586-KAJ, 2004 WL 332813, at *2 (D. Del. Feb. 18, 2004). On June 9, 2004, Judge Jordan granted summary judgment for Defendants as to any remaining cause of action in the Second Amended Complaint, which constituted a final disposition of Plaintiffs' remaining claims against Defendants. (D.I. 417)  On appeal, on July 12, 2005, the Third Circuit reversed the order granting summary judgment for Defendants on the grounds that material facts were in dispute that would require a trial. *Cantor v. Perelman*, 414 F.3d 430, 433 (3d Cir. 2005). The Court also affirmed the denial of Plaintiffs' cross-motion for summary judgment. *Id.*

On remand, the parties engaged in extensive settlement discussions, which included a session with Magistrate Judge Thynge as a mediator. Those efforts culminated in a Settlement Agreement that is attached as Exhibit 2 to the Trustees' Motion.

On June 20, 2008, the Trustees filed a motion seeking an order approving the Settlement. (D.I. 520) In their motion, the Trustees state that they had "determined, after consultation with counsel, that the Settlement Agreement is fair and reasonable, and in the best interests of the Trust and its beneficiaries." (D.I. 520, Trustees' Motion ¶ 26) The Trustees further stated that they would "provide notice of [the Trustees' Motion] to the beneficiaries of the Trust . . . ." (D.I. 520, Trustees' Motion ¶ 33)

On June 24, 2008, the Trustees submitted a letter to the Court enclosing the form of notice that they planned to send to the beneficiaries of the Trust (the "Notice"). (D.I. 521) On July 30, 2008, the Court set the hearing on the Trustees' Motion for September 11, 2008.

On August 29, 2008, High River, a purported beneficiary of the Mafco Litigation Trust, filed a letter dated August 28, 2008 objecting to the Settlement. (D.I. 523) ("High River's Letter") In its Letter, High River disputes whether its claimed noteholdings are properly reflected in LaSalle's records. (High River Let. at 3)

On September 9, 2008, LaSalle filed a reply to High River's letter. (D.I. 526) As shown by LaSalle's reply, LaSalle is "not a party to [this action], will not be filing any objection to the Trustees' [Motion] or the terms of the Trustees' Settlement contained therein, and is not a trustee of, or connected in any way to any of the trustees of, the Mafco Litigation Trust." (LaSalle Reply at 2) LaSalle further notes that High River's Letter amounts to "baseless, noteholder/indenture trustee matters that are completely out-

4

side the province of these proceedings . . . ." (*Id.* at 2) Moreover, LaSalle supplies the Court with an explanation regarding the records of the noteholders. (*Id.* at 3-8, describing the Pledged Share Settlement)

  This is Defendants' response to High River's Objection.

# ARGUMENT

## HIGH RIVER'S OBJECTION SHOULD BE REJECTED BECAUSE IT DOES NOT CHALLENGE THE OVERALL FAIRNESS AND REASONABLENESS OF THE SETTLEMENT.

High River objects to the Settlement because it purportedly "fails to correctly identify High River as the holder of the notes [secured by Marvel stock] and because, despite a request, plaintiffs have failed to provide assurances that the beneficiaries will receive all settlement proceeds earmarked for the holders of the Allowed Equity Interest." (High River Let. at 2) High River's letter makes clear that its dispute is actually with LaSalle, the indenture trustee for the notes.[1] According to High River, LaSalle's records do not reflect the full extent of High River's noteholdings.[2] (*Id.* at 3) High River is also concerned that LaSalle may withhold for itself some of the proceeds it receives before passing those funds along to the noteholders. (*Id.* at 4)

High River does not dispute the overall fairness of the settlement, but fears that its share of the proceeds might get miscalculated by LaSalle, the indenture trustee for

---

[1] High River is under a mistaken impression that LaSalle has a role in this litigation. LaSalle is a third-party here, but High River's letter repeatedly (and improperly) conflates LaSalle with the Trustees. For example, High River initially complains that the "plaintiffs" (i.e. Trustees) failed to provide it with assurances regarding the distribution, but later complains about "LaSalle's" failure (without mention-ing the Trustees) to represent that beneficiaries will receive all monies due to them. *Compare* High River Let. at 2 *with* High River Let. at 4. In another example, High River starts the first full paragraph on page 3 of its letter by describing the Trustee's Motion and actions of the Trustees. Then, without explanation, High River completes the paragraph by describing the actions of *LaSalle as Trustee*. Due to the structure of the paragraph and the term "LaSalle as Trustee," the reader may be left with the mistaken impression that LaSalle is one of the "Trustees" from the first sentence, which is not correct.

[2] Consistent with its misunderstanding about LaSalle's role in this litigation, High River objects to the notice *from LaSalle*, not the notice *from the Trustees*. (*See* High River Let. at 3-4, objecting to the August 19, 2008 letter from LaSalle) LaSalle provided the disputed notice *to the noteholders* because LaSalle is the trustee for the noteholders. High River received the LaSalle notice as a noteholder, not as a beneficiary of the Trust. LaSalle's notice does not relate to the Trustees' Motion or the issues concerning the approval of the Settlement.

the notes. This is not a valid objection for two reasons. First, High River's dispute with LaSalle should not be injected into this action. LaSalle is not a party to this action, and its arrangements with High River are not at issue in this case or on this motion. Second, even if the LaSalle-High River dispute were a matter for this Court to resolve, the Court can, and should, approve the settlement and leave the LaSalle-High River dispute to be resolved through further proceedings. Each of these reasons for rejecting the High River objection is discussed further below.

    A.    **High River's Dispute With LaSalle Is Not Relevant To The Settlement.**

In its objection, High River argues that it is a holder of an "Allowed Equity Interest," and therefore entitled to receive a portion of the proceeds of the Settlement under the terms of the Trust Agreement and the Plan. High River argues that it is a holder of an Allowed Equity Interest based on its ownership of notes that were backed by a pledge of shares of Marvel. (*See* High River Let. at 2) LaSalle's submission, however, raises questions as to whether High River is correct or whether the Pledged Share Settlement alters High River's rights. Regardless of whether High River or LaSalle is correct, this issue is between them and not before the Court on the Trustees' Motion.

LaSalle's relationship with the noteholders, and its duties under the terms of the indentures, are far removed from the issues before the Court on this motion to approve the settlement. The Court is considering whether a settlement between Defendants and the Mafco Litigation Trust is a fair and reasonable resolution of the claims asserted by the Trustees. LaSalle is not even a party to this case.

The distinct separation between High River's dispute with LaSalle and the Settlement between the Trustees and Defendants is illustrated in the following chart:



As the chart illustrates, the dispute between High River and LaSalle is two levels of relationships removed from Settlement. If High River believes that LaSalle is failing in any of its duties as indenture trustee, its remedy is not to hold up this Settlement but to sue LaSalle for its purported breach of its duties as indenture trustee. That claim should be heard in a separately filed action, not in this action, as this case is about to be settled and neither LaSalle nor High River are parties to this suit.

    **B.**    **Even If This Court Were An Appropriate Forum For Resolving High River's Dispute With LaSalle, The Court Should Still Approve The Settlement And Should Address That Dispute In Subsequent Proceedings.**

The pending motion asks the Court to approve the Settlement negotiated between the Trustees and Defendants, which will finally resolve a long-pending and vigorously litigated lawsuit. The Settlement requires Court approval because Section 7.01(f) of the Trust Agreement provides that the Trustees "have exclusive power to settle or otherwise compromise the MAFCO Litigation Claims, *subject, however to District Court approval*[.]" (Trustees' Motion Ex. 3)(emphasis added) As explained below, regardless of whether High River can inject its wholly separate and distinct dispute with LaSalle into this action, the Court should approve the Settlement as fair and reasonable, dismiss the claims against Defendants, and allow the beneficiaries whose rights are unrelated to the dispute between High River and LaSalle to receive their money. The High River-LaSalle dispute is a sideshow, and it should not hold up the Settlement for everyone else.

Under any possible standard to be applied by the Court, High River's objection would not be grounds to deny the motion to approve the Settlement. While the Trust Agreement does not set forth a standard for the Court to apply in approving a settlement, Defendants suggest that the Court should be guided by the standards used to ap-

9

prove settlements in bankruptcy and class actions. These standards are similar and, under either test, this settlement should be readily approved, regardless of High River's objection. Under the bankruptcy standard, the court does not consider whether the settlement is the best possible compromise, but merely whether it is an overall fair and reasonable settlement. *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005), *aff'd*, C. A. Nos. 03-10323, 05-828-SLR, 2006 WL 2842462 (D. Del. Oct. 2, 2006). In assessing the fairness and reasonableness of the settlement, the court considers four factors:

> (1) the probability of success in the litigation;
>
> (2) difficulties to be encountered in collection;
>
> (3) the complexity of the litigation and related expense and inconvenience; and
>
> (4) the interests of the creditors.

*In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). Bankruptcy courts are guided by the principle that "[c]ompromises are favored in bankruptcy." *In re Key 3 Media Group*, 336 B.R. at 93 (internal quotations omitted).

Similarly, in class actions, the court's role is to "assur[e] the settlement represents adequate compensation for the release of the class claims . . . ." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In the Third Circuit, courts apply a nine-factor test that, in substance, resembles the four-factor test used by the bankruptcy courts:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; 3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ;

10

> (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation . . . ."

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

As in the bankruptcy setting, courts reviewing class action settlements consider the "overriding public interest in settling and quieting litigation . . . ." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 254. Moreover, a "presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 254 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).[3]

Here, High River's objection to the Settlement *does not bear upon the overall fairness and adequacy of the settlement* based on the factors considered in bankruptcy cases or class action settlements, but rather concerns High River's contention that it may be denied its purported rightful share of the settlement proceeds. High River's assertions regarding the proportion of the settlement proceeds that it should receive provide no grounds for delaying a determination that the overall settlement is fair. *See, e.g., In re Phila. Stock Exch., Inc.*, 945 A.2d 1123, 1135 (Del. 2008) (approving class action settle-

---

[3] The Trustees' Motion establishes the grounds for approval of the Settlement. This case squarely falls within the presumption in favor of approval because it was bitterly litigated for several years, settled through arm's-length negotiations and with the oversight of Magistrate Judge Thynge, and only High River has raised an objection. Moreover, especially in light of the fact that Judge Jordan once granted summary judgment in favor of defendants, this $80 million settlement reflects a fair and reasonable settlement amount. As the Trustees state in their motion: "The Trustees recognize that the ultimate outcome of a trial could be less favorable than the settlement amount of $80 million now being offered by defendants." (Trustees' Motion ¶ 28)

11

ment as fair and reasonable, and dismissing claims against defendants, while leaving ongoing disputes over allocation of proceeds for further proceedings).

Courts frequently bifurcate disputes over the allocation of the proceeds of the settlement from an overall assessment of fairness. *See id.*; *In re Johns-Manville Corp.*, 340 B.R. 49, 70 (S.D.N.Y. 2006) ("The Objecting Claimants argue that the fairness of a settlement cannot be properly evaluated until the fund distribution procedures are already known. *This argument has no merit and is contradicted by considerable precedent.*") (emphasis added). As the Second Circuit has explained:

> *The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.* This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987) (emphasis added).

Here, the Court actually already bifurcated its approval of the allocation of the proceeds from its approval of the settlement because the allocation formula was set a decade ago in the bankruptcy case. (*See supra*) To the extent High River has any further disputes about whether that allocation plan is being properly followed, such issues can and should be addressed in separate proceedings.

Because High River has not objected to the Settlement itself, the Court should disregard High River's objection and grant the Trustee's Motion to approve the Settlement. High River can raise its dispute with LaSalle in a separate proceeding, or, if the Court deems it appropriate, in further proceedings in this case, but either way, that dispute provides no grounds to delay approval of the Settlement. Defendants have been subject to this lawsuit for ten years, and wish to have it resolved. The beneficiaries of the

12

Trust have been waiting for a recovery for ten years, and wish to be paid. A dispute concerning a single beneficiary's obligation to redistribute the funds it receives does not warrant delaying the finalization of the Settlement for Defendants, the Trustees and the thousands of other beneficiaries. In sum, fairness and justice support the entry of an order approving the settlement with no further delay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court approve the Trustees' Motion.

    /s/ Thomas J. Allingham II
Thomas J. Allingham II (I.D. No. 476)
Anthony W. Clark (I.D. No. 2051)
Paul J. Lockwood (I.D. No. 3369)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
Email:  Thomas.Allingham@skadden.com
Attorneys for Defendants

DATED: September 9, 2008

14

547353-Wilmington Server 1A - MSW